Robert E. Kushner (REK-3578)
Kevin J. Windels (KJW-5477)
Stephen F. Willig (SFW-9847)
D'AMATO & LYNCH, LLP
70 Pine Street
New York, New York  10270
Phone: (212) 269-0927
Facsimile: (212) 269-3559
rkushner@damato-lynch.com
kwindels@damato-lynch.com
swillig@damato-lynch.com

*Attorneys for Defendants*
ILLINOIS NATIONAL
INSURANCE COMPANY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                        :           Chapter 11
                                             :
REFCO, INC., et al.,                         :    Case No. 05-60006 (RDD)
                        Debtors.             :
                                             :    Jointly Administered
---------------------------------------------------------------x
TONE N. GRANT,                               :
                                             :
                        Plaintiff,           :
                                             :
        -against-                            :    Adv. Proc. No. 08-1129-rdd
                                             :
ILLINOIS NATIONAL INSURANCE COMPANY          :
AND NATIONAL UNION FIRE INSURANCE            :
COMPANY OF PITTSBURGH, PA.,                  :
                                             :
                        Defendants.          :
                                             :
---------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT

## TABLE OF CONTENTS

STATEMENT OF FACTS.................................................................................................2

    A.   The Coverage Dispute with Illinois National...............................................................2
    B.   The Insurance Tower....................................................................................................6
    C.   Other Coverage Litigations .........................................................................................7
    D.   Summary of Argument .................................................................................................7

ARGUMENT
THE REFERENCE TO BANKRUPTCY COURT SHOULD BE WITHDRAWN ...............8

    A.   The Standard for Withdrawal of the Reference............................................................8
    B.   Plaintiff's Complaint Is A Non-Core Proceeding ......................................................10
    C.   Judicial Economy, Fairness and Timing Also Strongly Favor a Withdrawal of the
        Reference ..................................................................................................................13

CONCLUSION ..........................................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abondolo v. GGR Holbrook Medford, Inc.*, 285 B.R. 101 (E.D.N.Y. 2002)......................10

*In re Burger Boys, Inc.*, 94 F.3d 755 (2d Cir. 1996)............................................9

*In re Enron Creditors Recovery Corp.*, No. 07 Civ. 10612, 2008 WL 718284
    (S.D.N.Y. March 17, 2008)...............................................................9

*In re Kentile Floors, Inc.*, 1995 WL 479512 (S.D.N.Y. August 1995) .............................10

*In re McMahon*, 222 B.R. 205 (S.D.N.Y. 1988)...................................................10

*Magten Asset Mgt. Corp. v. Northwestern Corp. (In re Northwestern Corp.)*, No.
    03-12872, 2005 WL 2320113 (D. Del. 2005)...............................................14

*Mishkin v. Angeloff*, 220 B.R. 784 (S.D.N.Y. 1998) ...........................................14

*Mt. McKinley Insurance Co. v. Coming, Inc.*, 399 F.3d 436 (2d Cir. 2005) .....................11

*Norkin v. DLA Piper Rudnik Gray Cary, LLP*, 2006 WL 839079 (S.D.N.Y. 2006).........11

*Oneida Ltd. v. Pension Ben. Guaranty Corp.*, 2007 WL 2067968 (S.D.N.Y. 2007) ..........9

*Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095 (2d Cir. 1993)............9, 13

*South Street Seaport, Ltd. Partnership v. Burger Boys, Inc., (In re Best
    Payphones, Inc.)*, 2007 WL 1630569 (S.D.N.Y. 2007).................................9

*In re The VWE Group, Inc.*, 359 B.R. 441 (S.D.N.Y. 2007) .............................10

*U.S. Lines, Inc. v. American Steamship Owners Mutual Protection and Indemnity
    Association, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999)......................13

### FEDERAL STATUTES

11 U.S.C. 101…....................................................................................11

28 U.S.C. §157(a) ................................................................................8

28 U.S.C. 157 (b)(1) ...........................................................................10

28 U.S.C. §157(b)(2) ....................................................................................................12

28 U.S.C. §157(c) ........................................................................................................12

28 U.S.C. §157(d) ....................................................................................................1, 8, 9

28 U.S.C. § 157(e) ......................................................................................................10

Fed R. Bank. Pro. 5011(a) ..........................................................................................12

Fed. R. Civ. Pro. 38 ......................................................................................................4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re                                                                          :        Chapter 11
                                                                               :
REFCO, INC., et al.,                                                           :        Case No. 05-60006 (RDD)
                                        Debtors.                               :
                                                                               :        Jointly Administered
-----------------------------------------------------------x
TONE N. GRANT,                                                                 :
                                                                               :
                                        Plaintiff,                             :        Adv. Proc. No. 08-1129-RDD
                                                                               :
                        -against-                                              :
                                                                               :
ILLINOIS NATIONAL INSURANCE                                                    :
COMPANY AND NATIONAL UNION FIRE                                                :
INSURANCE COMPANY OF PITTSBURGH,                                               :
PA.,                                                                           :
                                                                               :
                                        Defendants.                            :
-----------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT

Defendant, Illinois National Insurance ("Illinois National")[1], hereby moves

this Court for an Order pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy

Procedure 5011(a) and Local Bankruptcy Rule 5011-1, for cause shown, withdrawing the

reference to the Bankruptcy Court of the above Adversary Proceeding, which is a non-core

matter involving insurance coverage for a former Refco officer.  Under 28 U.S.C. §157(d),

"the district court may withdraw any case or proceeding referred [to the Bankruptcy Court]

under this section, on its own motion or on timely motion of any party, for cause shown."

---

[1] Pursuant to a Stipulation and Order of Dismissal So Ordered on April 11, 2008 National Union Fire Insurance
Company of Pittsburgh, Pa. is no longer a party to this case.

1

Cause for withdrawal of this Adversary Proceeding is based not only on the "non-core" nature of the dispute, but also on considerations of efficiency and fairness. This plaintiff is also involved in insurance coverage disputes with at least four other insurers. His dispute with XL Specialty is currently before the District Court (an order to lift stay and permit a lawsuit before the District Court was entered by the Bankruptcy Court). With regard to his dispute with Axis, the reference in that adversary proceeding was withdrawn pursuant to stipulation of the parties after Judge Drain encouraged withdrawal (Ex. 7, Tr. at pp. 59-60). In another adversary proceeding involving two other insurers, Allied World Assurance Company and Arch, motions to withdraw the reference are currently pending.

## STATEMENT OF FACTS

**A.**    **The Coverage Dispute with Illinois National**

This is a non-core insurance coverage dispute between plaintiff, Tone N. Grant, and Illinois National. Illinois National issued to Refco Group, Ltd., LLC ("Refco") a Directors, Officers and Private Company Liability Insurance policy (Policy No.: 931-75-64) with a Policy Period of January 24, 2004 to January 24, 2005 and a Limit of Liability of $5,000,000 ("the Policy"). In connection with Refco's application for the Policy, Illinois National received a Director's and Officer's Insurance Application ("the Application"), signed by Refco's then President and Chief Executive Officer, Phillip Bennett, on behalf of all prospective insureds. The Application contained representations that falsely denied knowledge by any insured, including Bennett, of potential claims on the Policy. In reliance upon the Application and the information contained therein, including certain financial information, Illinois National issued the Policy. As demonstrated below, the resulting

2

dispute between the plaintiff and Illinois National does not arise under Title 11 and should be heard by the District Court.

The Complaint in this Adversary Proceeding was filed by plaintiff on March 10, 2008 and alleges two causes of action, both of which are based entirely upon the insurance contract. A copy of the Complaint is annexed as Exhibit 1 to the Declaration of Kevin J. Windels (the "Windels Decl.") and a copy of the Policy (without the Application) is annexed as Exhibit A to the Complaint. The first cause of action seeks declaratory relief that plaintiff is entitled to the advancement of defense costs under the Policy for certain criminal and civil actions filed against him. The second cause of action seeks preliminary and permanent injunctive relief requiring Illinois National to advance defense costs for the criminal and civil actions described in paragraphs 12 and 13 of the Complaint. Simultaneously with the filing of the Complaint in the Adversary Proceeding, plaintiff filed a motion for a preliminary injunction for the advancement of defense costs. Illinois National opposed the motion citing, among other things, the exclusion from coverage found in the Application, which became part of the Policy (i.e., all claims based upon facts known to the applicant at the time of the application but which are not disclosed). Following a hearing before Judge Drain, held on March 20, 2008, plaintiff's motion was granted. The Court issued an Order dated March 25, 2008 (and an errata order of March 26, 2008) and directed Illinois National to advance defense costs pursuant to the terms of the Policy (Ex. 2). Illinois National filed its Answer to the Complaint in which it, among other things, re-asserted its denial of coverage, contested the Bankruptcy Court's jurisdiction over this matter, and raised as one of its defenses that this is a non-core proceeding. Illinois National also requested a

3

trial by jury pursuant to FRCP 38 (Ex. 3). As of now, no discovery has been taken in this case.

Illinois National's denial of coverage is based on multiple grounds, including, among other things, certain exclusions in the Policy and an exclusion in the Application (Ex. 4). The factual support for applying the exclusions is found in the public admissions in Refco's SEC filings, the recent criminal pleas of Bennett (to a 20 count Indictment) and other Refco executives, and the criminal conviction of plaintiff on April 17, 2008 on all five counts of the Indictment against him, after a three and a half week criminal trial in the Southern District of New York before Judge Buchwald (Docket No. 05-CR-1192). As these pleas and convictions now conclusively establish, plaintiff Grant, Bennett and certain other Insureds were plainly aware, prior to the submission of the Application, of facts or circumstances which gave them reason to believe a claim might arise from those facts. In addition, all of the claims against plaintiff for which coverage is sought arise out of, are based upon, or are attributable to the committing in fact of criminal acts, dishonest acts or willful violations of a statute, rule or law. Based on the above, as well as the other defenses raised in Illinois National's Answer, there is no coverage for plaintiff under the Policy for the criminal and civil actions against him.

Shortly after an initial public offering was made on August 10, 2005, Refco, Inc. admitted that over a seven-year period the company hid hundreds of millions of dollars of uncollectible receivables that should have appeared on Refco's balance sheet as related-party transactions. This massive fraud, about which plaintiff Grant, Bennett and other Refco directors and officers actually participated in, or had knowledge of, led to Refco's announcement in October 2005, just two months after going public, that its prior financial

4

statements could no longer be relied upon.[2]  On October 17, 2005 Refco filed for bankruptcy

as a result of this massive fraud and the resulting fallout.  Thereafter, numerous civil

complaints and criminal indictments were filed against Bennett and other Refco directors and

officers, including plaintiff, alleging criminal acts, fraud and various other misdeeds by the

respective defendants.

On February 15, 2008, Bennett pled guilty to each and every count of a

twenty-count Indictment which had been filed in 2007 against him, plaintiff Grant and

Robert Trosten, another former Refco officer.  Among others charges, Bennett pled guilty to

charges of:  (1) conspiracy to commit securities fraud, wire fraud, and bank fraud, and

making material misstatements to auditors and false filings with the SEC; (2) securities

fraud; (3) false filing with the SEC – Securities Exchange Act of 1934; (3) false filing with

the SEC – Securities Act of 1933; (4) wire fraud; (5) material misstatements to auditors;

(6) bank fraud; and (7) money laundering.  Trosten also pled guilty to five counts of the

indictment against him on February 20, 2008.  The charges against Bennett, plaintiff and

Trosten covered the period from the mid-1990s to 2005.  Shortly after the Bennett and

Trosten pleas, the U.S. Attorney filed a superseding Indictment (with five counts) against

plaintiff covering the same period of time, charging:  (1) conspiracy to commit securities

fraud, wire fraud, bank fraud and money laundering; (2) securities fraud; (3) wire fraud; (4)

bank fraud; and (5) money laundering.  Once again, at Grant's criminal trial, a verdict of

guilty was returned on all five counts in the Indictment.

---

[2] A detailed description of the Refco fraud can be found in the 363 page Examiner's Report (Bankr. S.D.N.Y. filed July 11, 2007) (05-60006, Doc. 5530)  The Examiner's Report recounts the detailed factual basis for the allegations of fraud against Bennett, plaintiff and others.

5

Based on Bennett's guilty plea, there is no question that material misrepresentations were made in the Application (Ex. 4, p. 3). Also relevant to Illinois National's position of no coverage is the criminal acts and fraud exclusion of the Policy. Clause 4(c), provides that there is no coverage for Claims against the Insured, "arising out of, based upon, or attributable to the committing in fact of any criminal, fraudulent or dishonest act or any willful violation of any statute, rule or law…" (See Policy, Ex. A to Ex. 1, p.6). The above is by no means the full extent of the grounds for Illinois National's no coverage position.

**B.    The Insurance Tower**

As this Court is aware, various other insurers issued directors and officers liability insurance policies to Refco, Inc., (i.e., the "Tower"). Particularly, U.S. Specialty Insurance Company issued a primary policy with limits of $10 million excess of applicable retentions (the "Primary Policy"). Lexington Insurance Company issued a first excess policy with limits of $7.5 million excess of $10 million (the "Lexington Policy"). Axis Reinsurance Company issued a second excess policy with limits of $10 million excess of $17.5 million (the "Axis Policy"). Allied World Assurance Company ("AWAC") issued a third excess policy with limits of $12.5 million excess of $27.5 million (the "AWAC Policy"). Arch Insurance Company issued a fourth excess policy with limits of $10 million excess of $40 million (the "Arch Policy"). XL Specialty Insurance Company issued a fifth excess policy with limits of $20 million excess of $50 million (the "XL Policy"). The Policy (issued by Illinois National) is a stand alone policy, with a different policy period and is not part of the Tower of insurance issued to Refco, Inc. However, the plaintiff in this action, Tone N. Grant, has also made claims for coverage under all of the above policies in the Tower.

6

C.    <u>Other Coverage Litigations</u>

Currently, two other insurance coverage actions, involving the Axis policy and the XL Specialty policy, are pending before the District Court. See, <u>Axis Reinsurance Company v. Bennett, et al.</u>, Case Nos. 07-CV-07924, 08-CV-03242 (GEL) (S.D.N.Y.) (the "Axis Action" where the reference was withdrawn by stipulation; see Ex. 5), and <u>XL Specialty Insurance Company v. Agoglia, et al.</u>, Case No. 08-CV-3821 (GEL) (S.D.N.Y.) (the "XL Specialty Action" where the Bankruptcy Court gave leave to file the action in District Court). For now, the coverage litigation against AWAC and Arch is still in Bankruptcy Court before Judge Drain (See <u>Murphy, et al. v. Allied World Insurance (U.S.) Company, Inc. and Arch Insurance Company et al.</u>, Adv. Proceeding No. 08-01133 (RDD) ("the AWAC and Arch Action"). AWAC and Arch's counsel recently filed motions to withdraw the reference in that case (see 08-CV-4105 and 08-CV-4196).

D.    <u>Summary of Argument</u>

Axis, and now Arch and AWAC, have all made motions to withdraw the reference based on almost identical grounds as Illinois National now moves. The Axis and XL Specialty cases are pending in the Southern District, and plaintiff is a party to both. Like those cases (and the AWAC and Arch Actions), this matter before the Court is a "non-core" dispute and it would be a more efficient use of judicial resources for the District Court to address the issues presented first hand. In the Axis case the District Court permitted the parties to stipulate to withdraw the reference (See Ex. 5). Although offered the opportunity to make the same agreement, plaintiff has refused to stipulate with Illinois National to withdraw the reference (Ex. 6). While Illinois National is cognizant that the question of whether the reference should be withdrawn is exclusively within the Court's discretionary

7

powers, the circumstances in this case (including the fact that plaintiff had already so

stipulated in the Axis Action) strongly suggests that withdrawing the reference here would

ease the burden on the Courts by placing all similar issues before the same Court, where they

can be more efficiently managed.

   This is a non-core dispute between Illinois National and plaintiff involving

insurance coverage.  The bankrupt entity has made no claim for coverage itself.  Moreover,

because of the duplication that will occur and the judicial inefficiency and unfairness that may

result from litigating the same issues in different courts, Illinois National is presently seeking

a withdrawal of the reference to the Bankruptcy Court of the Adversary Proceeding.


## ARGUMENT

## THE REFERENCE TO BANKRUPTCY
## COURT SHOULD BE WITHDRAWN

**A.**  **The Standard for Withdrawal of the Reference**

   Pursuant to 28 U.S.C. §157(a), "the district court may provide that any or all

cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a

case under title 11 shall be referred to the bankruptcy judges for the district."  The Southern

District of New York's "Standing Order of Referral of Cases to Bankruptcy Judges" of the

United States District Court for the Southern District of New York, dated July 10, 1984

(Ward, Acting C.J.), requires that any cases and proceedings which fall under this rubric

shall be routinely referred to the Bankruptcy Court.

   However, 28 U.S.C. § 157(d), provides that "the district court may withdraw,

in whole or in part any case or proceeding referred under this section on its own motion or on

timely motion of any party, for cause shown." The term "cause shown" is not defined in the statute, and the legislative history of the 1984 Bankruptcy Amendments provides little guidance in delineating factors which support permissive withdrawal of a bankruptcy reference. Several recent cases decided by the Second Circuit and the Southern District of New York provide general guidelines for consideration, which include whether the case is core or non-core; whether it is legal or equitable; the interests of judicial economy; prevention of forum-shopping and confusion; promoting uniformity in bankruptcy administration; fostering the economical use of the debtor's and creditors' resources; and, the presence of a jury demand. In re Burger Boys, Inc., 94 F.3d 755, 762 (2d Cir. 1996); Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1101 (2d Cir. 1993); In re Enron Creditors Recovery Corp., No. 07 Civ. 10612, 2008 WL 718284 at *4 (S.D.N.Y. March 17, 2008); Oneida Ltd. v. Pension Ben. Guar. Corp., 2007 WL 2067968 (S.D.N.Y. 2007); South Street Seaport, Ltd. Partnership v. Burger Boys, Inc., (In re Best Payphones, Inc.), 2007 WL 1630569 (S.D.N.Y. 2007).

The Second Circuit's decision in the case of In re Burger Boys, 94 F.3d at 762 is instructive in determining if "cause shown" exists under 28 U.S.C. §157(d):

> [t]he district court should weigh several factors, of which the first is the most important: (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

Thus, while it has been generally recognized that whether the proceeding is core or non-core is the most important factor in determining whether to withdraw the reference of an adversary proceeding, it is not the only factor. Id., 94 F.3d at 762.

9

In a non-core proceeding, a decision by the Bankruptcy Court -- both on the law and the facts -- is subject to de novo review in the District Court. In re McMahon, 222 B.R. 205, 208 (S.D.N.Y. 1988); Abondolo v. GGR Holbrook Medford, Inc., 285 B.R. 101, 113 (E.D.N.Y. 2002). Thus, in a non-core matter it is a more efficient use of judicial resources for the District Court to hear the adversary proceeding in the first place. In re Kentile Floors, Inc., 1995 WL 479512 (S.D.N.Y. August 1995). Based on the record before this Court, this factor strongly favors withdrawal of the reference. If this Court did not withdraw the reference it would be required to conduct a de novo review of the Bankruptcy Court's rulings upon a party's written objection. The result would be the re-litigation of claims and significant additional costs and expenditure of time and effort to both parties, all of which could be avoided by withdrawing the reference at this very early stage of the litigation.

In addition, courts often find that when one party to a non-core adversary proceeding demands a jury trial, there is "cause" to withdraw the reference. In re The VWE Group, Inc., 359 B.R. 441 (S.D.N.Y. 2007). A Bankruptcy Court cannot conduct a jury trial and enter a "verdict" in non-core proceedings unless both parties consent. 28 U.S.C. § 157(e). Rather, it can only make proposed findings. The losing party could appeal to the District Court for a de novo review of the finding of the jury. Thus, it makes little sense to allow the Bankruptcy Court to conduct a jury trial in a non-core proceeding.

**B.     Plaintiff's Complaint Is A Non-Core Proceeding**

28 USC 157 (b)(1) gives the Bankruptcy Court jurisdiction over "core proceedings" as follows:

Bankruptcy judges may hear and determine all cases under title

(11 USC 101, et seq.) and *all core proceedings* arising under title 11..., or arising in a case under title 11..., referred to under subsection (a) of this section, and may enter appropriate orders and judgments ....

(Emphasis added).

To be deemed a "core proceeding" with respect to which the Bankruptcy Court has jurisdiction to hear and enter judgments, the proceedings must either "arise under" Title 11 or "arise in" a bankruptcy case under Title 11. See Norkin v. DLA Piper Rudnik Gray Cary, LLP, 2006 WL 839079 at *3 (S.D.N.Y. 2006) (citing Mt. McKinley Ins. Co. v. Coming, Inc., 399 F.3d 436, 447-48 (2d Cir. 2005)).

The statute includes examples of what are intended to be considered "core proceedings:"

**(2)**    Core proceedings include, but are not limited to—

    **(A)**    matters concerning the administration of the estate;

    **(B)**    allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

    **(C)**    counterclaims by the estate against persons filing claims against the estate;

    **(D)**    orders in respect to obtaining credit;

    **(E)**    orders to turn over property of the estate;

    **(F)**    proceedings to determine, avoid, or recover preferences;

    **(G)**    motions to terminate, annul, or modify the automatic stay;

    **(H)**    proceedings to determine, avoid, or recover fraudulent conveyances;

| | |
|---|---|
| **(I)** | determinations as to the dischargeability of particular debts; |
| **(J)** | objections to discharges; |
| **(K)** | determinations of the validity, extent, or priority of liens; |
| **(L)** | confirmations of plans; |
| **(M)** | orders approving the sale of property, including the use of cash collateral; |
| **(N)** | orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; |
| **(O)** | other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and |
| **(P)** | recognition of foreign proceedings and other matters under chapter 15 of title 11. |

28 U.S.C. §157(b)(2).

The Adversary Proceeding against Illinois National falls, instead, under the category of a non-core proceeding. The two causes of action asserted pertain to a pre-petition insurance contract and were not created or determined by a statutory provision of the Bankruptcy Code. Therefore, the claims at issue do not "arise under" Title 11 and would clearly exist outside of the bankruptcy. Accordingly, this is a non-core proceeding, pursuant to which the Bankruptcy Court has jurisdiction under 28 U.S.C. §157(c), as proceedings "related to" a case under Title 11.

It does not appear that under any analysis the Adversary Proceeding against Illinois National can be construed as a core proceeding. As such, the Bankruptcy Court will be limited to making recommendations to the District Court as to final orders and judgments. If the Bankruptcy Court's findings or conclusions are challenged, the District Court would then be required to undertake a <u>de novo</u> review of the Bankruptcy Court's findings of fact

12

and conclusions of law and enter a final order. <u>U.S. Lines, Inc. v. American Steamship</u>

<u>Owners Mutual Protection and Indemnity Association, Inc. (In re U.S. Lines, Inc.)</u>, 197 F.3d

631, 636 (2d Cir. 1999). It would be a more efficient use of judicial resources for the District

Court to hear the Adversary Proceeding in the first place. See <u>In re Orion Pictures Corp.</u>, 4

F.3d at 1101 ("the fact that a bankruptcy court's determination on non-core matters is subject

to <u>de novo</u> review by the district court could lead the latter to conclude that in a given case

unnecessary costs could be avoided by a single proceeding in the district court").

C.     **Judicial Economy, Fairness and Timing Also**
       **<u>Strongly Favor a Withdrawal of the Reference</u>**

      Judicial economy will be served by the reference being withdrawn. Based on

a review of the Complaint in this case, as well as the pleadings in the AWAC and Arch

Action, the Axis Action, and the XL Specialty Action, it appears that all of the coverage

actions involve similar type issues as to those presented in this case. It would appear that,

similar to the Illinois National Policy, the other policies (in the Refco, Inc. tower of

insurance) also have prior knowledge, acts or information exclusions, similar to that

described herein (pp. 4-6), criminal acts and fraud exclusions, and will require the

determination of other insurance coverage exclusions or obligations under a directors and

officers liability insurance policy. The fact that plaintiff is a party to all of these cases adds

weight in favor that this case, like the Axis and XL Specialty Actions, should be adjudicated

by the District Court. As of now, the motions to withdraw the reference by Arch and AWAC

have not yet been decided. Since the District Court is to ultimately decide the issues of

coverage in the Axis and XL Specialty Actions, the interests of judicial economy and

fairness strongly favor that it also hear the Adversary Proceeding against Illinois National.

13

The Bankruptcy Court's retention of the Adversary Proceeding against Illinois National could also lead to conflicting resolutions of the same issues, duplicative discovery and, thus, inequitable results between the above cases. Bankruptcy Judge Drain implicitly recognized the potential problems in the Axis action that could arise if the Counterclaims and Axis's Complaint were not determined in the same venue. During an August 30, 2007 hearing, Judge Drain suggested that "as a practical matter, it may make sense to move to withdraw the reference of this matter...." (Ex. 7, Tr. at p. 83). Judge Drain then asserted during the hearing that he "would strongly encourage the parties if they were ultimately to pursue this litigation to pursue it in a different forum because of the jurisdictional concerns that I've raised." (Ex. 7, Tr. at pp. 59-60). The Judge further noted, "given the existence of a securities action and the inevitable tie-ins to settlements[,] that a district judge might want to have the reference...." (Ex. 7, Tr. at p. 87). Similar to this action, Judge Drain was there considering that withdrawing the reference would not adversely affect the uniform administration of bankruptcy law because the Adversary Proceeding did not raise issues governed solely by non-Title 11 law.

It is appropriate to withdraw the reference here at this early stage of the litigation. See Mishkin v. Angeloff, 220 B.R. 784, 800 (S.D.N.Y. 1998) (facts that proceedings were in the early stages of litigation favored the withdrawal of the reference); Magten Asset Mgt. Corp. v. Northwestern Corp. (In re Northwestern Corp.), No. 03-12872, 2005 WL 2320113, at *2 (D. Del. 2005) (withdrawal of reference timely when made at "a relatively early stage in the proceedings and significant discovery has not yet occurred"). This motion is being filed approximately three weeks after Illinois National filed its Answer

14

to the Adversary Proceeding, and no discovery has yet been conducted.  As such, the

Bankruptcy Court has not vested considerable resources in the matter.

Finally, withdrawing the reference in this matter will not promote forum

shopping, as Illinois National seeks removal of the Adversary Proceeding to the District

Court for the Southern District of New York, which is presently the Court that will in any

event be responsible for reviewing the Bankruptcy Court's decisions and making final

determinations in these non-core proceedings.

Accordingly, in light of all of these circumstances, withdrawal of the reference

is warranted.

## CONCLUSION

Based on the foregoing, Illinois National respectfully requests that the Court

grant its motion to withdraw the reference to the Bankruptcy Court of the Adversary

Proceeding, together with such other and further relief as this court deems just and proper.

Dated:    New York, New York
          May 16, 2008

                              Yours, etc.,

                              D'AMATO & LYNCH, LLP

              By:    s/ Kevin J. Windels
                     Robert E. Kushner (REK 3578)
                     Kevin J. Windels (KJW 5477)
                     Stephen F. Willig (SFW 9847)
                     Attorneys for Defendants
                     Illinois National Insurance Company
                     70 Pine Street
                     New York, New York 10270-0110
                     (212) 269-0927

15

TO:   ZUCKERMAN SPAEDER LLP
      Norman L. Eisen (NE-1198) (*pro hac vice pending*)
      Thomas G. Macauley (TM-3944) (*pro hac vice pending*)
      Laura E. Neish (LN-0040)
      William A. Schreiner, Jr. (WS-1327)
      1540 Broadway, Suite 1604
      New York, New York 10036
      Phone:  (212) 704-9600
      Fax:  (212) 704-4256

      *Attorneys for Plaintiff Tone N. Grant*

16

#297377v1

## AFFIDAVIT OF SERVICE VIA E-MAIL AND OVERNIGHT MAIL

STATE OF NEW YORK  )
                     ss.:
COUNTY OF NEW YORK )

          **STEPHEN F. WILLIG**, being duly sworn, deposes and says: deponent is not a

party to the action, is over 18 years of age and resides in Hazlet, New Jersey.

          On May 16, 2008, deponent served the within **MEMORANDUM IN**

**SUPPORT OF ILLINOIS NATIONAL UNION FIRE INSURANCE COMPANY'S**

**MOTION TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT**

upon:

Norman Eisen, Esq.
Zuckerman Spaeder, LLP
1800 M Street, N.W.
Washington, D.C.  20036-5802
neisen@zuckerman.com

Laura E. Neish, Esq.
Zuckerman Spaeder, LLP
1540 Broadway, Suite 1604
New York, NY  10036-4039
lneish@zuckerman.com

Steven Wilamowsky, Esq.
Bingham McCutcheon, LLP
399 Park Avenue
New York, NY  10022
steven.Wilamowsky@bingham.com

Michael T. Hannafan, Esq.
Blake Tyler Hannafan, Esq.
Hannafan & Hannafan, Ltd.
1 East Wacker Drive, Suite 1208
Chicago, Illinois  60601
mth@hannafanlaw.com
bth@hannafanlaw.com

the attorneys for the plaintiff and the plan administrator herein at the e-mail address designated

and agreed to in writing by said person for that purpose by electronically delivering a true copy

thereof, and also at the address(es) designated by said attorney(s) for that purpose by leaving a

true copy of same enclosed in a pre-paid properly addressed wrapper for UPS overnight delivery.

                              s/Stephen F. Willig
                              **STEPHEN F. WILLIG**

Sworn to before me this
16th day of May, 2008

s/Kevin J. Windels
      NOTARY PUBLIC

#297426v1