UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

In re                                                    :                    Chapter 11
                                                         :
REFCO. INC. et al.,                                      :    Case No. 05-60006 (RDD)
                                                         :
                              Debtors.                   :    Jointly Administered
                                                         :
------------------------------------------------------- x
                                                         :
TONE N. GRANT,                                           :
                                                         :    Adv. Proc. No. 08-1129-RDD
                              Plaintiff,                  :
                                                         :
            -against-                                    :
                                                         :
ILLINOIS NATIONAL INSURANCE                              :
COMPANY AND NATIONAL UNION FIRE                          :
INSURANCE COMPANY OF PITTSBURGH,                         :
PA.,                                                     :
                                                         :
                              Defendants.                :
------------------------------------------------------- x

### DECLARATION OF KEVIN J. WINDELS IN SUPPORT OF ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE

KEVIN J. WINDELS, an attorney duly admitted to practice before the Courts

of the State of New York and the United States District Court for the Southern District of

New York, hereby declares the following statements to be true under the penalties of perjury:

1.    I am a member of the firm D'Amato & Lynch, LLP, attorneys for defendants, Illinois National Insurance Company ("Illinois National").[1]

2.    This Declaration is submitted in support of Illinois National's motion to withdraw the reference.

3.    In support of its motion, Illinois National presents certain documents which are referred to in its memorandum of law.

4.    Annexed hereto as Exhibit 1 is a true copy of the Complaint dated March 10, 2008 filed by plaintiff to this Adversary Proceeding.

5.    Annexed hereto as Exhibit 2 is a true copy of the Order Granting Motion of Plaintiff Tone N. Grant to Require Defendant to Pay His Defense Costs in Underlying Actions and for Relief from the Automatic Stay and Discharge Injunction, to the Extent Applicable, to Permit Defendants to Advance and/or Pay Such Defense Costs of the Honorable Robert D. Drain, U.S.B.J., dated March 25, 2008, and the Errata Order of Judge Drain dated March 26, 2008.

6.    Annexed hereto as Exhibit 3 is a true copy of the Amended Answer and Jury Demand of Illinois National dated May 6, 2008.

7.    Annexed hereto as Exhibit 4 is a true copy of the letter dated January 13, 2004 from Refco's insurance broker, Marsh USA, Inc., to Christine Hall of AIG and

---

[1] Pursuant to a Stipulation and Order of Dismissal So Ordered on April 11, 2008 National Union Fire Insurance Company of Pittsburgh, Pa. has been dismissed from this case.

attached Directors and Officers Insurance Application for American International Companies

submitted on behalf of Refco Group, Ltd, LLC.

        8.      Attached hereto as Exhibit 5 is a true copy of the Order of the

Honorable Gerard E. Lynch, U.S.D.J. dated November 13, 2007 in the adversary proceedings

entitled <u>Axis Reinsurance Company v. Phillip Bennett, et al.</u>, Adv. Proc. No. 07-1712-RDD

and <u>Tone N. Grant et al. v. Axis Reinsurance Company,</u> Adv. Proc. No. 07-2005-RDD

(collectively "the <u>Axis</u> action") granting a withdrawal of the reference of the remaining

claims pending in the Bankruptcy Court.

        9.      Attached hereto as Exhibit 6 is a true copy of an email from plaintiff's

attorney William A. Schreiner, Jr. of Zuckerman Spaeder, LLP dated April 22, 2008 advising

that plaintiff will not stipulate to withdraw the reference.

        10.    Attached as Exhibit 7 is a true copy of selected pages of the transcript

of the hearing before Judge Drain in the <u>Axis</u> action on August 30, 2007.

        11.    Based on the foregoing, it is respectfully requested that Illinois

National's Motion to withdraw the reference be granted in its entirety.

Dated: New York, New York
      May 16, 2008

                                                    s/
                                 Kevin J. Windels

#294456v1

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------  x    Chapter 11

In re                                                     :    Case No.05-60006 (RDD)

REFCO, INC., et al.,                                      :    Jointly Administered

                     Debtors.                             :

-------------------------------------------------------  x

TONE N. GRANT,                                            :    Adv. Proc. No. _____-rdd

                     Plaintiff,                           :

         v.                                               :

                                                          :    Electronically Filed

ILLINOIS NATIONAL INSURANCE COMPANY and                   :
NATIONAL UNION FIRE INSURANCE COMPANY OF                  :
PITTSBURGH, PENNSYLVANIA,                                 :

                     Defendants.                          :

-------------------------------------------------------  x
```

## COMPLAINT

Plaintiff Tone N. Grant, by and through his undersigned counsel, alleges as follows for

his Complaint against Illinois National Insurance Company and National Union Fire Insurance

Company of Pittsburgh, Pennsylvania (referred to collectively herein as "Illinois National"):

## INTRODUCTION

1.    In this action, Plaintiff Grant seeks relief as a result of Illinois National's last-

minute reversal of position regarding paying defense costs for his upcoming March 24, 2008

criminal trial.  Since mid-2007, Illinois National had agreed to advance fees for that trial.  On

Friday, March 7, 2008, Illinois National unilaterally reversed course and informed Mr. Grant that

it was no longer agreeing to pay, just ten business days in advance of trial and after already being

presented with invoices for trial preparation. Illinois National's change of heart is a breach of its earlier promise, upon which Mr. Grant had relied, and is profoundly prejudicial not only to his ability to defend himself at his criminal trial, but also to the orderly administration of justice in the courts of this District.

2.      In response, Plaintiff seeks a declaration from this Court that the Illinois National Policy requires Illinois National to advance his defense costs incurred in connection with the Underlying Actions.  Plaintiff also seeks preliminary and permanent injunctive relief directing Illinois National to advance such defense costs in accordance with the requirements of the Illinois National policy.

3.      Emergency relief is necessitated by Illinois National's last-minute repudiation of its repeated assurances that it would advance fees and expenses for Mr. Grant's criminal trial. Starting in June 2007, Illinois National expressly and in writing acknowledged its duty to advance defense costs for Mr. Grant pursuant to an insurance policy issued to Refco.  That promise was thereafter reaffirmed and Mr. Grant relied upon it in preparing his defense in a criminal trial that starts on March 24, 2008, just two weeks from today.  On Friday, March 7, however, Illinois National for the first time announced that it would reverse course and breach its promise.

4.      Illinois National's breach of its promise to advance defense costs on the eve of Mr. Grant's criminal trial jeopardizes his ability to mount a defense and, therefore, his liberty. Mr. Grant was relying on Illinois National in order to be able to mount a full defense by paying his lawyers, his experts, and the expenses attendant on a lengthy trial.  Plaintiff has explained these dire circumstances to Illinois National, but it will not budge.  Moreover, the policy currently advancing defense costs pursuant to this Court's order in Tone N. Grant, et al. v. Axis

2

Reinsurance Co., Adv. Proc. No. 07-2005-rdd, Axis Reinsurance Company ("Axis") is

exhausted, and the next layer in the tower is currently refusing to advance. Without immediate

action from this Court to compel Illinois National to live up to its promise and its contractual

obligations, Mr. Grant's ability to defend himself will be severely compromised.

## JURISDICTION AND VENUE

5.      This adversary proceeding is brought pursuant to Rules 7001(1), (2), (7) and (9)

of the Federal Rules of Bankruptcy Procedure, Title 11 of the United States Code, 11 U.S.C.

§§ 105, et seq., (the "Bankruptcy Code") and 28 U.S.C. § 2201.

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157, 1334 and 2201.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## PARTIES

8.      Plaintiff Grant is a former officer of Refco who served as President of Refco

Group Ltd., LLC until 1998.  Plaintiff Grant is a resident of the State of Illinois.

9.      Illinois National Insurance Company is an insurance company that is organized

and exists pursuant to the laws of the State of Illinois, with its principal place of business in New

York.

10.     National Union Fire Insurance Company of Pittsburgh, Pennsylvania is, on

information and belief, organized and exists pursuant to the laws of Pennsylvania with its

principal place of business in New York.

1725245.1

## GENERAL ALLEGATIONS

### A.    The Underlying Actions

11.    On October 17, 2005, Refco, Inc. and many of its direct and indirect subsidiaries filed voluntary petitions for relief in this Court under Chapter 11 of the United States Bankruptcy Code.

12.    Thereafter, Plaintiff was named as a defendant in various civil actions (the "Civil Actions") and one criminal action, entitled *United States v. Phillip Bennett, Robert Trosten and Tone Grant,* S3 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action"). Trial in the Criminal Action is scheduled to begin on March 24, 2008.

13.    The Civil Actions include, among others, *In re Refco, Inc. Securities Litigation,* No. 05 Civ. 8626 (GEL) (S.D.N.Y.); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation,* No. 06 Civ. 643 (GEL) (S.D.N.Y.); *VR Global P'ners, L.P. v. Bennett et al.,* No. 07 CV 8686 (GEL); *Kirschner v. Grant Thornton LLP et al.,* No. 07 CV 5306 (N.D. Ill.); *Thomas H. Lee Equity Fund V, L.P., et al. v. Phillip Bennett, et al.,* No. 05 Civ. 9608 (GEL) (S.D.N.Y.); and *Kirschner v. Agoglia,* (S.D.N.Y. Bankr.).

14.    The Plaintiff properly gave notice of the Underlying Actions to Illinois National and other directors and officers' liability insurers of Refco and requested, among other things, that such insurers advance his defense costs incurred in connection with the Underlying Actions.

### B.    Illinois National's Insurance Contract

15.    Illinois National issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 931-75-64 (the "Illinois National Policy"), for the period January 24, 2004 to January 24, 2005. (A true and correct copy of the Illinois National Policy is attached hereto as Ex. A).

1725245.1

16.     The Illinois National Policy names as "Individual Insureds" under the Policy "any past, present or future duly elected or appointed director [or] officer...of the Company." (Ex. A at Definition (I)(1)). The Illinois National Policy provides those directors and officers with coverage for "Loss of each and every Director, Officer or Employee of the Company arising from a Claim...for any Wrongful Act." (Id. at Insuring Agreement (A)).

17.     The Underlying Actions are Claims for "Wrongful Acts," as defined in the Illinois National Policy. (Id. at Definition (t)).

18.     "Loss" is defined by the Illinois National Policy to include defense costs. (Id. at Definition (k) and Endorsement No. 1).

19.     The Illinois National Policy further requires the Insurer to advance defense costs as incurred during the pendency of Claims:

> **The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a claim for which coverage is provided...Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition.**

(Id. at Insuring Agreement (1) and Clause (8) (emphasis added).

## C.     Illinois National's Acknowledgement Of Its Duty To Advance

20.     By letter dated January 22, 2007, Plaintiff's counsel informed Illinois National that Plaintiff had been indicted, and demanded coverage under the Illinois National Policy (See Letter from B. Hannafan to AIG Domestic Claims dated January 22, 2007, a true copy of which is attached hereto as Ex. B).

21.     By letter dated June 8, 2007, Illinois National acknowledged its duty to advance defense costs for the Plaintiff's defense to the Underlying Actions.  (See Letter from J. Limb to B. Hannafan dated June 8, 2007, a true copy of which is attached hereto as Ex. C).  The letter,

1725245.1

addressed to Plaintiff's co-counsel, stated that "Given the return of the Indictment against Mr. Grant, it appears that a Claim has been made as to Mr. Grant," and asked that Plaintiff Grant's counsel be mindful of guidelines enclosed with it. (Ex. C).

22.    At that time, other insurers of Refco with similar D&O contracts were fulfilling their contractual duties by advancing Plaintiff's defense costs. Illinois National's June 8, 2007 letter acknowledged this, and referenced an "other insurance" clause in the Illinois National Policy that provided for an apportionment of duties between different insurers that respond at the same time to the same loss. (See Ex. C).

23.    Plaintiffs' counsel wrote to Illinois National again on January 15, 2008, explaining that, given that a policy of insurance issued to Refco by Axis Reinsurance Company was nearly exhausted and the denial of Refco's other insurers to promptly advance defense costs, "It is now necessary for the Illinois National Policy to advance defense costs for Mr. Grant's defenses." (See Letter from B. Hannafan to D. Fitzpatrick dated January 15, 2008, a true copy of which is attached hereto as Ex. D).

24.    On January 22, 2008, Illinois National acknowledged a duty to advance defense costs for Mr. Grant's defense in the Underlying Actions again in a letter to Refco's insurance broker. (See Letter from D. Fitzpatrick to A. Lieberman dated January 22, 2008, a true copy of which is attached as Ex. E).

25.    That letter states that "National Union is prepared to advance an appropriate portion of the defendants' Defense Costs resulting from the Indictment, subject to bankruptcy

6

court approval and a reservation of rights that includes National Union's right to reimbursement of such costs in the event it is determined such costs are not covered." (Ex. E).[1]

26.     Subsequently, on the understanding and belief that the Axis policy was nearly exhausted, and with the Refco insurer excess to the Axis policy, AWAC, seeking to arbitrate certain issues under its policy, Plaintiff submitted defense bills to Illinois National on February 27, 2008.

27.     On March 7, 2008, Plaintiff's counsel contacted Mr. Fitzpatrick, the author of the January 22, 2008 letter in which Illinois National acknowledged a duty to advance, inquiring about the status of payment of the bills that have been submitted.

28.     Mr. Fitzpatrick stated that Illinois National was reconsidering its duty to advance defense costs on behalf of Mr. Grant, but that he did not know if Illinois National's position on advancement would change. Mr. Fitzpatrick also stated that Illinois National would not be paying the bills that have been submitted to Illinois National for payment. He also stated that he did not know when Illinois National would have completed its review and reconsideration, and he did not know if as a result of that review and reconsideration, Illinois National would reinstate its duty to advance defense costs and pay both those bills submitted to it and those further defense expenses Plaintiff would incur in preparing for, and defending himself at, the trial of the Criminal Action.

29.     Therefore, as of March 7, 2008, Illinois National has breached its contractual, and acknowledged, obligation to advance defense costs.

---

[1] The reference to National Union appears to be a scrivener's error, given that the rest of the letter refers to Illinois National's duties and rights under the Illinois National Policy. Plaintiff, however, out of an abundance of caution, names National Union as a defendant herein and reserves all of his rights against National Union.

1725245.1

## COUNT I

### (Declaratory Relief)

30.    Plaintiff repeats and realleges paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31.    Pursuant to the terms of the Illinois National Policy, Illinois National is contractually obligated to advance defense costs to Plaintiff with respect to the Criminal Action.

32.    Illinois National has now declined to pay those defense bills submitted to it for reimbursement and has stated that it does not know when, if ever, it will again accept its duty to advance defense costs incurred for the Plaintiff's defense in the Criminal Action, suddenly leaving the Plaintiff without a source of defense expense advancement that he had been relying upon to prepare for, and defend himself during, the Criminal Action.

33.    Upon information and belief, Refco paid all premiums for the Illinois National Policy and had and has performed all of the terms and conditions of the Illinois National Policy on its part to be performed with respect to the relief here sought, unless otherwise excused.

34.    Plaintiff, as an Individual Insured under the Illinois National Policy, and therefore, a party to the insurance contract, has performed all the terms and conditions of the Illinois National Policy on his part to be performed with respect to the relief herein sought, unless otherwise excused.

35.    At all relevant times mentioned herein, the Illinois National Policy was, and is, in full force and effect.

36.    An actual controversy exists between Illinois National and Plaintiff as to whether the Plaintiff is entitled to advancement of his defense costs in the Underlying Actions under the

8

Illinois National Policy and whether Illinois National has breached its acknowledged duties, and judicial resolution of the parties' rights and obligations is necessary.

37.    This Court should issue a judgment declaring that the Plaintiff is entitled to advancement of defense costs under the Illinois National Policy on an as-incurred basis through the Criminal Action and the other Underlying Actions.

## COUNT II

### (Injunctive Relief)

38.    Plaintiff repeats and realleges paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.    Illinois National is obligated, by its own acknowledgement, to make payments to the Plaintiff for defense costs in the Criminal Action and the other Underlying Actions.

40.    Illinois National has failed and refused to make such payments, notwithstanding that Plaintiff's defense costs are mounting as the Underlying Actions proceed, and Plaintiff's criminal trial commences in two weeks.

41.    Absent preliminary and permanent injunctive relief, Plaintiff faces an imminent risk of irreparable harm, including but not limited to the risk of an adverse outcome in the Criminal Action or the Civil Actions caused by his inability to mount an adequate defense.

42.    Plaintiff is entitled to preliminary and permanent injunctive relief requiring Illinois National to advance defense costs in the Underlying Actions in accordance with the Illinois National Policy.

9

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor as follows:

1. On Count I, declaring that Plaintiff is entitled to advancement of defense costs under the Illinois National Policy for costs incurred preparing for, and through, the Criminal Action and the other Underlying Actions.

2. On Count II, requiring Illinois National to promptly make payments to Plaintiff for defense costs as incurred in the Underlying Actions and Criminal Action, in accordance with the terms of the Illinois National Policy.

3. Awarding Plaintiff its consequential damages, including attorneys' fees, costs and disbursements of this action; and

4. Granting such other and further relief as the Court may deem proper.

Dated:  March 10, 2008

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

/s/ Norman L. Eisen
Norman L. Eisen (NE-1198) (*pro hac vice pending*)
Thomas G. Macauley (TM-3944) (*pro hac vice pending*)
Laura E. Neish (LN-0040)
William A. Schreiner, Jr. (WS-1327)
1540 Broadway, Suite 1604
New York, New York 10036
Phone: (212) 704-9600
Fax: (212) 704-4256

*Attorneys for Plaintiff Tone N. Grant*

1725245.1

# EXHIBIT A

FILE

# ΛIϹ *American International Companies*®

POLICY NUMBER:
*931-75-64*
REPLACEMENT OF
POLICY NUMBER:
*270-77-99*

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

*PrivateEdge*sm

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International Pacific Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Penns.

☐ Granite State Insurance Company
☒ Illinois National Insurance Company
☐ National Union Fire Insurance Company of Pitts., Pa®
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

ITEM 1.   NAMED ENTITY:   *REFCO GROUP LTD, LLC*

MAILING ADDRESS:   *550 W JACKSON BLVD SUITE 1300*
*CHICAGO, IL 60661-5716*

STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:
*Delaware*

ITEM 2.   SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Entity

ITEM 3.   POLICY PERIOD:   From: *January 24, 2004*   To: *January 24, 2005*
(12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.   LIMIT OF LIABILITY:   *$5,000,000*
aggregate for all Loss combined (including Defense Costs)

*7224040*

68461 (8/97)   *COPY*

ITEM 5.   RETENTION:

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)                    None

Employment Practices Claims
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)                          *N/A*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

Security Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)                          *$500,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)                          *$500,000*

for Loss arising from Claims
alleging the same Wrongful Act
or Related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

ITEM 6.   CONTINUITY DATES:

A.   Coverages A and B(ii):                          *January 24, 2003*

B.   Coverage B(i):                                 *January 24, 2003*

C.   Outside Entity Coverage: Per Outside Entity,
     see endorsement #  *N/A*

ITEM 7.   PREMIUM:   *$101,505*

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $1,005 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
*A copy of the TRIA disclosure sent with the original quote is attached hereto.*

*7224040*

68461 (8/97)   *COPY*

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND
MULTIPLIED DAMAGES:                    (Included in above)
(No punitive damages coverage provided:  X )


ITEM 8.    NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
           (This policy is issued only by the insurance company indicated below.)

           *Illinois National Insurance Company*

           *500 West Madison Street*

           *Chicago, IL 60661*

*7224040*

68461 (8/97)    *COPY*

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage.   The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review.   There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act.   Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

Unless you sign this form and return it to us rejecting Terrorism Coverage under the Federal Act, you will be covered for Terrorism as defined in the Act and your premium for that coverage is *$1,005*            .


_____    I hereby reject coverage in accordance with the Act.


_____
Signature of Insured

_____
Print Name/Title

_____
Date

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *REFCO GROUP LTD, LLC*


Policy Number: *931-75-64*
Policy Period Effective Date From: *January 24, 2004*      To: *January 24, 2005*

81285 (1/03)

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
_____
SECRETARY

_____
PRESIDENT

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

MARSH USA, INC.
500 WEST MONROE
CHICAGO, IL 60661

7224040

70598 (5/98)    **COPY**

 **AMERICAN INTERNATIONAL COMPANIES**®

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

*PrivateEdge*<sup>SM</sup>

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows:

### 1. INSURING AGREEMENTS

#### COVERAGE A: INDIVIDUAL . INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

#### COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

    (i)    Claim first made against the Company, or

    (ii)    Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By–laws of the Company duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

#### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

### 2. DEFINITIONS

    (a)    "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b)    "Claim" means:

    (1)    a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

    (2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

        (i)    service of a complaint or similar pleading; or

        (ii)    return of an indictment (in the case of a criminal proceeding); or

        (iii)    receipt or filing of a notice of charges.

    (3)    an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(c)    "Company" means the Named Entity and any Subsidiary thereof.

(d)    "Continuity Date" means the date set forth in:

    (1)    Item 6A of the Declarations with respect to Coverages A and B(ii); or

    (2)    Item 6B of the Declarations with respect to Coverage B(i);

    (3)    Item 6C of the Declarations with respect to a Claim made against an Individual Insured(s) arising out of such Insured's service as a director, officer, trustee or governor of an Outside Entity.

(e)    "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)    "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(g)    "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

(h)    "Employment Practices Violation(s)" means any actual or alleged:

    (1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4) Retaliation (including lockouts);

(5) employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;

(6) employment-related libel, slander, humiliation, defamation, invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure;

(11) failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation;

(12) violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(I) "Individual Insured(s)" means:

(1) any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

(2) any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

(3) in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

(4) any Employee(s) of the Company.

68462 (8/97)    *COPY*                    3

(j) "Insured(s)" means:

    (1)    an Individual Insured; and

    (2)    the Company.

(k) "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment–related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 7 of the Declarations then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(l) "Named Entity" means the organization stated in Item 1 of the Declarations whether a corporation, association, limited liability company or other type of business organization.

(m) "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(n) "Outside Entity" means:

    (1)    a not–for–profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

    (2)    any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(o) "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(p) "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, insureds or legal causes of action.

(q) "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign

law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(r)  "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

    (1)  brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

    (2)  brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

(s)  "Subsidiary" means:

    (1)  any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

    (2)  automatically any for-profit organization whose securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

    (3)  an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above), but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than a 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(t)   "Wrongful Act" means:

(1)   with respect to Individual  Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors,  officers or Employees  of the Company;

(2)   with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company;

(3)   with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

## 3.   EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives  of deceased  Individual Insureds, and the  legal representatives  of Individual  Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including  a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.   EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)   arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange  Act of 1934 and amendments  thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration  without the previous  approval of the stockholders  of the Company, which payment  without such previous approval shall be held to have been illegal;

(c)   arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

(d)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)    alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)    for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

(h)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express employment contract or agreement;

(i)    which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

(1)    any Claim brought by an Individual Insured where such Claim is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

(2)    an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the Board of Managers or management committee member of the Named Entity;

(j)    alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

(1)    any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

(2)    to any public offering of securities (other than a public offering described in paragraph (1) above), as well as any purchase or sale of such securities subsequent to such public offering, in the event that within 30 days prior to the effective time of such public offering: (i) the Named Entity shall give the

insurer written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the Named Entity accepts such terms, conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium. In the event the Company gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

(k)  alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(l)  alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly,  bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this  exclusion  shall  not apply  to Securities Claims;

(m)  for emotional distress, or for injury from libel or slander, or defamation or disparagement,  or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(n)  for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however, this exclusion shall not apply to any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(o)  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational  Safety and Health  Act, any rules or regulations  of the foregoing promulgated  thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(p)  alleging, arising out of, based upon or attributable to any obligation pursuant  to any worker's compensation,  disability benefits, unemployment compensation, unemploy- ment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(q)  with respect to Coverage B(i) only:

(1)  for any actual or alleged plagiarism, misappropriation, infringement   or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

(2)  for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti–trust, business competition,   unfair trade practices or tortious interference in another's business or contractual relationships;

(3)    for the rendering  or failure to render any service to a customer or client of the Insured; provided, however, that this exclusion shall not apply to any:

    (i)    Claim solely alleging Employment Practices Violations;

    (ii)    Securities Claim; or

    (iii)    Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions  coverage has been added to this policy by written endorsement attached hereto;

(4)    seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

## 5.  LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS – INCLUDING DEFENSE COSTS)

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.**

### A.  General Terms

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable);  however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected).  Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations,  or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

### B.  Reinstated Limit of Liability

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations.  The Reinstated Limit shall be subject to the following conditions:

1.    The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events, only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2.    If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 7 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3.    The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy

Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

4. The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in Clause 5A as applicable to Claims made against the Insureds prior to the effective date of the reinstatement shall not apply to any Reinstatement Claim.

5. Upon exercise of the Reinstated Limit, the entire premium set forth in Item 7 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6. In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7. Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

The Retention amount shall be reduced in the event that an insured consents to the first "Settlement Opportunity", as defined in Clause 8, by the percentage described in Clause 8, subject to the conditions described in Clause 8.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1) a determination of No Liability of all Insureds; or

(2) a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

Case 1:18-cv-01013-GMS Document 2-9 Filed 05/08/2008 Page 28 of 169

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.

If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.

(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

  (1) anytime during the Policy Period or during the Discovery Period (if applicable); or

  (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging a Related Wrongful Act to the Claim for which such notice has been given shall be considered made at the time such notice was given.

(c) If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such Claim after the

68462 (8/97)   *COPY*                    11

Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.**

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this Insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

## 9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS

This clause applies only to an Employment Practices Claim or a Securities Claim (each of the foregoing hereinafter referred to as a "Designated Claim").

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Designated Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Designated Claim is brought. In the event a Designated Claim is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Claim is brought to function as "local counsel" on the Designated Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such

longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12. CHANGE IN CONTROL OF NAMED ENTITY

If during the Policy Period:

a.  the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

b.  any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors of the Named Entity, or acquires the voting rights of such an amount of such securities;

(either of the above events herein referred to as the "Transaction"),

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Entity shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Entity shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, and the Company and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the

Company or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance. This policy specifically shall be excess of any other policy pursuant to which any other Insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period or Reinstated Limit.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION PROCESS

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insureds may elect the type of ADR discussed below. The Insurer agrees to submit to the ADR process chosen by the Insured. Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

There shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured, except for those person or persons who executed the application, shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete,

then this policy will be void as to all Insureds other than Individual Insureds who are "non-employee Directors" of the Company and who did not personally know the statement or representation to be inaccurate or incomplete. (The term "non-employee Director" shall have the meaning described in Securities & Exchange Commission rules or regulations promulgated pursuant to Section 16 of the Securities Exchange Act of 1934).

## 20. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 21. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

### ALASKA

DAVIS WRIGHT TREMAINE
701 W. Eighth Avenue, Suite 800,
Anchorage, AK 99501-3468
Tel: (907) 257-5300
Contact: David W. Oesting

FOSTER PEPPER & SHEFELMAN
1007 W. Third Ave., Ste. 100,
Anchorage, AK 99501
Tel: (907) 222-7100
Contact: Tim J. Filer / Roger D. Mellem

### CALIFORNIA

BINGHAM MCCUTCHEN LLP
1900 University Avenue,
East Palo Alto, CA 94303-1212
Tel: (650) 849-4914
Contact: Stephen D. Hibbard / Mary T. Huser

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center, San
Francisco, CA 94111 Tel: (415)
393-2626 Contact: David H.
Balabanian / Stephen D.
Hibbard

BINGHAM MCCUTCHEN LLP
355 South Grand Avenue, Suite 4400,
Los Angeles, CA 90071-1560
Tel: (213) 680-6416
Contact: John C. Morrissey

BINGHAM MCCUTCHEN LLP
3 Embarcadero Center,
San Francisco, CA 94111
Tel: (415) 393-2170
Contact: David M. Balabanian

CLIFFORD CHANCE US  LLP
One Market Steuart Tower, Suite 400,
San Francisco, CA 94105
Tel: (415) 778-4700
Contact: Tower C. Snow / Michael D. Torpey

CLIFFORD CHANCE US  LLP
601 South Figueroa Street,
Los Angeles, CA 90017
Tel: (213) 312-9400
Contact: Daniel J. Tyukody

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2073
Contact: Paul A. Renne

COOLEY GODWARD, LLP
One Maritime Plaza, 20th Floor,
San Francisco, CA 94111
Tel: (415) 693-2092
Contact: Benjamin K. Riley

COOLEY GODWARD, LLP
4401 Eastgate Mall,
San Diego, CA 92121-1909
Tel: (858) 550-6050
Contact: William E. Grauer

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5182
Contact: Stephen C. Neal

COOLEY GODWARD, LLP
Five Palo Alto Square,
3000 El Camino Real,
Palo Alto, CA 94306
Tel: (650) 843-5037
Contact: William S. Freeman

DAVIS WRIGHT TREMAINE
One Embarcadero Center, Suite 600,
San Francisco, CA 94111-3834
Tel: (415) 276-6500
Contact: Martin Fineman

GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue,
Los Angeles, CA 90071-3197
Tel: (213) 229-7543
Contact: Phillip L. Bosl

GIBSON, DUNN & CRUTCHER LLP
1530 Page Mill Road,
Palo Alto, CA 94304
Tel: (650) 849-5300
Contact: John C. Dickey

GIBSON, DUNN & CRUTCHER LLP
Jamboree Center, 4 Park Plaza,
Irvine, CA 92614-8557
Tel: (949) 451-3800
Contact: Wayne W. Smith / Meryl L. Young

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

GRAY CARY
4365 Executive Drive,
San Diego, CA 92121-2133
Tel: (858) 677-1400
Contact: Shirli Fabbri Weiss /
Robert W. Brownlie

GRAY CARY
2000 University Avenue
East Palo Alto, CA 94303
Tel: (650) 833-2000
Contact: Shirli Fabbri Weiss /
David Priebe

IRELL & MANELLA LLP
1800 Ave. of the Stars, Suite 900,
Los Angeles, CA. 90067
Tel: (310) 277-1010
Contact: David Schwarz / David Gindler /
David Siegel / Jim Adler / Richard H. Borow

MORGAN, LEWIS & BOCKIUS LLP
One Market Spear Street Tower
San Francisco, CA 94105
Tel: (415) 442-1000
Contact: Alfred J. Lechner Jr.

300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071-3132
Tel: (213) 612-2500
Contact: Alfred J. Lechner Jr.

MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, CA 94105
Tel: (415) 268-7000
Contact: Melvin R. Goldman / Paul T. Friedman

MORRISON & FOERSTER LLP
555 West 5th Street, Suite 3500,
Los Angeles, CA 90013
Tel: (213) 892-5200
Contact: B. Scott Silverman / Robert S. Stern

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9264
Contact: Dennis L. Kinnaird

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9152
Contact: John W. Spiegel

MUNGER, TOLLES & OLSON
355 South Grand Avenue, 35th Floor,
Los Angeles, CA 90071-1560
Tel: (213) 683-9153
Contact: George M. Garvey

O'MELVENY & MYERS LLP
400 South Hope St., 15th Floor,
Los Angeles, CA 90071
Tel: (213) 430-6000
Contact: Robert Vanderet / Seth Aronson

O'MELVENY & MYERS LLP
610 Newport Center, 17th Floor,
Newport Beach, CA 92660
Tel: (949) 760-9600
Contact: Michael G. Yoder / Phillip Kaplan

O'MELVENY & MYERS LLP
275 Battery Street,
San Francisco, CA 94111
Tel: (415) 984-8700
Contact: Daniel Bookin / Michael F. Tubach

ORRICK HERRINGTON & SUTCLIFFE LLP
Old Federal Reserve Bank Building,
400 Sansome Street,
San Francisco, CA 94111
Tel: (415) 392-1122
Contact: William F. Alderman

ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road,
Menlo Park, CA 94025
Tel: (650) 614-7400
Contact: W. Reece Bader

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 S. Flower Street, Twenty-Third Floor,
Los Angeles, CA 90071-2371
Tel: (213) 683-6000
Contact: William F. Sullivan

PILLSBURY WINTHROP LLP
Pacific Bell Building, 101 W. Broadway,
Suite 1800,
San Diego, CA 92101-8219
Tel: (619) 234-5000
Contact: Richard M. Segal

PILLSBURY WINTHROP LLP
2550 Hanover Street,
Palo Alto, CA 94304-1115
Tel: (650) 233-4500
Contact: Walter J. Robinson

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

PILLSBURY WINTHROP LLP
725 South Figueroa Street, Suite 2800,
Los Angeles, CA 90017-5443
Tel: (213) 488-7100
Contact: Robert L. Wallan

PILLSBURY WINTHROP LLP
50 Fremont Street,
San Francisco, CA 94105-2228
Tel: (415) 983-1000
Contact: Bruce A. Ericson

SIMPSON THACHER & BARTLETT
3373 Hillview Avenue,
Palo Alto, CA 94304
Tel: (650) 251-5000
Contact: George M. Newcombe /
James G. Kreissman

SIMPSON THACHER & BARTLETT
10 Universal City Plaza, Suite 1850,
Los Angeles, CA 91608
Tel: (818) 755-7000
Contact: Chet Kronenberg /
Seth A. Ribner

SULLIVAN & CROMWELL
1888 Century Park East,
Los Angeles, CA 90067-1725
Tel: (310) 712-6600
Contact: Robert A. Sacks

WILSON, SONSINI, GOODRICH & ROSATI
650 Page Mill Road,
Palo Alto, CA 94304-1050
Tel: (650) 493-9300
Contact: Bruce G. Vanyo / Boris Feldman /
Steven M. Schatz

**COLORADO**

COOLEY GODWARD, LLP
380 Interlocken Crescent, Suite 900,
Broomfield, CO 80021-8023
Tel: (720) 566-4000
Contact: James E. Nesland

GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Suite 4100,
Denver, CO 80202
Tel: (303) 298-5700
Contact: George Curtis

**DISTRICT OF COLUMBIA**

ARNOLD & PORTER
555 Twelfth Street, NW,
Washington, DC 20004-1202
Tel: (202) 942-5672
Contact: Scott B. Schreiber

CAHILL GORDON & REINDEL
1990 K Street, N.W., Suite 950,
Washington, DC 20006
Tel: (202) 862-8900
Contact: Donald J. Mulvihill

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.,
Washington, DC 20036-5306
Tel: (202) 955-8500
Contact: F. Joseph Warin / John C. Millian

GREENBERG TRAURIG
800 Connecticut Avenue, N.W., Suite 500,
Washington, DC 20036
Tel: (202) 331-3100
Contact: Joe R. Reeder

PATTON BOGGS LLP
2550 M Street, N.W.,
Washington, DC 20037
Tel: (202) 457-6000
Contact: Eric A. Kuwana /
Ronald S. Liebman

PIPER RUDNICK LLP
1200 Nineteenth Street, NW,
Washington, DC 20036
Tel: (202) 861-3900
Contact: David Clarke, Jr. / Robert J. Mathias /
James D. Mathias

SULLIVAN & CROMWELL
1701 Pennsylvania Avenue, N.W.,
Washington, DC 20006-5805
Tel: (202) 956-7500
Contact: Daryl A. Libow / Margaret K. Pfeiffer

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW,
Washington, DC 20005
Tel: (202) 434-5000
Contact: John K. Villa

WILLKIE FARR & GALLAGHER
1875 K Street, N.W.,
Washington, DC 20006-1238
Tel: (202) 303-1105
Contact: Kevin B. Clark

Revised (12/03) *COPY*                    3 of 10

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

WILMER, CUTLER & PICKERING
2445 M Street, N.W.,
Washington, DC 20037
Tel: (202) 663-6000
Contact: Charles A. Davidow / David P. Donovan

**DELAWARE**

BLANK ROME LLP
1201 Market Street, 21st Floor,
Wilmington, DE 19801
Tel: (302) 425-6400
Contact: Thomas P. Preston /
Neal C. Belgam

WOLF, BLOCK, SCHORR AND SOLISCOHEN LLP
Wilmington Trust Center,
1100 N. Market Street, Suite 1001,
Wilmington, DE 19801
Tel: (302) 777-5860
Contact: Barry Klayman

**FLORIDA**

AKERMAN SENTERFITT & EIDSON, P.A.
Citrus Center, 17th Floor,
255 South Orange Avenue,
Orlando, FL 32801
Tel: (407) 843-7860
Contact: J. Thomas Cardwell

AKERMAN SENTERFITT & EIDSON, P.A.
SunTrust International Center, 28th Floor,
Miami, FL 33131
Tel: (305) 374-5600
Contact: Stanley H. Wakshlag

CARLTON FIELDS
4000 International Place,
100 S.E. Second Street,
Miami, FL 33131-9101
Tel: (303) 530-0050
Contact: Steven J. Brodie

CARLTON FIELDS
One Harbour Place,
Tampa, FL 33602-5790
Tel: (813) 223-7000
Contact: Gary L. Sasso

GREENBERG TRAURIG
1221 Brickell Avenue,
Miami, FL 33131
Tel: (305) 579-0500
Contact: Hilarie Bass

GREENBERG TRAURIG
777 South Flagler Drive,
West Palm Beach, FL 33401
Tel: (561) 650-7900
Contact: Bradford D. Kaufman

HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600,
P.O. Drawer 810 (Zip 32302),
Tallahassee, FL 32301
Tel: (850) 224-7000
Contact: Robert R. Feagin / Elizabeth
Bevington

HOLLAND & KNIGHT LLP
625 North Flagler Drive, Suite 700,
West Palm Beach, FL 33401
Tel: (561) 833-2000
Contact: Tracy A. Nichols /
Scott Newman

HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600,
P.O. Box 1525 (Zip 32802),
Orlando, FL 32801
Tel: (407) 244-1115
Contact: William Wilson

HOLLAND & KNIGHT LLP
701 Brickell Avenue - Suite 3000,
P.O. Box 015441 (Zip 33101),
Miami, FL 33131
Tel: (305) 374-8500
Contact: Gregory A. Baldwin / Tracy A. Nichols /
Mitchell Eliot Herr / Louisa Brais

HOLLAND & KNIGHT LLP
400 North Ashley Drive, Suite 2300,
Tampa, FL 33602
Tel: (813) 227-8500
Contact: Tracy A. Nichols / Michael L.
Chapman

HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900,
P.O. Box 52687 (Zip 32201),
Jacksonville, FL 32202
Tel: (904) 353-2000
Contact: Tracy A. Nichols / George E. Schulz Jr

MCGUIREWOODS LLP
Bank of America Tower,
50 North Laura Street,
Jacksonville, FL 32202
Tel: (904) 798-3200
Contact: David M. Wells

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

STEEL HECTOR & DAVIS LLP
200 South Biscayne Boulevard,
Miami, FL 33131-2398
Tel: (305) 577-2957
Contact: Lewis F. Murphy, P.A. / Wendy Leavitt

STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard,
Miami, FL 33131-2385
Tel: (305) 358-9900
Contact: Richard B. Simring

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131-2352
Tel: (305) 371-2700
Contact: Charles C. Kline

## GEORGIA

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree Street,
Atlanta, GA 30309-3424
Tel: (404) 881-7167
Contact: Peter Q. Bassett

ALSTON & BIRD
One Atlantic Center,
1201 W. Peachtree St.,
Atlanta, GA 30309
Tel: (404) 881-7000
Contact: John Goselin / Mary Gill / Todd R.
David

KING & SPALDING
191 Peachtree Street,
Atlanta, GA 30303-1763
Tel: (404) 572-4600
Contact: M. Robert Thornton / Michael R. Smith

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, NE, Suite 5300,
Atlanta, GA 30308
Tel: (404) 527-4000
Contact: J. David Dantzler, Jr. / David L. Balser

PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, N.W., Suite 2400,
Atlanta, GA 30308-2222
Tel: (404) 815-2500
Contact: J. Allen Maines

SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II,
1230 Peachtree Rd., N.E.,
Atlanta, GA 30309-3592
Tel: (404) 815-3730
Contact: John G. Despriet

## ILLINOIS

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5452
Contact: David H. Kistenbroker

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street, Suite 1600,
Chicago, IL 60661-3693
Tel: (312) 902-5200
Contact: Pamela G. Smith / Leah J.
Domitrovic / Steven L. Bashwiner / Mary
Ellen Hennessy / Bonita L. Stone

KIRKLAND & ELLIS
200 East Randolph Drive,
Chicago, IL 60601
Tel: (312) 861-2000
Contact: Robert J. Kopecky

PIPER RUDNICK, LLP
203 North LaSalle Street, Suite 1800,
Chicago, IL 60601-1293
Tel: (312) 368-4000
Contact: Samuel B. Isaacson / Michael S.
Poulos

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7850
Contact: Hillie R. Sheppard

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Desrborn Street,
Chicago, IL 60603
Tel: (312) 853-7279
Contact: Eugene A. Schoon

SIDLEY AUSTIN BROWN & WOOD LLP
Bank One Plaza,
10 South Dearborn Street,
Chicago, IL 60603
Tel: (312) 853-7734
Contact: Walter C. Carlson

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-8224
Contact: Christopher Q. King

SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower,
Chicago, IL 60606
Tel: (312) 876-7483
Contact: David L. Schiavone

**LOUISIANA**

LOCKE LIDDELL & SAPP LLP
601 Poydras Street, Suite 2400,
New Orleans, LA 70130-6036
Tel: (504) 558-5100
Contact: Brad Foster / John McElhaney /
W.C. (Peter) Flynn

**MASSACHUSETTS**

EDWARDS & ANGELL LLP
101 Federal Street,
Boston, MA 02110-1800
Tel: (617) 951-3373
Contact: John D. Hughes

HALE & DORR LLP
60 State Street,
Boston, MA 02109
Tel: (617) 526-6000
Contact: Jeffrey B. Rudman / William H. Paine /
Andrea J. Robinson

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
One Financial Center,
Boston, MA 02111
Tel: (617) 542-6000
Contact: Patrick J. Sharkey / Peter M. Saparoff

ROPES & GRAY
One International Place,
Boston, MA 02110-2624
Tel: (617) 951-7566
Contact: John D. Donovan

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7363
Contact: Jordan D. Hershman

TESTA, HURWITZ & THIBEAULT, LLP
125 High Street,
Boston, MA 02110
Tel: (617) 248-7253
Contact: Brian E. Pastuszenski

**MINNESOTA**

DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500,
Minneapolis, MN 55402
Tel: (612) 340-2600
Contact: Brian E. Palmer / Edward J.
Pluimer / J. Jackson / Peter W. Carter /
Roger J. Magnuson

FAEGRE & BENSON LLP
90 South Seventh Street,
Minneapolis, MN 55402-3901
Tel: (612) 336-3000
Contact: Robert L. Schnell / Thomas L. Kimer

WINTHROP & WEINSTINE, PA
3000 Dain Rauscher Plaza,
60 South Sixth Street,
Minneapolis, MN 55402
Tel: (612) 347-0700
Contact: David P. Pearson / Thomas H. Boyd

**NEW YORK**

ARNOLD & PORTER
399 Park Avenue,
New York, NY 10022-4690
Tel: (212) 715-1000
Contact: Kent A. Yalowitz / Scott B. Schreiber

BLANK ROME LLP
The Chrysler Building,
405 Lexington Avenue,
New York, NY 10174
Tel: (212) 885-5000
Contact: Robert J. Mittman

CADWALADER, WICKERSHAM & TAFT
100 Maiden Lane,
New York, NY 10038
Tel: (212) 504-6000
Contact: Dennis J. Block / Gregory A. Markel /
Howard R. Hawkins / Jonathan M. Hoff

CAHILL GORDON & REINDEL
Eighty Pine Street,
New York, NY 10005
Tel: (212) 701-3000
Contact: Charles A. Gilman / Immanuel Kohn /
Thomas J. Kavaler

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

CLIFFORD CHANCE US  LLP
200 Park Avenue,
New York, NY 10166
Tel: (212) 878-8000
Contact: James B. Weidner / James N.
Benedict / John K. Carroll / Mark Holland

CRAVATH, SWAINE & MOORE
Worldwide Plaza,
825 Eighth Avenue,
New York, NY 10019-7475
Tel: (212) 474-1000
Contact: Evan R. Chesler / Francis P.
Barron / Julie A. North / Keith R. Hummel /
Paul C. Saunders / Peter T. Barbur /
Richard W. Clary / Robert H. Baron /
Ronald S. Rolfe / Rory O. Millson /
Thomas G. Rafferty

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON
One New York Plaza,
New York, NY 10004
Tel: (212) 859-8000
Contact: William G. McGuinness / Alexander R.
Sussman / Debra M. Torres / Douglas H. Flaum /
Barry G. Sher / John A. Borek

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue,
New York, NY 10166-0193
Tel: (212) 351-4000
Contact: Wesley G. Howell / Robert F. Serio /
Peter Beshar

GREENBERG TRAURIG
885 Third Avenue, 21st Floor,
New York, NY 10022
Tel: (212) 801-3134
Contact: Robert A. Horowitz

KATTEN MUCHIN ZAVIS ROSENMAN
575 Madison Avenue,
New York, NY 10022
Tel: (212) 940-8800
Contact: David Kistenbroker, Robert W. Gottlieb
and Joel W. Sternman.

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER
425 Park Avenue,
New York, NY 10022
Tel: (212) 836-8663
Contact: Fredric W. Yerman

KIRKLAND & ELLIS
Citicorp Center, 153 East 53rd Street,
New York, NY 10022-4675
Tel: (212) 446-4800
Contact:  Yosef J. Riemer

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue,
New York, NY 10022
Tel: (212) 715-9100
Contact: Gary P. Naftalis / Alan Friedman

MAYER, BROWN ROWE & MAW
1675 Broadway,
New York, NY 10019
Tel: (212) 506-2500
Contact: Dennis P. Orr / Richard A. Spehr /
Steven Wolowitz

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5832
Contact: Michael L. Hirschfeld

MILBANK, TWEED, HADLEY & MCCLOY
1 Chase Manhattan Plaza,
New York, NY 10005
Tel: (212) 530-5149
Contact: Scott A. Edelman / Michael L.
Hirschfeld

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Contact: Alfred J. Lechner, Jr.

MORRISON & FOERSTER LLP
1290 Avenue of the Americas,
New York, NY 10104
Tel: (212) 468-8000
Contact: Anthony M. Radice / Jack C. Auspitz

PAUL, HASTINGS, JANOFSKY & WALKER LLP
399 Park Avenue, Thirty-First Floor,
New York, NY 10022-4697
Tel: (212) 318-6000
Contact: J. Allen Maines

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
1285 Avenue of the Americas,
New York, NY 10019-6064
Tel: (212) 373-3000 Contact: Daniel J. Beller /
Martin Flumenbaum / Claudia Hammerman /
Brad S. Karp / Mark F. Pomerantz / Daniel J.
Kramer / Richard A. Rosen

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**PIPER RUDNICK LLP**
1251 Avenue of the Americas,
New York, NY 10020
Tel: (212) 835-6000
Contact: Joseph G. Finnerty III / Keara M.
Gordon / David E. Nachman / John J. Clarke

**SCHULTE ROTH & ZABEL LLP**
900 Third Avenue,
New York, NY 10022
Tel: (212) 756-2000
Contact: Betty Santangelo / Howard O.
Godnick / Irwin J. Sugarman / Michael S.
Feldberg / Robert M. Abrahams

**SIMPSON THACHER & BARTLETT**
425 Lexington Avenue,
New York, NY 10017
Tel: (212) 455-2000
Contact: Bruce D. Angiolillo / Michael J.
Chepiga / Paul C. Curnin / Roy L. Reardon

**STROOCK & STROOCK & LAVAN LLP**
180 Maiden Lane,
New York, NY 10038
Tel: (212) 806-5400
Contact: Laurence Greenwald / Melvin A.
Brosterman / Robert Lewin

**SULLIVAN & CROMWELL**
125 Broad Street,
New York, NY 10004-2498
Tel: (212) 558-4000
Contact: D. Stuart Meiklejohn / Gandolfo V.
DiBlasi / John L. Hardiman / John L. Warden /
Philip L. Graham, Jr. / Richard H. Klapper

**WACHTELL, LIPTON, ROSEN & KATZ**
51 W. 52nd Street, 29th Floor,
New York, NY 10019
Tel: (212) 403-1208
Contact:  Paul Vizcarrondo / Ted Mirvis

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue,
New York, NY 10153
Tel: (212) 310-8000
Contact: Greg A. Danilow / Irwin H. Warren /
Joseph Allerhand

**WILLKIE FARR & GALLAGHER**
787 Seventh Avenue,
New York, NY 10019-6099
Tel: (212) 728-8000
Contact: Michael R. Young / Richard L. Posen

**WILMER, CUTLER & PICKERING**
520 Madison Ave.,
New York, NY 10022
Tel: (212) 230-8800
Contact: Peter Vigeland / Robert B. McCaw

## OHIO

**JONES, DAY, REAVIS & POGUE**
North Point, 901 Lakeside Avenue,
Cleveland, OH 44114
Tel: (216) 586-3939
Contact: John M. Newman / John W. Edwards

## OREGON

**DAVIS WRIGHT TREMAINE**
2300 First Interstate Tower,
1300 S.W. Fifth Avenue,
Portland, OR 97201
Tel: (503) 241-2300
Contact: John F. McGrory

**FOSTER PEPPER & SHEFELMAN**
101 S.W. Main Street, 15th Floor,
Portland, OR 97204-3223
Tel: (503) 221-0607
Contact: Tim J. Filer / Roger D. Mellem

**LANE POWELL SPEARS LUBERSKY LLP**
601 S.W. Second Avenue, Suite 2100,
Portland, OR 97204
Tel: (503) 778-2100
Contact: D. Meredith Wilson / Milo
Petranovich / Robert E. Maloney

## PENNSYLVANIA

**BLANK ROME LLP**
One Logan Square,
Philadelphia, PA 19103-6998
Tel: (215) 569-5500
Contact: Alan J. Hoffman / Ian Comisky

**BUCHANAN INGERSOLL, PC**
One Oxford Centre, 20th Floor,
301 Grant Street,
Pittsburgh, PA 15219-8800
Tel: (412) 562-1880
Contact: John R. Leathers

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

MORGAN, LEWIS & BOCKIUS
1701 Market Street,
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Contact: Francis S. Chlapowski / Marc J.
Sonnenfeld / Elizabeth Hoop Fay /
Christopher (Kip) P. Hall / Alfred J.
Lechner / Karen Pieslak Pohlmann /
Kevin T. Rover / Stuart Sarnoff / Keith Olin

PEPPER HAMILTON LLP
3000 Two Logan Square, Eighteenth
and Arch Streets,
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Contact: Barbara W. Mather / Jon A.
Baughman / Laurence Z. Shiekman / M.
Duncan Grant / Robert L. Hickok / Thomas E.
Zemaitis

WOLF, BLOCK, SCHORR and SOLIS-
COHEN LLP
1650 Arch Street, 22nd Floor,
Philadelphia, PA 19103-2097
Tel: (215) 977-2058
Contact: Ian A.L. Strogatz / Jay A. Dubow /
Jerome J. Shestack / M. Norman Goldberger /
Mark L. Alderman

**TEXAS**

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
Pennzoll Place – South Tower,
711 Louisiana Street, Suite 1900,
Houston, TX 77002
Tel: (512) 499-6250
Contact: Paul R. Bessette / Gregg C. Laswell

AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P.
1700 Pacific Avenue, Suite 4100,
Dallas, TX 75201-4675
Tel: (512) 499-6250
Contact: Paul R. Bessette / Edward S.
Koppman / Orrin L. Harrison III

FULBRIGHT & JAWORSKI L.L.P
1301 McKinney, Suite 5100,
Houston, TX 77010-3095
Tel: (713) 651-5151
Contact: Frank G. Jones / Robert S. Harrell /
Gerard G. Pecht

FULBRIGHT & JAWORSKI L.L.P
2200 Ross Avenue, Suite 2800,
Dallas, TX 75201
Tel: (214) 855-8000
Contact: Karl G. Dial

JENKENS & GILCHRIST, P.C.
1100 Louisiana, Suite 1800,
Houston, TX 77002
Tel: (713) 951-3300
Contact: John Gilliam

JENKENS & GILCHRIST, P.C.
1445 Ross Avenue Suite 3200,
Dallas, TX 75202
Tel: (214) 855-4306
Contact: John Gilliam

LOCKE LIDDELL & SAPP LLP
100 Congress Avenue, Suite 300,
Austin, TX 78701-4042
Tel: (512) 305-4700
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue, Suite 2200,
Dallas, TX 75201-6776
Tel: (214) 740-8000
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

LOCKE LIDDELL & SAPP LLP
600 Travis, 3400 Chase Tower,
Houston, TX 77002
Tel: (713) 226-1200
Contact: Brad Foster / John McElhaney /
C.W. (Peter) Flynn

THOMPSON & KNIGHT, PC
Burnett Plaza, Suite 1600,
801 Cherry Street, Unit #1,
Fort Worth, TX 76102-6881
Tel: (817) 347-1700
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
1200 Smith Street, Suite 3600,
Houston, TX 77002
Tel: (713) 654-8111
Contact: Timothy R. McCormick

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LiST

THOMPSON & KNIGHT, PC
1700 Pacific Avenue, Suite 3300,
Dallas, TX 75201
Tel: (214) 969-1103
Contact: Timothy R. McCormick

THOMPSON & KNIGHT, PC
98 San Jacinto Boulevard, Suite 1200,
Austin, TX 78701
Tel: (512) 469-6100
Contact: Timothy R. McCormick

WEIL, GOTSHAL & MANGES LLP
100 Crescent Court,
Dallas, TX 75201
Tel: (214) 746-7700
Contact: Ralph I. Miller

WEIL, GOTSHAL & MANGES LLP
700 Louisiana - Suite 1600,
Houston, TX 77002
Tel: (713) 546-5000
Contact: Ralph I. Miller

**VIRGINIA**

COOLEY GODWARD, LLP
One Freedom Square, Reston Town Center,
11951 Freedom Drive,
Reston, VA 20190-5601
Tel: (703) 456-8082
Contact: Robert R. Vieth

GREENBERG TRAURIG
1750 Tysons Boulevard 12th Fl.,
McLean, VA 22102
Tel: (703) 749-1300
Contact: Joe R. Reeder / John Scalia

MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800,
McLean, VA 22102
Tel: (703) 712-5000
Contact: Charles McIntyre

MCGUIREWOODS LLP
One James Center, 901 East Cary Street,
Richmond, VA 23219
Tel: (804) 775-1000
Contact: Anne Marie Whittemore

WILMER, CUTLER & PICKERING
1600 Tysons Boulevard, 10th Floor,
Tysons Corner, VA 22102
Tel: (703) 251-9700
Contact: David P. Donovan

WILSON, SONSINI, GOODRICH & ROSATI
7927 Jones Branch Drive, Suite 400,
McLean, VA 22102
Tel: (650) 320-4904
Contact: Bruce Vanyo

**WASHINGTON**

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101-1688
Tel: (206) 622-3150
Contact: Stephen M. Rummage

DAVIS WRIGHT TREMAINE
2600 Century Square, 1501 Fourth Avenue,
Seattle, WA 98101-1688
Tel: (206) 622-3150
Contact: Ladd B. Leavens

FOSTER PEPPER & SHEFELMAN
1111 Third Avenue, Suite 3400,
Seattle, WA 98101-3299
Tel: (206) 447-8998
Contact: Tim J. Filer / Roger D. Mellem

GRAY CARY
701 Fifth Avenue, Suite 7000,
Seattle, WA 98104-7044
Tel: (206) 839-4800
Contact: Stellman Keehnel

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue, Suite 4100,
Seattle, WA 98101-2338
Tel: (206) 223-7000
Contact: Christopher B. Wells / James B.
Stoetzer / James L. Robart / Larry S. Gangnes /
Rudy A. Englund

PERKINS COIE LLP
1201 Third Avenue, Ste. 4800,
Seattle, WA 98101-3099
Tel: (206) 583-8888
Contact: Barry M. Kaplan / Harry H. Schneider /
Ronald L. Berenstain

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

## ALABAMA

BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ PC
1600 SouthTrust Tower
Birmingham, AL 35203
Tel: (205) 328-0480
Contacts: Steven H. Trent, Esq. / Fern H.
Singer, Esq.
*Class Action Approved

LLOYD GRAY & WHITEHEAD, P.C.
2501 20th Place South
Suite 300
Birmingham, AL 35223
Tel: (205) 967-8822
Contact: Steven E. Whitehead, Esq.
*Class Action Approved

LUTHER, OLDENBURG & RAINEY, P.C.
Riverview Plaza
63 S. Royal Street, Suite 1000
P.O. Box 1003
Mobile, AL 36633
Tel: (251) 433-8088
Contact: Rudene C. Oldenburg, Esq.
*Class Action Approved

MAYNARD, COOPER & GALE, PC
1901 Sixth Avenue North
Suite 2400
Birmingham, AL 35203
Tel: (205) 254-1000
Contact: Warren B. Lightfoot, Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203
Tel: (205) 328-1900
Contact: Peyton Lacy, Jr., Esq.
*Class Action Approved

## ALASKA

LANE POWELL SPEARS LUBERSKY LLP
420 L. Street
Suite 300
Anchorage, AK 99501-1937
Tel: (907) 277-9511
Contact: James B. Stoetzer, Esq.
*Class Action Approved

## ARIZONA

BESS KUNZ
3838 N. Central Avenue
Suite 1500
Phoenix, AZ 85012-1902
Tel: (602) 331-4600
Contact: Steven Plitt, Esq.

KUTAK ROCK
Suite 300
8601 North Scottsdale Road
Scottsdale, AZ 85253-2742
Tel: (480) 429-5000
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

## ARKANSAS

HUCKABAY, MUNSON, ROWLETT & TILLEY
400 West Capital Avenue
Suite 1900
Little Rock, AR 72201
Tel: (501) 374-6535
Contact: Bruce Munson, Esq.
*Class Action Approved

KUTAK ROCK
425 West Capitol Avenue
Suite 1100
Little Rock, AR 72201-3409
Tel: (501) 975-3000
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

The Three Sisters Building
214 West Dickson Street
Fayetteville, AR 72701-5221
Tel: (479) 973-4200
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

## CALIFORNIA

EPSTEIN BECKER & GREEN PC
One California Street
26th Floor
San Francisco, CA 94111-5427
Tel: (415) 398-3500
Contact: Howard Pianko, Esq.
*Class Action Approved

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

1875 Century Park East
Suite 500
Los Angeles, CA  90067
Tel: (310) 556-8861
Contact: Howard Pianko, Esq.
*Class Action Approved

GORDON & REES
101 West Broadway
Suite 1600
San Diego, CA  92101
Tel: (619) 696-6700
Contact: Roger M. Mansukhani, Esq.
*Class Action Approved

Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA  94111
Tel: (415) 986-5900
Contact: Roger M. Mansukhani, Esq.
*Class Action Approved

300 So. Grand Avenue
20th Floor
Los Angeles, CA  90071
Tel: (213) 576-5000
Contact: Roger M. Mansukhani, Esq.
*Class Action Approved

GROTTA, GLASSMAN & HOFFMAN, P.A.
1801 Century Park East, Suite 2400
Los Angeles, CA  90067
Tel: (310) 556-8786
Contact: Leslie A. Lajewski, Esq.

GROTTA, GLASSMAN & HOFFMAN, P.A.
388 Market Street, Suite 500
San Francisco, CA  94111
Tel: (415) 296-3885
Contact: Leslie A. Lajewski, Esq.

JACKSON LEWIS LLP
725 South Figueroa St. Suite 2500
Los Angeles, CA  90017
Tel: (310) 203-0200
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved – All Locations

1215 K Street, Suite 1800
Sacramento, CA 95814
Tel: (916) 341-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.

KUTAK ROCK
Suite 1100
18201 Von Karmen Avenue
Irvine, CA  92612-1077
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA  90012
Tel: (213) 250-1800
Contacts: Robert F. Lewis, Esq. /
Gary S. Rattet, Esq.

One Sansome Street, Suite 1400
San Francisco, CA  94104-4448
Tel: (415) 362-2580
Contact: Duane C. Musfelt, Esq.

550 West C Street, Suite 800
San Diego, CA  92101-3540
Tel: (619) 233-1006
Contact: R. Gaylord Smith, Esq.

650 Town Center Drive, Suite 1400
Costa Mesa, CA  92626
Tel: (714) 545-9200
Contact: Mercedes Cruz, Esq.

650 East Hospitality Lane
Suite 600
San Bernadino, CA  92408-3508
Tel: (909) 387-1130
Contact: Joseph Arias, Esq.

2500 Venture Oaks Way, Suite 200
Sacramento, CA  95833-3500
Tel: (916) 564-5400
Contact: David L. Cohn, Esq.

MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA  90071
Tel: (213) 612-2500
Tel: (213) 612-2555
Contact: Susan G. Fillichio, Esq.
*Class Action Approved

One Market Spear Street Tower
San Francisco, CA  94105
Tel: (415) 442-0900
Tel: (650) 843-7530
Contact: Melinda S. Riechert, Esq.
*Class Action Approved

## APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

2 Palo Alto Square
3000 El Camino Real, Suite 900
Palo Alto, CA 94306
Tel: (650) 331-8000
Tel: (650) 843-7530
Contact: Melinda S. Riechert, Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
888 West Sixth Street
Suite 1200
Los Angeles, CA 90017-2738
Tel: (213) 239-9800
Contact: Paul M. Gleason, Esq.
*Class Action Approved

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
1055 West Seventh Street
Los Angeles, CA 90017
Tel: (213) 624-3044
Contact: James A. Stankowski, Esq.
*Class Action Approved

650 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 433-0990
Contact: Louis H. Castoria, Esq.
*Class Action Approved

### COLORADO

HALL & EVANS, L.L.C.
1200 17th Street
Suite 1700
Denver, CO 80202
Tel: (303) 628-3300
Contact: Daniel Satriana, Esq.

KUTAK ROCK
1801 California Street
Suite 3100
Denver, CO 80202-2626
Tel: (303) 297-2400
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

SHERMAN & HOWARD
633 Seventeenth Street
Suite 3000
Denver, CO 80202
Tel: (303) 297-2900
Contact: Andrew Volin, Esq.

### CONNECTICUT

EDWARDS & ANGELL LLP
90 State House Square
Hartford, CT 06103
Tel: (860) 525-5065
Contact: John D. Hughes, Esq.
*Class Action Approved

EPSTEIN BECKER & GREEN PC
One Landmark Square
Suite 1800
Stamford, CT 06901-2601
Tel: (203) 348-3737
Tel: (212) 351-4500
Contact: Howard Pianko, Esq.
*Class Action Approved

JACKSON LEWIS LLP
55 Farmington Avenue
Suite 1200
Hartford, CT 06105
Tel: (860) 522-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved – All Locations

JACKSON LEWIS LLP
177 Broad Street
Post Office Box 251
Stamford, CT 06901-2601
Tel: (203) 961-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

SIEGAL, O' CONNOR, ZANGARI, O' DONNELL &
BECK, P.C.
150 Trumbull Street
Hartford, CT 06103
Tel: (860) 727-8900
Contact: Richard D. O' Connor, Esq.
*Class Action Approved

### DELAWARE

BLANK ROME LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6400
Tel: (215) 569-5646
Contact: Ian M. Comisky, Esq.
*Class Action Approved

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

**GREENBERG TRAURIG LLP**
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE  19801
Tel: (302) 661-7000
Contact: Scott D. Cousins, Esq.
*Class Action Approved

**REED SMITH**
1201 Market Street
Suite 1500
Wilmington, DE  19801
Tel: (302) 778-7500
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

**WOLF BLOCK SCHORR & SOLIS-COHEN**
One Rodney Square
10th & King Street
Wilmington, DE  19801
Tel: (302) 777-0313
Contact: Barry M. Klayman, Esq.
*Class Action Approved

**YOUNG, CONAWAY, STARGATT, TAYLOR, LLP**
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
Tel: (302) 571-6600
Contact: Barry M. Willoughby, Esq.
*Class Action Approved

### DISTRICT OF COLUMBIA

**EPSTEIN BECKER & GREEN, P.C.**
1227 25th Street
Suite 700
Washington, DC  20037
Tel: (202) 861-0900
Contact: Howard Pianko, Esq.
*Class Action Approved

**FORD & HARRISON**
1300 19th Street NW
Suite 700
Washington, DC  20036
Tel: (202) 719-2000
Contact: David A. Rosenberg, Esq.

**GREENBERG TRAURIG LLP**
800 Connecticut Avenue, NW
Suite 500
Washington, DC  20036
Tel: (202) 331-3100
Contacts: C. Allen Foster, Esq. / Eric C. Rowe, Esq.
*Class Action Approved

**JORDON COYNE & SAVITS, LLP**
1100 Connecticut Avenue, NW
Suite 600
Washington, DC  20036
Tel: (202) 496-2810
Contact: Deborah Murrell Whelihan, Esq.
*Class Action Approved

**KUTAK ROCK**
1101 Connecticut Avenue
Suite 1000
Washington, DC  20036-4374
Tel: (202) 828-2400
Contact: Gregory F. Hurley, Esq.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Fifth Floor
2400 N. Street, N.W.
Washington, DC  20037
Tel: (202) 887-0855
Contact: Bernard Jewler, Esq.
*Class Action Approved

**PATTON BOGGS LLP**
2550 M. Street, N.W.
Washington, DC  20037
Tel: (202) 457-6000
Contact: Douglas B. Mishkin, Esq.
*Class Action Approved

**SEYFARTH SHAW**
815 Connecticut Avenue, NW
Suite 500
Washington, DC  20006-4004
Tel: (202) 463-2400
Tel: (312) 269-8965
Contact: Gerald L. Maatman, Jr., Esq.
*Class Action Approved

**WILLIAMS MULLEN**
1666 K Street N.W., Suite 1200
Washington, D.C.  20006
Tel: (202) 833-9200
Tel: (804) 783-6427
Contact: Lynn F. Jacob, Esq.

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
1341 G Street NW
Washington, DC  20005
Tel: (202) 626-7660
Contact: Paul D. Krause, Esq.
*Class Action Approved

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

## FLORIDA

AKERMAN SENTERFITT & EIDSON, P.A.
Suntrust International Center
One Southeast 3rd Ave., 28th Fl.
Miami, FL  33131-1714
Tel: (305) 374-5600
Contact: Susan Eisenberg, Esq.
*Class Action Approved

Las Olas Centre II
350 East Las Olas Blvd., Ste. 1600
Ft. Lauderdale, FL  33301-2229
Tel: (954) 463-2700
Contact: Jon K. Stage, Esq.
*Class Action Approved

Esperante Building
222 Lakeview Ave., Ste. 400
West Palm Beach, FL  33401-6183
Tel: (561) 653-5000
Contact: Jon K. Stage, Esq.
*Class Action Approved

Citrus Center, 17th Floor
255 South Orange Avenue
Orlando, FL  32801
Tel: (407) 843-7860
Contacts: Jon K. Stage, Esq. / Kevin W.
Shaughnessy, Esq.
*Class Action Approved

Wachovia Center
100 South Ashley Drive, Suite 1500
Tampa, FL  33602-5311
Tel: (813) 223-7333
Contact: Jon K. Stage, Esq.
*Class Action Approved

50 North Laura Street
Suite 2500
Jacksonville, FL  32202-3646
Tel: (904) 798-3700
Contacts: Jon K. Stage, Esq. / Patricia J.
Hill, Esq. / Richard N. Margulies, Esq.
*Class Action Approved

BOYD & GREENE LLC
Museum Tower, Ste. 2800
150 W. Flagler Street
Miami, FL  33130
Tel: (786) 425-1045
Contact: W. Todd Boyd, Esq.

CARLTON FIELDS
4000 International Place
100 S.E. 2nd Street
Suite 4000
Miami, FL  33131
Tel: (305) 530-0050
Tel: (305) 539-7225
Contact: Nancy H. Henry, Esq.

FISHER & PHILLIPS LLP
1250 Lincoln Plaza
300 South Orange Avenue
Orlando, FL  32801
Tel: (407) 541-0888
Contact: Theresa M. Gallion, Esq.

GREENBERG TRAURIG LLP
515 East Las Olas Boulevard
Ft. Lauderdale, FL  33301
Tel: (954) 765-0500
Contact: Frank Scruggs, Esq.
*Class Action Approved–All Locations

1221 Brickell Avenue
Miami, FL  33131
Tel: (305) 579-0500
Contact: Ron Rosengarten, Esq.

GUNSTER YOAKLEY & STEWART, PA
777 South Flagler Drive
Suite 500, East Tower
West Palm Beach, FL  33401
Tel: (561) 655-1980
Contact: G. Joseph Curley, Esq.
*Class Action Approved

One Biscayne Tower
Suite 3400
Miami, FL  33131
Tel: (305) 376-6000
Contact: G. Joseph Curley, Esq.
*Class Action Approved

HAYNSWORTH BALDWIN JOHNSON &
GREAVES LLC
600 North Westshore Boulevard
Suite 200
Tampa, FL  33609
Tel: (813) 289-1247
Contact: Grant D. Petersen, Esq.

1301 Riverplace Boulevard
Suite 800 P.O. Box 40593
Jacksonville, FL  32203
Tel: (904) 396-3000
Contact: G. Thomas Harper, Esq.
*Class Action Approved

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

HOLLAND & KNIGHT LLP
701 Brickell Avenue – Suite 3000
P.O. Box 015441 (Zip 33101)
Miami, FL 33131
Tel: (305) 374-8500
Contact: Kelly-Ann Cartwright, Esq.
*Class Action Approved

50 North Laura Street, Suite 3900
P.O. Box 52687 (Zip 32201)
Jacksonville, FL 32202
Tel: (904) 353-2000
Contact: Mark Alexander, Esq.
*Class Action Approved

200 South Orange Ave
Suite 2600 P.O. Box 1525 (Zip 32802)
Orlando, FL 32801
Tel: (407) 244-1115
Contact: Steven Ball, Esq.
*Class Action Approved

400 North Ashley Drive
Suite 2300
Tampa, FL 33602
Tel: (813) 227-8500
Contact: William DeMeza, Esq.
*Class Action Approved

315 South Calhoun Street, Suite 600
P.O. Drawer 810 (Zip 32302)
Tallahassee, FL 32301
Tel: (850) 224-7000
Contact: Elizabeth Bevington, Esq.
*Class Action Approved

222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401
Tel: (561) 833-2000
Contact: Edward Diaz, Esq.
*Class Action Approved

200 Central Avenue
Suite 1600
St. Petersburg, FL 33701
Tel: (727) 896-7171
Contact: William DeMeza, Esq.
*Class Action Approved

One East Broward Boulevard
Suite 1300
Fort Lauderdale, FL 33301
Tel: (954) 525-1000
Contact: Thomas Loffredo, Esq.
*Class Action Approved

JACKSON LEWIS LLP
One Biscayne Tower
2 South Biscayne Blvd., Suite 2500
Miami, FL 33131
Tel: (305) 577-7600
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved – All Locations

390 N. Orange Avenue
Suite 1285
Orlando, FL 32801-1641
Tel: (407) 246-8440
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

KUBICKI DRAPER
25 West Flagler Street
Penthouse City National Bank Building
Miami, FL 33130
Tel: (305) 374-1212
Contact: Gene Kubicki, Esq.
*Class Action Approved

STEEL HECTOR & DAVIS LLP
200 South Biscayne Boulevard
Miami, FL 33131-2398
Tel: (305) 577-2957
Tel: (561) 650-7214
Contact: Patricia E. Lowry, Esq.
*Class Action Approved

1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Tel: (561) 650-7200
Contact: Patricia E. Lowry, Esq.
*Class Action Approved

215 South Monroe
Suite 601
Tallahassee, FL 32301-1804
Tel: (850) 222-2300
Tel: (561) 650-7214
Contact: Patricia E. Lowry, Esq.
*Class Action Approved

VERNIS & BOWLING, P.A.
884 U.S. Highway One
North Palm Beach, FL 33408
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

## APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

635 West Garden Street
P.O. Box 12108
Pensacola, FL 32590
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

Surety Bank Building, 3rd Floor
990 North Woodland Blvd.
Deland, FL 32720
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

1680 N.E. 135th Street
North Miami, FL 33181
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

1346 South Ft. Harrison Avenue
Clearwater, FL 33759
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

82883 Overseas Highway
P.O. Box Drawer 529
Islamorada, FL 33036-0529
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

2369 West First Street
Fort Myers, FL 33901
Tel: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

### GEORGIA

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Contact: Robert P. Riordan, Esq.
*Class Action Approved

EPSTEIN BECKER & GREEN, P.C.
Resurgens Plaza
945 East Paces Ferry Road, Ste. 270
Atlanta, GA 30326
Tel: (404) 923-9000
Contact: Howard Pianko, Esq.
*Class Action Approved

HAYNSWORTH BALDWIN JOHNSON &
GREAVES LLC
2500 Windy Ridge Parkway
Suite 1250
Atlanta, GA 30339
Tel: (770) 541-4940
Contact: John K. Anderson, Esq.
*Class Action Approved

HOLLAND & KNIGHT LLP
1201 West Peachtree Street, N.E.
One Atlantic Center, Suite 2000
Atlanta, GA 30309
Tel: (404) 817-8500
Contact: Jack McLean, Esq.
*Class Action Approved

JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1226
Tel: (404) 525-8200
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

KUTAK ROCK
Suite 2100
Peachtree Center South
225 Peachtree Street, NE
Atlanta, GA 30303-1731
Tel: (404) 222-4600
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
Tel: (404) 527-4000
Contact: Phillip A. Bradley, Esq.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
600 Peachtree Street
Suite 2100
Atlanta, GA 30308
Tel: (404) 881-1300
Contact: William P. Steinhaus, Esq.
*Class Action Approved

SEYFARTH SHAW
One Peachtree Pointe
1545 Peachtree Street, NE
Atlanta, GA 30309-2401
Tel: (404) 892-6412
Contact: John F. Meyers, Esq.
*Class Action Approved

### APPENDIX A
### EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

STITES & HARBISON PLLC
3350 Riverwood Parkway
Suite 1700
Atlanta, GA  30339
Tel: (770) 850-7000
Tel: (502) 681-0469
Contact: Shannon Antle Hamilton, Esq.

WOMBLE, CARLYLE, SANDRIDGE & RICE
One Atlantic Center
1201 West Peachtree, Suite 3500
Atlanta, GA  30309
Tel: (404) 872-7000
Contact: Craig R. Senn, Esq.

#### HAWAII

GOODSILL ANDERSON QUINN & STIFEL LLP
1099 Alakea Street
Suite 1800
Honolulu, HI  96813
Tel: (808) 547-5600
Contact: John R. Lacy, Esq.
*Class Action Approved

LOVE & NARIKIYO LLC
1164 Bishop Street
Suite 1105
Honolulu, HI  96813
Tel: (808) 546-7575
Contact: Chad P. Love, Esq.
*Class Action Approved

#### IDAHO

HALL, FARLEY, OBERRECHT & BLANTON, PA
702 West Idaho, Suite 700
Key Financial Center
Boise, ID  83702
Tel: (208) 395-8500
Contact: Richard E. Hall, Esq.
*Class Action Approved

QUANE SMITH LLP
US Bank Plaza, Suite 1600
101 South Capital Blvd
Boise, ID  83702
Tel: (208) 345-0960
Contact: Jeremiah A. Quane, Esq.
*Class Action Approved

#### ILLINOIS

CLAUSEN MILLER PC
10 South La Salle Street
Suite 1600
Chicago, IL  60603-1098
Tel: (312) 855-1010
Contacts: James S. Barber, Esq. /
James Nolan, Esq.

EPSTEIN BECKER & GREEN, P.C.
150 North Michigan Avenue
Suite 420
Chicago, IL  60601-7553
Tel: (312) 499-1400
Contact: Howard Pianko, Esq.
*Class Action Approved

FREEBORN & PETERS
311 South Wacker Drive
Suite 3000
Chicago, IL  60606-6677
Tel: (312) 360-6000
Contact: Steven M. Hartmann, Esq.

JACKSON LEWIS LLP
320 West Ohio Street
Suite 500
Chicago, IL  60610
Tel: (312) 787-4949
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

KATTEN MUCHIN ZAVIS ROSENMAN
525 W. Monroe Street
Suite 1600
Chicago, IL  60661-3693
Tel: (312) 902-5200
Contact: David H. Kistenbroker, Esq.
*Class Action Approved

LANER, MUCHIN, DOMBROW, BECKER, LEVIN &
TOMINBERG, LTD.
515 North State Street
Suite 2800
Chicago, IL  60610
Tel: (312) 467-9800
Contact: William L. Becker, Esq.

MATKOV, SALZMAN, MADOFF & GUNN
55 E. Monroe Street
Suite 2900
Chicago, IL  60603
Tel: (312) 332-0777
Contact: Craig T. Boggs, Esq.

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
2 First National Plaza
20 South Clark Street, 25th Floor
Chicago, IL  60603
Tel: (312) 558-1220
Contact: Arthur B. Smith, Jr., Esq.
*Class Action Approved

SEYFARTH SHAW
55 East Monroe Street
Chicago, IL  60603
Tel: (312) 346-8000
Contact: Gerald L. Maatman, Jr., Esq.
*Class Action Approved

VEDDER PRICE KAUFMAN & KAMMHOLZ
222 North LaSalle Street
Chicago, IL  60601
Tel: (312) 609-7500
Contact: Barry Hartstein, Esq.
*Class Action Approved

**INDIANA**

FROST BROWN TODD LLC
120 West Spring Street
Suite 400
New Albany, IN  47150-3655
Tel: (812) 948-2800
Tel: (502) 568-0288
Contact: C. Laurence Woods III, Esq.
*Class Action Approved

KIGHTLINGER & GRAY
Market Square Center, Suite 660
151 North Delaware
Indianapolis, IN  46204
Tel: (317) 638-4521
Contact: Donald L. Dawson, Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Indiana Square
Suite 2300
Indianapolis, IN  26204
Tel: (317) 916-1300
Contact: Charles Baldwin, Esq.
*Class Action Approved

**IOWA**

NYEMASTER, GOODE, MCLAUGHLIN, VOIGTS,
WEST, HANSELL & O'BRIEN
700 Walnut Street
Des Moines, IA  50309
Tel: (515) 283-3100
Contact: Hayward Draper, Esq.
*Class Action Approved

**KANSAS**

HUSCH & EPPENBERGER, LLC
301 North Main Street
Epic Center, Ste. 1400
Wichita, KS  67202
Tel: (316) 264-3339
Contact: Alan L. Rupe, Esq.

**KENTUCKY**

FROST BROWN TODD LLC
2700 Lexington Financial Center
250 West Main Street
Lexington, KY  40507-1749
Tel: (859) 231-0000
Tel: (502) 568-0288
Contact: C. Laurence Woods III, Esq.
*Class Action Approved

400 West Market Street
32nd Floor
Louisville, KY  40202-3363
Tel: (502) 589-5400
Contact:
*Class Action Approved

HARLIN PARKER
519 East Tenth Street
PO Box 390
Bowling Green, KY  42102-0390
Tel: (270) 842-5611
Contact: William J. Parker, Esq.

STITES & HARBISON PLLC
250 West Main Street
Suite 2300
Lexington, KY  40502
Tel: (859) 226-2300
Tel: (502) 681-0469
Contact: Shannon Antle Hamilton, Esq.

400 West Market Street
Suite 1800
Louisville, KY  40202
Tel: (502) 587-3400
Tel: (502) 681-0469
Contact: Shannon Antle Hamilton, Esq.

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

## LOUISIANA

LOCKE LIDDELL & SAPP LLP
Pan American Life Center
601 Poydras Street, Suite 2400
New Orleans, LA  70130–6036
Tel: (504) 558–5106
Contact: Amelia W. Koch, Esq.

THE JUNEAU FIRM
The Harding Center
1018 Harding St., Suite 202
Lafayette, LA  70503–2412
Tel: (337) 269–0052
Contact: Michael J. Juneau, Esq.

## MAINE

MOON MOSS MCGILL & BACHELDER PA
10 Free Street
PO Box 7250
Portland, ME  04112–7250
Tel: (207) 775–6001
Contact: Richard O. Moon, Esq.

VERRILL & DANA LLP
One Portland Square
P.O. Box 586
Portland, ME  04112
Tel: (207) 774–4000
Contact: Robert C. Brooks, Esq.
*Class Action Approved

## MARYLAND

JORDAN COYNE & SAVITS, LLP
33 Wood Lane
Rockville, MD  20850
Tel: (301) 424–4161
Contact: Deborah Murrell Whelihan, Esq.

WHITEFORD TAYLOR & PRESTON LLP
Seven St. Paul Street
Baltimore, MD  21202
Tel: (410) 347–8700
Contact: William Ryan, Jr., Esq.

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
400 East Pratt Street, 7th Floor
Baltimore, MD  21201
Tel: (410) 962–8756
Contact: Paul Krause, Esq.
*Class Action Approved

## MASSACHUSETTS

DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA  02116–5021
Tel: (617) 728–7100
Contact: Bernard J. Bonn III, Esq. /
Matthew A. Porter, Esq.
*Class Action Approved

DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA  02210
Tel: (617) 406–4500
Contact: Kenneth B. Walton, Esq.

EDWARDS & ANGELL LLP
101 Federal Street
Boston, MA  02110–1800
Tel: (617) 951–3373
Contact: John D. Hughes, Esq.
*Class Action Approved

EPSTEIN BECKER & GREEN, P.C.
111 Huntington Avenue
26th Floor
Boston, MA  02199
Tel: (617) 342–4000
Contact: Howard Pianko, Esq.
*Class Action Approved

JACKSON LEWIS LLP
One Beacon Street
33rd Floor
Boston, MA  02108
Tel: (617) 367–0025
Tel: (914) 328–0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, PC
One Financial Center
Boston, MA  02110
Tel: (617) 542–6000
Contact: Robert Gault, Esq.
*Class Action Approved

MURPHY, HESSE, TOOMEY & LEHANE
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
Quincy, MA  02269
Tel: (617) 479–5000
Contact: James A. Toomey, Esq.

APPENDIX A
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

NIXON PEABODY LLP
101 Federal Street
Boston, MA  02110
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved

PEABODY & ARNOLD
50 Rowes Wharf
Boston, MA  02110
Tel: (617) 951-2063
Contact: James Toomey, Esq.

**MICHIGAN**

BRADY, HATHAWAY, BRADY & BRETZ, P.C.
535 Griswold Street
1330 Buhl Building
Detroit, MI  48226-3602
Tel: (313) 965-3700
Contact: Daniel J. Bretz, Esq.

DYKEMA GOSSETT, LLP
39577 Woodward Avenue, Suite 300
Bloomfield, MI  48304-2820
Tel: (248) 203-0700
Tel: (248) 203-0705
Contact: Robert L. Duty, Esq.
*Class Action Approved

124 W. Allegan
800 Michigan National Tower
Lansing, MI  48933
Tel: (517) 374-9100
Tel: (517) 374-9146
Contact: Bruce G. Davis, Esq.
*Class Action Approved

315 E. Eisenhower Pkwy
Suite 100
Ann Arbor, MI  48108
Tel: (734) 214-7660
Tel: (248) 203-0705
Contact: Robert L. Duty, Esq.
*Class Action Approved

300 Ottawa Avenue, N.W.
Suite 700
Grand Rapids, MI  49503
Tel: (616) 776-7500
Tel: (616) 776-7543
Contact: Stephen S. Muhich, Esq.
*Class Action Approved

400 Renaissance Center
Detroit, MI  48243
Tel: (313) 568-6800
Tel: (248) 203-0705
Contact: Robert L. Duty, Esq.
*Class Action Approved

MADDIN, HOUSER, WARTELL, ROTH &
HELLER, P.C.
28400 Northwestern Highway
Third Floor Essex Centre
Southfield, MI  48034
Tel: (248) 354-4030
Contact: Harvey Heller, Esq.

MILLER CANFIELD PADDOCK AND
STONE PLC
1200 Campau Square Plaza
99 Monroe Avenue, NW
Grand Rapids, MI  49503
Tel: (616) 454-8656
Contact: Charles S. Mishkind, Esq.
*Class Action Approved–All Locations

150 West Jefferson, Suite 2500
Detroit, MI  48226
Tel: (313) 963-6420
Contact: Carl H. Von Ende, Esq. (Co-Chair of
Group) / Charles S. Mishkind, Esq. / Michael A.
Alaimo, Esq.
*Class Action Approved

PLUNKETT & COONEY
38505 N. Woodward Avenue
Suite 3000
Bloomfield Hills, MI  48304
Tel: (248) 901-4005
Contact: Teresa Smith Lloyd, Esq.

**MINNESOTA**

DORSEY & WHITNEY LLP
Pillsbury Center South
220 South Sixth Street
Minneapolis, MN  55402
Tel: (612) 340-2600
Contacts: Robert R. Reinhart, Esq. /
Peter S. Hendrickson, Esq.
*Class Action Approved

JACKSON LEWIS LLP
150 South Fifth Street, Suite 2800
Minneapolis, MN  55402
Tel: (612) 341-8131
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

APPENDIX A
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

MEAGHER & GEER LLP
4200 Multifoods Tower
Minneapolis, MN  55402
Tel: (612) 338-0661
Contact: James F. Roegge, Esq.

WINTHROP & WEINSTINE, PA
Suite 3500
225 South 6th Street
Minneapolis, MN  55402-4629
Tel: (612) 604-6400
Tel: (612) 604-6692
Contact: David P. Pearson, Esq. / Laura
A. Pfeiffer, Esq.
*Class Action Approved

3200 Minnesota World Trade Center
30 East Seventh Street
St. Paul, MN  55101
Tel: (651) 290-8400
Tel: (612) 604-6692
Contact: David P. Pearson, Esq. / Laura
A. Pfeiffer, Esq.
*Class Action Approved

**MISSOURI**

ARMSTRONG TEASDALE LLP
2345 Grand Blvd
Suite 2000
Kansas City, MO  64108
Tel: (816) 221-3420
Contact: Lynn W. Hursh, Esq.
*Class Action Approved

HUSCH & EPPENBERGER, LLC
1200 Main Street
Suite 1700
Kansas City, MO  64105-2100
Tel: (816) 421-4800
Contact: Paul D. Seyferth, Esq.

KUTAK ROCK
Suite 200, Valencia Place
444 West 47th Street
Kansas City, MO  64112-1914
Tel: (816) 960-0090
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

LEWIS RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO  63102-2147
Tel: (314) 444-7600
Contacts: Robert J. Golterman, Esq. /
Neal F. Perryman, Esq.
*Class Action Approved

**MISSISSIPPI**

BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
4268 I-55 North
Meadowbrook Office Park
Jackson, MS  39211
Tel: (601) 351-2400
Contact:
*Class Action Approved

BUTLER SNOW O'MARA STEVENS &
CANNADA PLLC
AmSouth Plaza, 17th Floor
210 East Capitol Street
Jackson, MS  39201
Tel: (601) 985-4500
Contact: Jeffrey Walker, Esq.
*Class Action Approved

WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, MS  39201
Tel: (601) 948-6470
Contact: Kenneth E. Milan, Esq.

**MONTANA**

MATOVICH & KELLER PC
225 First Citizens Bank Building
2812 First Avenue N., Suite 225
Billings, MT  59101
Tel: (406) 252-5500
Contact: Cary E. Matovich, Esq.

**NEBRASKA**

KUTAK ROCK
1630 Farnam Street
Omaha, NE  68102
Tel: (402) 346-6000
Contact: Gregory F. Hurley, Esq.

Meridian Park Office Building
6940 "O" Street, Suite 314
Lincoln, NE  68510-2499
Tel: (402) 464-8200
Tel: (949) 417-0999
Contact: Gregory F. Hurley, Esq.

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

**NEW HAMPSHIRE**

GETMAN STACEY TAMPOSI
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH  03110
Tel: (603) 634-4300
Contact: Dona Feeney, Esq.

**NEW JERSEY**

DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ  08543-5218
Tel: (609) 520-3202
Contact: Matthew V. DelDuca, Esq.
*Class Action Approved

EDWARDS & ANGELL LLP
51 John F. Kennedy Parkway
Short Hills, NJ  07078-2701
Tel: (973) 376-7700
Contact: John D. Hughes, Esq.
*Class Action Approved

EPSTEIN BECKER & GREEN PC
Two Gateway Center, 12th Floor
Newark, NJ  07102
Tel: (973) 639-8262
Tel: (973) 642-1900
Contact: Howard Pianko, Esq.
*Class Action Approved

GOLDEN, ROTHSCHILD, SPAGNOLA,
LUNDELL, LEVITT & BOYLAN, P.C.
1011 Route 22 West, Suite 300
P.O. Box 6881
Bridgewater, NJ  08807-0881
Tel: (908) 722-6300
Contact: Kenneth R. Rothschild, Esq.

GROTTA, GLASSMAN & HOFFMAN, P.A.
75 Livingston Avenue
Roseland, NJ  07068
Tel: (973) 992-4800
Contact: Leslie A. Lajewski, Esq.

HARWOOD LLOYD
130 Main Street
Hackensack, NJ  07601
Tel: (201) 487-1080
Contact: Elizabeth Lorell, Esq.

JACKSON LEWIS LLP
60 Washington Street
Morristown, NJ  07960-6844
Local Tel: (973) 538-6890
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LINDABURY MCCORMICK & ESTABROOK
53 Cardinal Drive
PO Box 2369
Westfield, NJ  07091-2369
Tel: (908) 233-6800
Contact: John H. Schmidt, Jr., Esq.

MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ  08540
Tel: (609) 919-6600
Tel: (215) 963-4928
Contact: Rene M. Johnson, Esq.
*Class Action Approved

PECKAR & ABRAMSON
70 Grand Avenue
River Edge, NJ  07661
Tel: (201) 343-3434
Contact: Jeffrey M. Daitz, Esq.

POWELL TRACHTMAN LOGAN CARRLE
BOWMAN & LOMBARDO
1763 E. Route 70
Suite 213
Cherry Hill, NJ  08003
Tel: (856) 663-0021
Contact: Richard L. Bush, Esq.
*Class Action Approved

REED SMITH
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ  08540
Tel: (609) 987-0050
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

The Legal Center
One Riverfront Plaza
Newark, NJ  07102
Tel: (973) 621-3200
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

SAIBER, SCHLESINGER, SATZ & GOLDSTEIN
One Gateway Center, 13th Floor
Newark, NJ  07102-5311
Tel: (973) 622-3333
Contact: Jeffrey Lorell, Esq.

THOMPKINS MCGUIRE WACHENFELD &
BARRY
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102-4070
Tel: (973) 622-3000
Contact: William B. McGuire, Esq.

WEINER LESNIAK
629 Parsippany Road
Parsippany, NJ  07054-0438
Tel: (973) 403-1100
Contact: Howard E. Brechner, Esq.
*Class Action Approved

WOLFF & SAMSON
One Boland Drive
West Orange, NJ  07052
Tel: (973) 325-1500
Contact: Arthur Goldstein, Esq.
*Class Action Approved

**NEVADA**

BARKER BROWN BUSBY CHRISMAN &
THOMAS
300 South Fourth Street
Suite 800
Las Vegas, NV  89101
Tel: (702) 386-1086
Contact: James P. Chrisman, Esq.

GORDON & REES
3753 Howard Hughes Parkway
Suite 2000
Las Vegas, NV  89109
Tel: (702) 784-7646
Contact: Roger M. Mansukhani, Esq.
*Class Action Approved

**NEW MEXICO**

BUTT THORNTON & BAEHR PC
4101 Indian School Road NE
Suite 300 South
Albuquerque, NM  87110
Tel: (505) 884-0777
Contact: Carlos G. Martinez, Esq.

**NEW YORK**

BROWN RAYSMAN MILLSTEIN FELDER &
STEINER LLP
900 Third Avenue
New York, NY  10022-4728
Tel: (212) 895-2000
Contact: Edward Copeland, Esq.
*Class Action Approved

CLIFTON BUDD & DEMARIA, LLP
420 Lexington Avenue
Suite 420
New York, NY  10170-0089
Tel: (212) 687-7410
Contact: Alfred T. DeMaria, Esq.

D'AMATO & LYNCH
70 Pine Street
New York, NY  10270
Tel: (212) 269-0927
Contact: Luke Lynch Jr., Esq.

EDWARDS & ANGELL LLP
750 Lexington Avenue
New York, NY  10022
Tel: (212) 308-4411
Contact: John D. Hughes, Esq.
*Class Action Approved

EPSTEIN BECKER & GREEN PC
250 Park Avenue, 12th Floor
New York, NY  10177-0077
Tel: (212) 351-4500
Contact: Howard Pianko, Esq.
*Class Action Approved

FIXLER & ASSOCIATES
530 Saw Mill River Road
Elmsford, NY  10523
Tel: (914) 345-3701
Contact: Elliot H. Fixler, Esq.

FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue
New York, NY  10103-3198
Tel: (212) 318-3000
Fax: (212) 318-3400
Contact: Douglas P. Catalano, Esq.
*Class Action Approved

GROTTA, GLASSMAN & HOFFMAN, P.A.
650 Fifth Avenue, 22nd Floor
New York, NY  10019
Tel: (212) 315-3510
Contact: Leslie A. Lajewski, Esq.

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

**HODGSON RUSS LLP**
One M&T Plaza
Suite 2000
Buffalo, NY 14203-2391
Tel: (716) 856-4000
Contact: Patrick M. Tomovic, Esq.

**JACKSON LEWIS LLP**
59 Maiden Lane
New York, NY 10038
Tel: (212) 545-4000
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved–All Locations

1000 Woodbury Road
Suite 402
Woodbury, NY 11797
Tel: (516) 364-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

One North Broadway, 15th Floor
White Plains, NY 10601-2305
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

**JONES HIRSCH CONNORS & BULL, P.C.**
1 Dag Hammarskjold Plaza
7th Floor
New York, NY 10017
Tel: (212) 507-1000
Contact: Richard Steer, Esq.

**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, NY 10019-4896
Tel: (212) 541-6222
Contact: Jeffrey H. Daichman, Esq.

**KAUFMAN BORGEEST & RYAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
Tel: (212) 980-9600
Contact: Julianna Ryan, Esq.

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
919 Third Avenue
New York, NY 10022
Tel: (212) 715-9100
Contact: Kevin B. Leblang, Esq.
*Class Action Approved

**L'ABBATE, BALKAN, COLAVITA & CONTINI, L.L.P.**
One Battery Park Plaza
New York, NY 10004
Tel: (212) 825-6900
Contact: Mercedes Cowin, Esq.

1050 Franklin Avenue
Garden City, NY 11530
Tel: (516) 294-8844
Contact: Marianne Conklin, Esq.

**MORGAN, LEWIS & BOCKIUS, LLP**
101 Park Avenue
New York, NY 10178-0060
Tel: (212) 309-6000
Tel: (215) 963-4928
Contact: Steven R. Wall, Esq.
*Class Action Approved

**NIXON PEABODY LLP**
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved – All Locations

Omni Plaza
30 South Pearl St.
Albany, NY 12207
Tel: (518) 427-2650
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.

437 Madison Avenue
New York, NY 10022
Tel: (212) 940-3000
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.

Clinton Square
PO Box 31051
Rochester, NY 14603
Tel: (716) 263-1000
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.

**OHRENSTEIN & BROWN LLP**
One Penn Plaza
46th Floor
New York, NY 10019
Tel: (212) 338-2400
Contact: Michael D. Brown, Esq.

### APPENDIX A
### EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

PECKAR & ABRAMSON
546 Fifth Avenue
17th Floor
New York, NY  10036
Tel: (212) 382-0909
Contact: Jeffrey M. Daitz, Esq.

PILLSBURY WINTHROP LLP
One Battery Park Plaza
New York, NY  10004
Tel: (212) 858-1000
Contacts: Kristin L. Peters, Esq. / Kenneth W.
Taber, Esq.
*Class Action Approved

POLLACK & KAMINSKY
114 West 47th Street
19th Floor
New York, NY  10036
Tel: (212) 575-4700
Contact: Daniel A. Pollack, Esq.
*Class Action Approved

PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Tel: (212) 969-3000
Contact: Alan Fagin, Esq.
*Class Action Only

RAINS & POGREBIN, P.C.
210 Old Country Road
Mineola, NY  11501
Tel: (516) 742-1470
Contact: John T. Bauer, Esq.

SHAUB, AHMUTY, CITRIN & SPRATT LLP
655 Third Avenue
New York, NY  10101
Tel: (212) 599-8200
Tel: (212) 599-7767
Contact: David Simon, Esq.

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
150 East 42nd Street
New York, NY  10017-5639
Tel: (212) 490-3000
Contact: Rick E. Roer, Esq.
*Class Action Approved

WINGET & SPADAFORA & SCHWARTZBERG,
LLP
45 Broadway
19th Floor
New York, NY  10006
Tel: (212) 221-6900
Contact: Louis Spadafora, Esq.
*Class Action Approved

### NORTH CAROLINA

HAYNSWORTH BALDWIN JOHNSON &
GREAVES LLC
Federal Plaza Building
400 W. Trade Street,
Charlotte, NC  28202-1627
Tel: (704) 342-2588
Contact: James B. Spears Jr., Esq.
*Class Action Approved

2709 Henry Street
P.O. Box 13310
Greensboro, NC  27405
Tel: (336) 375-9737
Contact: James M. Powell, Esq.
*Class Action Approved

1400 Crescent Green, Suite 320
P.O. Box 10035
Raleigh, NC  27605
Tel: (919) 233-4600
Contact: Bruce A. Petesch. Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
2301 Sugar Bush Road
Suite 501 (27612)
PO Box 31608
Raleigh, NC  27622
Tel: (919) 787-9700
Contact: Matthew C. Keen, Esq.
*Class Action Approved

PARKER POE ADAMS & BERNSTEIN
Three Wachovia Center
401 S. Tryon Street, Suite 3000
Charlotte, NC  28202
Tel: (704) 372-9000
Contact: Jonathan M. Crotty, Esq.

WOMBLE, CARLYLE, SANDRIDGE & RICE
150 Fayetteville Street Mall, Suite 2100
P.O. Box 831
Raleigh, NC  27602
Tel: (919) 484-2300
Contact: Charles A. Edwards, Esq.

**APPENDIX A**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

2530 Meridian Parkway, Suite 400
P.O. Box 13069
Durham, NC  27713
Tel: (919) 484-2300
Contact: Charles A. Edwards, Esq.

One West Fourth Street
Winston-Salem, NC  27101
Tel: (336) 721-3600
Contact: Alan R. Gitter, Esq.

One Wachovia Center
301 S. College Street, Suite 3300
Charlotte, NC  28202-6025
Tel: (704) 331-4900
Contact: Richard L. Rainey, Esq.

**NORTH DAKOTA**

FLECK, MATHER & STRUTZ
400 East Broadway, Suite 600
Norwest Bank Building, P.O. Box 2798
Bismarck, ND  58501
Tel: (701) 223-6585
Contact: Robert J. Udland, Esq.

**OHIO**

DINSMORE & SHOHL LLP
175 South 3rd Street
10th Floor
Columbus, OH  43215
Tel: (614) 628-6880
Contact: Rick A. Lavinsky, Esq.

FROST BROWN TODD  LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH  45202-4182
Tel: (513) 651-6800
Tel: (513) 651-6705
Contact: Deborah S. Adams, Esq.
*Class Action Approved

One Columbus, Suite 1000
10 West Broad Street
Columbus, OH  43215-3467
Tel: (614) 464-1211
Tel: (513) 651-6705
Contact: Deborah S. Adams, Esq.
*Class Action Approved

GALLAGHER SHARP FULTON & NORMAN
Seventh Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115
Tel: (216) 241-5310
Contact: Alton Stephens, Esq.
*Class Action Approved

JANIK & DORMAN
9200 South Hills Boulevard Suite 300
Cleveland, OH  44141-3521
Tel: (440) 838-7600
Contact: Steven G. Janik, Esq.
*Class Action Approved

ROETZEL & ANDRESS
310 Chiquita Center
250 E. Fifth Street
Cincinnati, OH  45202
Tel: (513) 361-0200
Tel: (216) 615-4039
Contact: Robert E. Blackham, Esq.
*Class Action Approved

National City Center, 12th Floor
155 East Broad Street
Columbus, OH  43215
Tel: (614) 463-9770
Contact: Robert E. Blackham, Esq.
*Class Action Approved

222 South Main Street
Akron, OH  44308
Tel: (330) 376-2700
Contact: Robert E. Blackham, Esq.
*Class Action Approved

One SeaGate
9th Floor
Toledo, OH  43604
Tel: (419) 242-7985
Contact: Robert E. Blackham, Esq.
*Class Action Approved

1375 E. Ninth Street
1 Cleveland Center, 10th Floor
Cleveland, OH  44114
Tel: (216) 623-0150
Contact: Robert E. Blackham, Esq.
*Class Action Approved

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

**VORYS, SATER, SEYMOUR & PEASE LLP**
2100 One Cleveland Center
1375 E. 9th Street
Cleveland, OH  44114
Tel: (216) 479-6100
Tel: (513) 723-4054
Contact: Scott Carroll, Esq.
*Class Action Approved

52 E. Gay Street
Columbus, OH  43216-1008
Tel: (614) 464-6400
Tel: (513) 723-4054
Contact: Scott Carroll, Esq.
*Class Action Approved

221 E. Fourth Street
Atrium Two, Suite 2100
Cincinnati, OH  45201-0236
Tel: (513) 723-4000
Tel: (513) 723-4054
Contact: Scott Carroll, Esq.
*Class Action Approved

## OKLAHOMA

**RHODES, HIERONYMUS, JONES, TUCKER & GABLE PLLC**
P.O. Box 21100
Tulsa, OK  74121-1100
Tel: (918) 582-1173
Contact: Chris L. Rhodes III, Esq.

## OREGON

**GORDON & REES**
1001 S.W. Fifth Avenue
Suite 1100
Portland, OR  97204
Tel: (503) 220-1679
Contact: Roger M. Mansukhani, Esq.
*Class Action Approved

**LANE POWELL SPEARS LUBERSKY LLP**
601 SW Second Avenue
Suite 2100
Portland, OR  97204
Tel: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved

**LINDSAY HART NEIL & WEIGLER LLP**
1300 West Fifth Avenue
Suite 3400
Portland, OR  97201-5696
Tel: (503) 226-7677
Contacts: Lisa F. Rackner, Esq. /
Jerard S. Weigler, Esq.

## PENNSYLVANIA

**BLANK ROME LLP**
One Logan Square
Philadelphia, PA  19103-6998
Tel: (215) 569-5500
Contact: Ian M. Comisky, Esq.
*Class Action Approved

**BUCHANAN INGERSOLL, PC**
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219-8800
Tel: (412) 562-8800
Tel: (412) 562-3960
Contact: Gregory A. Miller, Esq.

One South Market Square
213 Market Street, 3rd Floor
Harrisburg, PA  17101
Tel: (717) 237-4800
Tel: (412) 562-3960
Contact: Gregory A. Miller, Esq.

Eleven Penn Center, 14th Floor
1835 Market Street
Philadelphia, PA  19103-1443
Tel: (215) 665-8700
Tel: (412) 562-3960
Contact: Gregory A. Miller, Esq.

**DECHERT LLP**
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA  19103-2793
Tel: (215) 994-4000
Contact: Seymour Kurland, Esq. /
Matthew V. DelDuca, Esq.
*Class Action Approved

**HAMBURG & GOLDEN, P.C.**
1601 Market Street, Suite 565
Philadelphia, PA  19103-1443
Tel: (215) 255-8590
Contact: Neil Hamburg, Esq.

# APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

JACKSON LEWIS LLP
One PPG Place
29th Floor
Pittsburgh, PA  15222-5414
Tel: (412) 232-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

MARSHALL, DENNEHY, WARNER, COLEMAN &
GOGGIN
1845 Walnut Street
Philadelphia, PA  19103-4714
Tel: (215) 575-2600
Contact: Phil Toran, Esq. /
Jay Rothman, Esq.

MEYER, UNKOVIC & SCOTT LLP
1300 Oliver Building
Pittsburgh, PA  15222
Tel: (412) 456-2800
Contact: Laura A. Candris, Esq.

MORGAN, LEWIS & BOCKIUS LLP
1702 Market Street
Philadelphia, PA  19103-2921
Tel: (215) 963-5000
Contact: Steven R. Wall, Esq.
*Class Action Approved.

One Oxford Centre
32nd Floor
Pittsburgh, PA  15219-6401
Tel: (412) 560-3300
Tel: (412) 560-3390
Contact: Carole S. Katz, Esq.
*Class Action Approved

One Commerce Square
417 Walnut Street
Harrisburg, PA  17101-1904
Tel: (717) 237-4000
Tel: (215) 963-4928
Contact: Steven R. Wall, Esq. /
Carole S. Katz, Esq.
*Class Action Approved

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Tel: (215) 981-4000
Contact: Anthony B. Haller, Esq.
*Class Action Approved

POWELL TRACHTMAN LOGAN CARRLE
BOWMAN & LOMBARDO
114 North Second Street
Harrisburg, PA  17101
Tel: (717) 238-9300
Contact: Richard L. Bush, Esq.
*Class Action Approved

475 Allendale Road
Suite 200
King of Prussia, PA  19406
Tel: (610) 354-9700
Contact: Richard L. Bush, Esq.
*Class Action Approved

REED SMITH
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
Tel: (215) 851-8100
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

213 Market Street
Harrisburg, PA  17101
Tel: (717) 234-5988
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

435 Sixth Avenue
Pittsburgh, PA  15219
Tel: (412) 288-3131
Tel: (215) 851-8214
Contact: Sara A. Begley, Esq.
*Class Action Approved

WILSON ELSER MOSKOWITZ EDELMAN
DICKER, LLP
830 East Independence Square West
Suite 1130 East
Philadelphia, PA  19106
Tel: (215) 627-6900
Contact: Lou Isaacsohn, Esq.
*Class Action Approved

WOLF BLOCK SCHORR & SOLIS – COHEN LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA  19103-2097
Tel: (215) 977-2588
Contact: Alan Kessler, Esq.
*Class Action Approved

### APPENDIX A
### EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

## RHODE ISLAND

EDWARDS & ANGELL LLP
2800 Financial Plaza
Providence, RI  02903
Tel: (401) 274-9200
Contact: John D. Hughes, Esq.
*Class Action Approved

NIXON PEABODY LLP
One Citizens Plaza
Providence, RI  02903
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved

## SOUTH CAROLINA

HAYNSWORTH BALDWIN JOHNSON &
GREAVES LLC
918 S. Pleasantburg Drive
Greenville, SC  29607-2424
Tel: (864) 271-7410
Contact: James M. Powell, Esq.
*Class Action Approved

1201 Main Street
Suite 1230
Columbia, SC  29201
Tel: (803) 799-5858
Contact: Charles T. Speth II, Esq.
*Class Action Approved

JACKSON LEWIS LLP
2100 Landmark Building
301 North Main Street
Greenville, SC  29601
Tel: (864) 232-7000
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
134 Meeting Street
Suite 500
Charleston, SC  29401
Tel: (843) 853-1300
Contact: Phillip A. Kilgore, Esq.
*Class Action Approved

1501 Main Street
Suite 600
Columbia, SC  29201
Tel: (803) 252-1300
Contact: Eric C. Schweitzer, Esq.
*Class Action Approved

The Ogletree Building
300 North Main Street
Greenville, SC  29601
Tel: (864) 271-1300
Contact: Phillip A. Kilgore, Esq.
*Class Action Approved

WOMBLE, CARLYLE, SANDRIDGE & RICE
700 Poinsetta Plaza
104 S. Main Street, P.O. Box 10208
Greenville, SC  29603
Tel: (864) 255-5400
Contact: Brent Clinkscale, Esq.

YOUNG CLEMENT RIVERS & TISDALE LLP
P.O. Box 993
28 Broad Street
Charleston, SC  29402
Tel: (864) 557-4000
Contact: Shawn D. Wallace, Esq.

## SOUTH DAKOTA

COSTELLO PORTER HILL HEISTERKAMP
BUSHNELL & CARPENTER LLP
200 Security Building
P.O. Box 290
Rapid City, SD  57709
Tel: (605) 343-2410
Contact: Robert L. Lewis, Esq.

DAVENPORT EVANS HURWITZ & SMITH LLP
203 West 14th Street
Sioux Falls, SD  57101-1030
Tel: (605) 336-2880
Contact: Susan Brunick Simons, Esq.

## TENNESSEE

BAKER, DONELSON, BEARMAN, CALDWELL &
BERKOWITZ, PC
Commerce Center
211 Commerce St., Suite 1000
Nashville, TN  37201
Tel: (615) 726-5600
Tel: (901) 577-2294
Contact: Gregory G. Fletcher, Esq.
*Class Action Approved

APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
Tel: (423) 756-2010
Tel: (901) 577-2294
Contact: Gregory G. Fletcher, Esq.
*Class Action Approved


SunTrust Bank Building
207 Mockingbird Lane
Johnson City, TN 37604
Tel: (423) 928-0181
Tel: (901) 577-2294
Contact: Gregory G. Fletcher, Esq.
*Class Action Approved


2200 Riverview Tower
900 South Gay Street
Knoxville, TN 37901
Tel: (865) 549-7000
Tel: (901) 577-2294
Contact: Gregory G. Fletcher, Esq.
*Class Action Approved

CORNELIUS & COLLINS, L.L.P.
511 Union Street, Suite 2700
P.O. Box 190695
Nashville, TN 37219-0695
Tel: (615) 244-1440
Contact: Rebecca Wells-Demaree, Esq.

FROST BROWN TODD LLC
424 Church Street
Suite 1600
Nashville, TN 37219-2308
Tel: (615) 251-5550
Tel: (615) 251-5553
Contact: M. Clark Spoden, Esq.

HUSCH & EPPENBERGER, LLC
736 Cherry Street
Chattanooga, TN 37402
Tel: (423) 266-5500
Contact: Harry B. Ray, Esq.

KIESEWETTER WISE KAPLAN SCHWIMMER &
PRATHER, PLC
3725 Champion Hills Drive
Suite 3000
Memphis, TN 38125
Tel: (901) 795-6695
Contact: Jonathan E. Kaplan, Esq.

LEITNER, WILLIAMS, DOOLEY & NAPOLITAN
PLLC
414 Union Street, Suite 1900
Bank of America Building
Nashville, TN 37402
Tel: (615) 255-7722
Contact: Paul R. Leitner, Esq.
*Class Action Approved


801 Broad Street, Third Floor
Pioneer Building
Chattanooga, TN 37402
Tel: (423) 265-0214
Contact: Paul R. Leitner, Esq.
*Class Action Approved

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
SunTrust Center, Suite 800
424 Church Street
Nashville, TN 37219
Tel: (615) 254-1900
Contact: Keith D. Frazier, Esq.
*Class Action Approved

STITES & HARBISON PLLC
424 Church Street
Suite 1800
Nashville, TN 37219
Tel: (615) 244-5200
Tel: (502) 681-0469
Contact: Shannon Antle Hamilton, Esq.

WEINTRAUB, STOCK BENNETT
GRISHAM & UNDERWOOD
1715 Aaron Brenner Drive
Suite 512
Memphis, TN 38120
Tel: (901) 526-0431
Contact: James H. Stock, Esq.

## TEXAS

CLARK WEST KELLER BUTLER & ELLIS LLP
4800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270-2146
Tel: (214) 741-1001
Contact: Mark Shank, Esq.

EPSTEIN BECKER GREEN WICKLIFF & HALL
Wells Fargo Plaza
1000 Louisiana, Suite 5400
Houston, TX 77002-5013
Tel: (713) 750-3100
Contact: Howard Pianko, Esq.
*Class Action Approved

APPENDIX A
EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

Park Central VII
12750 Merit Drive
Dallas, TX 75251-1219
Tel: (972) 628-2450
Contact: Howard Pianko, Esq.
*Class Action Approved

FULBRIGHT & JAWORSKI LLP
1301 McKinney
Suite 5100
Houston, TX 77101-3095
Tel: (713) 651-5442
Contact: Robert S. Harrell, Esq.
*Class Action Approved

2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Tel: (214) 885-8188
Fax: (214) 855-8200
Contact: Richard M. Kobdish, Esq.
*Class Action Approved

300 Convent Street
Suite 2200
San Antonio, TX 78205-3792
Tel: (210) 224-5575
Fax: (210) 270-7205
Contact: Robert S. Harrell, Esq.
*Class Action Approved

600 Congress Avenue
Suite 2400
Austin, TX 78701
Tel: (512) 474-5201
Fax: (512) 320-4598
Contact: Brian Greig, Esq.
*Class Action Approved

JACKSON LEWIS LLP
3811 Turtle Creek Boulevard
Suite 500
Dallas, TX 75219-4497
Tel: (214) 520-2400
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201-6776
Tel: (214) 740-8000
Contact: John McElhaney, Esq.

MILLS SHIRLEY ECKEL & BASSETT, LLP
400 Washington Building
2228 Mechanic, P.O. Box 1943
Galveston, TX 77553
Tel: (409) 763-2341
Contact: Carla Cotropia, Esq.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
700 Preston Commons
8117 Preston Road
Dallas, TX 75225
Tel: (214) 987-3800
Contact: Bryant S. McFall, Esq.
*Class Action Approved

One Allen Center
500 Dallas Street, Suite 3000
Houston, TX 77002-4709
Tel: (713) 655-0855
Contact: Jeffrey C. Londa, Esq.
*Class Action Approved

One Congress Plaza
111 Congress Ave., 4th Floor
Austin, TX 78701
Tel: (512) 391-4985
Contact: Bruce A. Griggs, Esq.
*Class Action Approved

2600 Weston Centre
112 East Pecan Street
San Antonio, TX 78205
Tel: (210) 354-1300
Contact: Lawrence Smith, Esq.
*Class Action Approved

PATTON BOGGS, LLP
2001 Ross Avenue
Suite 3000
Dallas, TX 75201
Tel: (214) 758-1500
Contact: D. Patrick Long, Esq.
*Class Action Approved

SEYFARTH SHAW
700 Louisiana Street, #3900
Houston, TX 77002-2731
Tel: (713) 225-2300
Contact: Gloria Portelia, Esq.
*Class Action Approved

## APPENDIX A
### EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl St., 25th Floor
Plaza of the Americas
Dallas, TX 75201
Tel: (214) 871-8200
Contact: John L. Ross, Esq.
*Class Action Approved

### UTAH

CHRISTENSON & JENSEN PC
50 South Main Street
Suite 1500
Salt Lake City, UT 84101
Tel: (801) 355-3431
Contact: Phillip S. Ferguson, Esq.

### VERMONT

CLEARY SHAHI ASSOCIATES
110 Merchants Row
P.O. Box 6740
Rutland, VT 05702
Tel: (802) 775-8800
Contact: David L. Cleary, Esq.

### VIRGIN ISLANDS

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
The Tunick Building
1336 Beltjen Road
St. Thomas, VI 00802
Tel: (340) 714-1235
Contact: Charles E. Engeman, Esq.
*Class Action Approved

### VIRGINIA

CHRISTIAN & BARTON, LLP
909 East Main Street
Suite 1200
Richmond, VA 23219-3095
Tel: (804) 697-4100
Contact: Warren David Harless, Esq.

GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Tel: (540) 983-9300
Contact: W. David Paxton, Esq.
*Class Action Approved–All Locations

GREENBERG TRAURIG LLP
1750 Tysons Boulevard, 12th Floor
Tysons Corner, VA 22102
Tel: (703) 749-1300
Contact: C. Allen Foster, Esq. / Joe
Reeder, Esq. / Harry M. Glazer, Esq.

JACKSON LEWIS LLP
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
Tel: (703) 821-2189
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved.

JORDAN COYNE & SAVITS L.L.P.
10509 Judicial Drive
Suite 200
Fairfax, VA 22030
Tel: (703) 246-0900
Contact: John Easton, Esq.
*Class Action Approved

MCGUIRE WOODS BATTLE & BOOTHE LLP
901 East Cary Street
Richmond, VA 23219
Tel: (804) 775-4378
Contact: Stephen D. Busch, Esq.

1750 Tysons Boulevard
Suite 1800
McLean, VA 22102
Tel: (703) 712-5000
Contact: Stephen D. Busch, Esq.

101 West Main Street
Norfolk, VA 23510-1655
Tel: (757) 640-3700
Contact: Stephen D. Busch, Esq.

Court Square Building
310 Fourth Street N.E.
Suite 300
Charlottesville, VA 22902-1288
Tel: (434) 977-2500
Contact: Stephen D. Busch, Esq.

WILLIAMS MULLEN
Two James Center
1021 East Cary Street (23219)
Richmond, VA 23218-1320
Tel: (804) 643-1991
Tel: (804) 783-6427
Contact: Lynn F. Jacob, Esq.

## APPENDIX A
## EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL

8270 Greensboro Drive, Suite 700
McLean, VA 22102
Tel: (703) 760-5200
Tel: (804) 783-6427
Contact: Lynn F. Jacob, Esq.

SunTrust Center
500 East Main Street, Suite 1301
Norfolk, VA 23510
Tel: (757) 284-4000
Tel: (804) 783-6427
Contact: Lynn F. Jacob, Esq.

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
3923 Old Lee Highway
Suite 62-B    .
Fairfax, VA 22030
Tel: (202) 626-7660
Contact: Paul Krause, Esq.
*Class Action Approved

WOMBLE, CARLYLE, SANDRIDGE & RICE
6862 Elm Street
Eighth Floor
McLean, VA 22101
Tel: (703) 790-3310
Contact: Thomas J. Sawyer, Esq.

### WASHINGTON

CARNEY BADLEY SPELLMAN, PS
700 5th Avenue, #5800
Seattle, WA 98104-5017
Tel: (206) 622-8020
Contact: David W. Silke, Esq.

JACKSON LEWIS LLP
1420 Fifth Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 405-0404
Tel: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101-2338
Tel: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved

### WEST VIRGINIA

SPILMAN, THOMAS, BATTLE PLLC
Spilman Center
300 Kanawha Blvd., P.O. Box 7232
Charleston, WV 25321-0273
Tel: (304) 340-3800
Contact: Charles L. Woody, Esq.
*Class Action Approved

STEPTOE & JOHNSON LLP
Bank One National Center East
Post Office Box 2190
Clarksburg, WV 26302-2190
Tel: (304) 624-8000
Contact: C. David Morrison, Esq.
*Class Action Approved

### WISCONSIN

MELLI WALKER PEASE & RUHLY SC
Ten East Doty, Suite 900
P.O. Box 1664
Madison, WI 53701-1664
Tel: (608) 257-4812
Contact: Jack D. Walker, Esq.

### WYOMING

HIRST & APPLEGATE
1720 Carey Avenue
Seattle, WA 98101
Suite 200
Cheyenne, WY 82001
Tel: (307) 632-0541
Contact: Thomas A. Nicholas, Esq.

**ENDORSEMENT# *1***

This endorsement, effective *12:01 a.m.    January 24, 2004*        forms a part of
policy number   *931-75-64*
issued to *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DIRECTORS, OFFICERS AND PRIVATE COMPANY**

**ILLINOIS AMENDATORY ENDORSEMENT**

The Policy is hereby amended as follows:

Clause 2. DEFINITIONS, Item (e) "Defense Costs" is deleted in its entirety and replaced
with the following:

  (e)   "Defense Costs" means reasonable and necessary fees, costs and expenses
        consented to by the Insurer (including premiums for any appeal bond,
        attachment bond or similar bond, but without any obligation to apply for or
        furnish any such bond) resulting solely from the investigation, adjustment,
        defense and appeal of a Claim against the Insureds, but excluding salaries of
        officers or Employees of the Company or the Insurer.

Clause 2. DEFINITIONS, Item (k) "Loss" is deleted in its entirety and replaced with the
following:

  (k)   "Loss" means damages (including back pay and front pay), judgments,
        settlements, post-judgment interest, and Defense Costs; however, Loss shall
        not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes;
        (3) any amount for which the Insureds are not financially liable or which are
        without legal recourse to the Insureds; (4) employment-related benefits, stock
        options, perquisites, deferred compensation or any other type of compensation
        other than salary, wages or bonus compensation; (5) any liability or costs
        incurred by any Insured to modify any building or property in order to make
        said building or property more accessible or accommodating to any disabled
        person, or any liability or costs incurred in connection with any educational,
        sensitivity or other corporate program, policy or seminar relating to an
        Employment Practices Claim; or (6) matters which may be deemed uninsurable
        under the law pursuant to which this policy shall be construed.

        If an additional premium is stated in Item 7 of the Declarations page, then
        Loss shall specifically include, (subject to the policy's other terms, conditions
        and exclusions, including but not limited to exclusions relating to personal
        profit or advantage, deliberate fraud, criminal acts or willful violation of any
        statute, rule or regulation) punitive, exemplary and multiple damages (including
        the multiple or liquidated damages awards under the Age Discrimination in
        Employment Act and the Equal Pay Act). It is further understood and agreed
        that the enforceability of the foregoing coverage shall be governed by such
        applicable law which most favors coverage for punitive, exemplary and
        multiple damages. If an additional premium is not stated in Item 7 of the
        Declarations then Loss shall not include punitive, exemplary damages or the
        multiplied portion of multiple damages.

**END 001**

ENDORSEMENT# *1*    (continued)

Clause 10. **DISCOVERY CLAUSE**, is deleted in its entirety and replaced with the following:

**10.    DISCOVERY CLAUSE**

Except as indicated below, if the Named Entity or the Insurer shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation, or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 (thirty) days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable.

The Additional Premium Amount for: one (1) year shall be 75% of the "full annual premium"; two (2) years shall be 150% of the "full annual premium"; three (3) years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within thirty (30) days after the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

In the event of cancellation or nonrenewal by the Insurer for the nonpayment of premium, any monies received by the Insurer as payment for Discovery Period shall be first applied to such premium owing for the policy. The Discovery Period will not take effect until the premium owing for the policy is paid in full and unless the premium owing Discovery Period is paid promptly when due.

Clause 14. **OTHER INSURANCE AND INDEMNIFICATION**, is deleted in its entirety and replaced with the following:

**14.    OTHER INSURANCE AND INDEMNIFICATION**

If there is any valid and collectible insurance which applies to any Loss covered by this policy, the Insurer shall not be liable for a greater proportion of such Loss than the applicable Limit of Liability under this policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against them unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.

In the event of a Claim against an Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or an Employment Practices Claim against a leased Employee as described in definition (f) of Clause 2,

**END 001**

**ENDORSEMENT#** *1*    (continued)

coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to the Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

Clause 17, **DISPUTE RESOLUTION PROCESS**, is deleted in its entirety and replaced with the following:

17. **DISPUTE RESOLUTION PROCESS**

The Insured shall have the option, in its sole discretion, to submit all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, to the alternative dispute resolution process ("ADR") set forth in this clause.

The Insurer agrees to submit to the ADR process chosen by the Insured. Once elected, the ADR cannot be terminated prior to a determination without the consent of the Insured and the Insurer.

There shall be non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules. The mediator(s) shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the policy. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

*END 001*    AUTHORIZED REPRESENTATIVE

78208 (7/01)    *COPY*                    3

ENDORSEMENT# 2

This endorsement, effective *12:01 a.m.   January 24, 2004*        forms a part of
policy number   *931-75-64*
issued to *REFCO GROUP LTD, LLC*

by   *Illinois National Insurance Company*

## ILLINOIS
## AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### CANCELLATION AND NONRENEWAL

A.    The cancellation condition of this policy is replaced by the following:

CANCELLATION

1.    The Named Insured may cancel this policy by mailing to the Insurer advance written notice of cancellation.

2.    If this policy has been in effect for sixty (60) days or less, the Insurer may cancel this policy by mailing to the Named Insured written notice of cancellation at least:

a.    Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

b.    Thirty (30) days before the effective date of cancellation if the Insurer cancels for any other reason.

3.    If this policy has been in effect for more than sixty (60) days the Insurer may cancel this policy only for one or more of the following reasons:

a.    Nonpayment of premium;

b.    The policy was obtained through a material misrepresentation;

c.    The Named Insured or Other Insured(s) have violated any of the terms and conditions of the policy;

d.    The risk originally accepted has measurably increased;

e.    Certification to the Director of Insurance of the loss of reinsurance by the Insurer which provided coverage to the Insurer for all or a substantial part of the underlying risk insured; or

f.    A determination by the Director that the continuation of the policy could place the Insurer in violation of the insurance laws of this State.

If the Insurer cancels this policy based on one or more of the above reasons except for nonpayment of premium, the Insurer will mail written notice to the Named Insured at least sixty (60) days before the effective date of cancellation. When cancellation is for nonpayment of premium, the Insurer will mail notice at least ten (10) days before the effective date of cancellation.

*END 002*

**ENDORSEMENT# *2***    (continued)

4.   The Insurer will mail the notice to the Named Insured and the agent or broker at the last addresses known to the Insurer.

5.   Notice of cancellation will state the effective date of cancellation and a specific explanation of the reason or reasons for cancellation. The policy period will end on that date.

6.   If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels, the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

7.   Proof of mailing will be sufficient proof of notice.

B.   The following is added:

NONRENEWAL

1.   If the Insurer decides not to renew this policy, the Insurer will mail written notice stating the reason for nonrenewal to the Named Insured's last mailing address known to the Insurer at least sixty (60) days before the expiration date of the policy. A copy of the notice will also be sent to:

    a.   The broker, if known to the Insurer, or the agent of record; and

    b.   The last known mortgagee or lienholder named in the policy at the last mailing address known to the Insurer.

    This paragraph does not apply if the Insurer has manifested a willingness to renew directly to the Named Insured.

All other terms, conditions and exclusions remain unchanged.

 

---

AUTHORIZED REPRESENTATIVE

*END 002*

ENDORSEMENT# 3

This endorsement, effective *12:01 a.m.   January 24, 2004*      forms a part of
policy number  *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

**Nuclear Energy Liability Exclusion**

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

   (1)   nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Company, or discharged or dispersed therefrom; or

   (2)   nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Company; or

   (3)   the furnishing by an Insured or the Company of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   (4)   claims for damages to the company or its shareholders which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.

   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its Limit of Liability; or,

   (2)   with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

*COPY*        *END 3*

ENDORSEMENT# *3*    (Cc    nued)

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number *931-75-64*
issued to    *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*


As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means:

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*COPY*        *END 3*

<u>ENDORSEMENT# *3*</u>    **(Cc    nued)**

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number    *931-75-64*
issued to    *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*        *END 3*

**ENDORSEMENT# *4***

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number  *931-75-64*
Issued to  *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

### Professional E&O Exclusion

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to any Insured(s)' performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to any Claim(s) brought by a shareholder of the Company in the form of a shareholder class, direct or derivative action alleging failure to supervise those who performed or failed to perform such professional services, provided that such shareholder action is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Company or any Insured(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*        *END 4*

ENDORSEMENT# 5

This endorsement, effective *12:01 a.m.   January 24, 2004*   forms a part of
policy number  *931-75-64*
issued to  *REFCO GROUP LTD, LLC*

by   *Illinois National Insurance Company*

### Employment Practices Coverage Deleted

In consideration of the premium charged, it is hereby understood and agreed that, notwithstanding any other provision of this policy (including any endorsement attached hereto, whether such endorsement precedes or follows this endorsement in time or sequence), this policy shall not provide coverage for Loss arising out of an Employment Practices Claim. It is further agreed that all sections of the policy which relate to coverage for Employment Practices Claims are deleted in their entirety.

It is further understood and agreed that the policy is hereby amended as follows:

I.

Item 5. of the Declarations is deleted in its entirety and replaced with the following:

ITEM 5.        RETENTION:

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)        None

**Securities Claims (other than private placements)**
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)        $500,000
for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances)

**All Other Claims (including private placements)**
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)        $500,000
for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances)

*COPY*        *END 5*

**ENDORSEMENT# 5    (Co  nued)**

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number   *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

## II.

Clause 2. DEFINITIONS is amended as follows:

1.    Definition (b) "Claim" is amended by deleting subparagraph (3) in its entirety and
     deleting the final paragraph thereof and replacing it with the following:

     The term "Claim" shall include a Securities Claim.

2.    Definition (t) "Wrongful Act" is amended by deleting the last sentence thereof,
     which reads as follows:

     "With respect to an Employment Practices Claim, the term "Wrongful Act" shall
     include any Employment Practices Violation."

## III.

Clause 4. EXCLUSIONS is amended as follows:

1.    Exclusions (h), (i), (m), (n) and (q) are amended by deleting all references to
     exceptions for Employment Practices Claims.

2.    Exclusions (o) and (p) are amended by deleting all references to exceptions for
     Claims for Retaliation.

3.    The following exclusion shall apply and is added at the end of Clause 4:

     (r) with respect to all Coverages: alleging an Employment Practices Violation(s).

## IV.

Clause 9.  PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS is
amended by deleting the first sentence of the Clause and replacing it with the following:

     "This clause applies only to a Securities Claim (hereinafter referred to as a
     "Designated Claim")."

*COPY*        *END 5*

**ENDORSEMENT# 5    (Continued)**

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number  *931-75-64*
issued to  *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*


## V.

It is further understood and agreed that any reference(s) to an Employment Practices Claim
or an Employment Practices Violation within the policy  shall not operate to grant coverage
for Loss alleging an Employment Practices Violation.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 5*

ENDORSEMENT# 6

This endorsement, effective *12:01 a.m.*   *January 24, 2004*   forms a part of policy number *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by   *Illinois National Insurance Company*

**Amend Discovery – Bilateral – Premium TBD (No more than 200% for Year One)**

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

1.   Clause 10. DISCOVERY CLAUSE, is deleted in its entirety and replaced with the following:

   **10.   DISCOVERY CLAUSE**

   Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during said Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

   The Additional Premium Amount for: (1) one year shall be 200% of the "Full Annual Premium"; (2) two or three years shall be an amount to be determined in the absolute and sole discretion of the Insurer. As used herein, "Full Annual Premium" means the premium level in effect immediately prior to the end of the Policy Period.

   In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*     **END 6**

**ENDORSEMENT# 7**

This endorsement, effective *12:01 a.m.    January 24, 2004*        forms a part of
policy number    *931-75-64*
issued to *REFCO GROUP LTD, LLC*


by    *Illinois National Insurance Company*

**"NO LIABILITY" PROVISION DELETED**

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

   (1)    The Definition of "No Liability" is hereby deleted in its entirety; and

   (2)    The last paragraph of Clause 6. RETENTION CLAUSE is hereby deleted in its
          entirety.



ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



_____

AUTHORIZED REPRESENTATIVE


*END 007*

*COPY*

ENDORSEMENT# 8

This endorsement, effective *12:01 a.m.   January 24, 2004*     forms a part of
policy number  *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by     *Illinois National Insurance Company*

### Failure To Maintain Insurance Exclusion

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable for any Loss in connection with any Claim(s) made against an
Insured alleging, arising out of, based upon, attributable to, or in anyway directly or
indirectly relating to any failure or omission on the part of the Insureds or the Company to
effect and/or maintain adequate insurance.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 8*

This endorsement, effective *12:01 a.m.  January 24, 2004*      forms a part of
policy number  *931-75-64*
issued to  *REFCO GROUP LTD, LLC*

by   *Illinois National Insurance Company*

### Delete Clause 5 – Reinstatement Provision

In consideration of the premium charged, it is hereby understood and agreed that Clause 5.
LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING
DEFENSE COSTS) is deleted in its entirety and replaced with the following:

5.    **LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)**

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability.
Defense Costs are part of Loss and as such are subject to the applicable Limit of
Liability for Loss.**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's
liability for all Loss, under Coverage A and Coverage B combined, arising out of all
Claims first made against the Insureds during the Policy Period and the Discovery
Period (if applicable); however, the Limit of Liability for the Discovery Period shall be
part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a
Claim which is made subsequent to the Policy Period or Discovery Period (if
applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the
Policy Period or Discovery Period shall also be subject to the one applicable
aggregate Limit of Liability stated in Item 4 of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*COPY*        *END 9*

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number   *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

**Auto Subsidiary Threshold Amended to 10%**

In consideration of the premium charged, it is hereby understood and agreed that subparagraph (2) of the Definition of Subsidiary is hereby amended by decreasing the automatic threshold from 25% to 10%.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

AUTHORIZED REPRESENTATIVE

*COPY*          *END 10*

**ENDORSEMENT#** *11*

This endorsement, effective *12:01 a.m.    January 24, 2004*        forms a part of
policy number    *931-75-64*
issued to *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

**EXCLUSION (o) AMENDED**
**(FAIR LABOR STANDARDS ACT)**

In consideration of the premium charged, it is hereby understood and agreed that
notwithstanding any other provision of this policy (including any endorsement attached
hereto whether such endorsement precedes or follows this endorsement in time or
sequence), Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (o) in its
entirety and replacing it with the following:

(o)    for violation(s) of any of the responsibilities, obligations or duties imposed by
the Employee Retirement Income Security Act of 1974, the Fair Labor
Standards Act (except the Equal Pay Act), the National Labor Relations Act, the
Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus
Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or
regulations of the foregoing promulgated thereunder, and amendments thereto
or any similar federal, state, local or foreign statutory law or common law;
provided, however, this exclusion shall not apply to a Claim for Retaliation;
provided, further, however, there is no coverage provided under this policy for
any Claim related to, arising out of, based upon, or attributable to the refusal,
failure or inability of any Insured(s) to pay wages or overtime pay for services
rendered (hereinafter, "earned Wages") (as opposed to tort-based back pay or
front pay damages) or for improper payroll deductions taken by any Insured(s)
from any Employee(s) or purported employee(s), including, but not limited to,
(i) any unfair business practice claim alleged because of the failure to pay
Earned Wages, or (ii) any Claim seeking earned Wages because any
Employee(s) or purported employee(s) was improperly classified or mislabeled
as "exempt;"

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 011*

This endorsement, effective *12:01 a.m.   January 24, 2004*    forms a part of
policy number   *931-75-64*
Issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

### Major Shareholder Exclusion – 10%

In consideration of the premium charged it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) made against any Insured(s) which are brought by any individual(s) or entity(ies) that own or control (whether beneficially, directly or indirectly) 10% or more of the outstanding voting stock (hereinafter "Major Shareholder"); or by any security holder of the Company whether directly or derivatively, unless such security holder's Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of any Major Shareholder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 12*

This endorsement, effective *12:01 a.m.   January 24, 2004*   forms a part of
policy number   *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by   *Illinois National Insurance Company*

### Retention Applicable to All Loss

In consideration of the premium charged, it is hereby understood and agreed that, notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), this policy is hereby amended as follows:

1. Item 5. of the Declarations, entitled RETENTION is deleted in its entirety and replaced with the following:

   ITEM 5.   ·   RETENTION:

   | Judgments, Settlements and Defense Costs (Non-Indemnifiable Loss except for Employment Practices Claims) | None |
   |---|---|

   Employment Practices Claims
   Judgments, Settlements and Defense Costs
   (Company, Non-Indemnifiable Loss and
   Indemnifiable Loss)

   N/A
   for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances)

   Securities Claims (other than private placements)
   Judgments, Settlements and Defense Costs
   (Company and Indemnifiable Loss)

   $500.000
   for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances)

*COPY*        *END 13*

ENDORSEMENT# *13* (Continued)

This endorsement, effective *12:01 a.m.    January 24, 2004*    forms a part of
policy number *931-75-64*
issued to    *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

| | |
|---|---|
| All Other Claims (including private placements)<br>Judgments, Settlements and Defense Costs<br>(Company and Indemnifiable Loss) | $500,000<br>for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts (waivable under Clause 6 in certain circumstances) |

2.    Clause 6. RETENTION CLAUSE is amended by deleting the first paragraph and replacing it with the following:

6.    RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under:

(1)    (a)    Coverage A or B(ii) for all Claims other than Employment Practices Claims for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"); or

(b)    Coverage A or B(ii) for Employment Practices Claims regardless if the Loss is Indemnifiable or Non-Indemnifiable; or

(2)    Coverage B(i).

A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

For purposes of this endorsement, "Non-Indemnifiable Loss" means Loss for which the Company has neither indemnified nor is permitted or required to indemnify the Individual Insured(s)

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*            *END 13*

This endorsement, effective *12:01 a.m.*   *August 5, 2004*        forms a part of
policy number  *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by     *Illinois National Insurance Company*



**Run-off Endorsement**

**(SELLER/BUYER MERGER)**

In consideration of the additional premium of $228,386, it is hereby understood and
agreed that as of the time and date designated as of the effective time of the merger or
acquisition (hereinafter the "Effective Time") in the merger agreement or plan of merger or
similarly titled contract executed by and between Seller, Buyer or the Buyer's acquisition
company, dated as of August 5, 2004 including any amendments or revisions thereto,
(hereinafter the "Merger Agreement") the following provisions shall apply and be added to
the policy:

I.

Clause 1. INSURING AGREEMENTS, is deleted in its entirety and replaced with the
following:

**1.  INSURING AGREEMENTS**

**COVERAGE A: INDIVIDUAL INSURED INSURANCE**

This policy shall pay the Loss of each and every Director, Officer, or Employee of the
Company arising from a Claim first made against such Insureds during the Policy
Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to
the terms of this policy for any actual or alleged Wrongful Act occurring on or prior to
the Effective Time in their respective capacities as Directors, Officers or Employees of
the Company, except when and to the extent that the Company, or Buyer or the
Buyer's acquisition company or successor company thereof has indemnified such
Insureds. The Insurer shall, in accordance with and subject to Clause 8, advance
Defense Costs of such Claim prior to its final disposition.

**COVERAGE B:  PRIVATE COMPANY INSURANCE**

This policy shall pay the Loss of the Company, or in the event the Company no longer
exists as a legal entity, the Buyer or the Buyer's acquisition company or the successor
company thereof, arising from a:

(i)   Claim first made against the Company, or

(ii)  Claim first made against an Individual Insured,

COPY              END 14

This endorsement, effective *12:01 a.m.*    *August 5, 2004*    forms a part of
policy number    *931-75-64*
Issued to    *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

during the Policy Period or the Discovery Period (if applicable) and reported to the
Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act
occurring on or prior to the Effective Time, but, in the case of (ii) above, only when
and to the extent that the Company, or the Buyer or the Buyer's acquisition company
has indemnified the Individual Insured for such Loss pursuant to law, common or
statutory, or contract, Merger Agreement or the charter or by-laws of the Company or
the Buyer or the Buyer's acquisition company, or any Subsidiary or Affiliate thereof
duly effective under such law which determines and defines such rights of indemnity.
The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs
of such Claim prior to its final disposition.

### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity
or in the event that the Named Entity no longer exists as a legal entity Buyer or the
Buyer's acquisition company or any successor company thereof may at its sole option
tender to the Insurer the defense of a Claim for which coverage is provided by this
policy in accordance with Clause 8 of the policy. Regardless of whether the defense
is so tendered, the Insurer shall advance Defense Costs (excess of the applicable
retention amount) of such Claim prior to its final disposition. Selection of counsel to
defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

### II.

Clause 5. LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS -
INCLUDING DEFENSE COSTS) is amended by deleting paragraph B, entitled Reinstated
Limit of Liability, in its entirety.

### III.

The first paragraph of Clause 6. RETENTION CLAUSE, is deleted in its entirety and
replaced with the following:

### 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in
excess of the Retention amount stated in Item 5. of the Declarations, such Retention
amount to be borne by the Company, Buyer or the Buyer's acquisition company or any
successor company thereof and/or the Insured(s) and shall remain uninsured, with
regard to all Loss under: (1) Coverage A or B(ii) for which the Company, Buyer or the

*COPY*    **END 14**

This endorsement, effective *12:01 a.m.  August 5, 2004*        forms a part of
policy number  *931-75-64*
issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

Buyer's acquisition company or any successor company thereof has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"); or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

### IV.

Both Clause 8, in its entirety, and paragraph (i) of Clause 4 are amended by deleting the terms "Company" and "Named Entity" wherever they appear and substituting in lieu thereof the term, "Company, Buyer or the Buyer's acquisition company or any successor company thereof, or any Subsidiary or Affiliate thereof";

### V.

Clause 10. DISCOVERY CLAUSE, is deleted in its entirety and replaced with the following:

**10.   RUN-OFF COVERAGE CLAUSE**

The Named Entity shall have the right to a period of six (6) years following the Effective Time (herein referred to as the Discovery Period or Run-off Coverage) in which to give written notice to the Insurer of Claims first made against the Insureds during said six (6) year period for any Wrongful Act occurring on or prior to the Effective Time and otherwise covered by this policy.

### VI.

Clause 11. CANCELLATION CLAUSE, is deleted in its entirety and replaced with the following:

This policy may not be canceled by the Named Entity or by the Insurer except as indicated below.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of nonpayment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named Entity's address as shown in Item 1. of the Declarations page, written notice stating

*COPY*          *END 14*

This endorsement, effective *12:01 a.m.*    *August 5, 2004*    forms a part of
policy number   *931-75-64*
Issued to   *REFCO GROUP LTD, LLC*

by    *Illinois National Insurance Company*

when, not less than thirty (30) days thereafter, the cancellation shall be
effective.  The mailing of such notice as aforesaid shall be sufficient proof of
notice.  The Policy Period terminates at the date and hour specified in such
notice, or at the date and time of surrender.

If the period of limitation relating to the giving of notice is prohibited or made
void by any law controlling the construction thereof, such period shall be
deemed to be amended so as to be equal to the minimum period of limitation
permitted by such law.

It is further understood and agreed that the premium charged for this
endorsement shall be fully earned as of the Effective Time.

VII.

Clause 12. CHANGE IN CONTROL OF NAMED ENTITY, is deleted in its entirety.

VIII.

It is further understood and agreed that notwithstanding any other provision of this policy,
this policy shall not provide coverage for any Claim(s) alleging Wrongful Acts occurring
after the Effective Time.

IX.

For purposes of this endorsement, the following definitions shall apply:

Buyer shall mean:  Thomas H. Lee

Seller shall mean:  Refco Group Ltd, LLC

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*        *END 14*

# EXHIBIT B

# HANNAFAN & HANNAFAN, LTD.

One East Wacker Drive
Suite 1208
Chicago, Illinois 60601
(312) 527-0055
Fax (312) 527-0220

www.hannafanlaw.com

January 22, 2007

**CERTIFIED MAIL RRR**

AIG Domestic Claims, Inc.
Illinois National Insurance Company
175 Water Street
New York, NY  10038

     Re:    Indictment of Tone N. Grant
             Policy: Directors, Officers and Private Company Liability Insurance Policy
             Insurer: Illinois National Insurance Company
             Excess Policy No. 931-75-64
             Policy Period: 8/11/05 - 8/11/06
             Named Insured: Refco; Additional Insured: Tone N. Grant

Dear Claims Manager:

     As you know, this office represents Tone N. Grant with respect to Refco related matters. On January 16, 2007, we received the enclosed Indictment styled <u>United States of America v. Phillip R. Bennett, Robert C. Trosten and Tone N. Grant</u> No. S3 05 Cr. 1192 (NRB) in the Southern District of New York. Therefore, this is a demand letter for coverage under the above referenced policy on behalf of Mr. Grant regarding this new matter concerning criminal charges. We have notified the primary insurance carrier, U.S. Specialty Insurance Company, and its counsel, Leslie Ahari, of this unfortunate development.

     If you require any additional information or materials, please contact me immediately.

             Very truly yours,

             Michael T. Hannafan
             Attorney for Tone N. Grant

BTH/dmm
Encl.
cc: Tone N. Grant
    Leslie S. Ahari, Esq.

# EXHIBIT C



**AIG Domestic Claims, Inc.**
*Financial Lines*
175 Water Street, Fifth Floor
New York, NY 10038

**John J. Limb, Esq.**
Complex Claims Director
212.458.3606 *(Direct)*
866.636.1895 *(Fax)*
john.limb@aig.com

*Via First Class Mail and E-Mail*

June 8, 2007

Blake T. Hannafan
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL, 60601

Re:  **Directors, Officers and Private Company Liability Insurance Policy – PrivateEdge**
     **Insured:      Refco Group Ltd, LLC**
     **Matter:       Tone N. Grant**
     **Policy No.:    931-75-64 (Run-Off)**
     **Claim No.:    649-001323**

Dear Mr. Hannafan:

    As we previously advised you, we are working with Illinois National Insurance Company ("Illinois National"), who issued Directors, Officers and Private Company Liability Insurance Policy No. 931-75-64 (the "Policy") to Refco Group Ltd., LLC ("Refco," or, the "Company"). This matter has been assigned to me for handling, as such, kindly direct all future correspondence to my attention using the above-referenced claim number.

    The purpose of this letter is to provide you with our preliminary coverage evaluation for this matter. Our evaluation is preliminary because the applicability of certain exclusions, terms and conditions cannot be fully determined until the facts are more fully developed. Illinois National hereby reserves all rights under the Policy and law, including the right to amend or supplement our coverage analysis as forthcoming information dictates. We also emphasize that our analysis does not imply any validity to the allegations made in the underlying matter. Please note that all capitalized terms used and not defined herein have the meanings ascribed to them in the Policy.

    We are in receipt of your correspondence dated December 28, 2006 (the "December 28, 2006 letter") referencing the possible indictment of your client, Tone N. Grant, and a subsequent letter dated January 22, 2007 from Michael T. Hannafan (the "January 22, 2007 letter") enclosing an indictment styled <u>United States of America v. Phillip R. Bennett, et al.</u>, No. S3 05 Cr. 1192 (the "Indictment").

Blake T. Hannafan
June 8, 2007
Page 2 of 4

Your December 28, 2006 letter indicated that you were contacted by AUSA David
Esseks of the US Attorney's Office for the Southern District of New York on November 15,
2006, regarding the possible indictment of Mr. Grant for securities fraud and other charges. The
Indictment enclosed with your January 22, 2007 letter alleges that from the mid-1990's, Refco
provided execution and clearing services for exchange-traded derivatives and provided prime
brokerage services in the fixed income and foreign exchange markets. The Indictment states that
from 1997 through June 1998, Mr. Grant served as the President of Refco, and that at certain
times relevant to the Indictment, held a significant ownership interest in Refco. The Indictment
alleges that from the mid-1990's, Mr. Grant and co-defendant Phillip Bennett, the Company's
President and CEO, conspired to hide the true performance of Refco's business in order to sell
the Company, accomplishing this by 1) covering up both Refco's own losses and customer losses
for which Refco became responsible; 2) moving Refco operating expenses off the Company's
books and onto the books of Refco Group Holdings, Inc. ("RGHI"), a privately-held Delaware
corporation owned by Mr. Bennett and Mr. Grant that held a substantial ownership interest in
Refco; 3) padding Refco's revenue in an effort to mislead its banks, auditors, and investors. The
alleged scheme included obtaining, through fraud, lines of credit for Refco, the private sale of
notes prior to 2004, the sale of 57% of Refco to a group headed by Thomas H. Lee Partners in
2004, and the August 2005 initial public offering of Refco stock which raised about $583 million
based upon an allegedly fraudulent registration statement. The Indictment contains counts for,
among others, conspiracy to commit securities fraud, wire fraud, securities fraud, false filing
with the SEC and money laundering.

## The Policy

Subject to its terms, conditions, and exclusions, the Policy contains a Limit of Liability of
$5,000,000 in the aggregate for all Loss (including Defense Costs), subject to a retention in the
amount of $500,000. The Policy is a "claims-made and reported" insurance policy providing
coverage for certain claims that are first made against the Insureds and reported during the Policy
Period of January 24, 2004 to January 24, 2005. Endorsement #14 provides Run-Off Coverage
commencing August 5, 2004 for a period of six (6) years. Please be advised that the Policy is an
indemnity policy and does not contain a duty to defend. Defense Costs are not a separate
category of Loss and are included within the Policy limit and subject to its exclusions and other
provisions, including the requirement of the consent of the Insurer with regard to the incurring of
expenses covered by the Policy.

Coverage A of the Policy, subject to its terms, conditions and exclusions, provides
coverage to pay the Loss of each Director, Officer or Employee of the Company arising from a
Claim made against such Insured during the Policy Period and reported to the Insurer pursuant to
the terms of the Policy for any actual or alleged Wrongful Act occurring on or prior to the
Effective Time in their respective capacities as Directors, Officers or Employees of the
Company, except when and to the extent that the Company has indemnified such Insureds.

Coverage B, subject to the Policy's terms, conditions and exclusions, provides that the
Policy shall pay the Loss of the Company, or in the event that the Company no longer exists, the
Buter, arising from a (i) Claim first made against the Company, or (ii) Claim first made against

Blake T. Hannafan
June 8, 2007
Page 3 of 4

an Individual Insured for any actual or alleged Wrongful Act occurring on or before the Effective Time, but in the case of (ii) only to the extent that the Company has indemnified the Individual Insured for such Loss.

Pursuant to Clause 2(b) of the Policy, as modified by Endorsement # 5:

"Claim" means:

> (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

Given the return of the Indictment against Mr. Grant, it appears that a Claim has been made as to Mr. Grant. Unless otherwise advised, we assume that the Company has indemnified Mr. Grant. Therefore, Coverage B(ii) appears to be applicable with respect to the Claims made against Mr. Grant.

Pursuant to Clause 14, as amended by Endorsement #1, if there is any valid and collectible insurance which applies to any Loss covered by this Policy, the Insurer shall not be liable for a greater proportion of such Loss than the applicable Limit of Liability under the Policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against them unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by the Policy. We note that your January 22, 2007 letter references U.S. Specialty Insurance Company ("U.S. Specialty") as the primary insurance carrier, and that your December 28, 2006 correspondence enclosed correspondence from Leslie Ahari of Ross, Dixon & Bell on behalf of U.S. Specialty, referencing US Specialty Insurance Policy No. 24-MGU-05-A10821 (the "U.S. Specialty Policy"). Please provide us a copy of the U.S. Specialty Policy as well as copies of all coverage correspondence related to this matter.

It appears that the allegations contained within the Indictment involve conduct which could potentially implicate certain provisions or exclusions of the Policy which may limit or preclude coverage. Pursuant to the Run-Off Coverage Clause contained in Clause 10 of the Policy, as modified by Endorsement # 14, the Named Entity shall have the right to a period of six (6) years following the Effective Time of 12:01 a.m., August 5, 2004, in which to give written notice to the Insurer of Claims first made against the Insureds during said six (6) year period for any Wrongful Act occurring on or prior to the Effective Time and otherwise covered by this policy. Under Endorsement #14, the Policy shall not provide coverage for any Claim(s) alleging any Wrongful Act occurring after the Effective Time (i.e. after August 5, 2004). We note that, among other things, Loss incurred in connection with the Company's August 2005 IPO would be precluded from coverage under the Policy.

Please note that pursuant to Section 2(k) of the Policy, as amended by Endorsement #1, "Loss" shall not include (1) civil or criminal fines or penalties imposed by law and (3) any

Blake T. Hannafan
June 8, 2007
Page 4 of 4

amounts for which the Insureds are not financially liable or which are without legal recourse to the Insureds.

In addition to the foregoing, the following Policy exclusions may also be implicated. Clause 4(a) of the Policy precludes coverage for Claims "arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled." Also please note the potential applicability of Section 4(c), which precludes coverage for Claims arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law.

The Policy provides that the Insurer is entitled to effectively associate in the defense and/or settlement of this matter. The Insured shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. We understand that your firm, Hannafan & Hannafan, has been retained to represent Mr. Grant's interests with respect to the Indictment. We expect Hannafan & Hannafan to follow Illinois National's litigation management guidelines. A copy of the guidelines is enclosed for your reference. To ensure that Defense Costs are properly credited toward the retention, please provide us with copies of all defense bills.

We reserve all of Illinois National's rights and privileges, at law and in equity, under the Policy, including, without limitation, the right to apply other provisions or exclusions of the Policy as appropriate, and the right to supplement this coverage evaluation as circumstances may warrant.

If you have any questions with respect to the foregoing or wish to bring any information to our attention that you believe may be relevant to this matter, please do not hesitate to contact me.

Sincerely,

John J. Limb

Enc.

# D&O LITIGATION GUIDELINES

The following document is provided as an outline of the fundamental expectations of AIG Domestic Claims, Inc. ("AIGDC") for effective interaction with defense counsel on litigated claim matters. Our objective is superior litigation and economic results through an active tripartite team approach predicated upon mutual cooperation among insurer, insured and defense counsel.

## LITIGATION PLAN AND BUDGET

- Within sixty to ninety (60-90) days after defense counsel has been retained, counsel, the insured and insurer shall agree to a flexible, concise litigation plan and budget. AIGDC reserves the right to question and ultimately reject fees and costs which do not conform to the plan and budget.
- Material amendments to the Litigation Plan and Budget shall be approved by all parties in writing.
- All motion practice not specifically contemplated by the Litigation Plan should be proposed in writing with a separate budget including costs.

### Initial Case Assessment

Development of a focused and strategically sound defense includes analysis of liability and evidence supporting the causes of action and defenses asserted or likely to be asserted in the litigation. Analysis should include:

- Defense counsel's presentation of preliminary investigation findings within 60 days from their retention including summaries of interviews with key witnesses and defendants and conclusions from document analysis.
- Potential third party sources of liability and indemnification.
- Loss causation and materiality.
- Preliminary damage estimates, damage reports and all expert testimony and reports.
- Any fact or development that may affect the interest of the insurer or its insured in the litigation.

### Reporting

- Defense counsel should report to AIGDC at regular intervals. Status reports should be provided at a minimum of every 90 days and should contain scheduled major events including planned completion of litigation tasks, liability assessment, defense tactics and economic risks.
- Written or E-mail reports including substantiating documentation should be provided to the insurer as the information is obtained. Only depositions transcripts of key witnesses and experts are required unless otherwise indicated. Deposition summaries should be included with all transcripts.
- Defense counsel shall provide AIGDC with a comprehensive pre-trial report 60 to 90 days prior to the scheduled trial date, including expected pre-trial motions, jury composition, judge's proclivities, results of similar cases.

### Events which should be **immediately** communicated

- Amendment or consolidation of pleadings and appointment of lead plaintiff and counsel.
- Court scheduling orders.
- Potentially material investigation findings and discovery results.
- Scheduled dates for settlement / mediation conferences and trial dates.
- Results of hearings, motions and appeals.
- Change in the status or introduction of any party to the litigation including judges, magistrates, etc.

# D&O LITIGATION GUIDELINES

## Documentation

- At minimum, the final drafts of pre-filed operative pleadings and motions and all court orders should be provided to AIGDC. In addition, we expect all counsel to maintain and refer to a central research depository within the firm, such as a brief bank. We also expect firms to continue to submit documents, including opinions, to Briefbase.

## Disposition of Claims

- Counsel shall advise the insurer of all settlement demands and provide sufficient advance notice of all settlement conferences, trial dates and other critical dates as they are scheduled.
- Defense counsel shall make timely requests for settlement authority and orderly scheduling of settlement drafts, and obtain AIGDC's consent prior to discussing specific settlement amounts or ranges with plaintiffs' counsel and prior to committing to a settlement payment date.
- The insurer's consent must be obtained before taking a jury verdict.

## EXPENSES & BILLING

## Experts & Research (Pre-Approval Requirements)

- Expert engagements must be pre-approved by AIGDC.
- Defense counsel is presumed to be an expert in the field of law for which they have been retained. Therefore, any research in excess of ten (10) hours must be pre-approved by AIGDC. Results of all such research should be specifically highlighted in reporting and provided to AIGDC. Computer assisted research costs are only acceptable if incurred and billed on a specific case.

## Rates & Staffing

- Billing Rates – We must agree upon all billing rates prior to retention. Agreed upon billing rates will remain in effect throughout the course of the litigation but may be subject to reconsideration every two years. On matters involving "duty to defend" policies any rate increase shall apply only to those case assignments made after the rate increase has been approved by us.
- Billing Increments & Frequency – Counsel shall bill time in 1/10 hour increments and quarterly from the date of assignment.
- Defense Counsel agrees to discuss the staffing of the case with AIGDC as soon as practical following retention but no later than ninety (90) days from their engagement.

## Unacceptable Charges

- **Intra-Office Conferences** – We will not accept charges for extensive intra-office conferencing.
- **New Attorneys** – We will not accept charges for repetitive file reviews caused by the law firm's decision to assign new attorneys to a case.
- **Multiple Attorney Attendance** – Unless otherwise pre-approved by AIGDC, it is expected that one partner and no more than one associate or a paralegal is authorized to attend depositions, meetings, court appearances, etc.
- **Recovery of Overhead** – Effective immediately, the following items will not be reimbursed, unless we have specifically agreed to accept the expenses: (a) Word Processing, clerical or secretarial charges; (b) Storage of open or closed files, rent, electricity, local telephone, postage, receipt or transmission of telecopier documents, or any other items traditionally associated with overhead; (c) Long Distance telephone, litigation support, or any other service in excess of the amount actually expended by the firm for such service; (d) Photocopy charges in excess of $.10 (ten cents) per page; (e) Auto mileage rates in excess of the rate approved by the Internal Revenue Service for income tax purposes; (f) Secretarial overtime; (g) Equipment, books, periodicals, research materials.

# D&O LITIGATION GUIDELINES

- **Flat Charges/Minimum Charges** – Counsel shall not apply flat charges or minimum charges for any activity as part of its rate structure without prior approval of AIGDC.

## Travel & Meal Expenses

- Travel Expenses – We will only reimburse counsel for reasonable and necessary travel expenses. Only coach class airfare, moderately priced hotel accommodations and moderately priced meals will be reimbursed.  We will not accept any lavish or unnecessary expenses for reimbursement. Travel expenses shall be itemized on counsel's billing with copies of all receipts.
- Meals and Entertainment – All requests for reimbursement of meals or other entertaining expense shall be individually itemized, showing persons entertained, amounts incurred and the business purpose.
- Travel Time – When it is appropriate for counsel to bill for travel time, the time for such travel shall be separately stated.

I have read these and I agree, on behalf of our firm, that all matters for AIGDC will be handled in accordance with the above.

| | | |
|---|---|---|
| **Signature of Partner** | **Date** | **Firm Name** |

# EXHIBIT D

# HANNAFAN & HANNAFAN, LTD.

One East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 527-0055
Fax (312) 527-0220

www.hannafanlaw.com

January 15, 2008

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND EMAIL TO MR. DANIEL J. FITZPATRICK (Daniel.Fitzpatrick@aig.com)**

AIG Domestic Claims, Inc.
Financial Lines
175 Water Street, Fifth Floor
New York, New York 10038

Illinois National Insurance Company
500 West Madison Street
Chicago, Illinois 60661

| | |
|---|---|
| **Re:** | **Directors, Officers and Private Company Liability Policy No. 931-75-64** |
| **Your Insured:** | **Refco Group Ltd. LLC/ Tone N. Grant** |
| **Claimant:** | **Tone N. Grant** |
| **Claim No.:** | **649-001323** |

Dear Mr. Fitzpatrick:

At the request of claimant Tone N. Grant (and the Zuckerman Spaeder LLP law firm and my firm, both of which are defending Mr. Grant), I am writing to update you on the status of the above-captioned claim. On October 29, 2007, I advised John Limb and your company that there was a substantial possibility that Illinois National Insurance Company Policy No. 931-75-64 (the "Policy") would soon be the only insurance policy available to advance defense costs for Mr. Tone N. Grant's defenses (both criminal and civil) in the underlying matters that constitute this claim. That substantial possibility has now become a certainty. Therefore, please be advised that this firm and the Zuckerman Spaeder firm will begin submitting bills for defense costs to Illinois National, on February 1, 2008, for costs incurred after December 18, 2007, and we will expect prompt payment of those bills.

1629111.1

I am certain you are familiar with the background of this claim because on November 7, 2007, you emailed me and told me that my October 29, 2007, letter to Mr. Limb had been forwarded to you and that you would be handling this claim going forward. As that letter and its attachments make clear, Mr. Grant has authorized his lawyers to cooperate with Illinois National, and throughout the year-long claim process, we have continually attempted to provide Illinois National with whatever information it has requested. The time has come for Illinois National to fulfill its contractual obligation to Mr. Grant in the way it promised to over seven months ago.

By way of brief background, well over one year ago – on November 3, 2006 – we gave Illinois National notice of six civil matters against and involving Mr. Grant. On December 28, 2006, we gave Illinois National notice of the possible indictment of Mr. Grant. Shortly after Mr. Grant was indicted – on January 22, 2007 – we tendered the indictment to Illinois National, along with a request that Illinois National also advance defense fees for Mr. Grant's defense in that matter. At the same time, we tendered the indictment to U.S. Specialty, another insurer of Refco. We informed you we were doing so, and included correspondence from U.S. Specialty's coverage counsel with our December 28, 2006 letter. Finally, on September 21, 2007, we gave Illinois National notice of another civil suit against Mr. Grant, *Kirschner v. Grant Thornton, et al.*

Illinois National acknowledged our letters in January 2007, and responded with a coverage position in June 2007. In that letter dated June 8, 2007, Illinois National acknowledged that the Policy had a duty to advance defense costs incurred by Mr. Grant. The June 8, 2007, letter also enclosed Illinois National's litigation guidelines, apparently so that Illinois National and Mr. Grant's law firms (this firm and Zuckerman Spaeder LLP) could efficiently coordinate such advancement. The letter also requested additional information regarding the claim.

This firm and the Zuckerman Spaeder firm, on Mr. Grant's behalf, responded to Illinois National's requests. During the months of June and July, 2007, Mr. William Schreiner of the Zuckerman Spaeder firm and I had several phone conferences with Mr. John Limb of Illinois National regarding this claim. Recognizing that Illinois National and Lexington Insurance Company[1] may have a corporate relationship, we even put Mr. Limb in touch with Lexington's coverage counsel, in the hope that such contact might ease the burden on Mr. Limb of becoming familiar with this matter. We also provided you with full background on this claim, and gave you copies of all documents you requested. We have never been informed that Mr. Grant failed to cooperate with Illinois National in this regard, or failed to perform any other duty required of him under the Policy.

On July 16, 2007, I wrote to Mr. Limb to inform Illinois National that the Lexington policy was currently advancing defense costs relating to the criminal and civil matters, and I noted that Illinois National had raised the issue of apportioning defense costs between its Policy and the Lexington policy. I also told him that my firm and the Zuckerman Spaeder firm, based on his June 8, 2007, letter, would soon need to submit invoices to Illinois National for payment. We offered to cooperate with Illinois National in arranging an apportioned arrangement for payment of defense costs and asked for Illinois National's guidance in that regard. Finally, I pointed out

---

[1] By this time, U.S. Specialty had exhausted the limits of its insurance contract by complying with its contractual obligations. Lexington Insurance Company – which wrote a policy excess to U.S. Specialty – then began to advance defense costs.

2

that Mr. Grant had entered into an advancement agreement with Lexington, and offered to discuss a similar arrangement with Illinois National. *See B. Hannafan Letter, July 16, 2007* We never had a substantive response from Illinois National on any of these issues.

Nor has Illinois National ever moved from the duty to advance defense costs it acknowledged in its June 8, 2007 letter, or even indicated that it might do so. Indeed, on July 16, 2007, Mr. Limb emailed me and Mr. Schreiner that Illinois National was preparing what he identified as a supplemental coverage letter. He specifically advised us "not [to] assume that [Illinois National's] position will be changing." We followed Mr. Limb's advice and did not make that assumption. In fact, since then, we have planned Mr. Grant's defenses in reliance on Illinois National's promise that it would advance defense costs when necessary in planning Mr. Grant's defenses.

To clarify, since July 16, 2007, we have not received anything further from Illinois National with regard to this claim, and so we have not assumed that Illinois National's position has changed in any way. In the meantime, we have continued to keep Illinois National informed. The long trail of this correspondence was attached in duplicate form to my October 29, 2007.

### *Current Status*

As my earlier correspondence advised Mr. Limb and your company, AXIS Insurance Company[2] disputed its obligation to advance defense costs. It has lost that fight, and has been ordered to advance. It is currently appealing that loss and has filed a motion to stay any further advancement. In any event, the AXIS policy is very nearly exhausted by payment of defense costs. The three excess carriers above Axis have expressed a willingness to resolve all of their obligations with all of the claimants under those policies. In any event, no resolution of such claims will be sufficient to fund Mr. Grant's defenses. It cannot be stressed enough that Mr. Grant's assets are frozen and he relies on insurance proceeds for the defense of his liberty in this matter.

As Illinois National has been made well aware, Mr. Grant's criminal trial has been scheduled for March 2008. Urgent and very extensive work remains to be done to provide Mr. Grant an adequate defense. In addition, the civil matters against Mr. Grant continue to proceed and several discovery and briefing schedules have been set and require our attention in order to properly defend Mr. Grant.

It is now necessary for the Illinois National Policy to advance defense costs for Mr. Grant's defenses. We have been able to rely on U. S. Specialty and the carriers excess to it – carriers with whom Illinois National acknowledged it shared the advancement burden in its June 8, 2007 letter – up until now. We can do so no longer, and the burden of funding Mr. Grant's defenses now falls fully and solely on Illinois National. To assist Illinois National in living up to its contractual obligations, we will endeavor to follow Illinois National's guidelines sent to us with Mr. Limb's June 8, 2007 letter. On the other hand, we will also expect prompt payment from Illinois National should Axis fail to meet its obligations for whatever reason. Mr. Grant, my firm, and the Zuckerman Spaeder firm reserve all of our applicable rights in this regard.

---

[2] AXIS Insurance Company was excess to Lexington Insurance Company.

3

Given the circumstances and history of this claim, we expect Illinois National to advance those expenses promptly. **More than a year** has passed since Mr. Grant first made his claim to Illinois National, and **more than seven months** have passed since Illinois National acknowledged its contractual obligation under the Policy to advance defense costs. As it has earlier stated that it would advance defense costs, and never changed that position -- even advising us not to assume it would -- Illinois National no longer has the ability to change its coverage position. Any such change would seriously jeopardize, if not end, Mr. Grant's ability to defend himself in the criminal and civil matters. Illinois National should be advised that any impact on Mr. Grant's ability to defend himself in the criminal matter and noticed civil matters could have impacts on other insureds as well.

We will submit bills to you for defense costs incurred since December 19, 2007, for prompt payment, along with remittance instructions.

### *Reservation of Rights*

Mr. Grant reserves all of his rights with regard to the Policy and any applicable law, statutory or otherwise, that may apply to this claim. He expressly waives none of those rights. Of course, as we have for other a year now, we remain willing to cooperate with Illinois National to assist it in complying with its obligations, and are willing to provide further information if necessary.

Very truly yours,

Blake T. Hannafan

Cc: Tone N. Grant
William Schreiner, Esq.

4

1629111.1

# EXHIBIT E



**AIG Domestic Claims, Inc.**
*Financial Lines*
175 Water Street, Fifth Floor
New York, NY 10038

**Daniel J. FitzPatrick**
Complex Claims Director
212.458.1208 (Direct)
866.661.4208 (Fax)
daniel.fitzpatrickr@aig.com

January 22, 2008

***VIA FACSIMILE & REGULAR MAIL***
Andrea D. Lieberman
Managing Director
Marsh USA Inc.
500 West Monroe
Chicago, Illinois 60661

|  | | |
|---|---|---|
| Re: Insured | : | Refco Group Ltd., LLC |
| Matter | : | United States of America v. Phillip Bennett, et al. |
| Policy Type | : | Directors, Officers And Private Company Liability Insurance Policy |
| Policy No. | : | 931-75-64 |
| Claim No. | : | 654-002770 |
| Our File No. | : | 420-73098 |

Dear Ms Lieberman:

As you may recall, we represent Illinois National Insurance Company ("Illinois National") in connection with the above-referenced matter. We have received a copy of an indictment (the "Indictment") filed in *United States of America v. Phillip Bennett, et al.*, USDC Southern District of New York, S3 05 Cr. 1192 (NRB). The Indictment was reported under Directors, Officers and Private Company Liability Insurance Policy No. 931-75-64 (the "Policy") issued by Illinois National to Refco Group LTD, LLC ("Refco Group" or the "Company[1]"). Please note that this letter supplements our prior coverage analysis of March 14, 2006, which addresses an earlier (and now redacted) version of the Indictment.

Since we have been provided only with a copy of the Indictment, we have made only a preliminary review of this matter, and on behalf of Illinois National must reserve all rights under the Policy and applicable law. Although the comments in this letter are based on allegations in the Indictment we do not wish to imply that we believe all of these allegations to be true. Rather we take this opportunity to inform you of potential coverage issues in accordance with Illinois National's responsibilities as an Insurer.

---

[1] Capitalized terms used in this letter and not otherwise defined shall have the meanings given to them in the Policy.

Andrea D. Lieberman
January 22, 2008

### The Policy

The Policy has an aggregate Limit of Liability of $5,000,000, subject to a self-insured retention of $500,000 which is applicable to Company and Indemnifiable Loss. Clause 6 of the Policy, as amended by Endorsement No. 13, provides that a single retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act.

Endorsement No. 14 of the Policy, entitled the "Run-off Endorsement", provides that the Policy (subject to its terms, conditions, exclusions and any relevant legal limitations) covers Loss incurred by any Individual Insured arising from a Claim for any Wrongful Act occurring on or prior to the Effective Time (August 5, 2004), which Claim is first made during the Discovery Period of January 24, 2004 to January 24, 2010, and reported to Illinois National in accordance with the Policy.

Endorsement No. 14 also provides that the Policy covers Loss of the Company, or in the event the Company no longer exists as a legal entity, the Buyer or the Buyer's acquisition company, or the successor company thereof, arising from a: (i) Claim first made against the Company or (ii) Claim first made against an Individual Insured, for any Wrongful Act occurring on or prior to the Effective Time (August 5, 2004), but in the case of (ii) above, only when and to the extent that the Company, the Buyer or the Buyer's acquisition company indemnifies an Individual Insured with respect to such Claim.

### The Indictment

The Indictment alleges that from as early as the mid 1990s, Phillip R. Bennett ("Bennett"), Robert C. Trosten ("Trosten"), and Tone E. Grant ("Grant", and together with Bennett and Trosten, the "defendants"), schemed to hide the true financial condition of Refco, Inc. and its predecessor entities (referred to collectively as "Refco") in order to sell the company for their own benefit.

In furtherance of the above alleged scheme, it is asserted that the defendants caused Refco to make false and fraudulent statements to Refco's banks, counterparties, customers, auditors, and investors, and to create false audited financial statements and false public filings with the United States Securities and Exchange Commission ("SEC"). The Indictment further contends that the alleged scheme included obtaining and/or achieving the following through fraud: lines of credit for Refco; a private sale of notes prior to 2004; the sale of 57% of Refco to a group headed by Thomas H. Lee Partners in 2004; the sale of approximately $600 million of notes to the public in 2004 (the "August 2004 Bond Offering"); approximately $800 million of bank financing obtained in 2004; and the August 2005 initial public offering of stock in Refco (the "August 2005 IPO"), in which the public purchased approximately $583 million of Refco common stock based on a false and fraudulent registration statement.

Based on the foregoing, the Indictment asserts twenty counts against defendants alleging conspiracy, securities fraud, wire fraud, bank fraud, money laundering, material misstatements to auditors and false filings with the SEC under the Securities Exchange Act of 1934 and the Securities Act of 1933.

2

Andrea D. Lieberman
January 22, 2008

### Coverage Analysis

As an initial matter, we note that coverage would only be available to the defendants for Loss arising out of Wrongful Acts allegedly committed on or prior to the Effective Time of August 5, 2004, and during the time the defendants were Individual Insureds.

Further, Exclusion 4(j) of the Policy provides that Illinois National shall not be liable to make any payment for Loss in connection with a Claim alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such offering. The Indictment alleges that the scheme perpetrated by defendants included achieving the August 2004 Bond Offering and the August 2005 IPO through fraud. Further, counts five and six of the Indictment assert violations of the Securities Act of 1933 in connection with the August 2005 IPO. As the Indictment alleges, arises out of and is attributable to a public offering of securities by Refco, Illinois National reserves all rights and defenses it may have in connection with the Indictment as a result of Exclusion 4(j).

The Indictment states that Grant ceased his employment with Refco in or about June of 1998. A majority of the allegations made against Grant are for Wrongful Acts occurring after that time, and thus during a period in which he was acting in his capacity as a shareholder of Refco, and not as an Insured. In this regard, the Insuring Agreements of the Policy provide coverage, in relevant part, for Claims against Directors, Officers and Employees for "Wrongful Acts" which are defined as acts by Individual Insureds in their respective capacities as such. Furthermore, Exclusion 4(f) provides that the Insurer shall not be liable to make payment for Loss in connection with a Claim made against an Insured alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as director, officer, trustee or governor of an Outside Entity. The Policy, therefore, would only cover Grant's Defense Costs to the extent they result from alleged acts committed prior to June 1998 in his capacity as an officer or director of Refco.

Exclusion 4(c) of the Policy may also operate to exclude Loss arising out of the Indictment. That exclusion provides that the Insurer shall not be liable to make any payment for Loss in connection with a Claim arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act or any willful violation of any statute, rule or law.

Exclusion 4(a), which provides that the Insurer shall not be liable to make any payment for loss in connection with a Claim made against an Insured arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled, may also be implicated by the Indictment.

We note that the Policy defines Loss as damages, judgments, settlements, post-judgment interest and Defense Costs. However, pursuant to Clause 2(k) of the Policy (as amended by Endorsement No. 1), Loss does not include criminal fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which the Policy shall be construed. If the defendants acted intentionally as alleged, any Loss stemming from such acts may not be

3

Andrea D. Lieberman
January 22, 2008

covered under the Policy. We also note that the Indictment seeks forfeiture from defendants of all property that constitutes or is derived from proceeds traceable to the commission of the alleged securities, wire fraud and bank fraud offenses. We therefore reserve Illinois National's rights based on certain case law, including the <u>Level 3 Communications v. Federal Insurance Company</u> decision of the U.S. Court of Appeals for the Seventh Circuit (272 F.3d 908), to the effect that a settlement or judgment that is "restitutionary in character" cannot constitute loss under an insurance policy. Similarly, the court in <u>Reliance Group Holdings, Inc. v. National Union Fire Insurance Company of Pittsburgh, Pa.</u>, 594 N.Y.S.2d 20 at p. 24, has held that "one may not insure against the risk of being ordered to return money or property which has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies."

Finally, Illinois National reserves any rights it may have in connection with the Company's misstatement of financial statements. In this regard, a Directors and Officers Insurance Application (the "Policy Application") signed by Mr. Bennett, dated December 19, 2003, and submitted to Illinois National provides:

> THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREN ARE TRUE.....IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO AND BECOME PART OF THE POLICY. ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION AND ALL DOCUMENTS FILED BY THE APPLICANT AND ANY SUBSIDIARY THEREOF WITH ANY FEDERAL, STATE, LOCAL OR FOREIGN REGULATORY AGENCY (INCLUDING BUT NOT LIMITED TO THE SECURITIES AND EXCHANGE COMMISSION) ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.

Clause 15 of the Policy Application required the Company to provide copies of its latest annual report and interim financial statement available. Thus, the Company's financial statements for the fiscal periods ending February 28, 2002 and February 28, 2003 are part of the Policy Application, and material to the risk assumed by Illinois National. As those financial statements were admittedly misstated, Illinois National continues to reserve any rights it may have to rescind the Policy.

We also note that Clause 9 of the Policy Application states the following:

> (a) No Director of Officer has knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy except as follows: (Attach complete details. If

4

Andrea D. Lieberman
January 22, 2008

they have no such knowledge or information, check here: "none"
_x____.)

(b) Neither the Applicant nor any of its Subsidiaries has knowledge
of information or any act, error or omission which might give rise
to a securities claim under the proposed policy except as follows:
(Attach complete details. If they have no such knowledge or
information, check here: "none" __x___.)

The Policy Application further states that, "[i]t is agreed that with respect to Questions 9 and 10
above, if such knowledge, information or involvement exists, any claim or action arising
therefrom is excluded from the proposed coverage." Bennett marked both spaces after "none" on
lines 9 (a) and (b) of the Policy Application with an "x". It appears from information disclosed in
a press release issued by Refco on October 10, 2005[2] that Bennett had knowledge of an act
which might give rise to a Claim under the Policy at the time he signed the Policy Application.
Thus, Illinois National reserves all rights it may have in connection with Clause 9 of the Policy
Application, including the right to exclude coverage of any Loss arising from the Indictment.

Please note that the Policy specifically provides that the Insurer does not assume any duty
to defend the Insureds; however, Defense Costs can be an element of covered loss subject to the
self-insured retention, the Limit of Liability and other terms, conditions and exclusions of the
Policy.

Clause 8 of the Policy also provides that only those Defense Costs Illinois National has
consented to in writing are recoverable under the Policy. Clause 8 further provides that such
consent may not be unreasonable withheld, but that in all events Illinois National may withhold
consent to any Defense Costs or any portion of Defense Costs that are not covered under the
Policy. We understand that Mr. Bennett has retained Kramer Levin Naftalis & Frankel LLP, Mr.
Trosten has retained Morvillo Abramovitz and Mr. Grant has retained Hannafan & Hannafan,
Ltd. to defend the Indictment. Please have those firms provide the undersigned with information
on staffing and hourly rates for this matter.

---

[2]      See paragraph 57 of the Indictment which alleges that: On or about October 10, 2005, Refco issued a press
release announcing the following:

> [Refco] discovered through an internal review a receivable owed to the
> Company by an entity controlled by Phillip R. Bennett, Chief Executive Officer
> and Chairman of the Board of Directors, in the amount of approximately $430
> million. Mr. Bennett today repaid the receivable in cash, including all accrued
> interest. Based on the results of the review to date, the Company believes that
> the receivable was the result of the assumption by an entity controlled by Mr.
> Bennett of certain historical obligations owed by unrelated third parties to the
> Company, which may have been uncollectible. The Company believes that all
> customer funds on deposit are unaffected by these activities. Independent
> counsel and forensic auditors have been retained to assist the Audit Committee
> in an investigation of these matters.

5

Services Provided by Members of
American International Group, Inc.

Andrea D. Lieberman
January 22, 2008

Clause 8 also provides that Illinois National shall have the right to effectively associate with the Insureds in the defense of any Claim that appears reasonably likely to involve Illinois National, and that the Insureds shall give Illinois National full cooperation and such information as it may reasonably require. In this regard, please arrange to have defense counsel keep us advised of all significant developments in the criminal proceeding, and forward to my attention copies of all significant pleadings, motions and other significant documents as they become available.

It is our understanding that there is a separate tower of directors and officers liability insurance issued to Refco after the Policy, and that Axis Insurance Company is currently advancing defense costs to Messrs. Bennett, Trosten and Grant in connection with the Indictment. In this regard, Clause 14 of the Policy (as amended by Endorsement No. 1) provides that, if there is any valid and collectible insurance which applies to any Loss covered by the Policy, Illinois National shall not be liable for a greater proportion of such Loss than the Limit of Liability under the Policy for such loss bears to the "total applicable Limit of Liability of all valid and collectible insurance against [sic] them," unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy.

Finally, please advise us as to whether any of Messrs. Bennett, Trosten and Grant have filed a claim in the Refco bankruptcy court for indemnification related to these matters. If they have not yet done so, Illinois National will ask defense counsel to file such a claim. In the event that Refco cannot or refuses to indemnify, approval will be needed from the bankruptcy court for any advancement of Defense Costs by Illinois National. Illinois National will ask defense counsel to apply to the bankruptcy court for an order approving such advancement.

<u>Allocation</u>

Despite the coverage issues noted above, National Union is prepared to advance an appropriate portion of the defendants' Defense Costs resulting from the Indictment, subject to bankruptcy court approval and a reservation of rights that includes National Union's right to reimbursement of such costs in the event it is determined such costs are not covered. In this regard, allocations will be made for the following uncovered defense costs:

- costs attributable to Wrongful Acts occurring after the Effective Time of August 5, 2004;

- costs attributable to Wrongful Acts on the part of Mr. Grant acting in his capacity of a shareholder of Refco (i.e., after his employment with Refco ceased in or about June of 1998);

- costs attributable to the August 2004 Bond Offering and the August 2005 IPO; and

- costs allocable to the subsequent Refco directors and officers insurance tower in accordance with Clause 14.

As you are aware, the applicability of certain exclusions, terms, and conditions is not fully determinable until the pending litigation is more fully developed. We reserve the right on

6

Andrea D. Lieberman
January 22, 2008

behalf of our clients to amend and supplement our coverage analysis. In the meantime, Illinois National must necessarily reserve all rights under the Policy and applicable law, whether or not referred to specifically herein.

      If you have any questions or comments concerning the foregoing, please do not hesitate to contact the undersigned.

Very truly yours,

Daniel J. FitzPatrick

cc:    Christopher J. Morvillo
       Blake T. Hannafan
       William A Schreiner
       Deborah K. Grobman

7

# **EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

|  |  |
|---|---|
| In re | Chapter 11 |
| REFCO, INC., et al., | Case No. 05-60006 (RDD) |
|  | Jointly Administered |
| Debtors. |  |

------------------------------------------------------------X

|  |  |
|---|---|
| TONE N. GRANT, | Adv. Proc. No. 08-01129-rdd |
| Plaintiff, |  |
| v. |  |
| ILLINOIS NATIONAL INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, |  |
| Defendants. |  |

------------------------------------------------------------X

**ORDER GRANTING MOTION OF PLAINTIFF TONE N. GRANT TO REQUIRE
DEFENDANT TO PAY HIS DEFENSE COSTS IN UNDERLYING ACTIONS AND FOR
RELIEF FROM THE AUTOMATIC STAY AND DISCHARGE INJUNCTION, TO THE
EXTENT APPLICABLE, TO PERMIT DEFENDANTS
TO ADVANCE AND/OR PAY SUCH DEFENSE COSTS**

Upon the motion dated March 10, 2008 ("Motion") of Tone N. Grant To Require

Defendants To Pay His Defense Costs In Underlying Actions And For Relief From The

Automatic Stay And Discharge Injunction, To The Extent Applicable, To Permit Defendants To

Advance And/Or Pay Such Defense Costs, pursuant to 11 U.S.C. §§ 105 and 362(d), Bankruptcy

Rule 4001(a), and Bankruptcy Rule 7065, and the Court having reviewed the Motion and

theobjection and other pleadings related thereto, and upon the record of the hearing thereon (the

"Hearing"); and the Court having found that: (i) the Court has jurisdiction to consider the Motion

pursuant to 28 U.S.C. §§ 157 and 1334, (ii) adequate and sufficient notice of the Motion and the

101779446.1

1457185.1
1725225.1

Hearing having been given to all parties in interest and no other or further notice is necessary or required, and (iii) the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that:

1. The Motion is granted.

2. All capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the Illinois National Policy, as may be the case.

3. Illinois National is hereby directed to advance Defense Costs, subject to the terms of, and a complete reservation of rights, privileges and defenses of the parties under, the Illinois National Policy, (a) pending a final determination by this Court or another Court of competent jurisdiction that Illinois National has no right to withhold Defense Cost advances or (b) until there is a final determination by a court of competent jurisdiction regarding coverage under the Illinois National Policy.

4. To the extent applicable, the automatic stay imposed by 11 U.S.C. § 362(a) and the relevant injunction provisions of the Refco Plan and confirmation order are hereby modified (a) so as to permit the advancement of payment of Defense Costs pursuant to the Illinois National Policy to or on behalf of the Plaintiff, subject to a complete reservation of rights, privileges and defenses of the parties under the Illinois National Policy, and (b) so as to permit the Plaintiff to bring declaratory judgments or actions seeking monetary or equitable relief against Illinois National relating to the Illinois National Policy and matters related thereto, and to allow Illinois National to defend against and oppose such judgments and within

5. Illinois National shall notify counsel to the Plan Administrators of the Modified Joint Chapter 11 Plan of Refco, Inc. and Certain of Its Direct and Indirect Subsidiaries (the "Plan

1457185.1
1725225.1

Administrators") when disbursements of Defense Costs to the Illinois National Policy exceed $100,000 in the aggregate, and when such disbursements exceed $200,000, $300,000, and increments of $100,000 thereafter.

6. Entry of this Order shall be without prejudice to the right of the Plan Administrators or any party in interest to seek the reimposition of the automatic stay on a prospective basis with respect to any advances not yet made, for cause shown on appropriate notice to the Plaintiff and Illinois National.

7. Other than as set forth above, nothing in this Order shall modify the automatic stay or plan injunction or determine their applicability to the Illinois National Policy or its proceeds.


Dated: New York, New York
       March 25, 2008

                                    /s/Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE

1457185.1
1725225.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re

REFCO, INC., et al.,

                Debtors.

------------------------------------------------------------X

TONE N. GRANT,

                Plaintiff,

     v.

ILLINOIS NATIONAL INSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PENNSYLVANIA,

                Defendants.

------------------------------------------------------------X

Chapter 11

Case No. 05-60006 (RDD)

Jointly Administered

Adv. Proc. No. 08-01129-rdd

## ERRATA ORDER

**ORDERED**, that the Order Granting Motion of Tone N. Grant to Require Defendants to Pay His

Defense Costs in the Underlying Actions and For Relief From the Automatic Stay and Discharge

Injunction, to the Extent Applicable, To Permit Defendants to Advance and/or Pay Such Defense

Costs, dated March 25, 2008, Docket Number 15, be amended as follows:

1. Page 2, the last line of decretal paragraph 4, reading, "…and to allow Illinois National to

   defend against and oppose such judgments and within…" should be corrected to read as

   follows:

   > "…and to allow Illinois National to defend against and oppose such judgments
   >
   > and actions."

Dated: New York, New York
      March <u>26</u>, 2008

                                  <u>/s/Robert D. Drain                    </u>
                                    HON. ROBERT D. DRAIN
                                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 3**

Robert E. Kushner (REK-3578)
Kevin J. Windels (KJW-5477)
Stephen F. Willig (SFW-9847)
D'AMATO & LYNCH, LLP
70 Pine Street
New York, New York 10270
Phone: (212) 269-0927
Facsimile: (212) 269-3559
rkushner@damato-lynch.com
kwindels@damato-lynch.com
swillig@damato-lynch.com

*Attorneys for Defendant*
ILLINOIS NATIONAL INSURANCE COMPANY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

In re

REFCO. INC. et al.,

Debtors.

-------------------------------------------------------------- x

TONE N. GRANT,

Plaintiff,

-against-

ILLINOIS NATIONAL INSURANCE COMPANY
AND NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

Defendants.

------------------------------------------------------------X

Chapter 11

Case No. 05-60006 (RDD)

Jointly Administered

Adv. Proc. No. 08-1129-rdd

**AMENDED
ANSWER**

**Trial by Jury is Demanded
Pursuant to FRCP 38**

   Defendant Illinois National Insurance Company ("Illinois National")[1], by and

through its attorneys D'Amato & Lynch, LLP, as and for its Answer to the Complaint alleges the

following:

---

[1] Pursuant to a Stipulation and Order of Dismissal So Ordered on April 11, 2008, National Union Fire Insurance
Company of Pittsburgh, Pa. is no longer a party to this case.

1.    Denies each and every allegation contained in Paragraph "1" of the Complaint.

2.    Denies each and every allegation contained in Paragraph "2" of the Complaint.

3.    Denies each and every allegation contained in Paragraph "3" of the Complaint.

4.    Denies each and every allegation contained in Paragraph "4" of the Complaint.

5.    Denies each and every allegation contained in Paragraph "5" of the Complaint. This is a "non-core" proceeding and Illinois National does not consent to entry of final orders or judgment by the Bankruptcy Court. Illinois National further respectfully refers all questions of law to the Court.

6.    Denies each and every allegation contained in Paragraph "6" of the Complaint and respectfully refers all questions of law to the Court.

7.    Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "7" of the Complaint and respectfully refers all questions of law to the Court.

8.    Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "8" of the Complaint.

9.    Admits that Illinois National is an insurance company organized under the laws of the State of Illinois and is licensed to do business in New York and other states and denies each and every other allegation contained in Paragraph "9" of the Complaint.

10.     Admits each and every allegation contained in Paragraph "10" of the Complaint.

11.     Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "11" of the Complaint.

12.     Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "12" of the Complaint and respectfully refers the Court to the pleadings and indictments in the respective lawsuits referred to therein for their full content and meaning.

13.     Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "13" of the Complaint and respectfully refers the Court to the pleadings in the respective lawsuits referred to therein for their full content and meaning.

14.     Admits that Illinois National received notice of certain of the Civil Actions and the Criminal Action and denies knowledge or information sufficient to form a belief with respect to each and every other allegation contained in Paragraph "14" of the Complaint and respectfully refers the Court to the documents referred to therein for their full content and meaning.

15.     Denies each and every allegation contained in Paragraph "15" of the Complaint and respectfully refers the Court to the Directors, Officers and Private Company Liability Insurance Policy No. 931-75-64 issued by Illinois National Insurance Company (the "Illinois National Policy") in its entirety for its full content and meaning.

#296344v1

16.    Denies each and every allegation contained in Paragraph "16" of the Complaint and respectfully refers the Court to the Illinois National policy in its entirety for its full content and meaning.

17.    Denies each and every allegation contained in Paragraph "17" of the Complaint and respectfully refers the Court to the Illinois National Policy in its entirety, for its full content and meaning.

18.    Denies each and every allegation contained in Paragraph "18" of the Complaint and respectfully refers the Court to the Illinois National Policy in its entirety, for its full content and meaning.

19.    Denies each and every allegation contained in Paragraph "19" of the Complaint and respectfully refers the Court to the Illinois National Policy in its entirety for its full content and meaning.

20.    Denies each and every allegation contained in Paragraph "20 " of the Complaint and respectfully refers the Court to Exhibit "B" to the Complaint in its entirety for its full content and meaning.

21.    Denies each and every allegation contained in Paragraph "21" of the Complaint and respectfully refers the Court to Exhibit "C" to the Complaint for its full content and meaning.

22.    Admits that AIG Domestic Claims, Inc., on behalf of Illinois National, sent a letter to plaintiff's counsel dated June 8, 2007, which, among other things, referenced the "Other Insurance and Indemnification" clause contained in the Illinois National Policy (See Exhibit C to the Complaint) and denies each and every other allegation contained in Paragraph "22" of the Complaint.

4

23.    Admits that AIG Domestic Claims, Inc., on behalf of Illinois National, received a letter from plaintiff's counsel dated January 15, 2008 (See Exhibit "D" to the Complaint) and denies each and every other allegation contained in Paragraph "23" of the Complaint.

24.    Admits that AIG Domestic Claims, Inc., on behalf of Illinois National, sent a letter to plaintiff's counsel dated January 22, 2008 and refers the Court to the letter in its entirety (Exhibit D to the Complaint) for its full content and meaning and denies each and every other allegation contained in Paragraph "24" of the Complaint.

25.    Admits that AIG Domestic Claims, Inc., on behalf of Illinois National, sent a letter to plaintiff's counsel dated January 22, 2008, and refers the Court to the letter in its entirety (Exhibit E of the Complaint) for its full content and meaning, and denies each and every other allegation contained in Paragraph "25" of the Complaint.

26.    Denies knowledge or information sufficient to form a belief with respect to each and every allegation contained in Paragraph "26" of the Complaint.

27.    Admits that on March 7, 2008 plaintiff's counsel contacted Daniel FitzPatrick of AIG Domestic Claims, Inc., and denies each and every allegation contained in Paragraph "27" of the Complaint.

28.    Denies each and every allegation contained in Paragraph "28" of the Complaint.

29.    Denies each and every allegation contained in Paragraph "29" of the Complaint.

#296344v1

## ILLINOIS NATIONAL'S RESPONSE
## TO COUNT I OF THE COMPLAINT
### (Declaratory Relief)

30.    In response to paragraph "30" of the Complaint, Defendant repeats and realleges each and every response to paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31.    Denies each and every allegation contained in Paragraph "31" of the Complaint.

32.    Denies each and every allegation contained in Paragraph "32" of the Complaint.

33.    Denies each and every allegation contained in Paragraph "33" of the Complaint, except denies knowledge or information sufficient to form a belief with respect to whether Refco itself actually paid all premiums for the Illinois National Policy.

34.    Denies each and every allegation contained in Paragraph "34" of the Complaint.

35.    Denies each and every allegation contained in Paragraph "35 " of the Complaint.

36.    Denies each and every allegation contained in Paragraph "36" of the Complaint.

37.    Denies each and every allegation contained in Paragraph "37" of the Complaint.

#296344v1

## ILLINOIS NATIONAL'S RESPONSE
## TO COUNT II OF THE COMPLAINT
### (Injunctive Relief)

38.     In response to paragraph "38" of the Complaint, defendant repeats and realleges each and every response to paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     Denies each and every allegation contained in Paragraph "39" of the Complaint.

40.     Denies each and every allegation contained in Paragraph "40 " of the Complaint.

41.     Denies each and every allegation contained in Paragraph "41" of the Complaint.

42.     Denies each and every allegation contained in Paragraph "42" of the Complaint.

## AS AND FOR A FIRST SEPARATE DEFENSE

1.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted by this Court and, as a consequence of the foregoing, the Complaint should be dismissed in all respects.

## AS AND FOR A SECOND SEPARATE DEFENSE

2.     There is no coverage for plaintiff under the Illinois National Policy in connection with the Criminal Action or the Civil Actions (as defined in paragraphs 12 and paragraphs 13 of the Complaint), or such coverage is limited, because he was not a director, officer or employee of the Company at the time of his alleged Wrongful Acts.

#296344v1

## AS AND FOR A THIRD SEPARATE DEFENSE

3.    There is no coverage for plaintiff under the Illinois National Policy in connection with the Criminal Action or the Civil Actions pursuant to the terms of the "Run-off Endorsement" contained in Endorsement No.14 of the Illinois National Policy.  Pursuant to Endorsement No.14, the Illinois National Policy only covers Loss incurred by an Insured arising from a Claim for any Wrongful Act occurring on or prior to the Effective Time (August 5, 2004), which claim is first made during the period of January 24, 2004 to August 5, 2010.

## AS AND FOR A FOURTH SEPARATE DEFENSE

4.    There is no coverage for plaintiff under the Illinois National Policy in connection with certain of the Civil Actions pursuant to the terms of the "Major Shareholder Exclusion" contained in Endorsement No.12 of the Illinois National Policy.  Endorsement No.12 provides that Illinois National shall not be liable for any Loss in connection with any Claims brought by any individual(s) or entity(ies) that own or control 10% or more of the outstanding voting stock of the Company (as that term is defined by the policy); or by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim(s) is instigated and continued totally independent of and totally without the solicitation of, or assistance of any Major Shareholder.

## AS AND FOR A FIFTH SEPARATE DEFENSE

5.    There is no coverage for plaintiff under the Illinois National Policy pursuant to Exclusion 4(i) to the extent the Civil Actions are "brought by any Insured or by the Company; or…brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally

8

without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured...".

## AS AND FOR A SIXTH SEPARATE DEFENSE

6.    There is no coverage for plaintiff under the Illinois National Policy pursuant to Exclusion 4(j), to the extent that the Civil Actions and Criminal Action allege, arise out of, are based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering.

## AS AND FOR A SEVENTH SEPARATE DEFENSE

7.    There is no coverage for plaintiff under the Illinois National Policy pursuant to Exclusion 4(a), as the Criminal Actions and Civil Actions arise out of, are based upon and/or are attributable to the gaining in fact of profit and/or advantage to which an insured was not legally entitled.

## AS AND FOR AN EIGHTH SEPARATE DEFENSE

8.    There is no coverage for plaintiff under the Illinois National Policy pursuant to Exclusion 4(c) as the Criminal Actions and the Civil Actions arise out of, are based upon and/or are attributable to the committing in fact of criminal, fraudulent and/or dishonest acts, and/or any willful violations of statutes, rules and/or laws.

## AS AND FOR A NINTH SEPARATE DEFENSE

9.    There is no coverage for plaintiff under the Illinois National Policy pursuant to Exclusion 4(h), to the extent that the Criminal Actions and the Civil Actions allege, arise out of, are based upon or are attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement.

9

#296344v1

## AS AND FOR A TENTH SEPARATE DEFENSE

10.    There is no coverage for plaintiff under the Illinois National Policy for the Criminal or Civil Actions pursuant to the terms of the "Professional E&O Exclusion" contained in Endorsement No.4 of the Illinois National Policy.  Endorsement No.4 provides that Illinois National shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to any Insured(s)' performance of or failure to perform professional services for others for a fee, or any act(s), error(s) or omission(s) relating thereto

## AS AND FOR AN ELEVENTH SEPARATE DEFENSE

11.    There is no coverage for plaintiff under the Illinois National Policy because paragraph 2(k) of the policy (as amended by Endorsement No.1), states that Loss shall mean judgments, damages, settlements, post-judgment interest and Defense Costs, but shall not include, among other things, (i) civil or criminal fines, (ii) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds, and (iii) matters which may be deemed uninsurable under the law.  To the extent that any of the Civil Actions or the Criminal Action seeks such relief, it would not constitute Loss which is covered under the Policy.

## AS AND FOR A TWELFTH SEPARATE DEFENSE

12.    There is no coverage for plaintiff under the Illinois National Policy because the Directors and Officer's Insurance Application ("the Policy Application") submitted by Refco Group Ltd., LLC, ("Refco"), on or about January 7, 2004, signed by Phillip Bennett, excludes coverage of the Civil Actions and the Criminal Action, based on knowledge or information Directors or Officers had, at the time the Policy Application was signed, of acts errors and omissions that would give rise to claims under the Illinois National Policy.  The

10

Illinois National Policy provides that it was issued in reliance on the Policy Application, and that the Policy Application is incorporated by reference into the policy.

## AS AND FOR A THIRTEENTH SEPARATE DEFENSE

13.    Pursuant to the Other Insurance and Indemnification Clause of the Illinois National Policy, set forth in paragraph 14 (as amended by Endorsement No. 1), provides in pertinent part that:

> If there is any valid and collectible insurance which applies to any Loss covered by this policy, the Insurer shall not be liable for a greater proportion of such Loss than the applicable Limit of Liability under this policy for such loss bears to the total applicable Limit of Liability of all valid and collectible insurance against them unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.

Consequently, Illinois National is not liable to advance defense costs for an amount greater than its proportionate share pursuant to the terms of the Illinois National Policy.

## AS AND FOR A FOURTEENTH SEPARATE DEFENSE

14.    Pursuant to Clause 19, the Illinois National Policy is void as to all Insureds under the Illinois National Policy, (including plaintiff), "other than Individual Insureds who are "non-employee Directors of the Company and who did not personally know the statement or representation to be inaccurate or incomplete", because the person who executed the Policy Application (Phillip Bennett) knew that statements or representations made in the application, including financial statements submitted in connection therewith, were inaccurate or incomplete when it was submitted. The Illinois National Policy provides that it was issued in reliance on the Policy Application, and that the Policy Application is incorporated by reference into the policy.

## AS AND FOR A FIFTEENTH SEPARATE DEFENSE

15.    Plaintiff's claims are barred by the doctrines of waiver, estoppel and/or laches.

## AS AND FOR A SIXTEENTH SEPARATE DEFENSE

16.    Plaintiff's alleged damages, if any, were sustained as a direct and proximate result of plaintiff's own criminal acts, wrongful acts, negligence and/or breach of contract, thus barring and/or reducing proportionately, any recovery herein.

## AS AND FOR A SEVENTEENTH SEPARATE DEFENSE

17.    Plaintiff's alleged damages, if any, were sustained as a direct and proximate result of unforeseeable, superseding and/or intervening causes or the acts of other persons for which this answering defendant is neither responsible nor liable.

## AS AND FOR AN EIGHTEENTH SEPARATE DEFENSE

18.    Plaintiff has failed to mitigate his alleged damages, if any.

## AS AND FOR A NINETEENTH SEPARATE DEFENSE

19.    The answering defendant is under no duty to advance defense costs as described in the Complaint.

## AS AND FOR A TWENTIETH SEPARATE DEFENSE

20.    The relief sought by the Complaint is barred by the terms and conditions of the policy and the doctrines of integration and merger, and the parol evidence rule.

## AS AND FOR A TWENTY-FIRST SEPARATE DEFENSE

21.    This Court does not have full jurisdiction over this action because it is a non-core dispute and Illinois National does not consent to entry of final orders or judgment by the bankruptcy judge or this Court.

## AS AND FOR A TWENTY-SECOND SEPARATE DEFENSE

22.    It is against public policy for Illinois National to pay any Loss under its policy in connection with the Criminal Action and the Civil Actions, as alleged in the Complaint, based on the findings of fraud against plaintiff in the Criminal Action.

## AS AND FOR A TWENTY-THIRD SEPARATE DEFENSE

23.    Illinois National reserves its right to amend this Answer and to assert additional defenses and/or to supplement, alter or change its answer and defenses upon the discovery of more definite facts in the completion of further investigation or discovery.

## JURY DEMAND

Defendant Illinois National demands a trial by jury as to all issues raised in the Complaint pursuant to Rule 38 of the Federal Rules of Civil Procedure.

#296344v1

**WHEREFORE**, defendant Illinois National demands judgment dismissing the Complaint against it in its entirety and for attorneys' fees incurred in this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 6, 2008

Yours, etc.,

D'AMATO & LYNCH, LLP

By:     _Kevin J. Windels_
        Robert E. Kushner (REK 3578)
        Kevin J. Windels (KJW 5477)
        Stephen F. Willig (SFW 9847)
        Attorneys for Defendants
        Illinois National Insurance Company and
        National Union Fire Insurance Company
        of Pittsburgh, Pa.
        70 Pine Street
        New York, New York 10270-0110
        (212) 269-0927

TO:    ZUCKERMAN SPAEDER LLP
       Norman L. Eisen (NE-1198) (*pro hac vice pending*)
       Thomas G. Macauley (TM-3944) (*pro hac vice pending*)
       Laura E. Neish (LN-0040)
       William A. Schreiner, Jr. (WS-1327)
       1540 Broadway, Suite 1604
       New York, New York 10036
       Phone: (212) 704-9600
       Fax: (212) 704-4256

*Attorneys for Plaintiff Tone N. Grant*

#296344v1

14

Case 1:08-cv-04846-GEL     Document 3-6     Filed 05/23/2008     Page 22 of 31

## U.S. Bankruptcy Court

### Southern District of New York

Notice of Electronic Filing

The following transaction was received from Windels, Kevin J. entered on 5/6/2008 at 11:31 AM and filed on 5/6/2008

**Case Name:**        Grant v. Illinois National Insurance Company et al
**Case Number:**    08-01129-rdd
**Document Number:** 41

**Docket Text:**
Answer to Complaint (Related Doc # []) (related document(s)[39]) filed by Kevin J. Windels on behalf of Illinois National Insurance Company. (Windels, Kevin)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\KLAI\Desktop\Amended Answer.pdf
**Electronic document Stamp:**
STAMP NYSBStamp_ID=842906028 [Date=5/6/2008] [FileNumber=6688247-0] [
86fc95d96366ef682a798252b60bd95cb6669a53deeee157f06b66bc087aff12ec6df
290a8fe0c32f89eae37e69e12e2d879c3e8f433e0642ab893370a5615]]

**08-01129-rdd Notice will be electronically mailed to:**

Norman L. Eisen     neisen@zuckerman.com, jchen@zuckerman.com;lneish@zuckerman.com

Stephen F. Willig     swillig@damato-lynch.com, ecf@damato-lynch.com;hfried@damato-lynch.com

Kevin J. Windels     kwindels@damato-lynch.com, hfreid@damato-lynch.com;ecf@damato-lynch.com

**08-01129-rdd Notice will not be electronically mailed to:**

Regency Reporting, Inc.

# **EXHIBIT 4**

# MARSH

**Dave Garrigus**
Risk Analyst

Marsh USA Inc.
500 West Monroe
Chicago, IL 60661
312 627 6957  Fax  312 627 6272
David.Garrigus@marsh.com
www.marsh.com

January 13, 2004

Christine Hall
AIG
175 Water Street, 4th Floor
New York, NY 10038

Subject:
**Refco Directors and Officers Liability Application**

Christine,

Enclosed, please find the original, dated, and signed AIG Directors and Officers Liability Application for Refco.

Please feel free to call with any questions / concerns.

Thank you,

Dave Garrigus
Risk Analyst


Copy:
Pam Sylwestrzak

**AIG** American International Companies®

Name of Insurance Company to which Application is made
(herein called the "Insurer")

## DIRECTORS AND OFFICERS INSURANCE APPLICATION

Name of Insurance Policy to which Application is applicable

**NOTICE: THE POLICY PROVIDES THAT THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINSTTHE RETENTION AMOUNT.**

IF A POLICY IS ISSUED, IT WILL BE ON A CLAIMS-MADE BASIS.

1. **APPLICANT'S**

   (a)  Corporation name   *Refco Group Ltd., LLC*

   (b)  State of incorporation   *Delaware*

   (c)  Date of incorporation   *5/13/99 Succession entity after merger with*
        *Refco Group, LTD Incorporated on 4/30/85*

   (d)  Address   *550 W Jackson Blvd*
        *Suite #1200*
        *Chicago, IL 60661*

   (e)  Nature of business   *Brokerage*

   (f)  Primary SIC code(s)   *523130*

   (g)  Corporation has been continually operating since *1965*

   (h)  Total number of locations (please check): one_____ two_____ three_____ more than three _X_

   (i)  Does the Applicant operate any retail outlets?   Yes_____ No _X_  (If "Yes", total number of retail outlets: _____)

2. (a)  Amount of insurance requested:   $ *5,000,000*

   (b)  Self-insured retention desired (each loss):   $ *250,000*

62734 (5/95)                            1                            (7/97)

**3. Stock Ownership**

(a) The following securities of the Applicant (or its Subsidiaries) are publicly traded: [ ] equity, [ ] debt, [ ] mixed

(attach explanation)

(1) If no securities are publicly traded, check here: "none" X̲.

(2) For those securities that are publicly traded, indicate name of exchange(s) and ticket symbol(s)

here: _____ (If included as an attachment, check here: _____.)

( b) Total number of voting shares outstanding *947*

(c) Total number of voting shareholders *3*

(d) Total number of voting shares owned by its Directors (direct and beneficial) *947*

(e) Total number of voting shares owned by its Officers (direct and beneficial) who are not Directors *0*

(f) Does any shareholder own five percent or more of the voting shares directly or beneficially? If so, designate name and percentage of holdings. (If no such shareholders, check here: "none" _____.)
*Phillip Bennett 45% Tone Grant 45% BAWAG Overseas, Inc. 10%*

(g) Are there any other securities convertible to voting stock? If so, describe fully. (If none, check here: "none" X̲.)

**4.** (a) Complete list of all Directors of the Applicant by name and affiliation with other corporations. (If included as an attachment herein, check here _____.)
*Phillip R. Bennett, Manager*

(b) Complete list of all Officers of the Applicant by name and affiliation with other corporations. (If included as an attachment herein, check here X̲.) *attached*

**5.** List of all direct and indirect Subsidiary corporations:
*see attached;*

| Name | Business or Type of Operation | Percentage of Ownership | Date Acquired or Created | Domestic or Foreign a.l. Country of Incorporation |
|------|-------------------------------|-------------------------|--------------------------|---------------------------------------------------|
|      |                               |                         |                          |                                                   |

Coverage to include all Subsidiaries? Yes X̲ No _____ If "Yes," include complete list of Directors and Officers of each Subsidiary. If "No", include complete list of Directors and Officers of each Subsidiary for which coverage is requested. If included as an attachment herein, check here _____. (Attached)

6. Are any plans for merger, acquisition or consolidation of or by the Applicant or any of its Subsidiaries being considered? Yes_____ No __X__

    (a) If yes, have they been approved by the board of directors? Yes_____ No_____ Date of Approval_____

    (b) If so, have they been submitted to the shareholders for approval? Yes_____ No_____ Date of Approval_____

7. Does the Applicant or any of its Subsidiaries anticipate any registration of securities under the Securities Act of 1933 or any other offering of securities within the next year? Yes_____ No __X__ (If "Yes", give details and submit offering materials if available.)

8. (a) There has not been nor is there now pending any claim(s) against any person proposed for insurance in his or her capacity of either Director of Officer or the named Applicant or any of its Subsidiaries except as follows: (Attach complete details. If no such claims, check here: "none" __X__ .)

    (b) There has not been nor is there now pending any claim(s) against the Applicant or any of its Subsidiaries with regard to the securities of the Applicant or any of its Subsidiaries, except as follows: (Attach complete details. If no such claims, check here: "none" __X__ .)

9. (a) No Director or Officer has knowledge or information of any act, error or omission which might give rise to a claim under the proposed policy except as follows: (Attach complete details. If they have no such knowledge or information, check here: "none" __X__ .)

    (b) Neither the Applicant nor any of its Subsidiaries has knowledge or information of any act, error or omission which might give rise to a securities claim under the proposed policy except as follows: (Attach complete details. If they have no such knowledge or information, check here: "none" __X__ .)

10. Has the Applicant, any of its Subsidiaries or any Director and/or Officer:

    (a) Been involved in any antitrust, copyright or patent litigation? Yes_____ No __X__

    (b) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state antitrust or fair trade law? Yes_____ No __X__

    (c) Been charged in any civil or criminal action or administrative proceeding with a violation of any federal or state securities law or regulation? Yes_____ No __X__ *during last year*

    (d) Been involved in any representative actions, class actions, or derivative suits? Yes __X__ No_____

(If any of the above are answered "Yes," attach full details.)

It is agreed that with respect to Questions 9 and 10 above, if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage.

## 11. Previous Directors and Officers Insurance

    (a) Name of insurance company *National Union & Fire*

    (b) Limit of Liability *$5,000,000*

    (c) Self-insured retention *$250,000*

    (d) Policy expiration date *01/24/04*

(e)  Premium (indicate one year or more) $ *75,703*

(f)  Loss experience (Attach full details. If no losses, check here: __X__ .)

12.  Has any insurance carrier refused, canceled or nonrenewed coverage?*** Yes _____ No _X_ (If "Yes," attach full details including when and reason.)

13.  Name of Risk Manager and General Counsel (or equivalent position) and number of years in current position:

*Dennis Klejna  4 years*

14.  Name and Location (City) of outside law firm for securities or litigation matters:

*Mayer Brown & Rowe & Maw LLP   Chicago, Il*

15.  **Attach copies of the following for the Applicant and, to the extent available, each of its Subsidiaries:**

(a)  Latest annual report

(b)  Latest 10K report filed with the SEC (if the Company is publicly traded)

(c)  Latest interim financial statement available

(d)  All proxy statements and Notices of Annual Meeting of stockholders within the last twelve months

(e)  All registration statements filed with the SEC within the last twelve months (if the Company is Publicly traded)

(f)  Copy (certified by Corporate Secretary) of the indemnification provisions of the charter and the by-laws. Also attach a copy of any corporate indemnification agreement.

(g)  Latest CPA management letter along with applicant's responses to any recommendations made therein.

\*\*\*MISSOURI APPLICANTS NEED NOT REPLY.

62734 (5/95)                                          4                                          (7/97)

It is agreed that the Applicant will file with the Insurer, as soon as it becomes available, a copy of each registration statement and annual or interim report which the Applicant or any Subsidiary may from time to time file with the Securities and Exchange Commission.

THE UNDERSIGNED AUTHORIZED OFFICER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTHORIZED OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENTS TO BIND THE INSURANCE

SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED, AND IT WILL BE ATTACHED TO AND BECOME PART OF THE POLICY.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.

NOTICE TO ARKANSAS APPLICANTS: "ANY PERSON WHO, KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

NOTICE TO COLORADO APPLICANTS: "IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES."

NOTICE TO FLORIDA APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE."

NOTICE TO KENTUCKY APPLICANTS: "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME."

NOTICE TO MINNESOTA APPLICANTS: "A PERSON WHO SUBMITS AN APPLICATION OR FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME."

NOTICE TO NEW JERSEY APPLICANTS: "ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES."

62734 (5/95)                                5                              (7/97)

**NOTICE TO NEW YORK APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION."

**NOTICE TO OHIO APPLICANTS:** "ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD."

**FOR PENNSYLVANIA APPLICANTS:** "ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES."

Signed _____
                    (Applicant)

Date _____JAN 7. 200_____

Title_____CEO._____          Corporation _____
     (must be signed by Chairman of the Board or President)                    (Corporate Seal)

Attest _____

Broker _____

Address _____

_____

62734 (5/95)                                6                                (7/97)

Please read the Following statement carefully. and sign where indicated. If a policy is issued, this signed statement will be attached to the policy.

The undersigned authorized officer of the Applicant hereby acknowledges that he/she is aware that the limit of liability contained in this policy shall be reduced, and may be completely exhausted, by the costs of legal defense and, in such event, the Insurer shall not be liable for the costs of legal defense or for the amount of any judgment or settlement to the extent that such exceeds the limit of liability of this policy.

The undersigned authorized officer of the Applicant hereby further acknowledges that he/she is aware that legal defense costs that are incurred shall be applied against the retention amount.

Signed _____

              (Applicant)

Date _____ JAN 7. 2004 _____

Title _____ CEO _____

    (must be signed by Chairman of the Board or President)

62734 (5/95)

7

(7/97)

# **EXHIBIT 5**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/13/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

AXIS REINSURANCE COMPANY,                    :        No. 07-CV-7924 (GEL)

                              Plaintiff,     :

              v.                             :        **<u>ORDER</u>**

PHILLIP R. BENNETT, et al.,                  :

                              Defendants.    :

                                             :

--------------------------------------------------------------- X

In re                                        :        Chapter 11

                                             :

REFCO, INC., et al.,                         :        Case No. 05-60006 (RDD)

                                             :

                              Debtors.       :        Jointly Administered

--------------------------------------------------------------- X

AXIS REINSURANCE COMPANY,                    :        Adv. Proc. No. 07-1712-RDD

                                             :

                              Plaintiff,     :

                                             :

              v.                             :

                                             :

PHILLIP R. BENNETT, et al.,                  :

                                             :

                              Defendants.    :

--------------------------------------------------------------- X

TONE N. GRANT, et al.,                       :        Adv. Proc. 07-2005-RDD

                                             :

                              Plaintiffs,    :

              v.                             :

                                             :

AXIS REINSURANCE COMPANY,                    :

                                             :

                              Defendant.     :

                                             :

--------------------------------------------------------------- X

[caption continues on next page]



----------------------------------------------------------- X
                                                           :
LEO R. BREITMAN, et al.,                                   :         Adv. Proc. No. 07-2032-RDD
                                                           :
                    Plaintiffs,                            :
          v.                                               :
                                                           :
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Defendant.                             :
                                                           :
                                                           :
----------------------------------------------------------- X
                                                           :
AXIS REINSURANCE COMPANY,                                  :         (1) No. 07-CV-9420-GEL
                                                           :         (2) No. 07-CV-9842-GEL
                    Plaintiff,                             :         (3) appeal not yet assigned
          v.                                               :
                                                           :
PHILLIP R. BENNETT, et al.,                                :
                                                           :
                    Defendants.                            :
                                                           :
----------------------------------------------------------- X
                                                           :
TONE N. GRANT, et al.,                                     :         No. 07-CV-9843-GEL
                                                           :
                    Plaintiffs,                            :
          v.                                               :
                                                           :
AXIS REINSURANCE COMPANY,                                  :
                                                           :
                    Defendant.                             :
                                                           :
----------------------------------------------------------- X

GERARD E. LYNCH, United States District Judge:

 In accordance with the Court's oral directions at the November 8, 2007 status conference

held in the above-captioned matters:

 1. The appeals now pending before this Court from the decisions of the Bankruptcy

Court (some of which have been docketed as Nos. 07-CV-9420-GEL, 07-CV-9842-GEL and 07-

CV-9843-GEL, and one of which has not yet been assigned a docket number in this Court) shall be briefed on the following schedule, which has been agreed to by all parties:  Appellant Axis Reinsurance Company ("Axis") shall serve and file its opening brief on or before November 28, 2007.  Appellees shall serve and file their opposition briefs on or before December 21, 2007. Axis shall serve and file its reply brief, if any, on or before January 9, 2008.

2.     Pursuant to the agreement of the parties and 28 U.S.C. § 157(d), the bankruptcy reference is hereby withdrawn with respect to the remaining claims now pending in the Bankruptcy Court as consolidated adversary proceedings No. 07-1712-RDD, 07-2005-RDD and 07-2032-RDD.  The Clerk of the Court is directed to assign such proceedings to this Court with appropriate district court docket numbers.  The withdrawal of the reference is without prejudice to any party's rights or position regarding the appropriate venue for future coverage litigation (if any) involving carriers other than Axis.

3.     In the event that Dennis Klejna (or any other party) wishes to file a motion for summary judgment in the cases now docketed as consolidated adversary proceedings No. 07-1712-RDD, 07-2005-RDD and 07-2032-RDD, such motion shall be made to this Court.  Absent further order of this Court, no discovery shall take place unless such discovery (a) is stipulated to by the parties making and opposing such motion and (b) affects only the parties to such motion.

4.     The civil action pending before this Court as No. 07-CV-7924-GEL is hereby stayed until 30 days have elapsed from this Court's decision regarding the appeals described in paragraph 1 of this Order.

SO ORDERED this 13th day of November, 2007.

_____
UNITED STATES DISTRICT JUDGE

4

# **EXHIBIT 6**

## Windels, Kevin

**From:** Schreiner, William [wschreiner@zuckerman.com]
**Sent:** Tuesday, April 22, 2008 10:28 AM
**To:** Windels, Kevin
**Cc:** Eisen, Norman L.; Neish, Laura; Willig, Stephen; Manire, Michael; Sottile, James
**Subject:** RE: Tone Grant v. Illinois National

Kevin,

Mr. Grant will not stipulate to a withdrawal of the reference.

Bill

 **ZUCKERMAN SPAEDER** LLP

William A. Schreiner Jr.
wschreiner@zuckerman.com

1800 M STREET, NW · SUITE 1000 · WASHINGTON, DC 20036-5802
202.778.1858 direct · 202.822.8106 fax

> Download V-card | Office | Website | My Bio

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful. If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800, and permanently delete all copies.

**From:** Windels, Kevin [mailto:KWindels@damato-lynch.com]
**Sent:** Saturday, April 19, 2008 2:03 PM
**To:** Schreiner, William
**Cc:** Eisen, Norman L.; Neish, Laura; Willig, Stephen; Manire, Michael
**Subject:** RE: Tone Grant v. Illinois National

Bill,
    I would appreciate it if you could please provide me with a response to my below email. I would like to avoid needless motion practice and am asking that your client stipulate to this. Please advise. Thanks.

**From:** Windels, Kevin
**Sent:** Wednesday, April 16, 2008 12:25 PM
**To:** Schreiner, William
**Cc:** Eisen, Norman L.; Neish, Laura; Willig, Stephen; Manire, Michael
**Subject:** Tone Grant v. Illinois National

Bill,

I wanted to follow up on a request that I have raised several times now, that plaintiff agree to stipulate to withdraw the reference in this case. I would appreciate it if you could let me know as soon as possible. Thanks.
Kevin

*Kevin J. Windels*
*D'Amato & Lynch, LLP*
*70 Pine Street*
*New York, NY 10270*
*212-269-0927*

**This e-mail message is from a law firm and is for the sole use of the intended recipient and may contain confidential and/or privileged information. Any unauthorized use, review, distribution or disclosure is prohibited without the prior written consent of the person/entity that drafted this communication. If you are not the intended recipient, please contact the sender by reply e-mail or express mail and destroy all copies of the original message.**

5/2/2008

# **EXHIBIT 7**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
                                    :
In Re:                              :    05-60006
                                    :
    REFCO, LLC,                     :
                                    :
            Debtor.                 :
------------------------------------X
                                    :
AXIS REINSURANCE COMPANY,           :    07-1712
                                    :
            Plaintiff,              :
                                    :
            v.                      :    One Bowling Green
                                    :    New York, New York
BENNETT, et al.,                    :
                                    :    August 30, 2007
            Defendants.             :
------------------------------------X

              TRANSCRIPT OF HEARING ON MOTIONS
          BEFORE THE HONORABLE ROBERT D. DRAIN
              UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Klejna/Murphy:        MATTHEW R. GOLDMAN, ESQ.
                          HELEN B. KIM, ESQ.
                          Baker & Hostetler LLP
                          3200 National City Center
                          1900 East 9th Street
                          Cleveland, Ohio  44114-3485

For Director Defendants:  MICHAEL F. WALSH, ESQ.
                          SCOTT E. COHEN, ESQ.
                          Weil, Gotshal & Manges LLP
                          767 Fifth Avenue
                          New York, New York  10153-0119


For Axis Reinsurance:     JOAN M. GILBRIDE, ESQ.
                          WAYNE BORGEEST, ESQ.
                          ROBERT A. BENJAMIN, ESQ.
                          Kaufman, Borgeest & Ryan LLP
                          200 Summit Lane Drive
                          Valhalla, New York 10595


                          (Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

APPEARANCES CONTINUED:

| | |
|---|---|
| For Defendants Schoen, Jaekel Lee, Harkins, Brightman, O'Kelly and Gantscher: | PAUL FERRILLO, ESQ. Weil, Gotshal & Manges LLP 767 Fifth Avenue New York, New York 10153-0119 |
| For Phillip Silverman: | RICHARD CASHMAN, ESQ. Times Square Tower 7 Times Square New York, New York 10036-6524 |
| For Tone Grant: | NORMAN L. EISEN, ESQ. Zuckerman Spaeder LLP 1800 M Street NW, Suite 1000 Washington, D.C. 20036-5802 |
| For Phillip Bennett: | DEBORAH ADLER, ESQ. Golenbock, Eiseman, Assor, Bell & Peskoe LLP 457 Madison Avenue New York, New York 10022 |
| For Arch Insurance: | DANIEL STANDISH, ESQ. Wiley Rein LLP 1776 K Street NW Washington, D.C. 20006 |
| For Robert Trosten: | RACHEL M. KORENBLAT, ESQ. Morvillo, Abramowitz, Grand, Jason, Anello & Bohren, PC 565 Fifth Avenue New York, New York 10017 |

(Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

APPEARANCES CONTINUED:


For Sexton and Sherer:    IVAN O. KLINE, ESQ.
                          Friedman & Wittenstein
                          600 Lexington Avenue
                          New York, New York  10022



Court Transcriber:        RUTH ANN HAGER
                          TypeWrite Word Processing Service
                          356 Eltingville Boulevard
                          Staten Island, New York 10312


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

59

1  decision.  Those differences do not call into question issues

2  of efficiency or fairness.  As I said before, the heavy lifting

3  in this dispute is over the underlying factual point as to

4  whether there was knowledge of conditions giving rise to a

5  "claim."  That's heavy lifting in the first instance by the

6  parties in their discovery and in the second instance by the

7  parties and the court in determining the merits of that

8  contention, and that's already going to be taking place in the

9  District Court.  It seems to me that, therefore, this

10  litigation should be deferred under the substantial overlap

11  cases to await determination by the District Court of those

12  underlying issues.

13          It also seems to me that there is a basis as

14  discussed in oral argument, if the District Court agrees, for

15  the District Court to have jurisdiction over these issues if

16  they are to be teed up there, as was done in the WorldCom

17  Securities case, which involved a similar situation where a

18  plan had been confirmed and gone effective and the bankruptcy

19  court had some concern about how involved it should be in

20  issues that should be primarily between third parties to the

21  bankruptcy case.

22          So on that basis, I will grant the director

23  defendants' motion to dismiss, without prejudice, although I

24  would strongly encourage the parties if they were ultimately to

25  pursue this litigation to pursue it in a different forum

60

1  because of the jurisdictional concerns that I've raised.

2             Mr. Walsh, you can submit an order to that effect

3  after circulating it to counsel for Axis.

4             MR. WALSH:  I will do that, Your Honor.

5             THE COURT:  And I suppose to your allies in the

6  defendant group.

7             MR. WALSH:  Thank you, Your Honor.

8             THE COURT:  Okay.

9             MS. GILBRIDE:  Your Honor, if I may just to

10  clarify, you've now dismissed the entire litigation?

11            THE COURT:  Well, that's my inclination.  I'll hear

12  oral argument, but that's my inclination.  I'll hear oral

13  argument on this motion, but it seems to me it all should go.

14            MS. GILBRIDE:  Your Honor, it seems to me if

15  another court, another forum is going to hear this issue, there

16  really is no --

17            THE COURT:  Well, you know what?  As far as the

18  other defendants are concerned, that's my preliminary ruling.  I

19  don't want to -- I said specifically to Mr. Goldman and his

20  colleagues that I would hear them out on this other point, but

21  that's my strong inclination.

22            In other words, he has an uphill fight.

23            MR. GOLDMAN:  And I heard that, Your Honor.  Okay.

24  So I guess it's one of the disadvantages of going last.  You

25  get so many other things resolved for you and said.  Let me

83

1   in fact your client's going to pay or not.  If they're not,

2   then I think this is ripe.  If they are going to advance

3   defense costs or they're considering it, it's either not ripe

4   or I'll give your clients some more time to consider this

5   issue.

6              MS. GILBRIDE:  Our position has consistently been

7   that we're not going to advance defense costs in the absence of

8   a judicial determination that we must.  Our policy says that we

9   -- it says that we must advance covered defense costs.

10             THE COURT:  Okay.  Then I believe this issue is

11  ripe.  So I have been persuaded -- Mr. Goldman has persuaded me

12  that I should dismiss the underlying action brought by Axis but

13  keep the counterclaim on the docket.

14             It seems to me as a practical matter it may make

15  sense to move to withdraw the reference of this matter, but

16  that's not something I can do.  I also need to know -- because

17  there's no record here really -- as to when these costs are

18  going to kick in.

19             MR. GOLDMAN:  Your Honor, they've already kicked

20  in.  We have bills that were submitted to Axis approximately

21  two weeks ago for July-time because the Lexington policy

22  exhausted with the payment of June-time so they have the bills;

23  we're waiting for payment.

24             MR. KLINE:  I don't believe this is a dispute,

25  Your Honor.

87

1  policies.

2              THE COURT:  But you say it's about $2 million?

3              MS. GILBRIDE:  Yes, Your Honor.  I mean we've just

4  gotten the bills in, so they haven't been the subject of any

5  sort of a review for what's been incurred but that's the gross

6  amount.

7              MR. CASHMAN:  Your Honor, I'm sorry, I haven't

8  spoken yet.  This is Richard Cashman.  We represent one of the

9  officer defendants, Philip Silverman, and I just wanted to

10  respond to Your Honor's question, and that is there are bills

11  that are coming, as well, because there has been a lot of

12  activity in these cases.

13             MS. KIM:  What do you recommend [sic]?

14             THE COURT:  Well, it seems to me that on the issue

15  of the contract interpretation one could get to that issue very

16  quickly.  It's a matter of contract interpretation and

17  consequently unless someone has a different view I should not

18  be thinking here about a lengthy injunction and if it is to be

19  teed up here it should be teed up promptly.

20             I continue to think, although this is beyond my

21  power, that given the existence of a securities action and the

22  inevitable tie-ins to settlements that a district judge might

23  want to have the reference but that's not for me to decide.

24             I also know that law firms generally are prepared

25  to wait a little bit for payment of their bills.  So I'm really

112

\* \* \* \* \*

1

2     I certify that the foregoing is a court transcript from

3     an electronic sound recording of the proceedings in the above-

4     entitled matter, except where, as indicated, the Court has

5     modified the transcript.

6

7

8

9                                          Ruth Ann Hager

10     Dated:   August 31, 2007

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**AFFIDAVIT OF SERVICE VIA E-MAIL AND OVERNIGHT MAIL**</u>

STATE OF NEW YORK  )
                         ss.:
COUNTY OF NEW YORK )

            **STEPHEN F. WILLIG**, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides in Hazlet, New Jersey.

            On May 16, 2008, deponent served the within **DECLARATION OF KEVIN J. WINDELS IN SUPPORT OF ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE** upon:

| | |
|---|---|
| Norman Eisen, Esq. | Steven Wilamowsky, Esq. |
| Zuckerman Spaeder, LLP | Bingham McCutcheon, LLP |
| 1800 M Street, N.W. | 399 Park Avenue |
| Washington, D.C. 20036-5802 | New York, NY 10022 |
| neisen@zuckerman.com | steven.Wilamowsky@bingham.com |
| | |
| Laura E. Neish, Esq. | Michael T. Hannafan, Esq. |
| Zuckerman Spaeder, LLP | Blake Tyler Hannafan, Esq. |
| 1540 Broadway, Suite 1604 | Hannafan & Hannafan, Ltd. |
| New York, NY 10036-4039 | 1 East Wacker Drive, Suite 1208 |
| lneish@zuckerman.com | Chicago, Illinois 60601 |
| | mth@hannafanlaw.com |
| | bth@hannafanlaw.com |

the attorneys for the plaintiff and the plan administrator herein at the e-mail address designated and agreed to in writing by said person for that purpose by electronically delivering a true copy thereof, and also at the address(es) designated by said attorney(s) for that purpose by leaving a true copy of same enclosed in a pre-paid properly addressed wrapper for UPS overnight delivery.

                         s/Stephen F. Willig
                         **STEPHEN F. WILLIG**

Sworn to before me this
16th day of May, 2008

s/Kevin J. Windels
     NOTARY PUBLIC

#297426v1