`Case 1:08-cv-04846-GEL   Document 6   Filed 06/09/2008   Page 1 of 13`

Norman Eisen *(pro hac vice pending)*  
William A. Schreiner, Jr. (WS-1327)  
Laura E. Neish (LN-0040)  
ZUCKERMAN SPAEDER LLP  
1540 Broadway, Suite 1604  
New York, New York 10036  
Phone: (212) 704-9600  

*- and -*

Michael T. Hannafan  
Blake T. Hannafan  
HANNAFAN & HANNAFAN, LTD.  
One East Wacker Drive, Suite 2800  
Chicago, IL  60601  
Telephone: (312) 527-0055  
Facsimile: (312) 527-0220  

*Attorneys for Plaintiff Tone N. Grant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>REFCO, INC., et al.,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 05-60006 (RDD)<br><br>Jointly Administered<br><br>Adv. Proc. No. 08-01129-rdd |
| TONE N. GRANT,<br><br>                    Plaintiff,<br>        v.<br><br>ILLINOIS NATIONAL INSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,<br><br>                    Defendants. | Case No. 08-CV-4846 (GEL)<br><br>*Electronically Filed* |

**MEMORANDUM OF PLAINTIFF TONE N. GRANT IN OPPOSITION TO ILLINOIS NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE REFERENCE FROM BANKRUPTCY COURT**

1840362.1

-i-

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

    A.    Refco And The Underlying Actions ................................................................... 2

    B.    The Illinois National Policy ................................................................................ 2

    C.    Illinois National's Refusal to Advance Defense Costs and the Preliminary Injunction Motion ............................................................................................... 4

ARGUMENT ................................................................................................................................ 5

ILLINOIS NATIONAL HAS NOT DEMONSTRATED CAUSE TO WITHDRAW
THE REFERENCE FROM THE BANKRUPTCY COURT ....................................................... 5

    A.    Legal Standard for Withdrawal of the Reference ............................................... 5

    B.    Denial of Illinois National's Motion Will Promote Judicial Economy. ............. 6

    C.    Illinois National's Jury Demand Does Not Weigh in Favor of Withdrawing the Reference. ................................................................................. 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

## Federal Cases

*Ames Dep't Stores, Inc. v. TJX Cos., Inc. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157 (S.D.N.Y. 1995) .................................................................................................................. 9

*Axis Reinsurance Co. v. Bennett*, Adv. Proc. No. 07-01717 (RDD) (Bankr. S.D.N.Y.) ....... *passim*

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214 (D. Haw. 2006) ...................... 6, 7

*Mishken v. Ageloff*, 220 B.R. 784 (S.D.N.Y. 1998) ........................................................................ 6

*Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp.* (*In re FMI Forwarding Co., Inc.*), No. 04 Civ. 630, 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) .................................................................................................... 6

*Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F. 3d 1095 (2d Cir. 1993) ................................................................................................ 6, 9

*Schneider v. Riddick* (*In re Formica Corp.*), 305 B.R. 147 (S.D.N.Y. 2004) ................................ 6

*United States v. Stein*, 452 F. Supp. 2d 276 (S.D.N.Y. 2006) ....................................................... 9

## Federal Statutes

28 U.S.C. § 157(d) ............................................................................................................................ 5

Plaintiff Tone N. Grant, by and through undersigned counsel, hereby submits this opposition to the motion of Illinois National Insurance Company ("Illinois National") to withdraw the reference from the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned adversary proceeding (the "Adversary Proceeding").

## **PRELIMINARY STATEMENT**

Illinois National confuses the Adversary Proceeding for something it is not. The Adversary Proceeding seeks a determination of a narrow contractual issue—Mr. Grant's right to advancement of defense costs under a policy issued by Illinois National—that has already been considered by the Bankruptcy Court. In support of its motion to withdraw the reference, Illinois National asserts an array of claims relating not to the preliminary issue of advancement, but to the ultimate issue of coverage under that policy. A claim for coverage, however, is not raised in the complaint or the answer, and so is not relevant to the Adversary Proceeding. Illinois National's arguments concerning judicial efficiency and economy rest on this fundamental misapprehension of the issues at stake in the Adversary Proceeding. The most efficient resolution of the claims in the Adversary Proceeding is to adopt the approach Judge Koeltl followed in another Refco insurance matter, *Axis Reinsurance Co. v. Bennett*, Adv. Proc. No. 07-01717 (RDD) (Bankr. S.D.N.Y.)— deny the motion to withdraw the reference and allow the Bankruptcy Court to reach a final resolution of the advancement issue.

Nor does the fact that other coverage actions in the main tower of Refco directors' and officers' insurance are pending before this Court counsel in favor of withdrawing the reference here. As Illinois National notes in its moving brief, the Illinois National Policy is a "stand alone policy, with a different policy period, and is not part of the Tower of insurance issued to Refco,

-1-

Inc." Memorandum in Support of Illinois National's Motion to Withdraw the Reference ("Ill. Nat. Mem.") at 6. There is thus no danger of "conflicting resolutions of the same issues" that would weigh in favor of withdrawal of the reference. *Id*. at 14. The right to advancement under the Illinois National Policy is distinct from the right to advancement under the polices in the main tower.

## BACKGROUND

### A.    Refco And The Underlying Actions

On or about October 17, 2005, Refco, Inc. and most of its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code. On November 25, 2005, Refco, LLC filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.

Thereafter, Mr. Grant was named a defendant in a criminal action (the "Criminal Action") and various civil actions (together with the Criminal Action, the "Underlying Actions") arising out of Refco's collapse.[1]

### B.    The Illinois National Policy[2]

Illinois National issued the primary policy, Directors, Officers and Corporate Liability Insurance Policy No. 931-75-64 (the "Illinois National Policy") for the period January 24, 2004 to January 24, 2005 with a $5 million limit of liability. The Illinois National Policy names as "Individual Insureds" under the Policy "any past, present or future duly elected or appointed

---

[1] On April 17, 2008, a jury convicted Mr. Grant in the Criminal Action.
[2] The Illinois National Policy "stands alone" separate from the main tower of Refco directors' and officers' insurance with which this Court is already familiar. The main tower policies were written to cover a different, later time period. That tower includes the following policies: (1) U.S. Specialty Insurance Company ($10 million primary coverage); (2) Lexington Insurance Company ($7.5 million excess of $10 million); (3) Axis Reinsurance Company ($10 million excess of $17.5 million); (4) Allied World Assurance Company ($12.5 million excess of $27.5 million); (5) Arch Insurance Company ($10 million excess of $40 million); and (6) XL Insurance Company ($20 million excess of $50 million).

director [or] officer…of the Company." *See* Ex. A to Windels Decl. Ex. 1 at Definition (i)(1). The Illinois National Policy provides those directors and officers with coverage for "Loss of each and every Director, Officer or Employee of the Company arising from a Claim…for any Wrongful Act." *Id.* at Insuring Agreement (A).

The Illinois National Policy requires Illinois National to advance defense costs as incurred during the pendency of Claims:

> The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a claim for which coverage is provided.... Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition.

*See id.* at Insuring Agreement (1) and Section (8). "Defense Costs" include the full range of litigation regarding a Claim, commencing with investigation and running all the way through appeal. *Id.* at Definition (e) (defense costs are defined to include "reasonable and necessary fees, costs and expenses…resulting solely from the investigation, adjustment, defense and appeal of a Claim…").

The Underlying Actions are Claims for "Wrongful Acts," as defined in the Illinois National Policy. *Id.* at Definition (t). The Illinois National Policy defines "Loss" to include defense costs. *See id*. at Definition (k) and Endorsement No. 1.

By letter dated January 22, 2007, Mr. Grant's counsel informed Illinois National that Mr. Grant had been indicted, and demanded coverage under the Illinois National Policy. After much subsequent correspondence between the parties, Illinois National confirmed its duty to advance defense costs in a letter dated January 22, 2008. *See* Windels Decl. Ex. 1, ¶¶ 20, 24.

-3-

### C. Illinois National's Refusal to Advance Defense Costs and the Preliminary Injunction Motion

On March 7, 2008—two weeks before the beginning of Mr. Grant's criminal trial—Illinois National informed Mr. Grant that it was reconsidering its position on advancement and would not pay the defense bills Mr. Grant had submitted. Mr. Grant then commenced the Adversary Proceeding, filing a complaint and a preliminary injunction motion before Bankruptcy Judge Robert D. Drain on March 10, 2008.

In the Adversary Proceeding, Mr. Grant sought 1) a declaration that he is entitled to advancement of defense costs under the Illinois National Policy on an as-incurred basis through the Criminal Action and the other Underlying Actions and 2) preliminary and permanent injunctive relief requiring Illinois National to advance defense costs in the Underlying Actions in accordance with the Illinois National Policy. *See* Windels Decl. Ex. 1 ¶¶ 30-42. Mr. Grant did not seek a declaration of coverage under the Illinois National Policy. *See id.*

Following a hearing on March 20, 2008, Judge Drain granted Mr. Grant's preliminary injunction motion. The Order provided, in relevant part, that

> Illinois National is hereby directed to advance Defense Costs, subject to the terms of, and a complete reservation of rights, privileges and defenses of the parties under, the Illinois National Policy, (a) pending a final determination by this Court or another Court of competent jurisdiction that Illinois National has no right to withhold Defense Cost advances or (b) until there is a final determination by a court of competent jurisdiction regarding coverage under the Illinois National Policy.

Windels Decl. Ex. 2, ¶ 3. Illinois National filed an appeal of the Order on April 4, 2008.

Following entry of the Order, Illinois National refused to advance Mr. Grant's defense costs in full, on the grounds that other insurance was available to pay a portion of these costs. At the time, Allied World Assurance Company ("AWAC"), the carrier in the main tower of Refco directors' and officers' insurance, was refusing to advance any defense costs to Mr. Grant and

other insureds.  On April 4, 2008, while his criminal trial was ongoing, Mr. Grant moved before Judge Drain to require Illinois National to pay his defense costs in full, or in the alternative to order Illinois National to pay an appropriate share with AWAC (the "April 4 motion").  On April 18, 2008, Judge Drain ordered AWAC to advance defense costs and denied Mr. Grant's April 4 motion as moot.

Illinois National filed an Answer in the Adversary Proceeding on April 25, 2008, and an Amended Answer on May 6, 2008.  In its Amended Answer, Illinois National denied most of the allegations in Mr. Grant's Complaint and demanded a trial by jury.  *See* Windels Decl. Ex. 3.  Illinois National also asserted twenty-three affirmative defenses to the Complaint, including defenses related to coverage.  *See id.*  Illinois National did not assert any counterclaims in its Amended Answer.

On May 16, 2008, Illinois National filed the instant motion to withdraw the reference.

## ARGUMENT

### ILLINOIS NATIONAL HAS NOT DEMONSTRATED CAUSE TO WITHDRAW THE REFERENCE FROM THE BANKRUPTCY COURT

#### A. Legal Standard for Withdrawal of the Reference

Section 157(d) of the title 28 of the U.S. Code provides that a district court "*may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  28 U.S.C. § 157(d) (emphasis added).  While the statute does not define "cause," courts in this Circuit consider a series of factors in evaluating whether to withdraw the reference, including: (i) whether the action is core or non-core; (ii) judicial economy and efficiency; (iii) uniform bankruptcy administration; (iv) reduction of forum shopping; (v) economical use of the debtors' and creditors' resources; (vi) expediting the bankruptcy process; and (vii) the presence of a jury demand.  *Orion Pictures*

*Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir. 1993).

Although the first factor is whether the matter is core or non-core, the core/noncore analysis is not dispositive, however, because "[i]n the final analysis, the critical question is efficiency and uniformity." *Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp. (In re FMI Forwarding Co., Inc.),* 00 B. 4185 (CB), 2005 WL 147298, at *5 (S.D.N.Y. Jan. 24, 2005) (quoting *Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (internal quotation marks omitted)). *See also Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.* 355 B.R. 214, 223 (D. Haw. 2006). In making this determination, the district court should consider the extent to which the bankruptcy court has familiarized itself with the litigation. *See Schneider v. Riddick (In re Formica Corp.),* 305 B.R. 147, 150-51 (S.D.N.Y. 2004) (stating that classification of claim as non-core "carries little weight in light of the litigation already occurring before the bankruptcy court").

Here, considerations of judicial efficiency and economy weigh heavily in favor of keeping the Adversary Proceeding in the Bankruptcy Court. The Bankruptcy Court has already expended considerable resources in familiarizing itself with the advancement issues asserted in the Adversary Proceeding. Allowing the Bankruptcy Court to retain the action would promote the prompt adjudication of the only remaining claims in the Adversary Proceeding—the availability of permanent injunctive and declaratory relief regarding advancement. This Court should therefore exercise its discretion to deny Illinois National's motion.

### B. Denial of Illinois National's Motion Will Promote Judicial Economy.

While Illinois National contends that the Adversary Proceeding is at "a very early stage," in reality the litigation is nearly complete, after a significant investment of time and resources by the Bankruptcy Court. The Bankruptcy Court has considered two motions—the March 10

preliminary injunction motion and the April 4 motion to require compliance with the preliminary injunction Order.  It has heard oral argument from both parties on the preliminary injunction motion.  The only remaining issue in the Adversary Proceeding is whether permanent injunctive and declaratory relief is warranted.  Since the Bankruptcy Court is already familiar with the advancement provisions of the Illinois National Policy, allowing it to decide the remaining issues in the Adversary Proceeding would promote judicial economy and the prompt resolution of the Adversary Proceeding.  *See, e.g., Hawaiian Airlines, Inc.,* 355 B.R. at 223-24 ("Resolution of this action by the bankruptcy court is the most efficient use of judicial resources.  The bankruptcy court is already familiar with many of the circumstances relevant to the instant case.").

Illinois National wrongly characterizes the Adversary Proceeding as a "coverage dispute."  It is not.  Nowhere in his Complaint does Mr. Grant seek a declaration of coverage under the Illinois National Policy.  The relief Mr. Grant seeks—a declaration that he is entitled to advancement of defense costs *pending a coverage determination*—does not require a finding that coverage exists under the Illinois National Policy.  The Order granting preliminary injunctive relief specifically provides that advancement is required "(a) pending a final determination by this Court or another Court of competent jurisdiction that Illinois National has no right to withhold Defense Cost advances or (b) until there is a final determination by a court of competent jurisdiction regarding coverage under the Illinois National Policy."  Windels Decl. Ex. 2, ¶ 3.  Illinois National's coverage arguments are simply not relevant to the Adversary Proceeding, which is confined to the narrow issue of advancement.

For the same reasons, the fact that "other coverage actions" in the main tower of Refco D&O insurance are pending before this Court does not counsel in favor of withdrawing the

reference here.  As Illinois National states, the Illinois National Policy is a "stand alone policy, with a different policy period, and is not part of the Tower of insurance issued to Refco, Inc." Ill. Nat. Mem. at 6.  There is thus no danger of "conflicting resolution of the same issues," *id.* at 14, because the right to advancement under the Illinois National Policy is entirely distinct from the right to advancement under the polices in the main tower.  Nor is there a possibility of "conflicting discovery" because no discovery is required to resolve the contractual issues at stake in the Adversary Proceeding.

Illinois National misapprehends Judge Drain's statements regarding withdrawal of the reference at the August 30, 2007 hearing in *Axis Reinsurance Co. v. Bennett*, Adv. Proc. No. 07-01717 (RDD) (Bankr. S.D.N.Y.) (the "Axis Proceeding").  A complete copy of the transcript of that hearing is attached as Exhibit A to the June 9, 2008 Declaration of William Schreiner, submitted herewith.  Judge Drain stated that the District Court would be better equipped to decide the *coverage* claim in Axis's complaint, because the coverage issues overlapped with substantive issues in the Underlying Actions.  *See id.* at 58-59.  After concluding that he could rule on the Insureds' advancement motions without considering the complex factual issues involved in Axis's coverage claim, Judge Drain granted a preliminary injunction ordering advancement to certain Insureds and invited the Insureds to move for summary judgment on their advancement claims.  *See id.* at 86-92.

After the August 30, 2007 hearing, Axis sought unsuccessfully to withdraw the reference. Judge Koeltl, who heard the motion, ruled that the Bankruptcy Court had "spent considerable time and energy to become familiar with the parties' arguments with respect to the discrete issue of Axis's obligation to advance costs under the policy" and "it would be an inefficient use of judicial resources to withdraw the reference after the bankruptcy court has become familiar with

the cases and before it issues its ruling on the dispute related to advancement." *See* Transcript of October 5, 2007 hearing, Schreiner Declaration as Exhibit B at 27: 8-19.[3]

The same reasoning applies to the instant motion. The Bankruptcy Court has already considered the issue of advancement on a preliminary injunction motion. To withdraw the reference before it issues a final ruling on this issue would be an inefficient use of the courts' resources. Illinois National's motion should therefore be denied.

### C.    Illinois National's Jury Demand Does Not Weigh in Favor of Withdrawing the Reference.

Illinois National's jury demand is a red herring and should be accorded no weight in deciding the motion to withdraw the reference. In the Adversary Proceeding, Mr. Grant seeks injunctive relief and a declaration that he is entitled to specific performance of a contract (the Illinois National Policy). Such an action is equitable in nature and does not give rise to a right to a jury trial. *See United States v. Stein*, 452 F. Supp. 2d 276, 280 (S.D.N.Y. 2006) (striking jury demand in action for advancement of defense costs).

Accordingly, Illinois National's jury demand does nothing to bolster its argument for withdrawal of the reference. *See In re Orion Pictures Corp.*, 4 F.3d at 1101-02 (observing that where a "case is unlikely to reach trial . . . or [] the jury demand is without merit" a district court "might conclude that the case at that time is best left in the bankruptcy court"); *Ames Dep't Stores, Inc. v. TJX Cos., Inc. (In re Ames Dep't Stores, Inc.),* 190 B.R. 157, 162 (S.D.N.Y. 1995) (holding that even where a party demands a jury, "withdrawal of the reference . . . still depends on the particular circumstances of each case, including whether the case is likely to reach trial").

Because Illinois National has no right to a jury in the Adversary Proceeding and because

---

[3] The parties to the Axis Proceeding consented to withdrawal of the reference only after Judge Drain ruled on their summary judgment motions. *See* Windels Decl. Ex. 5.

the Bankruptcy Court is already familiar with the advancement issues, the motion to withdraw the reference should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Grant respectfully requests that the Court deny Illinois National's motion to withdraw the reference.

Dated: June 9, 2008
       New York, New York

Respectfully submitted,

s/ Laura E. Neish
Norman L. Eisen (*pro hac vice pending*)
William A. Schreiner, Jr. (WS-1327)
Laura E. Neish (LN-0040)

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Phone: (212) 704-9600

- and -

Michael T. Hannafan
Blake T. Hannafan
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone: (312) 527-0055
Facsimile: (312) 527-0220

*Attorneys for Plaintiff Tone N. Grant*