UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| REFCO INC., et al., | : | Case No. 05-60006 (RDD) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | Adv. Proc. No. 08-1129-rdd |

------------------------------------------------------------------x

| | | |
|---|---|---|
| TONE N. GRANT, | : | |
| | : | |
| Plaintiff, | : | Case No. 08-CV-4846 |
| | : | |
| v. | : | |
| | : | *Electronically Filed* |
| ILLINOIS NATIONAL INSURANCE COMPANY AND | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY | : | |
| OF PITTSBURGH PENNSYLVANIA, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------x


**DECLARATION OF WILLIAM A. SCHREINER, JR. IN OPPOSITION TO ILLINOIS
NATIONAL INSURANCE COMPANY'S MOTION TO WITHDRAW THE
REFERENCE FROM BANKRUPTCY COURT**

I, WILLIAM A. SCHREINER, JR., hereby declare:

1.      I am an attorney admitted to practice before the United States District Court for

the Southern District of New York.  I am an attorney with Zuckerman Spaeder LLP in

Washington, D.C.  I respectfully submit this declaration in opposition to Defendant Illinois

National Insurance Company's ("Illinois National") motion to withdraw the reference from

Bankruptcy Court.

2.      Attached as Exhibit A is a true and correct copy of the August 30, 2007 hearing

transcript in *Axis Reinsurance Co. v. Bennett, et al.,* Adv. Proc. No. 07-01717 (RDD).

1833448.1

3.    Attached as Exhibit B is a true and correct copy of the October 5, 2007 hearing

transcript in *Axis Reinsurance Co. v. Bennett, et al.,* M-47 (JGK).

I declare under penalty of perjury that the statements made herein are true and correct.

Dated: June 9, 2008
            Washington, D.C.

s/ William A. Schreiner, Jr.
William A. Schreiner, Jr.

1833448.1

EXHIBIT A

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


----------------------------------------X
                                        :
In Re:                                  :   05-60006
                                        :
     REFCO, LLC,                        :
                                        :
              Debtor.                   :
----------------------------------------X
                                        :
AXIS REINSURANCE COMPANY,               :   07-1712
                                        :
              Plaintiff,                :
                                        :
              v.                        :   One Bowling Green
                                        :   New York, New York
BENNETT, et al.,                        :
                                        :   August 30, 2007
              Defendants.               :
----------------------------------------X
```

                   TRANSCRIPT OF HEARING ON MOTIONS
                BEFORE THE HONORABLE ROBERT D. DRAIN
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Klejna/Murphy:          MATTHEW R. GOLDMAN, ESQ.
                            HELEN B. KIM, ESQ.
                            Baker & Hostetler LLP
                            3200 National City Center
                            1900 East 9th Street
                            Cleveland, Ohio  44114-3485

For Director Defendants:    MICHAEL F. WALSH, ESQ.
                            SCOTT E. COHEN, ESQ.
                            Weil, Gotshal & Manges LLP
                            767 Fifth Avenue
                            New York, New York  10153-0119

For Axis Reinsurance:       JOAN M. GILBRIDE, ESQ.
                            WAYNE BORGEEST, ESQ.
                            ROBERT A. BENJAMIN, ESQ.
                            Kaufman, Borgeest & Ryan LLP
                            200 Summit Lane Drive
                            Valhalla, New York 10595


                            (Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


APPEARANCES CONTINUED:


For Defendants Schoen,      PAUL FERRILLO, ESQ.
  Jaekel Lee, Harkins,      Weil, Gotshal & Manges LLP
  Brightman, O'Kelly        767 Fifth Avenue
  and Gantscher:            New York, New York  10153-0119


For Phillip Silverman:      RICHARD CASHMAN, ESQ.
                            Times Square Tower
                            7 Times Square
                            New York, New York  10036-6524


For Tone Grant:             NORMAN L. EISEN, ESQ.
                            Zuckerman Spaeder LLP
                            1800 M Street NW, Suite 1000
                            Washington, D.C.  20036-5802


For Phillip Bennett:        DEBORAH ADLER, ESQ.
                            Golenbock, Eiseman, Assor,
                              Bell & Peskoe LLP
                            457 Madison Avenue
                            New York, New York  10022


For Arch Insurance:         DANIEL STANDISH, ESQ.
                            Wiley Rein LLP
                            1776 K Street NW
                            Washington, D.C.  20006


For Robert Trosten:         RACHEL M. KORENBLAT, ESQ.
                            Morvillo, Abramowitz, Grand,
                              Jason, Anello & Bohren, PC
                            565 Fifth Avenue
                            New York, New York  10017


(Appearances continue on next page.)

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK


APPEARANCES CONTINUED:



For Sexton and Sherer:        IVAN O. KLINE, ESQ.
                              Friedman & Wittenstein
                              600 Lexington Avenue
                              New York, New York  10022



Court Transcriber:            RUTH ANN HAGER
                              TypeWrite Word Processing Service
                              356 Eltingville Boulevard
                              Staten Island, New York 10312










Proceedings recorded by electronic sound recording,
transcript produced by transcription service

4

1    (Proceedings began at 10:20 a.m.)

2                THE COURT:  Okay.  Refco and the Axis Reinsurance

3    matters.

4                     [Pause in the proceedings.]

5                MR. GOLDMAN:  Good morning, Your Honor.

6                THE COURT:  All right.  There are a number of

7    matters on that generally come under the heading of the Axis

8    Reinsurance matters.

9                Have the parties discussed any particular order

10   that they want to proceed in?

11               MR. GOLDMAN:  Good morning, Your Honor.  Matthew

12   Goldman, Baker & Hostetler.  I will be speaking on behalf of

13   what we have called the moving defendants, the parties seeking

14   a preliminary injunction for advancement of defense costs.

15               Yes, I have spoke with Joan Gilbride -- yeah.  I

16   have spoken with Joan Gilbride.  I believe at least insofar as

17   Axis and the other moving defendants are concerned, the

18   appropriate procedure would be that this court first determine

19   whether or not Arch should be permitted to intervene so that we

20   can determine whether or not they would be heard.

21               THE COURT:  Right.  I agree with you.

22               MR. GOLDMAN:  Our suggestion --

23               THE COURT:  I'd go with that first.

24               MR. GOLDMAN:  Okay.  Thank you, Your Honor.  Then

25   our suggestion would be that we proceed with the motion to

5

1  advance defense costs, the motion to file by the motions to

2  dismiss or to stay.  And insofar as the lift stay motions are

3  concerned, there is no objection to lifting the stay to the

4  extent that it is applicable to deal with the defense cost

5  issues.  That's not in dispute at all.  The only thing that is

6  potentially at issue in the lift stays in my supplement motion

7  asking for permission to also enter into settlements.  We can

8  put that at the end because nothing about lift stay interferes

9  with this argument.

10          THE COURT:  Okay.  I appreciate that probably a

11  fair amount of thought went into that order of proceeding and

12  perhaps some tactical considerations too, but it strikes me

13  given the lack of any opposition, except the limited amount to

14  the part of the lift stay motion that ought to be be lifted for

15  all purposes, that I should hear the motion to dismiss first

16  and then deal with the issue of advancing defense costs,

17  particularly since the debtor doesn't seem to care about that

18  and it appears to be a dispute because they haven't taken any

19  position whatsoever on this and they've not opposed lifting the

20  stay.

21          MR. GOLDMAN:  Your Honor, I didn't actually say

22  it's that material in that order.

23          THE COURT:  Okay.

24          MR. GOLDMAN:  So, yeah, if the Court wishes to do

25  dismissal first, that is fine with us, Your Honor.

6

1          THE COURT:  Okay.  That's fine.

2          MR. GOLDMAN:  All right.  So I think then that

3    means that we start with intervention?

4          THE COURT:  So I need to hear from Arch, then,

5    first.

6          MR. GOLDMAN:  Thank you, Your Honor.

7          MR. STANDISH:  Good morning, Your Honor.  Daniel

8    Standish of Wiley Rein on behalf of Arch Insurance Company.

9          Your Honor, we seek to intervene in this case for

10   the limited purpose of opposing the request for the advancement

11   of defense costs notwithstanding the existence of a coverage

12   defense that bars coverage for the claim in its entirety.

13         Arch is in the same tower of insurance as Axis.

14   Arch has the policy that is ten million dollars excess of 40

15   million dollars.  At this point, the underlying limits have

16   been depleting rapidly.  We understand that the burn rate at

17   this juncture is about two million dollars a month.

18         The demand that the officer defendants in this

19   case have made that Axis pay for their defense, fees and costs

20   on an as-incurred basis notwithstanding the existence of a

21   threshold defense.  That is an issue that will affect Arch as

22   well in two different ways.  One, it will affect the amount of

23   the policy limits that remain under the Arch layer, as well as

24   affect Arch's rights potentially as a precedential matter if and

25   when Arch's policy is reached, which at this point given the

7

1  burn rate at least the amounts incurred would certainly

2  implicate that level.  So for that reason, Arch has a very

3  strong interest of that particular issue.

4        Arch also feel strongly about intervening in this

5  case because as Your Honor may recall in June of 2006 Your

6  Honor gave leave for Arch to file its declaratory judgment

7  action in New York Supreme Court in order to obtain an

8  adjudication of the coverage issues.  Your Honor found that

9  Arch would be prejudiced if it were unable to do so.

10        Once we got before Justice Freedman, the officer

11  defendants who are now demanding that Axis advance defense fees

12  and costs argued to Justice Freedman that the Arch suit should

13  be dismissed without prejudice, because it was totally

14  speculative whether or not the erosion of the underlying layers

15  would ever occur and Arch's policy would be implicated.  And

16  even if it did implicate Arch's layer, Arch could simply stand

17  in its denial and refuse to pay, less directly contrary to the

18  position that they've now taken before this court in demanding

19  advancement.

20        So for that reason, we feel that Arch's interest --

21        THE COURT:  That wasn't the only reason they

22  opposed it, right?

23        MR. STANDISH:  That was not the only reason.

24  That's correct, Your Honor.  There was also an argument that it

25  would overlap with the underlying facts at issue in the

8

1    criminal prosecution going forward.

2            But Justice Freedman specifically did not reach

3    the issue of whether or not the insurers could be obligated to

4    include advance defense fees and costs notwithstanding the

5    existence of a threshold coverage defense.

6            Arch has moved promptly to intervene, Your Honor.

7    We've briefed this contemporaneously.  We filed with our

8    intervention papers our opposition to request for advancement

9    and we don't feel that any of the defendants would be prejudiced

10   by the intervention.  In fact, it would be far more efficient

11   to adjudicate this issue in the context of the same proceeding

12   than have it litigated again at some future juncture against

13   Arch in a separate pleading.

14           So for that reason, Your Honor, we submit that

15   permissive intervention is appropriate here and should be Arch

16   should be permitted to be in for this purpose.

17           THE COURT:  But it's not necessarily the same

18   issue,, is it?

19           MR. STANDISH:  With respect to the primary policy

20   language it is, Your Honor.  Both the Axis policy and the Arch

21   policy incorporate by reference the language on which the

22   officers are relying for the advancement of defense fees and

23   costs.  They're focusing in the primary policy in condition (d)

24   that says that the insurer shall advance the covered advanced

25   costs on an as-incurred basis.  The dispute over whether or not

9

1   the advancement of covered advanced costs is required when the

2   policy excludes the defense costs is the same issue as to both

3   Axis and Arch.

4           The only distinction is in the policy provisions

5   on which Arch and Axis are relying for the denial of coverage.

6   Arch has its own prior knowledge exclusion in its policy and

7   there is no dispute in that case that that exclusion exists and

8   that it applies.  There's a dispute in the Axis case over

9   whether or not the exclusion actually is in the policy.  Axis

10  obviously takes the position that it is, but that dispute

11  doesn't exist as to Arch.

12          But with respect to the primary policy language,

13  the question of whether advancement of "covered defense costs"

14  means you have to advance uncovered defense costs is precisely

15  the same.

16          THE COURT:  Okay.

17          MR. STANDISH:  Thank you, Your Honor.

18          MR. KLINE:  Good morning, Your Honor.  Ivan Kline

19  from Friedman & Wittenstein in New York.

20          We represent in this action two of the officer

21  defendants, William Sexton and Sherer, arguing against the

22  intervention on behalf of them as well as defendants Klejna,

23  Murphy and Silverman, who are the five sort of moving insureds

24  on the advancement motion.

25          And even assuming there is some common question of

1    law, this is clearly a case where the Court should exercise its

2    discretion to deny the motion.  This case is about coverage

3    under the Axis policy, not the Arch policy.  We've asserted

4    counterclaim against Axis under the Axis policy.  We have not

5    They are not mentioned or in any way involved the Arch policies

6    and we've made an advancement motion solely as against Axis

7    because its policy is now the one that's up, so to speak.

8          We have no claims against Arch.  We haven't asked

9    for advancement against Arch.  Arch wants to litigate not just

10   advancement in the abstract.  It specifically says it wants to

11   intervene to litigate whether the Arch policy requires Arch to

12   advance defense costs, but nobody's made that request, so I

13   don't know against whom they're going to litigate that, because

14   we haven't made the motion.  So procedurally there is a flaw in

15   what they seek to do, because nobody is seeking relief against

16   Arch, so they can't really be heard on an issue of when their

17   policy requires advancement of defense costs.  In fact, they

18   rely very clearly on a specific provision of their policy,

19   which we have not briefed, we have not addressed because we

20   have no claims against them.

21         There's also a procedural flaw which their own

22   proposed opposition brief set out and that they didn't address

23   in their reply when we pointed it out.  They state in their

24   proposed brief and opposing advancement that in order for there

25   to be an advancement motion, there has to be an underlying

11

1  claim to support the request for relief, which advancement

2  would go with.  For example, the five moving insureds have

3  counterclaims against Axis and it's those counterclaims with

4  declaratory injunctive relief that support our request for

5  advancement.

6          Arch points that out because it says others aren't

7  really empowered to advancement anyway, but then it still seeks

8  to adjudicate advanced under its policy just by itself without

9  being hooked on in any way to any claim by or against it.  And

10 it's created its own procedure conundrum.  It recognized it

11 can't come in here to seek to intervene and litigate coverage

12 under the policy, because that would be barred by Justice

13 Freedman's order.  So instead they're seeking just to litigate

14 this advancement issue, but you can't really litigate that in

15 the abstract by itself without the coverage under the policy

16 also being in dispute.  They themselves state that in their

17 proposed opposition brief.

18         In terms of the other procedure flaw would be if

19 Your Honor granted that intervention, you know, then what?  We

20 haven't made a motion against Arch, so how Your Honor adjudicate

21 whether advancement is required under the Arch policy when we

22 haven't briefed it, and we have no intention at this point of

23 briefing it, and may never have to brief it.

24         And in terms of judicial efficiency, some court is

25 going to have the coverage dispute against Arch unless it, you

12

1   know, goes away due to one cause or another.  It's not going to

2   be this court, because by their own statement they can't come in

3   here now to seek to adjudicate coverage.  So to have this court

4   somehow rule in the abstract on advancement under the Arch

5   policy simply makes no sense when some other court will have

6   the coverage issue.  And in both cases they're going to be

7   raising the prior knowledge exclusion in their policy as the

8   key provision to look at.

9           Now, clearly for purposes of efficiency if we ever

10  want to seek advancement under the Arch policy, we'll have to do

11  something.  We'll have to do it in some court where coverage is

12  also at that issue.  And in terms of what Arch's counsel said

13  we're already in consistent positions, advancement was not an

14  issue before this.

15          THE COURT:  Oh, you don't have to get into that

16  one.

17          MR. KLINE:  All right.  I think that covers the

18  points I want to make, unless Your Honor has some further

19  questions.

20          THE COURT:  Okay.  Why isn't counsel right that, as

21  you said, the common issue here is coverage under the primary

22  policy and coverage was raised in state court so why isn't this

23  really an end run around the state court decision?

24          MR. KLINE:  There are different coverage issues.

25  This coverage issue is not reached by Justice Freedman.  At

13

1  pages 3 to 4 of the rule --

2              THE COURT:  But she said it was premature and this

3  shouldn't be happening now.

4              MR. KLINE:  She found that the litigation of the

5  application of the Arch exclusion was premature.  What Justice

6  Freedman did not reach was the question that is being presented

7  by the motion for preliminary injunction to be argued this

8  morning of whether or not under language of the primary policy

9  and applicable law an insurance company that has denied,

10 regardless of the basis, can't -- has to be obligated in advance

11 defense fees and costs notwithstanding the existence of that

12 coverage defense when the demand is made and has to instead

13 litigate issues of coverage all the way to a conclusion and

14 then try to recoup those amounts.

15             That limited question is the question on which

16 Arch seeks to intervene here, and that's the question that's

17 presented by the motion for preliminary judgment.  Regardless

18 of what the specific coverage defense is, the common issue is

19 whether or not given the language of the primary policy that

20 only requires the advancement of covered defense costs, the

21 Court should turn a blind eye to that language and enforce the

22 advancement of those defense fees and costs anyway until there's

23 some final adjudication in the coverage litigation.

24             THE COURT:  But I mean, you're using the same term,

25 covered, coverage.  It's the same term and it's the same

14

1   analysis, isn't it, that she went through?

2              MR. KLINE:  No, Your Honor.  The analysis --

3              THE COURT:  I mean, I understand that she had an

4   alternative basis for her ruling, so one of her bases -- we

5   went through this point on coverage.

6              MR. KLINE:  Your Honor, Justice Freedman did not

7   look at the advancement language in the policy.  In the Supreme

8   Court, the director defendants actually asked Justice Freedman

9   to enter an order for the advancement of defense fees and costs

10  until final adjudication of the coverage issue.  And in her

11  opinion she expressly did not reach that issue, so the specific

12  issue on which we seek to intervene in this matter were reached

13  by Justice Freedman.

14             THE COURT:  They're not asking for it here.

15             MR. KLINE:  They are, Your Honor, in their

16  preliminary injunction papers.

17             THE COURT:  Not from Arch.

18             MR. KLINE:  They are asking it from Axis and it

19  will be the same issue under the primary policy language

20  because both Arch and Axis incorporate by reference conditions

21  D-2 and D-3, which are at issue in this case.

22             Because of that overlap Arch has interest in the

23  income.  I have no doubt that depending on the outcome here one

24  side or the other will be able to tout that if and when the

25  Arch layer is ever reached.  And given the burn rate on defense

1   expenses and the demands for settlement that are now being

2   bandied about, I have no doubt that the existence of coverage

3   under the Arch policy will be squarely at issue in the very

4   near future based on the communications that we're receiving.

5   And at that point, we're going to have to deal with this issue.

6   It's much more efficient to deal with the issue in one

7   proceeding when that same language is at issue on that issue.

8            THE COURT:  Even though you have different

9   language in your own policy from --

10            MR. KLINE:  The exclusionary language differs.

11   That's correct, Your Honor.

12            THE COURT:  Okay.

13            MR. STANDISH:  Your Honor, I just want to

14   reiterate.  Their motion very clearly says they seem to

15   intervene to litigate the issue whether the Arch policy

16   requires Arch to advance defense costs.  They're not coming in

17   seeking to just talk about whether in general we can get

18   advancement or whether under the Axis policy we're entitled to

19   advancement and question whether they even have standing to do

20   that.

21            In that sense, they're like any insurer that may be

22   out there that may have language similar to the primary policy

23   in any case.  You wouldn't allow that insurer to come and

24   intervene in this case.  And here, they've already been told by

25   Justice Freedman they really can't do what they're now seeking

16

1    to do.  And if you look at their proposed brief, it's full of

2    references that their policy, their prior knowledge to

3    exclusion.  They're seeking to argue the applicability of that

4    exclusion albeit to try to avoid advancement as against them,

5    which has not been sought.

6              THE COURT:  Okay.  Arch Insurance Company has

7    moved for permission to intervene under Rule 24(b) incorporated

8    by Bankruptcy Rule 7024(b) in this declaratory judgment

9    litigation between a lower tier insurer, Axis Reinsurance

10   Company and various defendants, former directors and officers

11   of Refco, Inc.  The movant acknowledges that there's not a

12   complete overlap of the issues in the Axis Reinsurance

13   litigation and the litigation that it would want to pursue if

14   it were permitted to intervene, which would be to seek a

15   declaratory judgment that it, that is Arch, would not be

16   obligated under the Arch policy for advance defense costs to

17   the directors and officers beneficiaries of Refco's insurance

18   with it.  That is because exclusions relied upon by Arch in its

19   policy differ from exclusions relied upon by Axis.

20              The common issue that Arch relies upon for

21   purposes of Rule 24(b) is language in the first tier policy

22   pertaining to covered claims as they relate to defense costs,

23   among others -- or losses as defined in the policy, which is a

24   link in the logical chain that if broken might prevent Arch

25   from pursuing certain of its arguments, if not all of them,

17

1   that it does not have to advance coverage.  No beneficiary of

2   the policy is actually apparently at this time sought to compel

3   Arch to advance coverage.  I would also note that the debtor in

4   this case has appeared to be completely neutral on the issue

5   and is not a party to this litigation and has taken no position

6   whatsoever.

7         It appears to me that to the extent that it is a

8   common issue of law in fact to the extent there's any factual

9   issue in interpreting the relevant insurance policies, it would

10  not be a proper exercise of my discretion to permit Arch to

11  intervene.  As is clear from the briefing on the motions before

12  the Court today in connection with the Axis Reinsurance matter,

13  first, the actual language of the policy is important.

14  Second, issue of rightness or whether the Axis litigation is

15  premature are important and are to some extent back driven, in

16  particular driven by the claimed exigencies faced by the policy

17  beneficiaries, the officers and officers who have felt the

18  pinch of not getting the coverage at that tier.

19        To my mind, it would therefore be inefficient to

20  include Arch in this litigation at this time and it would

21  instead be efficient to pursue the issues that are truly before

22  the Court in this litigation, that is, the issues involving

23  Axis and the directors and officers' claims against Axis and not

24  use this litigation as a funnel to invite any prospective

25  insurer to join some sort of massive proceeding.

18

1        That's compounded by two other considerations.

2   First, I note that Arch pursued in New York State court

3   declaratory judgment litigation regarding the terms of its own

4   policy and coverage under that policy and the state court ruled

5   that that litigation was premature.  It seems to me in large

6   extent -- this is an end run around that ruling -- that, i.e.,

7   Arch's request intervene here would be an end run around that

8   ruling.  And at a minimum that if I permitted Arch to

9   intervene, we would be frequently interrupted in litigation by

10  considerations of whether what Arch is in particularly seeking

11  at that particular moment if I permitted it to intervene would

12  be an end run around that order or whether the order would be

13  binding on it.

14        Finally, as I noted at the pretrial conference on

15  this matter, I continue to have some concern given (a) that

16  Refco's plan is confirmed and effective and substantially

17  consummated and(b) that Refco, the debtor, has no participation

18  in this litigation at all as to the extent of my jurisdiction

19  over it.  And in light of all the other factors that I've

20  already mentioned arguing that I should not exercise my

21  discretion to further expand this adversary proceeding to

22  involve other insurers it seems to me that Arch's issues, if

23  they're to be brought at all, should be brought in another court

24  when they become ripe.

25        So I'm not sure which of the -- these [inaudible]

19

1    here took the lead on this matter, but certainly you could

2    submit an order consistent with my ruling denying the motion.

3            I would ask you just to send a -- well, you can

4    work it out among yourselves.  I'd just ask you to send a copy

5    to Arch's counsel.  You don't have to settle it on him, but just

6    send him a copy at the same time you're sending it to chambers

7    or as a courtesy you may want to send it to him a day before so

8    he can determine that it's consistent with my ruling.

9            MR. KLINE:  Okay.  No problem.

10           THE COURT:  Okay.  Okay.  All right.  So that

11   leads to the motion to dismiss.

12                   [Pause in the proceedings.]

13           MR. WALSH:  Michael Walsh from Weil, Gotshal &

14   Manges on behalf of all of what we call the director

15   defendants.  That's Brightman, Ganter, Harkins, Jeakel Lee,

16   O'Kelly and Schoen.  It seems like Your Honor is very familiar

17   with the background here, but I can just run through the

18   structure if that would be helpful.

19           THE COURT:  Okay.

20           MR. WALSH:  Refco arranged the known insurance in

21   the amount of 70 million dollars.  That consists of a primary

22   policy and five Axis policies.  Axis provides a third tier in

23   that tower, that is, the second Axis policy and all of the Axis

24   policies follow the form of the primary policy, except to the

25   extent that they're explicitly different.  This means that the

20

1   Axis insurers are actually bound by the terms of the primary

2   policy.  The language that's key to today's dispute both in

3   connection with the motion to dismiss and the motions to compel

4   advancement is the language in the primary policy that requires

5   the advancement of defense costs as they're incurred and unless

6   it is finally determined that such costs are not covered.

7           We understand that this issue is now coming to a

8   head with respect to Axis because that the coverage or the

9   amount under the primary policy and the amount under the first

10  Axis policy are almost used up, at least that's our

11  understanding.  So I know this states the obvious, but the only

12  reason we're here, Your Honor, is because Axis wants you to tell

13  them that they don't have to advance defense costs.  And the

14  rest of those, even though we've chosen different ways to

15  opposed that, are here because we want to make sure that they

16  do pay.  Now, we recognize that Axis had two valid choices

17  here.  The first is to advance defense costs with the

18  reservation of rights, which is what we think is what

19  the policy envisions and the second is seek a declaratory

20  judgment that the costs are not covered by the policy.

21          Now, U.S. Specialty, the insurer under the primary

22  policy in Lexington, the insurer on the first Axis chose --

23  ultimately chose option one and they just -- they reserved

24  their rights, and Axis has chosen option two.

25          We recognize that seeking a declaratory judgment

1  of coverage can be perfectly appropriate.  And, for example, if

2  there were no underlying litigation claims or if the litigation

3  claims were -- did not overlap, we're not disputing the

4  procedure.  What we are disputing is when there's a substantial

5  overlap of the underlying facts, we believe the law is clear.

6  A declaratory judgment may not precede and has to defer to the

7  underlying litigation for a determination of those facts.  And

8  we believe this is pretty much the universal rule.  We don't

9  think the rule is different in Illinois than in New York.  I

10  think the rule is exactly the same.

11          And, Your Honor, there are at least two key

12  reasons for that rule.  The first is that there is a

13  significant risk that a determination -- early determination in

14  the coverage action would be prejudicial in the underlying

15  actions either through collateral estoppel, the law of the

16  case, or even -- or for other issues.

17          The second reason is since if you're litigating the

18  same issues at the very least you're duplicating effort.  You're

19  running up even more defense costs, more expenses on the very

20  same things and that seems to be counter to good sense and

21  issues of judicial economy.

22          So we filed our motion to dismiss and we believe

23  that what we're saying in the motion to dismiss is that because

24  the courts are clear, the courts are clear that when there is a

25  substantial overlap the coverage action must defer, that under

22

1   Rule 12(b)(6) Axis is not in a position to be able to prove

2   their case and therefore dismissal without prejudice is

3   appropriate.

4           Now, let me get to the core of the issue, which is

5   substantial overlap.  Here in Refco on the one hand we've got

6   the criminal and fraud actions.  And the factual issues

7   underpinning those actions all relate to whether Bennett and

8   others manipulated Refco's books and records.  All of the

9   alleged actions that relate to the manipulation appear in the

10  indictment, and in the various securities complaints, and

11  interestingly enough, they're all explicitly referred to in

12  Axis's complaint.

13          On the other hand, we have the coverage action.

14  Now, Axis's characterization is that the factual issue is

15  whether Bennett failed to disclose potential claims based on

16  his alleged manipulation of the books and records.  But saying

17  it that way doesn't change the fact that the facts are really

18  the same.  Without the alleged manipulation, there's nothing

19  really to disclose.

20          Axis points to Illinois law, in particular the

21  Guydant [Ph.] case as determinative.  First of all, we strongly

22  disagree that Illinois law applies and I can come back to this,

23  Your Honor, but the absence of a choice of law in the contract

24  means that under New York's choice of law rules look at various

25  factors, the most important of which is the location of the

23

insured risk.  And given that Refco's principal place of
business was in New York, that's where the executive officers
did their business and all the allegations related to coverage
issue were about actions taken by certain executive officers.
It's hard to argue that New York was not the location of the
insured risk.  But even if the New York law applied, we think
that the answer on substantial overlap would be the same and
we're going to focus on Guydant.

        Now, before I do, though, I do want to make a
point that there are Illinois decisions on the issue of whether
advancement is appropriate during the pendency of a coverage
action where New York law and Illinois law appear to differ
markedly, and that is why we believe New York law is the law
that should apply here.  But for the substantial overlap, we
think the test is pretty much the same.

        So in Guydant, what was going on?  In the
underlying actions, you have essentially a bunch of personal
injury claims that were couched in language of fraud.  And I'm
assuming that they were done that ways, because today's medical
dominate to society if you're going to have something implanted
in your body, undoubtedly you're going to be signing a waiver,
an assumption of the risk.  And the only way around that is to
demonstrate that you are not told all of the appropriate facts.
 So the underlying factual issue is the misrepresentation about
the safety of the medical device and the risk of the medical

24

1  device.

2          In the coverage action, however --

3          THE COURT:  Well, can I -- I'm sorry.  Go ahead.

4  Go ahead.

5          MR. WALSH:  in the coverage action, however, it's

6  not that the device was actually defective or unsafe, but that

7  complaints had been received by the company, that the company

8  knew about and didn't disclose, so that's why the Guydant case

9  made a distinction and we can -- they were saying that we can

10  make a determination.  The trial court can make a determination

11  that as a factual matter, yes, they received complaints or,

12  yes, they didn't receive complaints, and it's not really

13  dependent upon whether the device was defective or not.

14          So the distinction with our case is in Refco you

15  can't make that distinction.  Without one, you can't have the

16  other.  At the end of the day, Axis can't get up and explain to

17  you what was it that Bennett should have disclosed if in fact

18  he did not manipulate the books or he did not commit fraud?

19  What was there to disclose?

20          So as you noted earlier, Your Honor, although not

21  involving Axis, this is not the first time this issue came up.

22  Justice Freedman addressed this very issue in connection with

23  Arch's request for a determination on coverage.

24          The way I view it, Your Honor, this is a classic

25  problem of putting the cart before the horse.  You've got all

25

1   these -- this huge multi-district securities actions that's all

2   coming together and you've got the criminal complainants, and

3   then you've got this coverage action.  And what I foresee is if

4   this coverage action really went forward on the issues and was

5   going to determine the issues of what Bennett did, what he

6   thought, et cetera, every plaintiff in the securities actions

7   would have to come into this court, and all the discovery about

8   all the facts would be taking place in this court.  And it just

9   seems completely backwards in my mind that the coverage dispute

10  becomes the litigation for all these issues rather than the

11  underlying actions.  I just don't think that can be right.

12          From a policy perspective, I have to ask myself

13  what -- you know, what's the purpose of the DNO policy and it's

14  to protect officers and directors against claims for

15  misconduct.  And in my view, it would completely defeat that

16  policy.  If the end result was that the insurer could do an end

17  run and avoid the defense costs and get a ruling that could be

18  used against the insured in the underlying actions, that's not

19  what people will opine all this insurance for.  That doesn't

20  provide any protection at all, so the answer here is, you know,

21  clearly Axis has an issue here.  They have to -- in our view,

22  they have to advance defense costs but they have the right to

23  get those costs back once there is a decision on coverage if,

24  in fact, it does go against the insureds.

25          On the part of the defendants, though, if they

26

1    don't get defense costs, they -- any insurance may very well be

2    a lower.  We think the courts have assessed those competing

3    risks and come down on this issue in favor of the insured.

4            So in this situation, we believe it's perfectly

5    appropriate that the insurer has to wait for the results of the

6    underlying action, and that's what you have today, and that's

7    our reason, Your Honor, for asking the Court to dismiss the

8    case.

9            THE COURT:  Okay.  So you take the view that I

10    don't need to look at the policy language itself and interpret

11    on the merits whether -- on a 12(b)(6) basis whether Axis is

12    right or not.  You just say it's premature?

13            MR. WALSH:  Your Honor, it is our expectation that

14    if this action was dismissed and especially if it was dismissed

15    with the determination that New York law applies that Axis

16    would go ahead and advance.  You know, they're a highly, highly

17    reputable company.  If, however, they stand up today and say

18    you know, no way.  We're advancing.  Then we'll have to go the

19    next step, but what we're asking for today is a dismissal.

20            THE COURT:  Okay.  Thank you.

21            MS. GILBRIDE:  Good morning, Your Honor.  Joan

22    Gilbride for Axis Reinsurance Company, Kaufman, Borgeest &

23    Ryan.

24            I'm a little confused after hearing oral argument

25    from the director defendants on their motion for dismissal.

27

1    Essentially, what they've sought from this court is a complete

2    dismissal of this action, but at the same time they appear to

3    be suggesting that they should get some sort of affirmative

4    relief in the form of advancement of defense costs.

5            THE COURT:  Not Mr. Walsh's clients.

6            MS. GILBRIDE:  It's just -- it's -- what they're

7    essentially seeking, though, Your Honor, is an inconsistent

8    result.

9            THE COURT:  But his clients haven't sought that.

10   They haven't sought any sort of affirmative relief.  They just

11   sought dismissal.

12           MS. GILBRIDE:  I just think it's important to note

13   that Axis's position has been Axis's position for over a year is

14   that there is no coverage for this matter under its policy.

15   They took this position over a year ago.  Axis is not going to

16   change that position if this action gets dismissed. In fact,

17   what the director defendants have said in their papers and I

18   think have suggested to Your Honor is if this action is

19   dismissed, they would have no alternative but to turn around

20   and seek relief under the policy in another forum.  And I think

21   that just demonstrates the inconsistency, which a dismissal of

22   this action would result in particularly in light of the fact

23   that there are other defendants, other insureds who are seeking

24   affirmative relief from Your Honor.  In any event --

25           THE COURT:  But why would that be the case if the

28

1   other forum were, for example, the Court handling the

2   underlying litigation?  Then all the discovery could be the

3   same, all the trials could be the same.  There wouldn't be two

4   courts with potential conflicting rulings or conflicting

5   schedules and particularly for the criminal defendants risks

6   about the Fifth Amendment.

7          MS. GILBRIDE:  Well, Your Honor, that leads into

8   really what is the heart of this dismissal motion, which is

9   whether or not there are overlapping facts.  We believe the

10  issue is not whether there's substantial overlap of the facts,

11  but whether the ultimate issues in the two dispute are the same

12  and I think that that's clearly the test under Illinois law,

13  which we submit applies to this dispute.

14         And the ultimate issues in the two cases are

15  ultimate facts, the ultimate issues that the Court must

16  determine are entirely different.  The facts in the coverage

17  dispute concern -- we have a warranty letter that we received

18  from the insured.  The question is was the warranty letter

19  signed.  It was signed on behalf of all insureds.  Was there

20  knowledge by Mr. Bennett or any other insured at the time that

21  warranty letter was signed, which might have led anyone to

22  assume that there could potentially be a claim.

23         Those issues are very different than the issues

24  that are in dispute in the securities fraud action, Your Honor.

25   You know, Axis does not have to establish that there was a

29

1    fraud here.  They simply have to establish that there was

2    knowledge that there was this warranty letter that was signed.

3     There's a knowledge exclusion in the policy, which we

4    understand there's issues about that.  Those issues are not in

5    dispute in the underlying securities litigation.

6              THE COURT:  I'm sorry.  Knowledge of what?

7              MS. GILBRIDE:  Knowledge of whether or not there

8    were facts at the time that the policies that was entered into

9    that could potentially lead to a claim.  That doesn't --

10             THE COURT:  And isn't the -- all of the litigation

11   brought against the Ds and Os a claim or potentially a claim?

12             MS. GILBRIDE:  It is, Your Honor.  But it's not the

13   only claim that either Mr. Bennett or any other insured could

14   have had knowledge of at the time they signed that warranty

15   letter.

16             THE COURT:  But it's the only claim that they're

17   claiming on the policy on.

18             MS. GILBRIDE:  Well, I think it's -- you know, it's

19   a big picture claim, but there were other issues and it's

20   important to note that the warranty and the prior knowledge

21   exclusion don't require knowledge of a claim.  They require

22   knowledge of a fact, a circumstances, a situation.  It's

23   extremely broad, Your Honor.

24             So, for example, if there was an auditor's letter

25   that was written in 2003 that Mr. Bennett was aware of and he

1    was aware that there were issues raised in that auditor's letter

2    that could potentially result in a claim and which ultimately

3    did result in partially at least in some of the claims.

4              THE COURT:  But aren't I right in assuming that by

5    now any litigant or more practically speaking any plaintiff's

6    lawyer would have jumped in and brought the claims against

7    these directors and officers and that therefore it's in the

8    litigation that's pending?

9              MS. GILBRIDE:  I think that that's a correct

10   assumption, Your Honor.

11             THE COURT:  So aren't I also correct that in that

12   litigation that's pending won't those people also want to obtain

13   discovery of auditor's letters that he might be aware of or that

14   any of the other directors might have been aware of or any of

15   the other facts that would relate to a claim, because that's

16   what they're trying to establish, a claim.  Isn't it a complete

17   overlap of the policy?

18             MS. GILBRIDE:  Your Honor, I think there's no

19   question that there are overlapping facts in dispute.  There's

20   no question.  But the ultimate facts and the ultimate issues

21   that need to be decided in the coverage dispute are much

22   narrower and more focused than the very broad issues that are

23   in dispute in the underlying securities fraud litigation.  And

24   in fact, the coverage --

25             THE COURT:  I thought you were making the argument

1  the other way around.  I thought you were saying that, in fact,

2  the securities litigation is more focused because we could

3  be -- anything that might have gone through Bennett's mind could

4  exclude Axis from having to pay.  I mean, that's a pretty -- I

5  mean, I guess that's something that you can assert given the way

6  that provision is phrased, might give rise to a claim, although

7  it kind of makes you wonder whether the insurance is completely

8  illusory.  But you're saying that the -- maybe I misunderstood

9  you then.  You're saying that the actual litigation, the

10  criminal litigation and then the securities actions and the

11  like would be more narrowly focused or wider focused?

12         MS. GILBRIDE:  I think, you know, narrow or wider

13  in different areas I think, Your Honor, but the important issue

14  is that the ultimate facts to be determined in the two actions

15  are different and I think that's the test.  No one in the

16  securities litigation is going to care one way or the other

17  factually whether or not Mr. Bennett signed a warranty for an

18  insurance application.  That's simply not going to be an issue.

19         THE COURT:  Well, if you're talking that there's a

20  fact as to whether the thing was actually executed?

21         MS. GILBRIDE:  I don't really think that's in

22  dispute, but that is, in fact, what we have to establish in

23  order to prevail in our coverage.

24         THE COURT:  But don't you think that the district

25  judge presiding over that litigation could decide that pretty

32

1  quickly?

2              MS. GILBRIDE:  Your Honor, I don't think that's an

3  issue that's before the district judge.  It's not an issue --

4              THE COURT:  No, but if, in fact, I determine that

5  this litigation for me is premature particularly in light of my

6  very tenuous jurisdiction given that Refco's plans confirm

7  effective and the provisions of the confirmation order, which

8  clearly contemplate that this type of litigation could be

9  elsewhere, why shouldn't the -- why shouldn't the easy lifting

10  issue not control this thing and the hard lifting issue should,

11  i.e., all the discovery as to whether there really was

12  something related to a fraud, which is already before the

13  district courts which probably have those issues?  What --

14  they're going to be doing the heavy lifting.  Why have two

15  courts do the heavy lifting, which requires all the parties to

16  duplicate the heavy lifting in two different forums because of

17  what appears to be perhaps even a hypothetical issue as to

18  whether Bennett signed the memorandum, which is easy lifting?

19  Why not have the district judge do that, too?

20              MS. GILBRIDE:  Your Honor, I -- you know, another

21  procedural conundrum that we're faced here is that dismissal is

22  not sought by all of the insureds, so -- and there are --

23              THE COURT:  No, but I can --

24              MS. GILBRIDE:  -- counterclaims --

25              THE COURT:  In controlling my docket, I can

33

1  certainly do that, particularly when I have real doubts about

2  jurisdiction.  That's what Judge Gonzalez did in Worldcom.

3            MS. GILBRIDE:  Your Honor, I -- you know,

4  obviously that is within your discretion and your control.  Our

5  position simply is that this is a dispute that does not involve

6  all of the over-arching issue that are involved in the

7  securities litigation.

8            THE COURT:  But other than whether Mr. Bennett

9  signed the memorandum or the warranty, what other issues are

10 different?

11           MS. GILBRIDE:  Just the very fact of the

12 insurance, Your Honor, it's not an issue in the underlying

13 securities litigation.

14           THE COURT:  What do you mean by that?

15           MS. GILBRIDE:  Whether or not there's coverage,

16 whether or not their defense costs are covered.

17           The issue -- the other motion that we're here on

18 today, the advancement of defense costs, whether or not those

19 defense costs will be covered, that's not an issue that is in

20 dispute or before --

21           THE COURT:  It could certainly --

22           MS. GILBRIDE:  -- Judge Lynch.

23           THE COURT:  It can certainly come before Judge

24 Lynch, though, couldn't it?  I mean, it came before Judge Cote

25 after Judge Gonzalez said he didn't have jurisdiction in

34

Worldcom.

And as a practical matter, as we all know,
litigations are also a forum for settlement and as we all know
insurance in these settings is a major aspect, sometimes the
only aspect, but always a major aspect of the currency for
settlement.  So I would think whether it's Judge Lynch or a
special master he's going to appoint or a mediator, that's --
you know, it's going to be front and center there as a practical
matter.

And I'm sure that if there's a mediation or
settlement discussion in the securities litigation -- obviously
this doesn't apply to criminal litigation but in the securities
litigation -- that one of the issues that the insurers will
raise, even if it's not teed up formally in front of Judge
Lynch, but in the negotiations is, well, we don't have to pay
for this.  It's not covered, so plaintiff's lawyers, you should
look somewhere else.  Lower your demand, because you're settling
two things.  You're not only settling the fraud case, you're
settling whether this exclusion applies.

MS. GILBRIDE:  Well, Your Honor, one of the
practical issues that Axis faced in deciding which forum to
bring this litigation in is that there is no diversity
jurisdiction, so we could not be before Judge Lynch or any
other district judge, so there was no way for us as a practical
matter to get before Judge Lynch.  That was a consideration,

35

1   but we felt it was appropriate to bring the action in this

2   court, Your Honor, because of the fact that obviously that

3   we're -- you know, the bankrupt -- the debtor is here before

4   Your Honor and, you know, based upon prior rulings of Your

5   Honor with respect to the insurance policy, we believe that

6   this was an appropriate forum to be in.

7          THE COURT:  Well, I haven't made any rulings as --

8   you mean, the lift stay issue?

9          MS. GILBRIDE:  Yes, Your Honor.

10         THE COURT:  Okay.  But the plan confirmation order

11   says that "Notwithstanding anything in the plan or confirmation

12   order, to the contrary nothing in the plan or confirmation

13   order including, but not limited to the injunction provisions

14   shall be construed to prevent present or further directors and

15   officers of the debtors from seeking and obtaining coverage and

16   payments from insurance policies of Refco, Inc. or from

17   insurance policies of any other Refco entity by litigation

18   against relevant insurance companies nor to prevent insurance

19   companies from making such payments."

20         MS. GILBRIDE:  Your Honor, we don't read that as

21   allowing us to affirmatively bring a declaratory judgment

22   action.  And perhaps it was an incorrect reading of that

23   provision, but our understanding was that was limited to the

24   individual directors --

25         THE COURT:  Okay.  But it's a --

36

1          MS. GILBRIDE:  -- and officers.

2          THE COURT:  -- big difference between seeking

3    relief of the stay and starting, you know, a whole

4    declaratory -- anyway, I'm not faulting you on that obviously.

5    We're here.  But I'm still having a hard time seeing why there

6    isn't overlap.

7          MS. GILBRIDE:  Your Honor, I could not stand in

8    front of you and honestly say there is no overlap.  There is

9    absolutely overlap.  It's just a question of whether the overlap

10   is of some facts and there are some many facts that are -- do

11   overlap, but there's not overlap of the ultimate facts and the

12   ultimate issues that are going to be determined in each

13   litigation.

14          This is a dispute that's about coverage.  There are

15   some issues that are similar that we've raised in terms of

16   Mr. Bennett's knowledge and other insured's knowledge, but the

17   issue before Your Honor is an issue of policy interpretation,

18   contract interpretation.  The issue in the securities

19   litigation is an issue of whether or not there was fraud on the

20   shareholders and that's certainly not an issue that's in our

21   case whether or not there was a fraud.

22          THE COURT:  But --

23          MS. GILBRIDE:  So we don't believe that the

24   ultimate issue is --

25          THE COURT:  But isn't Mr. Walsh's argument right

37

1   that the prior knowledge of a claim that's the ultimate basis

2   for the disclaimer coverage here and defense costs, the

3   obligation to advance defense costs, isn't that different than

4   the types of fraud at issue in the <u>Guydant</u> [Ph.] case?

5            MS. GILBRIDE:  Your Honor, you know, I think that

6   the <u>Guydant</u> case is vary on point with the issues that are at

7   issue here.  In <u>Guydant</u>, the question was whether or not there

8   was a nondisclosure of an underlying situation to the insurer.

9    It's the very same issue --

10           THE COURT:  No, but of what?

11           MS. GILBRIDE:  Of whether or not there was

12  litigation or prior claims, so it's almost -- it's very on

13  point, Your Honor.

14           THE COURT:  But your provision doesn't say that.

15  You're not looking to deny coverage here because Bennett didn't

16  disclose to you that there was an investigation in place and

17  that there was a claim that had been asserted.  It's that the

18  condition that might give rise to something like that was not

19  revealed to your client.

20           MS. GILBRIDE:  That's correct, Your Honor, but I

21  think that --

22           THE COURT:  And so --

23           MS. GILBRIDE:  -- the issu --

24           THE COURT:  -- in the defraud actions that were

25  pending in <u>Guydant</u> were not about what was already known to --

38

1   what specific claims that had been filed were already known to

2   the insured.  They were about whether the insured failed to

3   disclose information to the investing public about what it had

4   been doing with its medical business.  If that litigation had

5   been about the failure to disclose -- if the 10K in that

6   litigation had failed to disclose specific litigation claims or

7    medical claims against it, there would have been an overlap,

8   right?

9               MS. GILBRIDE:  Well --

10               THE COURT:  But that's not what it was about.

11               MS. GILBRIDE:  Well, respectfully, Your Honor, I

12   think that issue in <u>Guydant</u> was whether or not -- was about

13   whether or not certain claims were disclosed to the insurer.

14   The situation that we have here --

15               THE COURT:  Not the securities litigation.

16               MS. GILBRIDE:  Not the securities litigation.

17               THE COURT:  Right.

18               MS. GILBRIDE:  But the claims involving the

19   products.  But I -- you know, respectfully I just I think that

20   it's -- the question is whether or not there was nondisclosure

21   and whether it was about the securities litigation or not

22   securities litigation.  It was about facts that were known at

23   the time.  Here --

24               THE COURT:  No, but it's important to know what --

25   to distinguish what the particular facts are.  I mean, the

39

1   policy if -- if you're the -- if you're the Court presiding over

2   the insurance dispute, you have to ask yourself, well, what

3   will I learn from the securities law action that will either be

4   dispositive or provide real guidance as to my dispute.  And in

5   the Guydant case if you're the judge presiding over that

6   insurance dispute, I'm not sure that those facts are relevant

7   because it's a different type of fraud.  There are two different

8   types of fraud that are being litigated.  The fact -- the

9   underlying nondisclosure is different.

10          MS. GILBRIDE:  I think that's -- it's correct that

11  the underlying nondisclosure was different.  There's no

12  question, but I think it was the fact of the nondisclosure that

13  was the issue and it was the same issue in both cases but the

14  ultimate issue in both cases was different, so I believe that

15  the Guydant -- how the Guydant court determined that issue is

16  very instructive in this situation for Your Honor.

17          THE COURT:  But isn't this doctrine of prematurity

18  or ripeness, isn't it really ultimately a doctrine based upon

19  considerations of fairness and efficiency as opposed to, you

20  know, distinctions or technical distinctions between the

21  ultimate issue in each matter?  I mean, obviously the ultimate

22  issue is going to be different in each matter because it's a

23  given that the people suing for securities fraud are not

24  specifically suing to enforce the terms of insurance policy, so

25  it's -- you know, there's always going to be a difference on the

40

1    ultimate issue in some respects.

2              MS. GILBRIDE:  Your Honor, I do believe that it is

3    an issue of fairness and judicial economy and I believe -- you

4    know, we have a ripe dispute.  There's no question, but there's

5    a ripe dispute right now between Axis and its insureds.  Axis

6    is getting requests for advancement and requests to -- all

7    sorts of requests for depletion of its policy limits.  So

8    there's no question but that we have a ripe dispute and that we

9    believe that this is the appropriate forum to be in to resolve

10   that dispute.

11             We do not believe -- you know, all of the issues

12   that are in dispute in the securities litigation are not in

13   dispute in this case.  This is -- and I apologize if there was

14   any misimpression given, but I believe this is a much more

15   narrow --

16             THE COURT:  But isn't there always a dispute?  I

17   mean, it's not really a ripeness issue, is it?  If it were a

18   ripeness issue, then this doctrine of overlap wouldn't apply

19   because the Courts don't say that the securities -- that the

20   Court handling the securities law case has to decide the

21   insurance dispute.  It just says that we're not going to -- we,

22   the insurance court, are not going to decide it.  Now, am I

23   right on that?

24             MS. GILBRIDE:  I think you are right on that, Your

25   Honor.  I think -- and what I was trying to articulate not very

1   clearly apparently was that you were asking whether this was

2   about judicial economy and fairness to the parties and I think

3   that that is what this is about and that is what drives that

4   doctrine, and this -- no one can suggest that this dispute is

5   premature.  This is not a premature dispute.  There is

6   certainly a dispute.  There is a dispute that can be litigated.

7    We believe it will be a much more narrow litigation than the

8   securities litigation that's in the District Court before Judge

9   Lynch.  And we believe that it serves the interests of judicial

10  economy and fairness to all parties.  And, you know, in

11  particular Axis who's being asked to make payments as policy

12  limits without being allowed to get a ruling from a court that

13  there's no coverage under the policy.

14          THE COURT:  But isn't -- doesn't in effect what

15  these overlap cases hold is that the insurer, you know, has to

16  take a back seat on that?  I mean, isn't that a consequence to

17  these decisions?

18          MS. GILBRIDE:  I think that is.  When -- and I

19  think when that happens the reason it happens is because the

20  issues that are in the coverage litigation are going to be

21  decided in the underlying litigation.  So, for example, if

22  there's an underlying dispute that involves issues of negligence

23  and issues of intentional conduct and the insurer is saying,

24  well, we don't cover intentional conduct, in those situations

25  courts -- and that's the vast majority of the cases that deal

42

1    with this issue -- the courts say, well, it's a waste of our

2    time to decide whether there was negligence or intentional

3    conduct, because that will be decided in the underlying case.

4                    THE COURT:  Right.

5                    MS. GILBRIDE:  Here, that's not the situation.  The

6    coverage issue that we have, whether or not the prior knowledge

7    exclusion applies and whether or not the warranty letter

8    applies, are not going to be decided in the securities

9    litigation.

10                   So for those reasons, Your Honor, I don't

11   believe --

12                   THE COURT:  I thought you were going somewhere.

13                   MS. GILBRIDE:  -- the dismissal --

14                   THE COURT:  I guess I thought you were going

15   somewhere else with that, which is that were going to have to

16   take our chances on advancing or not advancing defense costs

17   pending a decision and that -- and I thought you were going to

18   say that's not fair and the cases don't deal with that issue,

19   but don't they?

20                   MS. GILBRIDE:  Your Honor, I don't believe they do

21   because as far as I know, there's not one case cited before Your

22   Honor which has the precise language that is at issue in this

23   dispute where Axis is only required to advance covered defense

24   costs.

25                   THE COURT:  But that --

43

1           MS. GILBRIDE:  Not --

2           THE COURT:  I'm sorry, go ahead.

3           MS. GILBRIDE:  No, I was just going to -- none of

4    the cases that have been put before Your Honor deal with that

5    precise issue and that certainly has not been an issue in any

6    dismissal rulings that have been put before Your Honor.

7           THE COURT:  But isn't it the case that the insurers

8    are decline -- in the cases where there's a dismissal without

9    prejudice based on this doctrine of substantial overlap isn't it

10   the case that the insurers have denied coverage or sought to

11   rescind, which would include rescission of their obligation to

12   pay defense costs?

13          MS. GILBRIDE:  I think in the vast majority of the

14   cases that have so held, Your Honor, the situation was that you

15   have an insurer, a duty to defend insurer who was required to

16   advance defense costs, and was taking a position that because

17   there was negligence and intentional conduct they didn't have to

18   defend -- they didn't have to pay defense or provide a defense

19   for any of those claims.

20          THE COURT:  Right.

21          MS. GILBRIDE:  So in that situation where the

22   Court said the coverage dispute is premature, the insurer did

23   have a duty to defend the entire action, but our situation --

24          THE COURT:  So it was ripe because they had to pay

25   the money even though they said they didn't have to.

44

1          MS. GILBRIDE:  It was ripe, but based on the

2     policy language that was in dispute in those cases, I think

3     here the distinguishing fact is that Axis's policy only requires

4     it to advance covered defense costs.

5          THE COURT:  But doesn't everyone have a

6     distinguishing fact, that's why they brought their lawsuit to

7     rescind, you know.  I mean --

8          [Laughter.]

9          THE COURT:  I understand your --

10         MS. GILBRIDE:  Yeah.

11         THE COURT:  -- point --

12         MS. GILBRIDE:  Your Honor --

13         THE COURT:  -- of specific provision, but --

14         MS. GILBRIDE:  Yeah.  I'm not sure how to answer

15    that.  I think that was in jest, but obviously there's always

16    different disputed facts.

17         I don't think I have anything more to add on this

18    issue unless Your Honor has any further questions for me.

19         THE COURT:  Okay.

20         MS. GILBRIDE:  But, you know, in summation I would

21    say that, you know, we don't believe dismissal is the

22    appropriate remedy.  If Your Honor is concerned about the

23    overlaps and facts, there are other remedies that could be

24    considered, particularly stay or stay as part of the action is

25    that was what Your Honor is --

45

1           THE COURT:  Well, the directors and officers

2    represented by Mr. Walsh are looking for dismissal without

3    prejudice.  They recognize that this issue is going to come up

4    if it's not settled somewhere.  So I mean, isn't that tantamount

5    to a stay?

6           MS. GILBRIDE:  Your Honor, I think they do --

7           THE COURT:  And --

8           MS. GILBRIDE:  -- in the alternative ask for a

9    stay.

10           THE COURT:  Well, someone -- I don't think so.  I

11    think that's the criminal defendants --

12           MS. GILBRIDE:  Okay.  Okay.

13           THE COURT:  -- that are asking for a stay.

14           MS. GILBRIDE:  That's my confusion, then.

15           THE COURT:  I under -- this is kind of off the --

16    you can stay up there if you want.

17           MS. GILBRIDE:  Sure.

18           THE COURT:  But it's addressed to everybody and

19    really it's off the point, but I -- does anyone know how the

20    insurance litigation got before Judge Cote?  I would assume

21    that there would have been lack of diversity there as well.

22    Maybe no one argued -- maybe no one raised the issue.

23           MALE SPEAKER:  Your Honor, I believe there's a

24    motion of jurisdiction --

25           THE COURT:  There was.

46

1          MALE SPEAKER:  -- actions were filed by the

2    carriers in the same courthouse and --

3          THE COURT:  Okay.

4          MALE SPEAKER:  -- it was before Judge Cote.

5          THE COURT:  All right.

6          MALE SPEAKER:  Little different situation.

7          THE COURT:  All right.

8          MR. FERRILLO:  Your Honor, Paul Ferrillo from

9    Weil, Gotshal.  I was with Mr. Borgeest in that case, too.

10   There's another piece to that was I think Judge Cote took part

11   of this on the related jurisdiction and that the --

12         THE COURT:  Under bankruptcy.

13         MR. FERRILLO:  It was -- yes, on -- for the 1334.

14    She took a piece of it on the 1334.

15         THE COURT:  Well, that's conceivable here, I would

16   think.  I mean, I -- as I said, I've got -- I raised this

17   jurisdictional issue at the pretrial conference and I was

18   convinced enough then, since the policy is property of the

19   estate, and there's some possibility that it will flow over in

20   some way to the estate that there could be jurisdiction here,

21   but as you all know my jurisdiction becomes constricted after a

22   plan goes effective.  And while it may still exist, it may

23   much -- it made more -- much more readily be employed by

24   District Court that in an action that for a lot of reasons it

25   would be efficient for the District Court to employ it that

47

1    way, so I wouldn't necessarily rule out that you couldn't raise

2    it in that forum but that's neither here nor there, I guess.

3              MS. GILBRIDE:  Thank you, Your Honor.

4              THE COURT:  Okay.

5              MR. WALSH:  Except a couple points, Your Honor.

6    First of all, I don't have any problem with your jurisdiction in

7    this case, but I understand the posture of the case is in --

8              THE COURT:  Well, let me be clear.  I've not

9    determined that I lack jurisdiction.  It's just that I need to

10   be careful about it and not over extend it and let other issues

11   sort of creep in through the limited jurisdiction that I have.

12             MR. WALSH:  I appreciate that, Your Honor.

13             I just wanted to respond to a couple of things

14   that were said.  And perhaps I heard this wrong, but I thought

15   what was said was that what -- in Guydant the standard was not

16   a substantial overlap and I think that's incorrect.  Guydant

17   says "As a general matter a declaratory judgment action to

18   determine an insurer's duty to indemnify its insured should not

19   be decided prior to the adjudication of the underlying action

20   where the issues to be decided in both actions are

21   substantially similar."  So that's the standard under Guydant.

22             And we have essentially the same effect in New

23   York in the Xerox case where the Court said that "The general

24   rule is that a declaratory judgment as to a carrier's obligation

25   to indemnify may be granted in advance of trial of the

48

1    underlying tort action only if it can be concluded as a matter

2    of law, but there is no possible factual or legal basis on

3    which the insurer may eventually be held liable under this

4    policy." So I think that that sets the standard.  It doesn't

5    have to be, you know, precisely the same.

6           And, in fact, if there wasn't a substantial overlap

7    I have to ask the question why is it that Axis spent five pages

8    and 20 paragraphs reciting the allegations in the indictment in

9    the Grant memo?  I think the only answer is because those facts

10   are key to the issue of -- that there had to be disclosure of

11   claims.

12          The only other thing I want to point out is the

13   contract and maybe this goes to the issue of fairness, but the

14   contract requires advancement unless there's a final

15   determination, and I think that's the quandary that acts as --

16   finds itself in and that's what they should do.  They should

17   live up to their contract.  Thank you, Your Honor.

18          MS. GILBRIDE:  Your Honor, just briefly because I

19   can't let it go unchallenged, but the policy does not require

20   advancement.  It requires advancement of covered defense costs,

21   but --

22          THE COURT:  I know.  Mr. Walsh sort of put back

23   his statement that he wasn't seeking a termination as to the

24   policy.

25          MS. GILBRIDE:  And it's a very key word in the

49

1    policy and it's, you know --

2                THE COURT:  I understand there's a heated dispute

3    over that issue.

4                     [Pause in the proceedings.]

5                THE COURT:  Does anyone else want to be heard on

6    this particular motion, that is, the motion to dismiss?

7                MR. GOLDMAN:  Your Honor, Matthew Goldman.  I'm

8    assuming that the Court will proceed after this two-hour

9    motion.  It's --

10               THE COURT:  Yes.

11               MR. GOLDMAN:  -- our view obviously that -- I've

12   listened to a lot of what I was going to say already being

13   discussed with the Court, so --

14               THE COURT:  Okay.

15               MR. GOLDMAN:  -- I presume I'll get an opportunity

16   to be heard on that issue, Your Honor.

17               THE COURT:  Okay.

18               MR. GOLDMAN:  Thank you, Your Honor.

19               THE COURT:  Absolutely.  Also, the motion for

20   relief from the stay.

21                     [Pause in the proceedings.]

22               THE COURT:  All right.  I have before me a motion

23   by certain defendants in this adversary proceeding, namely

24   Messrs. Brightman, Gantscher, Harkins, Jaekel Lee, O'Kelly and

25   Schoen, who define themselves as the director defendants.

50

1        To dismiss the adversary proceeding under Federal

2   Rule 12(b)(6) incorporated by Bankruptcy Rule 7012, the

3   standard for determining a motion to dismiss is well

4   recognized, that is, the Court must accept all factual

5   allegations in the complaint as true, although the plaintiff

6   must plead more than labels and conclusions and a formulaic

7   recitation of the elements of the cause of action will not do.

8

9        See Bell Atlantic Corporation v. Toombley, 127

10  Supreme Court 1995 at 1965 2007, but with the caveat announced

11  in the Bell Atlantic case or reaffirmed in the Bell Atlantic

12  case, the Court should determine whether based on the facts set

13  forth in the complaint as well as other sources that the courts

14  are permitted to examine under Rule 12(b)(6) and including in

15  particular documents incorporated in the complaint by reference

16  in matters which the Court may take judicial notice of.

17       The plaintiff should be entitled to ultimately

18  submit evidence and establish the facts alleged or whether it

19  should be precluded as a matter of law from going forward.

20  Here these particular debtor defendants -- director defendants

21  are seeking dismissal without prejudice on a relatively narrow

22  basis, that is, unlike certain of the other beneficiaries of

23  the Axis Reinsurance policy, they're not asking the Court to

24  determine that Axis is required to advance defense costs by the

25  terms of the policy.

1          Instead, although they're obviously not agreeing

2    with Axis's position that it's not required to advance those

3    costs, these director defendants contend that because of the

4    substantial overlap of the issues raised by Axis's declaratory

5    judgment complaint with the issues pending in respect of the

6    underlying claims which the beneficiaries contend trigger their

7    rights under the policy in the District Court and in pending

8    securities litigation as well as in any other litigation, but

9    primarily that litigation, that the Court should not proceed

10   here with a determination of essentially those same issues or

11   at least issues that substantially overlap with the issues

12   pending in the District Court.

13          This basis for dismissal without prejudice is well

14   recognized in the case law.  See <u>National Union Fire Insurance</u>

15   <u>Company v. Xerox Corporation</u>, 792 NYS 2d. 772 (New York Supreme

16   Court 2004) affirmed 807 NYS 2d. 344 (New York Appellate

17   Division 2006) as well as <u>In Re:  Adelphia Communications</u>

18   <u>Corporation</u>, 302 B.R. 439 (B.R. SDNY 2003).

19          It is not only, however, a principle in New York,

20   but also recognized, it appears to me, based on reading the

21   parties' pleadings generally throughout the country and Axis, I

22   believe, acknowledges the fundamental proposition that if there

23   is a substantial overlap of the issues in coverage litigation

24   with other pending litigation related to the claims to be

25   covered that the coverage litigation should take the back seat.

52

1          Axis contends, however, that as a factual matter

2     there is not an overlap that would require a dismissal here.

3     It relies heavily upon a decision out of Illinois, Alliance

4     Insurance Company v. Guided Corporation, 839 NE 2d. 113

5     (Illinois Appellate Court 2005) in making its argument.

6          I should note, however, that the Guydant case

7     enunciates the general proposition that a declaratory judgment

8     action to determine an insurer's duty to indemnify its insured

9     should not be decided prior to the adjudication of the

10    underlying action where the issues to be decided in both

11    actions are substantially similar.  That's at page 120.

12         So it appears to me, at least on the general

13    proposition that there's no real conflict between the law of New

14    York and the law of Illinois here on this key proposition of

15    law.  And where there is no such conflict, the Court need not

16    continue with a choice of law analysis.

17         However, I will do so because there is some

18    distinction, although I don't think a major one, between how the

19    Guydant Corp. Case -- I'm sorry, the Guydant Corp. court

20    analyzed the overlap issue from how other courts have done so

21    in New York.

22         In that regard, although this is more relevant to

23    Axis's interpretation of its rights in respect of the policy

24    generally, which are not being litigated here by these

25    particular director defendants, Axis contends that this dispute

53

1    in this declaratory judgment action is governed by Illinois

2    law, whereas the director defendants contend to the contrary

3    that it should be governed by New York law.

4           I've not seen a provision in the policy itself

5    setting forth the choice of law, and no one has cited that to

6    me.  Instead, they have properly set forth the choice of law

7    rule in the absence of such a provision, which is that New York

8    choice of law rules should apply here given that this action is

9    being determined by a court in New York and that the center of

10   gravity analysis which, as far as I'm concerned, is

11   substantially the same as if not entirely the same as

12   substantial contacts analysis would apply as to disputes in

13   respect of insurance coverage.

14          The parties also generally agree on the factors to

15   be considered in connection with such an analysis.  In looking

16   at those factors here and taking note particularly of Refco,

17   Inc.'s headquarters and the place where its executives took the

18   actions or allegedly took the actions at issue here, as well as

19   the residence of substantially all the defendants, the

20   headquarters of the insurer, but primarily where the underlying

21   activity occurred, it appears to me that New York law should

22   apply.

23          And therefore, to the extent that there is any

24   substantive disparance [ph.] on the so-called substantial

25   overlap doctrine, I would follow the dictates of new York law

54

1   and as it applied by the New York cases.

2          In considering those cases, it appears to me that

3   the rationale for applying the doctrine fits these particular

4   circumstances.  That rationale is twofold.  First and most

5   important, it reflects a policy not to prejudice the parties'

6   rights in the underlying pending action with the risk of -- in

7   particular in criminal actions, but also in civil actions

8   having to make disclosures and litigate in two forums with

9   potentially and consistent results.  And as importantly in this

10  context and particular given the insurance context and the

11  issue of advancing defense costs greatly increased cost, that

12  rationale dovetails into the second rationale, which is one

13  based on judicial efficiency.

14         As discussed at oral argument, it appears to me

15  that this is not -- this doctrine is not really one that should

16  best be defined as ripeness, per se, because there is obviously

17  a ripe issue that is being deferred in the cases that apply to

18  the doctrine, that is, the insurer contends one way or another

19  that it is not responsible for paying under its policy.  The

20  courts say nevertheless that that issue should not be decided

21  first where there's substantial overlap with the underlying

22  litigation.  Rather, the insurer should either perform its

23  obligations or at its own risk not perform them and contend

24  later that it never had an obligation to perform them as the

25  underlying litigation proceeds.

55

1      I note in this respect that as set forth at length

2 by Judge Cote in In Re:  Worldcom Inc. Securities litigation,

3 354 F. Supp. 2d. (455 SDNY 2005), there are strong policies

4 under New York law with regard to interpreting insurance

5 policies in favor of the insured particularly in construing the

6 meaning of exclusions incorporated into a policy of insurance

7 or provisions seeking to narrow the insurer's liability.  And

8 further, that the distinct and separate duty of an insurer to

9 pay defense costs, that is, distinct and separate from a duty

10 to indemnify is broader than the duty to indemnify and not to

11 be taken lightly as a policy matter.  That may help to explain

12 in addition to the notions of fairness and efficiency why this

13 doctrine goes beyond the doctrine of ripeness.

14      Now, turning to Axis's argument that there is not a

15 substantial overlap between the litigation pending before me

16 and the multi-district securities litigation and other

17 litigation that it is asserted by the defendants here give rise

18 to an obligation to advance defense costs and if liability is

19 ultimately found or there's a settlement, an obligation to pay

20 indemnification it appears clear to me that there is indeed a

21 substantial overlap between that litigation and the declaratory

22 judgment litigation before me.

23      Axis as set forth in its complaint is relying

24 primarily, although not exclusively, upon a warranty letter so

25 called by Axis, received at the time that -- or in connection

56

1  with in the words of the complaint the underwriting of the Axis

2  policy.  That warranty letter provides as follows:  "(a) No

3  person or entity proposed for this insurance is cognizant of

4  any facts, circumstance, situation, act, error or omission

5  which he, she, it has reason to suppose might afford grounds

6  for any claim AS SUCH TERM IS DEFINED WITHIN THE POLICY such as

7  would fall within the scope of the proposed insurance" and then

8  one exception is listed to that.

9       And then "(b) No person or entity proposed for this

10  insurance is cognizant of any inquiry investigation or

11  communication which he, she, it has reason to suppose might

12  give rise to a claim as such term is defined within the policy

13  such as would fall within the scope of the proposed insurance."

14       Other bases for the refection of coverage are set

15  forth in paragraphs 49 and 50 of the complaint, as well as

16  paragraphs 52 and 53, but it seems to me that leaving aside

17  issues of what's in the policy itself as opposed to what's

18  extrinsic to it and may give rise to some other claim, the

19  focus of the discussion regarding overlap has been over the

20  language quoted and more particularly over the language quoted

21  in paragraph (a) of the so-called warranty.

22       It appears to me that one considers the fact that

23  the plaintiffs in the securities fraud litigation are suing the

24  defendants in respect of claims or what would be claims if they

25  prevailed.  They will be seeking in discovery and seeking to

57

1   prove the defendants' cognizance of circumstances, situations,

2   acts, errors or omissions that would give rise to such a claim,

3   i.e., their knowledge of, and/or participation in frauds and

4   other bases for the claims in the securities action.  That will

5   be the subject of discovery, which as is evident by the

6   enormous costs that have already been incurred.  And I note

7   here that we're now here in the third layer or the second layer

8   of Axis coverage is enormous, multi-million dollars.

9         The plaintiffs will be, if they've not already been

10  seeking to obtain from the defendants those are also the issues

11  I believe that if the litigation has decided on its merits will

12  be determined by the District Court.

13        As I said in oral argument, I believe those are

14  also issues that would come up in any settlement discussions

15  with the insurer and the insurer's inevitable statement to the

16  plaintiffs that even if the defendants are liable the

17  plaintiffs shouldn't look to the insurers because they

18  disclaimed coverage under this warranty and other provisions

19  set forth in the complaint.

20        So I believe that there is indeed a substantial

21  overlap between the issues raised in the complaint and the

22  pending litigation.  That's highlighted by the fact that the

23  complaint relies almost exclusively, if not exclusively, on

24  recitations from either -- well, recitations from documents

25  filed in the securities action or related criminal proceedings

58

1   to establish the breach of the warranty and the insurer's rights

2   under the other exclusion is referred to in the complaint.

3        I believe these facts distinguish this matter from

4   the matter before the Court in the <u>Guydant</u> case where it

5   appears clear to me that the Court considering insurance

6   coverage issues in the <u>Guydant</u> case had to consider different

7   underlying factual issues as to the nature of the -- as to a

8   different type of fraud that would have given rise to arguably

9   a denial of coverage.

10        As I noted at oral argument, the issues that do

11  not overlap here and inevitably there will be some because we're

12  dealing with here an insurance policy as opposed to the facts

13  that might give rise to a right under the policy or under

14  related documents to disclaim coverage should not guide my

15  decision.  Those differences do not call into question issues

16  of efficiency or fairness.  As I said before, the heavy lifting

17  in this dispute is over the underlying factual point as to

18  whether there was knowledge of conditions giving rise to a

19  claim.  That's heavy lifting first instance by the parties in

20  their discovery and in the second instance by the parties and

21  the Court in determining the merits of that contention and

22  that's already going to be taking place in the District Court.

23  It seems to me that, therefore, this litigation should be

24  deferred under the substantial overlap cases to await

25  determination by the District Court or those underlying issues.

59

1          It also seems to me that there is a basis as

2   discussed in oral argument if the District Court agrees -- for

3   the District Court to have jurisdiction over these issues if

4   they are to be teed up there, as was done in the <u>Worldcom</u>

5   <u>Securities</u> case, which involved a similar situation where a

6   plan had been confirmed and gone effective and the Bankruptcy

7   Court had some concern about how involved it should be in

8   issues that should be primarily between third parties to the

9   bankruptcy case.

10          So on that basis, I will grant the director

11  defendants motion to dismiss without prejudice, although I

12  would strongly encourage the parties if they were ultimately to

13  pursue this litigation to pursue it in a different forum

14  because of the jurisdictional concerns that I've raised.

15          Mr. Walsh, you can submit an order to that effect

16  after circulating it to counsel for Axis.

17          MR. WALSH:  I will do that, Your Honor.

18          THE COURT:  And I suppose to your allies in the

19  defendant group.

20          MR. WALSH:  Thank you, Your Honor.

21          THE COURT:  Okay.

22          MS. GILBRIDE:  Your Honor, if I may just to

23  clarify, you've now dismissed the entire litigation?

24          THE COURT:  Well, that's my inclination.  I'll hear

25  oral argument, but that's my inclination.  I'll hear oral

60

1  argument on this motion, but it seems to me it all should go.

2         MS. GILBRIDE:  Your Honor, it seems to me if

3  another court, another forum is going to hear this issue, there

4  really is no --

5         THE COURT:  Well, you know what?  As far as the

6  other defendants are concerned, that's my preliminary ruling.  I

7  don't want to -- I said specifically to Mr. Goldman and his

8  colleagues that I would hear them out on this other point, but

9  that's my strong inclination.

10        In other words, he has an uphill fight.

11        MR. GOLDMAN:  And I heard that, Your Honor.  Okay.

12  So I guess it's one of the disadvantages of going last.  You

13  get so many other things resolved for you and said.  Let me

14  make this easier for all -- everyone.

15        First of all, there's no reason for me to discuss

16  facts.  I don't think there's a single fact that has been raised

17  in here in our papers that has not been discussed by the Court

18  so far this morning, the provisions in question, and the

19  primary insurance policy, the follow-on provisions, and et

20  cetera.

21        I would add that I felt and feel that the Court

22  has raised the jurisdiction issue, of course, at the pretrial

23  hearing as well as today.  I will indicate for the benefit of

24  the Court that we in fact -- the reason I stated on the record

25  I believed this court had subject matter jurisdiction under

61

1   1334 was that the estate continues to have an interest in

2   potentially obtaining proceeds of these policies and in that

3   situation I would add, although it's not before the Court

4   immediately, that in the lift stay motion I reached agreement

5   with Mr. Kirschner's counsel that I am to put on the record that

6   we must provide him notice and give him an opportunity to be

7   heard if he wishes to be heard regarding any compromise

8   precisely because he recognizes that that interest is one of

9   import to him and, of course, we have no difficulty with that.

10          The Court did recognize as I had neglected to in

11  my moving papers, but did remember last night, that the plan

12  confirmation order in fact dealt with the lift stay issues that

13  were raised, but I don't think that that changes the Section

14  1334 issue and I don't think that the Section 1334 basis for

15  jurisdiction --

16          THE COURT:  No, I'm not --

17          MR. GOLDMAN:  Yeah.

18          THE COURT:  I agree with you.  I'm not -- and my

19  holding is not based on a finding that I lack jurisdiction,

20  only -- it only reflects that it's another factor in the

21  conclusion I reached that under the substantial overlap cases

22  the underlying basis for that doctrine would apply here, which

23  is that as bankruptcy cases end there's kind of a fade-in role

24  the Bankruptcy Court.

25          And when the case law is already pointing you to

62

1  go to the other court, that's another factor that just increases

2  my inclination to send it to the other court.

3          MR. GOLDMAN:  I understand, Your Honor.  I would

4  add -- I would recognize, as we all must, the brave new world

5  of post-confirmation jurisdiction as it is, but I would add

6  further and would stress for the Court -- Your Honor, you have

7  acknowledged, I think, all of as I said the facts that I would

8  have reported to you in respect of our preliminary injunction

9  motion.  The one which I think you've also acknowledged earlier

10 in these arguments is that we are -- that Axis is, as they say,

11 up to bat.

12         The harm which Judge Cote identified for us as

13 defendants and actions particularly, of course, for the people

14 on whom -- on whose bases I speak who we have usually

15 characterized as the so-called innocent defendants is that we

16 will have disruption which Judge Cote identified as harm that

17 it has to be addressed immediately.  Lexington is out.  We are

18 facing immense obligations to proceed in these matters and we

19 need to have a lack of disruption of our ability to have a

20 defense mounted on behalf of the defendants.

21         I would add also the Court has identified that

22 Axis is relying and primarily on an interpretation of the word

23 "covered" in its policy language to argue that they can make

24 that determination on their own and ignore the obligation to

25 advance the costs -- defense costs "as incurred" with a

63

1    concomitant right of access to seek recoupment later on after

2    it is "finally determined" that -- presumptively by a court and

3    not by Axis that the defense costs should not have been

4    advanced.

5             And, of course, as the Court has already

6    acknowledged this is language which has been identified as

7    important as a matter of case law and policy both by Judge Cote

8    and in the Kaslowsky [Ph.] case.

9             We face that concern now.  We face the need for

10   the Court and not Axis to determine their obligation to advance

11   defense costs.  It is not just because they say so.  We face

12   the need now for a determination that it is covered as we have

13   identified in our moving papers and, of course, the Court is

14   clearly familiar with them.  The case law is consistent that it

15   is simply a question of looking to see whether the issue in

16   dispute fits within the policy.  This is a securities

17   litigation.  It is expressly with an ensuring agreement (a) the

18   word "securities litigation" is there.  If this was a medical

19   malpractice case against one of these people it'd be an entirely

20   different policy, but that's not the issue.  That's what

21   coverage is all about.  So we believe, Your Honor, that we have

22   merited or established a basis to proceed with the preliminary

23   injunction.

24            As the Court is well aware, we proceeded in the

25   manner that -- of a preliminary injunction as had happened in

64

1   Worldcom.  We believe we have the basis to prevail.  We believe

2   we've shown the necessary likelihood of success to do so and

3   given that we are going to face an almost immediate disruption

4   in defense efforts, we would ask the Court now to enter the

5   preliminary injunction with the understanding that we would

6   then be able to address any further issues that the Court has

7   at a later time.

8            Your Honor, my co-counsel reminds me that to the

9   extent that the Court is concerned about issues attentu --

10  dealing with the underlying merits, which we do not believe are

11  necessary to address in this situation, it is possible for the

12  Court to stay such portions of this proceeding.

13           As the Court is aware, this is a request for

14  partial relief.  That is what Judge Cote was looking at.  It's

15  not a request for complete relief.  It's a request for

16  advancement.  Thank you, Your Honor.

17           THE COURT:  Okay.

18           MS. GILBRIDE:  Your Honor, in view of the Court's

19  ruling on the prior motion, I believe that this issue of

20  advancement should be left for another court.  Since Your Honor

21  has deferred this litigation to another court, we're clearly

22  going to be in front of another court on this coverage issue

23  and I think in view of the Court's ruling on the director

24  defendants motion that the Court should not rule on the

25  preliminary injunction hearing before it.

65

1          Be that as it may, with respect to the preliminary

2    injunction, we think that there's a very high standard that the

3    insureds must get past in order to get a preliminary injunction

4    with respect to defense costs.  We don't think they've even come

5    close to satisfying that.  They have not established

6    irreparable harm.  They've not even tried to establish

7    irreparable harm.

8          We don't think that they can establish the

9    likelihood of success on the merits.  Whether it's a substantial

10   likelihood or not, you know, we believe that it would be a

11   substantial likelihood that they have to establish because we

12   do believe that this is a mandatory injunction that they're

13   seeking and seeking to change the status quo.  The status quo

14   right now and has been for the past year that Axis has denied

15   coverage for this case.

16         With respect to the merits of Axis's coverage

17   position, the policy language before Your Honor that's at issue

18   in this hearing is not the language that was before the Court

19   in the Worldcom hearing or in any of the -- the Kaslowsky

20   hearing.  It was not the language that was at issue in any of

21   those cases.

22         Axis's language clearly states that they have to

23   advance only covered defense costs and the argument that's being

24   advanced by the insureds simply ignores that language.  There's

25   another section of the policy --

1          THE COURT:  Well, I think they're saying that if

2   you interpret it the way Axis wants then, in fact, the other

3   language that you're -- I think you're about to quote to me --

4   would be superfluous, which is, you know, fundamental contract

5   interpretation doctrine that you should never render another

6   provision superfluous, but --

7          MS. GILBRIDE:  I think if you look at the entirety

8   of Section (d) it's clear that that language is not superfluous.

9    It starts out by saying that Axis will advance covered defense

10  costs.  It then goes on to talk about if Axis advances defense

11  costs and ultimately they're not covered that they're ripe --

12  they're subject to recoupment by Axis.  That's for the situation

13  where there is an exclusion upon which an insurer reserves

14  rights, for example, a fraud exclusion that requires an

15  adjudication of fraud.  In that circumstance, the insurer would

16  reserve rights subject to a final adjudication of fraud and

17  then seek to recoup those defense costs at the end of the

18  litigation of the underlying case.

19          Section (d)(3), which is the allocation provision,

20  must also be considered in this context and the allocation

21  provision clearly says that if there's a dispute as to covered

22  and uncovered claims, the parties have to exercise best efforts

23  to come to a determination.  But if they cannot, then Axis must

24  only advance undisputed defense costs and --

25          THE COURT:  I probably opened up a can of worms,

1    because I -- not that -- I'm not fascinated by these contra-

2    interpretation points, but because I think the ultimate issue

3    here is -- well, they're not making a motion for summary

4    judgment based on interpretation of the insurance policy.  It's

5    his motion for an injunction, so --

6                MS. GILBRIDE:  I --

7                THE COURT:  -- I understand.

8                MS. GILBRIDE:  Okay.  So, Your Honor, our position

9    is that based on your prior ruling, we don't believe that Your

10   Honor should rule on this motion for preliminary injunction,

11   but if you do, we don't believe that they've satisfied the

12   procedural threshold for recovery under Rule 65.

13               If Your Honor was so inclined to grant relief our

14   position is that Axis would request that there a bond

15   established by the insureds that are seeking this relief that

16   would provide some assurance for Axis to recover in the event

17   that ultimately at the end of the day Axis prevails in its

18   coverage position.

19               THE COURT:  Okay.

20               MS. GILBRIDE:  Thank you, Your Honor.

21               MR. GOLDMAN:  I will not repeat myself.

22               Your Honor, two items; (1) the papers make this

23   point clear.  If Axis', I would say, strained interpretation of

24   the word "covered" were considered by the Court to be a valid

25   interpretation that would merely create an ambiguity we are

68

1  right in the situation of the <u>Adelphia Regis</u> case.  That

2  ambiguity should be construed in favor of the insured but in

3  any event what we would like to stress for the Court is that

4  the urgency given that the Lexington policy exhausted in mid-

5  July of not having a disruption of the defense costs or the

6  reason we've sought injunctive relief and the language -- we

7  would be very happy to have the Court refer the underlying

8  coverage dispute that we will undoubtedly have with Axis and

9  the duty of theirs to step up and ultimately pay the covered

10  policy referred to Judge Lynch but we are requesting that this

11  Court rule on our preliminary injunction at this time in our

12  favor in order to avoid a disaster.

13              THE COURT:  All right.

14              MR. GOLDMAN:  Thank you, Your Honor.

15              THE COURT:  Okay.  Did someone else want to speak?

16              MR. EISEN:  Your Honor, Norman Eisen from

17  Zuckerman, Spaeder on behalf of the officer defendants who are

18  the indicted defendants as well.  I'll be very brief.

19              THE COURT:  Okay.

20              MR. EISEN:  But we joined in the motion and if I

21  may just add a couple of points just to emphasize Mr. Goldman's

22  points which are even more acute as to the three defendants.

23  We are facing trial in March.  The trial was continued from

24  October because of the enormous amount of discovery that needs

25  to be reviewed so it is an even sharper dilemma for us.  We

69

1  would submit that the question is the Court having resolved the

2  choice of law question and the applicability of New York that

3  under the Worldcom case it's a straightforward issue.  The

4  Court can't split this off in the same sense that the previous

5  advancement questions have by consent come before the Court on

6  a lis se [sic] posture.  There's a narrow issue here that the

7  Court can separate off comfortably within the scope of its

8  jurisdiction and refer the rest elsewhere and --

9           THE COURT:  Well, I can't refer anything.

10           MR. EISEN:  Understood.  The rest can go elsewhere

11  but there is an independent basis for the Court to say, I will

12  address this narrow question.  It is, given the Court's

13  previous rulings, a straightforward one we think and let the

14  parties go off to resolve the issues where they may.  Opposing

15  counsel has made clear that Axis will not pay.  It was

16  virtually the first statement that was made.  It doesn't

17  believe that this is covered.  Months have passed since the end

18  of May when the complaint was filed.  These issues have been

19  joined and have been before the Court on motions for almost two

20  months as you know, Your Honor is more familiar with the

21  Worldcom case than I am, there was a substantial lapse of time

22  there while these jurisdictional issues were resolved and I

23  think on behalf of all the defendants who are very actively

24  engaged in this civil and/or criminal litigation but

25  particularly the ones who are facing the criminal issues Your

70

1    Honor would really be exercising the Court's equity

2    jurisdiction to address this narrow question and leave the

3    parties to address the larger coverage issues in another forum

4    and with that I will -- unless the Court has any questions for

5    me I'll be seated.

6              THE COURT:  No, that's okay.  Thanks.

7              MR. EISEN:  Thank you, Your Honor.

8              MR. GOLDMAN:  I apologize to the Court.  Your

9    Honor, may I ask the Court's indulgence --

10             THE COURT:  You get the last word.

11             MR. GOLDMAN:  Thank you.

12             I just wanted to add for the Court that I had

13   realized before and should have mentioned that I -- yes, I

14   don't think that referral here is actually the option.  The

15   counterclaim is pending.  It's my understanding that the Court

16   does not believe at present it lacks subject matter

17   jurisdiction as to the issues raised by the counterclaim and so

18   I would on that basis indicate to the Court that since the

19   counterclaim is pending and I believe the Court does have 1334

20   subject matter jurisdiction that is a basis for the Court to

21   consider the preliminary injunction and grant it.

22             THE COURT:  I.E., What you're saying is if I

23   dismiss the adversary proceeding you'd still have a separate

24   proceeding pending?

25             MR. GOLDMAN:  Absolutely, Your Honor, that's what

71

1   the counterclaim is there for.

2           THE COURT:  Well, what about the issue about

3   likelihood of success on the merits?

4           MR. GOLDMAN:  I believe that we have shown that we

5   would likely be able to prevail on the merits in the manner

6   that Judge Cote has described and as we have discussed at

7   length this morning.

8           THE COURT:  Because your argument is I would

9   haven't to get into whether there was a fraud or not because

10  it's simply a matter of contract interpretation.

11          MR. GOLDMAN:  Correct, Your Honor, as to the

12  advancement obligation.  Ultimately, there will be a

13  determination before Judge Cote --

14          THE COURT:  Right, as to the advancement issue.

15          MR. GOLDMAN:  Exactly.

16          MR. KLINE:  Your Honor, may I just be heard to

17  supplement one point and I apologize.  Ivan Kline for Friedman

18  & Wittenstein.

19          Part of what's in our counterclaims is the fact

20  that even if Mr. Bennett's knowledge is shown we still have

21  coverage and we can adjudicate that and none of the issues

22  relevant to that will be before any other court because the

23  policy provisions or document relied upon by Axis is simply not

24  part of the policy.  The warranty is not part of the policy and

25  a prior knowledge exclusion is not in the policy.  Those have

72

1  nothing to do with Mr. Bennett's knowledge and will not be
2  adjudicated anywhere else, there will be no discovery in any
3  other case that relates to those issues.  That's what our
4  counterclaims are largely premised on.  Even if one assumes
5  knowledge or its shown elsewhere we still have coverage.  This
6  Court, really, is the right Court and as of now the only Court
7  that can adjudicate our position on that and those are what
8  support our advancement request.
9       MS. GILBRIDE:  Your Honor, thank you for allowing
10 me to have the last word.  I hope it is the last word.  But,
11 frankly, what I'm hearing is that the insureds want to have
12 their cake and eat it too.  Your Honor has shown a disposition
13 to dismissing the action because you believe there's a
14 substantial overlap in the issues.  The counterclaims are based
15 on the very same disputed facts and disputed issues that are
16 asserted in our claim.
17      THE COURT:  See, let's explore that for a second.
18  They're saying that they're not because for them to win on the
19 -- they're saying this -- advancement of cost issue all I have
20 to do is interpret the insurance policy as to what those
21 provisions that you and I went through mean as opposed to
22 finding that in fact they were triggered.  For you to win you
23 have to prevail on both issues.  You have to find that they
24 were triggered too.  You have to convince the Court that they
25 were triggered.

73

1    MS. GILBRIDE:  Your Honor, in order for them to

2    prevail on their counterclaims they have to show that their

3    claims are covered claims.

4    THE COURT:  I know but that begs the question --

5    that has me assuming your interpretation of the contract is

6    right.

7    MS. GILBRIDE:  Well, Your Honor, you only get to

8    that interpretation -- I think in order to get to that issue

9    you need to determine whether or not the underlying claims --

10   it's the cart and the horse here.  I mean --

11   THE COURT:  But why is that?  Why would I need any

12   discovery as to what any of these defendants knew about the

13   alleged fraud if in fact the duty to advance defense costs is

14   something that has to wait for -- I'm sorry -- doesn't have to

15   -- your client's being relieved of the duty to advance defense

16   costs has to await a final determination on the merits that

17   it's a funding mechanism as opposed to an ultimate liability

18   mechanism.

19   MS. GILBRIDE:  But, Your Honor, our position is

20   that it is --

21   THE COURT:  Well, I know that's your position but

22   in terms of deciding the issue it doesn't really implicate the

23   substantial overlap doctrine.  I'm not sure it does.

24   MS. GILBRIDE:  I believe it does, Your Honor, and

25   I believe it's fundamentally unfair --

74

1          THE COURT:  But why?

2          MS. GILBRIDE:  Because basically our position is

3   that the claims are not covered and you have to determine that

4   by looking at the underlying acts and finding whether or not

5   the warrant applies and whether or not the prior knowledge

6   exclusion applies.  I think that you can't do one without the

7   other, Your Honor.

8          THE COURT:  They could prevail without that it's

9   just that only you have to win on both points.  They could win

10  on one.

11         MS. GILBRIDE:  But for them to win on one there

12  has to be an excision of a word from the insurance policy, the

13  word "covered" --

14         THE COURT:  Well, but again, that's the --

15         MS. GILBRIDE:  -- and I don't think Your Honor --

16  respectfully, I don't think Your Honor can make a determination

17  without getting into the facts on that regardless --

18         THE COURT:  But what facts?  I mean either it's

19  not ambiguous and it's based on the plain meaning of the

20  document or it's somewhat ambiguous but construed against the

21  insurer or the insurer is able to say, well, even if you

22  construe it against me it's still --

23         MS. GILBRIDE:  I think in order to grant a

24  preliminary injunction, Your Honor, you have to get the

25  substantial likelihood of success on the merits and I don't

75

1  think --

2              THE COURT:  But isn't -- again, I confess what --

3              MS. GILBRIDE:  Mr. Goldman.

4              THE COURT:  No.  No, that was --

5              MS. GILBRIDE:  Mr. Kline.  Mr. Eisen.

6              THE COURT:  No.  I'm going somewhere else.

7              MS. GILBRIDE:  Okay.

8              THE COURT:  When I read your argument about the

9   defendants taking inconsistent positions I kind of dismissed

10  that right away because it was in the context of the motion to

11  dismiss and, clearly, Mr. Walsh's clients weren't taking

12  inconsistent positions.  So I didn't even think about it

13  whether they were inconsistent or not but I'm not sure they are

14  inconsistent.  I mean Mr. Walsh's clients want your claim

15  dismissed but even if you hadn't made that claim wouldn't any

16  beneficiary of this policy have a right to start a lawsuit

17  saying that you've wrongfully failed to pay?

18              MS. GILBRIDE:  Yes, of course --

19              THE COURT:  Now, I thought that wasn't truly ripe

20  -- when I came into this I thought that wasn't truly ripe in

21  the real term of ripeness because other than saying you want me

22  to determine whether you don't have to pay you hadn't said, we

23  won't pay, but I thought I heard you say at the beginning of

24  this hearing --

25              MS. GILBRIDE:  We said --

76

1          THE COURT:  I'll do the talking.

2          MS. GILBRIDE:  Sorry.

3          THE COURT:  I thought I heard you say at the

4    beginning of this hearing, no matter whether you dismiss or not

5    we won't pay and that makes it ripe to me, I think.  I mean if

6    Axis is saying literally today, we're not going to go back and

7    rethink this and consider whether -- now that Judge Drain is

8    not going to decide for us whether we have to pay or not,

9    whether we're going to take the risk of not paying which, you

10   know, is certainly a legitimate thing for an insurer to do.

11   It's one thing to act unilaterally, it's another thing to ask a

12   Court for a determination of whether they're acting properly.

13   At this point Axis would be acting unilaterally.  That raises

14   some fairly serious issues, you know, and maybe creates

15   potential liability beyond the coverage so -- but if you're

16   telling me today Axis has already made that decision, it's

17   going to act unilaterally and not withhold the money, then this

18   is ripe.

19          MS. GILBRIDE:  Your Honor, I can't make a

20   representation one way or the other about what Axis will do

21   because we didn't know what your ruling was going to be and so

22   --

23          THE COURT:  Well, no, but I thought you told me --

24   I mean I don't have a court reporter here, we're on electronic

25   transcript -- at the beginning of the hearing that --

77

1              MR. BORGEEST:  Your Honor, Wayne Borgeest on

2    behalf of Axis.  May I be heard briefly?

3              THE COURT:  On behalf of?

4              MR. BORGEEST:  Axis.

5              THE COURT:  Okay.

6              MR. BORGEEST:  If I may, Your Honor, Axis denied

7    coverage over a year ago so the company staked out its position

8    well over a year ago.  The position --

9              THE COURT:  Yes, but at that point it didn't

10   really matter.  I mean you could always change your mind --

11             MR. BORGEEST:  Well, no --

12             THE COURT:  No one was asking you for money then.

13             MR. BORGEEST:  Well, I think it did matter.  I

14   think that counsel was free to bring --

15             THE COURT:  Do you really want to say that?

16             MR. BORGEEST:  Counsel was free to challenge --

17             THE COURT:  I mean --

18             MR. BORGEEST:  Your Honor, Axis did not get so

19   much as a letter disputing the denial.

20             THE COURT:  But --

21             MR. BORGEEST:  I think what the counterclaim

22   defendants are saying is that for purposes of your jurisdiction

23   it's okay for them to prove that their clients were wrongly

24   treated but in denying us our prosecution of our complaint for

25   declaratory judgment of no coverage you're not allowing us to

78

1   prove that we are correct in our position and that obviously is

2   an absurd result.

3          THE COURT:  It's not I don't think.  I'm sorry, I

4   beg to differ because it's two different issues.

5          MR. BORGEEST:  No, but we filed an action for a

6   declaration of the Court --

7          THE COURT:  Right.

8          MR. BORGEEST:  -- that there's no coverage for

9   these individual insureds.

10         THE COURT:  I understand and --

11         MR. BORGEEST:  They have counterclaimed saying

12   that there is coverage for their insureds.

13         THE COURT:  No, they have not.  They have

14   counterclaims saying that your client has to advance defense

15   cost.

16         MR. BORGEEST:  That's correct.

17         THE COURT:  And they have a different

18   interpretation of the contract than your client has.

19         MR. BORGEEST:  But, Your Honor.

20         THE COURT:  They say that that provision is a

21   funding mechanism subject to recoupment or reimbursement.  You

22   say it's a coverage issue.

23         MR. BORGEEST:  With all due respect, Your Honor,

24   Your Honor cannot --

25         THE COURT:  With all due respect I read it and

79

1  that's what it says.

2          MR. BORGEEST:  But, Your Honor, with all due

3  respect the Court cannot find that there is a funding

4  obligation without finding that there is coverage.

5          THE COURT:  I disagree completely.

6          MR. BORGEEST:  Well, then we have a disagreement

7  but --

8          THE COURT:  I can't find that there is no funding

9  obligation without finding that the insurer has no underlying

10  liability but in terms of the issues as to the meaning of the

11  contract and what the provisions mean as far as coverage and

12  the reference to "finally determined," that has nothing to do

13  with the evidence that's going to be coming out in the

14  litigation in the district court.

15          MR. BORGEEST:  But, Your Honor, how can the Court

16  find that there's a funding obligation in the face of a claim

17  which you now want us to take over to another courthouse where

18  we are going to prosecute the claim to find that there is no

19  coverage?

20          THE COURT:  Oh, no, this litigation would have to

21  be limited to a fairly narrow set of issues.  It would not get

22  into that issue.

23          MR. BORGEEST:  Your Honor, we're being put in a

24  very awkward position.  We responded to the motion to dismiss

25  by saying that we would litigate our coverage issues in a

80

1  narrow fashion without burdening the underlying securities

2  litigation.  Your Honor has given an indication that you're

3  inclined to reject that --

4          THE COURT:  Because it wouldn't happen.

5          MR. BORGEEST:  -- because of the overlap.

6          THE COURT:  Right.

7          MR. BORGEEST:  If there's overlap for our claim

8  for a declaration of no coverage there necessarily must be

9  overlap with their declaration of some claim that funding in

10  the absence of a determination of coverage.

11          THE COURT:  All right.  I thought you were going

12  to stand up to say something completely different which is that

13  this isn't ripe --

14          MR. BORGEEST:  I'm sorry, Your Honor.

15          THE COURT:  -- and the insurer has really not made

16  up its mind but I think we're just repeating the same argument.

17          So is the insurer saying it's not going to pay or

18  not?

19          MR. BORGEEST:  Your Honor, the insurer issued a

20  denial letter well over a year ago that went unchallenged.

21          THE COURT:  I understand that but there's -- I

22  also understand that there's a big difference and potentially a

23  legal difference as far as the insurer's liability.  When push

24  really comes to shove and the request is made because they need

25  the money, they've gone through the first layer of excess that

81

1  it really won't fund because that's when the damages start and

2  that's when penalties start for the insurer.  So that's a very

3  serious decision for an insurance company to make.

4          MR. BORGEEST:  It is and that's the reason why we

5  filed a declaratory judgment action --

6          THE COURT:  I understand and that's why I thought

7  the insurer was deciding to act not unilaterally but to try to

8  get a judicial determination and I don't fault you for that.

9  That's a good thing.  That's what responsible parties do but,

10  although I had not decided this until preparing for this

11  hearing, it's not going to work here.  I can't give you that

12  determination.  So now you have to decide whether you're going

13  to act unilaterally, in which case I think this motion is ripe

14  or not and I'm happy to give you a little time to decide that.

15          MR. BORGEEST:  Your Honor, we're prepared to

16  litigate the issue of coverage.  That's why we're here.  The

17  contract itself by its terms --

18          THE COURT:  You lost on that point.

19          MR. BORGEEST:  Okay.  Let me turn to another point

20  then.

21          THE COURT:  Okay.

22          MR. BORGEEST:  The contract by its terms gives

23  Axis the unilateral right to determine how much of the defense

24  costs are covered and how much it will pay.  Contractually, it

25  gives Axis that right unilaterally.

82

1          THE COURT:  I am happy to determine those issues

2    here -- those contract interpretation issues if you're telling

3    me that if I don't determine them you're going to withhold

4    coverage.

5          MR. BORGEEST:  Your Honor, we came here, filed

6    this action prepared to litigate the contract issues.  All

7    we're saying is you can't litigate some and not all.

8          MS. GILBRIDE:  Your Honor, you're asking us to go

9    to another courthouse to litigate this.

10          THE COURT:  No, I'm asking you to tell me whether

11    in fact your client's going to pay or not.  If they're not then

12    I think this is ripe.  If they are going to advance defense

13    costs or they're considering it, it's either not ripe or I'll

14    give your clients some more time to consider this issue.

15          MS. GILBRIDE:  Our position has consistently been

16    that we're not going to advance defense costs in the absence of

17    a judicial determination that we must.  Our policy says that we

18    -- it says that we must advance covered defense costs.

19          THE COURT:  Okay.  Then I believe this issue is

20    ripe.  So I have been persuaded -- Mr. Goldman has persuaded me

21    that I should dismiss the underlying action brought by Axis but

22    keep the counterclaim on the docket.

23          It seems to me as a practical matter it may make

24    sense to move to withdraw the reference of this matter but

25    that's not something I can do.  I also need to know -- because

83

1   there's no record here really -- as to when these costs are

2   going to kick in.

3            MR. GOLDMAN:  Your Honor, they've already kicked

4   in.  We have bills that were submitted to Axis approximately

5   two weeks ago for July time because the Lexington policy

6   exhausted with the payment of June time so they have the bills,

7   we're waiting for payment.

8            MR. KLINE:  I don't believe this is a dispute,

9   Your Honor.

10           MS. GILBRIDE:  That's correct.

11           THE COURT:  There are outstanding bills?  How

12  much?

13           MS. GILBRIDE:  Approximately $2 million has been

14  submitted to us in the past month.

15           THE COURT:  And when were they submitted?

16           MS. GILBRIDE:  Plus, there's been a settlement

17  demand tendered to the carrier.

18           THE COURT:  When were the bills submitted?

19           MS. GILBRIDE:  Over the course of the last several

20  weeks.

21           THE COURT:  Well, we're really just talking about

22  the defense costs here; right?  Because the settlement demand

23  is going to be subject to a fairness hearing, notice to the

24  Refco Trustee and the like.  That money is not going to come

25  out-of-pocket for quite some time.

84

1          MR. GOLDMAN:  That's correct, Your Honor.

2   Obviously, Judge Lynch would have to have an approval on that

3   in accordance with Rule 23.

4          THE COURT:  What is your response on the bond

5   point?

6          MR. GOLDMAN:  In brief, Your Honor, it turns the

7   policy upside down.  They're asking us to be their insurer.

8   The policy terms are express.  I don't think there's any

9   difficulty interpreting it as exactly as the Court has

10  identified it, a funding vehicle.  It would be the same as

11  every --

12         THE COURT:  Well, no, I was just identifying the

13  issue not -- I wasn't --

14         MR. GOLDMAN:  I understand.  I understand, Your

15  Honor.  It would be the same as asking every automobile

16  accident person to bond the costs until the insurer decides

17  whose liable.  It doesn't work that way.  That's what insurance

18  is for.  That's what the particularity of an insurance contract

19  is all about.  It's their obligation to assume that risk and

20  contractually we would assert we will convince this Court that

21  they assume precisely that risk with the language that they

22  drafted.

23         THE COURT:  Is the discovery -- has there been any

24  change in the intensity of the litigation in terms of the

25  incurrence of legal fees and the like?

85

1          MR. GOLDMAN:  I'm sorry, the securities

2   litigation, Your Honor?

3          THE COURT:  Yes.

4          MR. GOLDMAN:  Yes, discovery started.

5          THE COURT:  And there's no like hiatus or anything

6   like that, it's moving ahead?

7          MR. GOLDMAN:  No.  We're not in hiatus world, Your

8   Honor.  We're in an incurring debt world.

9          THE COURT:  And you say the criminal trial is now

10  on for March?

11         MR. EISEN:  Yes, Your Honor, and there has been, I

12  think -- because we were set initially for October there was a

13  very intense period which I think is some of what's in the

14  pipeline as a result of the continuance.  I know I was able to

15  take my summer vacation so I think that there has been some

16  lessening there, although obviously we're going to need to get

17  ready for that as well.

18         THE COURT:  You've agreed upon the amount of the

19  legal bills that have been submitted?

20         MS. KIM:  Your Honor, the practice has been that

21  the parties simply submit the bills to the carrier and there

22  has not been any requirement of consent or --

23         THE COURT:  No, I'm not talking about consent,

24  just literally what the amount is of the bills.

25         MR. KLINE:  Your Honor, no one of us would have

86

1   any way to know the total because --

2             THE COURT:  No, I thought you might have conferred

3   among --

4             MR. KLINE:  No.  We only see our own.  Only Axis

5   would know the --

6             MS. KIM:  Yes.  All we do, Your Honor, is submit

7   the bills and we understand it's a first come/first serve basis

8   and then they let us know when it's exhausted.  That's exactly

9   what happened with the U.S. Specialty and the Lexington

10  policies.

11            THE COURT:  But you say it's about $2 million?

12            MS. GILBRIDE:  Yes, Your Honor.  I mean we've just

13  gotten the bills in so they haven't been the subject of any

14  sort of a review for what's been incurred but that's the gross

15  amount.

16            MR. CASHMAN:  Your Honor, I'm sorry, I haven't

17  spoken yet.  This is Richard Cashman.  We represent one of the

18  officer defendants, Philip Silverman, and I just wanted to

19  respond to Your Honor's question and that is there are bills

20  that are coming as well because there has been a lot of

21  activity in these cases.

22            MS. KIM:  What do you recommend [sic]?

23            THE COURT:  Well, it seems to me that on the issue

24  of the contract interpretation one could get to that issue very

25  quickly.  It's a matter of contract interpretation and

87

1   consequently unless someone has a different view I should not

2   be thinking here about a lengthy injunction and if it is to be

3   teed up here it should be teed up promptly.

4           I continue to think, although this is beyond my

5   power, that given the existence of a securities action and the

6   inevitable tie-ins to settlements that a district judge might

7   want to have the reference but that's not for me to decide.

8           I also know that law firms generally are prepared

9   to wait a little bit for payment of their bills.  So I'm really

10  focusing on the ones that have been billed and not on some sort

11  of general green light for anything coming due over the next

12  several weeks or months but I am prepared to conclude on the

13  basis of my review of the general principles set forth in the

14  Worldcom case with regard to how courts look at provisions in

15  indemnity policies in respect of the advancement of defense

16  costs as well as the particular language at issue here on Page

17  8 of the policy that as far as the merit aspect of a motion for

18  a preliminary injunction is concerned there is either a

19  substantial likelihood of success on the merits or -- and I

20  strongly emphasize the "or" because this is more where I'm

21  focusing -- sufficient questions going to the merits which in

22  light of the balance of the harms here would mean that on the

23  issue of the merits the movants have sustained that prong of

24  their request for a preliminary injunction going to the harms,

25  although it is asserted and I accept this that certain of the

88

defendants are wealthy individuals.  The amount of the defense
costs here -- $2 million -- following upon the primary
carriers' coverage limits being exceeded tells me that these
are extremely substantial defense costs that need to be
incurred as part of this schedule that's been set out by the
various courts; the criminal court in particular but also the
district court in the securities litigation and that to run the
risk of not having counsel proceed or to substantially cut back
upon their efforts because of unpaid bills is a tremendous
potential harm particularly in a criminal context and I note
that as Judge Gerber has in the <u>Delta</u> case, there is a
significant distinction between an indictment and a conviction
and the criminal trial is at the trial stage, not the Appellate
stage.

          That leaves, I believe, the issue initially raised
by counsel for Axis and pressed by counsel for Axis that a
ruling granting the request for a preliminary injunction is
fundamentally inconsistent with a ruling dismissing Axis'
underlying case which obviously I just issued.  I do not
believe that it is inconsistent with that ruling or unfair to
Axis.  As I noted before, for Axis to prevail in its
declaratory judgment action it needs to prove two things; it
needs to prove that it's interpretation of the contract -- the
insurance policy -- as well as potentially the related warranty
is the right interpretation, the correct interpretation.  That

89

1    is not a matter that substantially overlaps with litigation

2    anywhere else.  In particular, it doesn't substantially overlap

3    with litigation in the district court and the securities law

4    action or with litigation in the criminal action.  However, if

5    Axis' interpretation of the contracts as they apply to the duty

6    to advance defense costs is incorrect then the plaintiffs on

7    the cross-claim or the counterclaim prevail as far as the

8    defense costs advancement issue is concerned.  Therefore, it

9    seems to me that those issues -- those contract interpretation

10   issues -- are discrete and can be decided by me.  As I noted,

11   Axis needs to win two things in order to not advance defense

12   costs, however, in addition to having its interpretation of the

13   contract prevail it also has to convince a Court that the

14   exclusions or its right to rescind or its right under the

15   warranty, so-called, have been triggered and that is what

16   overlaps as I have previously found with the district court

17   litigation in the criminal case but it seems to me the

18   plaintiff's claim here -- and the only plaintiffs that would be

19   left would be the counterclaim plaintiffs -- is not subject to

20   that problem and can go forward.  As you can tell from my

21   earlier remarks, I toyed with the idea of somehow putting this

22   off or delaying it so that the whole matter could be joined

23   with the district court litigation because I think that in

24   terms of settlement and the like that may make sense but that's

25   not something I can do and I do have an obligation to exercise

90

1  my jurisdiction unless it's withdrawn from me except where the

2  law requires me not to as in the substantial overlap case law

3  and so, there having been a counterclaim filed which can

4  survive as the only claim in this adversary proceeding, I have

5  jurisdiction to determine the motion for a preliminary

6  injunction.  I don't believe that it is unfair to exercise that

7  jurisdiction here or inequitable and, therefore, the equitable

8  relief sought can and should be granted.

9          There has been a request for a bond to be posted

10  but as Mr. Goldman said and as I believe the case law provides,

11  that would be tantamount to advancing one's own defense costs

12  and contrary to the case law.

13          So let me be clear as I said before, it seems to

14  me that the injunctive relief that I'm ordering here should be

15  limited to bills that are outstanding and I believe this is the

16  case but I want to be clear, I am doing nothing more than

17  saying that.  The insurer, Axis, is directed to advance defense

18  costs based upon the beneficiary's definition of or

19  interpretation of the provisions on Page 8 requiring

20  advancement, _i.e._, if there are other provisions or to the

21  extent there are other provisions of the insurance policy that

22  apply to the advancement of defense costs other than the issue

23  that's been teed up here, _i.e._, whether there needs to be a

24  final determination or not, I'm not overwriting those

25  provisions.  This just goes to the dispute as to whether there

91

1   needs to be a final determination of coverage or not related to

2   the advancement of defense costs.  So, for example, if Axis has

3   the ability to review for reasonableness or the like under the

4   insurance policy that's not being overridden by this ruling.

5   The only thing that Axis is being directed to do is to comply

6   with the provision that requires defense costs to be advanced

7   subject to the final determination and we should schedule the

8   final hearing on this promptly which I view to be a matter that

9   can be decided based on review of the contract unless someone

10  else tells me otherwise.

11          The parties have obviously done a lot of briefing

12  on the merits already of that issue.

13          MR. GOLDMAN:  Yes, Your Honor.

14          THE COURT:  So if we did this --

15          MR. GOLDMAN:  Your Honor, just one moment.

16              [Pause in proceedings.]

17          MR. GOLDMAN:  Your Honor, having conferred with

18  the small group of co-counsel we have here I think our

19  assessment is certainly if Axis wishes to file in a further

20  brief on the contract interpretation issue which we have always

21  felt is the narrow issue we have been presenting we would then

22  file a responsive brief and we would schedule with the Court's

23  cooperation as early as the latter part of September for a

24  further hearing on this.

25          THE COURT:  It would be on a motion for a summary

92

1   judgment though; right?

2           MR. GOLDMAN:  Yes, Your Honor, we could file a

3   motion for summary judgment.

4           THE COURT:  Or, I guess, a motion to dismiss.  It

5   could be either one.  It would really be a motion -- well --

6           MR. GOLDMAN:  We'll do a motion for partial

7   summary judgment.  That's what we're going to do.

8           [Other attorneys commenting in the background]

9           MR. GOLDMAN:  That's what we're going to do,

10  narrowed to the issues that the Court has identified we are

11  focused upon.

12          MS. GILBRIDE:  Your Honor, respectfully, on behalf

13  of Axis we intend to file an immediate appeal of Your Honor's

14  ruling today.

15          THE COURT:  Okay.

16          MS. GILBRIDE:  So we would ask that that be

17  factored into whatever briefing schedule is going to be

18  established.  We understand we have to do that within the next

19  ten days and we would ask that the order ordering us to advance

20  defense costs be deferred until we can get an appeal filed with

21  the district court.

22          MR. GOLDMAN:  I understood that to be a request

23  for a stay?

24          THE COURT:  As long as it's an expedited appeal.

25          MS. GILBRIDE:  Oh, we intend to file it, you know,

93

1  as quickly as we can.

2           THE COURT:  No, no, that you request expedited

3  treatment --

4           MS. GILBRIDE:  Yes, we will.  We will, Your Honor.

5           THE COURT:  All right.  I mean I could actually --

6  I have a lot going on at the end of September and beginning of

7  October in various cases but I could give you October 12th just

8  for your own purposes and you could tell the district court

9  that.

10          October 12th.  Friday.

11          MR. GOLDMAN:  Is that after the NCBJ?  I believe

12  it is actually or is it during?

13          THE COURT:  I don't know.

14          MR. GOLDMAN:  It doesn't --

15          THE COURT:  If it is -- I wasn't going to be going

16  to that.

17          MR. GOLDMAN:  I gathered.

18          THE COURT:  But I could give you that date.

19          MR. GOLDMAN:  One moment if I may, Your Honor.

20          THE COURT:  But I am inclined to grant this

21  request.  It seems to me while it's important to deal with the

22  billing issue -- for a lot of reasons I'm inclined to grant

23  this request.

24          MR. GOLDMAN:  And Your Honor let me make one

25  comment and then my co-counsel will speak if I may.  We have so

94

1  much expense coming up the fear is that this not be

2  characterized as a stay that the Appellate Court presumes can

3  be continued --

4            THE COURT:  No, I don't -- that's why I asked for

5  --

6            MR. GOLDMAN:  -- I don't know that ten days

7  doesn't matter but six weeks does.

8            THE COURT:  That's why I requested an expedited --

9  that we'd be conditioning it upon an expedited appeal.

10           MR. KLINE:  Your Honor, can I suggest it might be

11 more appropriate -- we don't mind if they're given ten days to

12 pay but it should be incumbent upon them to get a stay from the

13 district court.

14           THE COURT:  But you can do that in ten days.

15 That's easy to do.

16           MR. KLINE:  Right.  But absent a stay from the

17 district court they should be required to follow Your Honor's

18 order and pay otherwise they'll just file and say we don't have

19 to pay.

20           THE COURT:  My view is this issue could be well

21 teed up for the district court within ten days and I think

22 that's what counsel intended.

23           MR. KLINE:  I think with all respect it should --

24           THE COURT:  So I will -- it's stayed for ten days

25 but that's more than sufficient time to put in an appeal.

95

1          MR. GOLDMAN:  I understand.

2          THE COURT:  I know lawyers can wait ten days on

3    payment of their bills but I'm also as I said very cognizant of

4    the fact that the bills are very large and they're going to be

5    increasing in the future and that this issue on the merits

6    really needs to be decided very quickly -- this contract

7    interpretation issue -- and so I'm telling you all that I would

8    be free on October 12th to hear it and I think that may be

9    useful for the district court also but I'm not going to impose

10   a briefing schedule on you because the next step of this is

11   going to be at the district court but as everyone now

12   understands that step has to result in some action by the

13   district court within the next ten days or my stay is going to

14   be gone.  The stay that applies now is going to be gone.

15         MR. GOLDMAN:  That's fine.

16         Your Honor, we will be bringing on a summary

17   judgment motion probably before the district court -- partial

18   summary judgment -- but that --

19         THE COURT:  All right.  But I think the October

20   date gives people -- particularly given all the work that they

21   have done on it and, I'm sure, will be doing on it, people will

22   be reciting these provisions of the insurance agreement in

23   their sleep and will be well enough prepared for a hearing in

24   October.

25         MR. GOLDMAN:  That already has happened.

96

1           THE COURT:  Okay.  That leaves the stay motion.

2           MR. GOLDMAN:  The stay motion and I --

3           THE COURT:  All right.  But before we go to that

4  you'll need to give me an order --

5           MR. GOLDMAN:  Yes.

6           THE COURT:  -- and you should do it promptly

7  because that's what's going to start their appeal obviously and

8  that needs to go forward promptly so --

9           MS. GILBRIDE:  There would be two orders, Your

10 Honor, right?

11          THE COURT:  Well, Mr. Walsh is going to be me an

12 order dismissing the main -- the adversary claim brought by

13 Axis and Baker & Hostetler is going to give me an order

14 granting the preliminary injunction in connection with their

15 cross-claim or counterclaim.  Excuse me.

16          MS. GILBRIDE:  Your Honor, if I heard you

17 correctly the ten days would then start to run from the date

18 that you sign that order?

19          THE COURT:  Well, from the entry of the order.

20          MS. GILBRIDE:  Right.

21          THE COURT:  No, no, I'm sorry, the ten days on the

22 --

23          MS. GILBRIDE:  To get an expedited --

24          THE COURT:  For the injunction?  Yes.

25          MS. GILBRIDE:  Yes.

97

1           THE COURT:  Yes.

2           MR. GOLDMAN:  All right, Your Honor, just because

3    we have discussed the stay issue at some length I have nothing

4    further to add.  I only wanted to make one -- I'll call it the

5    tangential point -- one of the reasons why we have sought the

6    stay modification to the extent it was necessary in light of

7    the plan confirmation order was precisely because demands to

8    the insurers need to be made under cooperation provisions in

9    many of these policies for them to put it in line for payment.

10    Obviously, they make their determinations in response but I

11   certainly did -- that was a primary reason why we wanted to get

12   this clarification and, of course, it's my understanding that

13   nothing in today's ruling with respect to the preliminary

14   injunction motion changes the fact that we would submit a

15   demand to the insurer.  It doesn't mean they're going to pay it

16   obviously but it does mean we have the right to do that.

17   That's in large part what the lift stay motion is all about.

18   We have as I have said agreed we will provide notice to Mr.

19   Kirschner regarding our doing so.

20           THE COURT:  Okay.

21           MR. KLINE:  Your Honor, Ivan Kline from Friedman &

22   Wittenstein.

23           It's been a long morning and I'll be very brief.

24   Our only point of our response is really we believe it would be

25   more appropriate to make sure that a particular settlement is

98

1   back before this Court for approval given that this is the

2   Court that has jurisdiction over the policy and has all the

3   insureds before it and no other court has that; whether it's in

4   the context of the stay or not to stay or using your authority

5   under Section 105 is really less important than we simply

6   believe that there should be some mechanism whereby a

7   particular settlement would be subject to this Court's review

8   and approval to make sure that all of the parties' rights

9   including those of the estate and those of other insureds are

10  not being prejudiced in any way and I believe actually in the

11  letter from Axis that was submitted on their reply even

12  suggests that whatever the proposed settlement is would be one,

13  for example, that might prejudice the rights of other insureds.

14   I still don't know what the details are so it's hard for us to

15  comment on that but our point was simply we have no problem

16  with the concept of the stay being lifted to allow for the

17  payment of settlements it's simply that we think it should be

18  in one form or another a particular settlement should be before

19  this Court.

20              THE COURT:  Okay.  Well, again, I quoted the

21  language in Paragraph 34(c) of the confirmation order which I

22  believe enables the beneficiaries of the policies -- not just

23  the debtor but the other beneficiaries -- to seek and obtain

24  coverage and payments from those policies.

25              Now, it may be that the consequences of doing that

99

1    will effect the debtor in a way that would require some relief

2    here in terms of either a settlement or 9019 or the other

3    provisions of the plan but it's hard for me to conceive what

4    those would be and it seems to me that as long as there is

5    advanced notice, not retroactive notice but advanced notice of

6    any proposed settlement, that the plan administrator on behalf

7    of their estate will be able to protect the estate's rights and

8    that's, I gather, what Mr. Kirschner has concluded also.

9              It seems to me that the other beneficiaries, to

10   the extent the settlement involves insurance or -- well, I'll

11   leave it at that.  I mean obviously there are contribution

12   issues, too, but to the extent a settlement involves insurance

13   it should get notice of a settlement as far as approval by a

14   district court is concerned in the MDL, for example.  So I

15   think as long as there is proper notice to other effected

16   parties that your concerns are taken into account.

17             MR. KLINE:  Your Honor, could I just ask then that

18   the order that they submit recite that there must be advanced

19   notice because I believe that the order they submitted calls

20   for post-disbursement notice --

21             THE COURT:  You're right.

22             MR. KLINE:  -- which is of no use for the

23   settlement

24             THE COURT:  It needs to be adequate advance

25   notice.

100

1          MR. KLINE:  And could the other insureds be

2    included in that so that if we wanted to seek relief in this

3    Court we could do so?  Frankly, I don't think Judge Lynch will

4    have any interest in hearing the claim of one insured against

5    another.  I think Judge Lynch's only concern in a Rule 23

6    approval is fairness to the plaintiffs in the class which is a

7    different issue.

8          So if we could just get that the notices to the

9    plan administrator and the other insureds in advance I think we

10   would withdraw any objection to their motion.

11         MS. KIM:  Well, Your Honor, I'd like to know in

12   advance of what because all that we are seeking here is to make

13   sure that the automatic stay is not used as some kind of

14   procedural bar that interferes with the normal course under the

15   insurance policy for the carrier to determine whether or not a

16   settlement is reasonable or not.  Obviously, any settlement

17   would be subject to the consent of the carrier and so what I

18   don't want to happen is to be required to give notice before

19   seeking consent or obtaining consent from the carrier -- after

20   the carrier.

21         THE COURT:  You're talking about getting advance

22   notice of approval by the court presiding over the litigation?

23    Is that what you're talking about?

24         MS. KIM:  Oh, that's fine.  We don't have any

25   problem getting advance notice.  Of course, we'd be required to

1  give notice to the parties to the underlying litigation.  They

2  would get notice just like any other party in terms of

3  obtaining approval before Judge Lynch on any settlement so I

4  just want it to be clear on the record what they're seeking.

5           THE COURT:  Well, I was asking you.  Is that what

6  you had in mind?

7           MR. KLINE:  All I'm asking is whatever advance

8  notice they promised Mr. Kirschner that we get.  I don't know

9  what they meant by advance notice to Mr. Kirschner but it must

10  be before disbursements.

11           THE COURT:  All right.  So you're --

12           MR. GOLDMAN:  We have no problem with that, Your

13  Honor.  Obviously we will circulate to him and to others an

14  order.  We have to have Mr. Kirschner look at it as well but

15  that order won't come in today it will probably come in

16  tomorrow.

17           THE COURT:  Okay.  That's fine.

18           MR. GOLDMAN:  Your Honor, if I may we had

19  submitted to the Court a proposed order and as I review in

20  respect of the preliminary injunction I think it is consistent

21  with the Court's ruling except that I would suggest that we

22  insert -- as it say there, "obligated to pay defense costs," I

23  would insert "ten days after entry of this order."

24           MS. GILBRIDE:  Your Honor, you know, I don't have

25  that order in front of me at the moment but I believe that's an

102

1  order ordering us to advance defense costs on behalf of all

2  insureds not just the remaining insureds, No. 1, and I think

3  there's a reference to future costs in the order as well?  I'd

4  like the opportunity to review it before.

5              MR. GOLDMAN:  I think what we'll do is give her a

6  copy of what I have in my hands, Your Honor, if that's all

7  right.

8              THE COURT:  Well, let me take a look at it first.

9   Let me just take a quick look at it.

10                    [Pause in proceedings.]

11             THE COURT:  Well, this applies to the defined term

12  "movants" not all the parties.

13             MR. GOLDMAN:  Your Honor, just on -- we have no

14  objection to it applying to other insureds, just so the Court

15  understands that.

16             MR. EISEN:  Your Honor, if I may, we joined -- the

17  other defendants joined in so if the Court is inclined -- and

18  obviously our situation was part of the Court's reasoning.  If

19  the Court is inclined after this order we'd just ask --

20             THE COURT:  No, your clients did join in.

21             MS. GILBRIDE:  Your Honor, there are no

22  counterclaims asserted on behalf of his clients.  There's no --

23  they have not answered, they have not asserted counterclaims,

24  there is no basis for the Court to order advancement of defense

25  costs on behalf of his clients.

103

1          MR. WALSH:  Nonetheless, Your Honor, there is an

2   advancement obligation and it seems completely illogical to

3   make a determination for one and not the other.

4          THE COURT:  That's true but it's also -- it's

5   procedurally -- you can make a motion promptly but there's no -

6   -

7          MS. GILBRIDE:  They made a motion to dismiss.

8          THE COURT:  No, no, they made a motion to dismiss

9   your client's claims but the only motion for a preliminary

10  injunction before me and the only counterclaim before me is --

11         MR. WALSH:  We understand that, Your Honor, so if

12  that's what Axis requires that we go through all the procedural

13  --

14         THE COURT:  Well, it's what I require.

15         MR. WALSH:  Okay.  Then we'll do that.

16         THE COURT:  And the same for the criminal

17  defendants.

18         MR. EISEN:  Your Honor, our joinder in the

19  existing motion --

20         THE COURT:  That's not sufficient.

21         MR. EISEN:  Just to be clear so what does Your

22  Honor require?  That additional counterclaims --

23         THE COURT:  On an adversary proceeding basis which

24  is what the counterclaim was you need to start an action for

25  advancement of defense costs and seek preliminary injunctive

104

1  relief.

2              MR. EISEN:  Your Honor, is it sufficient to -- you

3  know, the posture that we were in up to this point was we had

4  joined in the motion to dismiss so there was no pleading

5  requirement for us before today.  Pleading is held in -- it was

6  the motion to dismiss the insurers' claims and we did join in

7  the motion for preliminary injunction so --

8              THE COURT:  But, procedurally, I'm not comfortable

9  with that.

10             MR. EISEN:  Just so I understand the parameters of

11  that, if that is filed around the representation that's going

12  to be filed may we be included or can we within that ten day

13  period of the order are we going to need to submit --

14             THE COURT:  No.  I think you're going to need to

15  go through the procedural hoops.

16             MR. EISEN:  Will that require an additional

17  hearing or can we just submit those -- I only ask that question

18  --

19             THE COURT:  I don't know.  I'll have to decide

20  that.  I don't know.  I would find it unlikely but let me read

21  the pleadings.

22             MR. EISEN:  Thank you, Your Honor.

23             THE COURT:  Okay.  They're all different.  Your

24  clients, although I doubt it, might be multi-millionaires or

25  multi-multi-millionaires.  I don't know.  I know one of Mr.

105

1    Walsh's clients is.

2              MR. WALSH:  Was that taking inflation into

3    account, Your Honor?

4              THE COURT:  No.  No, they're not.  They're not.

5    They're not withdrawing it.

6              MS. GILBRIDE:  So you could dismiss the action.

7    They're not even parties.

8              THE COURT:  No, I said they can start their own

9    action and as part of that adversary proceeding seek injunctive

10   relief.

11             MS. GILBRIDE:  It's slightly inconsistent.

12             THE COURT:  Well, I've already ruled on that.

13             MR. EISEN:  Your Honor, at the risk of delaying

14   things may I quickly suggest another alternative that I think

15   would be easier for the Court which is to allow us the option

16   of intervention as opposed to filing independent adversary

17   proceedings?

18             THE COURT:  I'm not aware of such an option.

19             MR. EISEN:  Okay.

20             THE COURT:  I'm just not.  So somehow you need to

21   tee it up so that it's before me as far as an affirmative

22   claim.

23             MR. EISEN:  Understood and if we're able to puzzle

24   out another basis that we believe --

25             THE COURT:  I'm not precluding you from puzzling

106

1    out another basis.

2                   MR. EISEN:  Thank you, Your Honor.

3                   THE COURT:  Okay.  So by movants here -- the

4    defined term "movants" is just your clients; right?

5                   MR. GOLDMAN:  The five that are named in the

6    motion.

7                   THE COURT:  Right.  It's not those who joined in

8    the motion or anything like that?

9                   MR. GOLDMAN:  That's correct.  That is the

10   definition.

11                  THE COURT:  All right.

12                       [Pause in proceedings.]

13                  THE COURT:  Defense costs -- as I recall the

14   motion it's interpreted open-endedly; right?  It's going

15   forward as well?  And my ruling just covered defense costs

16   incurred today?

17                  MR. GOLDMAN:  Yes, Your Honor.

18                  THE COURT:  Okay.

19                  MR. GOLDMAN:  The motion defines it as the

20   contract defines it, Your Honor.

21                  MS. GILBRIDE:  Your Honor, not to interrupt but

22   does it make sense to include your order on the dismissal

23   motion in this order as well so that for purposes of an appeal

24   that there's one order?

25                  THE COURT:  No.

107

1         MS. GILBRIDE:  Okay.

2         THE COURT:  Okay.  Let me tell you what I've

3    written here because I believe this is the nature of my ruling

4    -- and it's Paragraph 3 -- "Effective ten days after entry of

5    this order Axis is directed upon the exhaustion of the

6    Lexington policy to pay defense costs of movants in the

7    underlying actions billed through the date of this order until

8    such time"  -- I'm sorry -- "pending a final determination by

9    this Court of Axis' claimed right to withhold such defense cost

10   payments until there's a final determination of its denial of

11   coverage under the Axis policies."  Because I'm not going to be

12   making a determination generally of coverage as this order had

13   provided.

14        MR. GOLDMAN:  So as I understand it and I believe

15   this is what the Court had discussed, we would have a right to

16   ask the Court to consider further defense costs presumptively

17   on or about October 12th?

18        THE COURT:  Yes, because this is just a

19   preliminary injunction.  We're going to have the final hearing

20   -- I can't have the final hearing on October 12th.

21        MR. GOLDMAN:  Yes.  I do not have a problem with

22   that language, Your Honor.

23        THE COURT:  All right.  So just to be clear and I

24   think this is important for the record, too, I will not be

25   determining all of the issues as to whether your clients are

108

1    covered for defense costs.  What I am determining is whether

2    Axis is required to advance those monies now --

3                 MR. GOLDMAN:  We understand that, Your Honor.

4                 THE COURT:  -- as opposed to their argument which

5    is that because of the language on Page 8 that they could say

6    these aren't covered and, therefore, they don't have to be

7    advanced.

8                 MR. GOLDMAN:  We understand that that is the

9    dispute the Court is considering.

10                MR. EISEN:  Your Honor, with the Court's leave, I

11   will be brief.  Our bills are also before Axis.  As the Court

12   knows, we joined in the motion.  We do not -- I've conferred

13   with my colleagues -- all of the indicted defendants -- the

14   presumptively innocent defendants as Your Honor noted -- are in

15   the most -- according to the Court's reasoning in the most --

16                THE COURT:  I can't do it.  I can't do it on the

17   procedural posture that we're in.  I understand logically your

18   client's position but they have not a procedural setting, I

19   believe, to seek a preliminary injunction.  They haven't

20   started an adversary proceeding, they haven't made a

21   counterclaim.  They are defendants in an adversary proceeding

22   that I've dismissed and they have no counterclaim that survived

23   because they didn't make a counterclaim.

24                MR. EISEN:  Your Honor, I understand.  I believe

25   it would not be improvident, though, for the Court to issue an

109

1    order that construes -- because it's the same policy at least

2    as to the --

3              THE COURT:  But orders don't do that.  I'm sorry,

4    I can't do that.  I won't do that.  You've heard my ruling.

5    There are aspects of a request for a preliminary injunction

6    that may not apply conceivably to your clients or to other

7    defendants but on the fundamental issues you've heard my ruling

8    as to likelihood of success on the merits or the balance of

9    harms and substantial questions going to the merits and that's

10   as far as you could tell your clients that they could have any

11   sort of comfort at this point.

12             MR. EISEN:  Your Honor, whatever the balance of

13   harms may be as to others the assets have been frozen for the

14   defendants.

15             THE COURT:  Well, I understand but sometimes, I

16   think -- not sometimes, always, unless the other side is

17   willing to waive it and they're not waiving it and I understand

18   why, you have to go through the procedural hoops.

19             MR. EISEN:  Thank you, Your Honor.

20             THE COURT:  Okay.  I've looked at the rest of the

21   order except for a numbering problem and my inserting after

22   "seeking reimposition of the automatic stay" in the next to the

23   last paragraph "to the extent it applies," I don't have any

24   other changes in it.

25             MR. GOLDMAN:  Thank you, Your Honor.

110

1          THE COURT:  Do you have a disc?

2          MR. GOLDMAN:  Not with us, Your Honor.

3          THE COURT:  Okay.  All right.  Well, then what I'd

4     ask you to do is to e-mail what you handed me to chambers and

5     I'll mark it up as I read out.

6          MR. GOLDMAN:  Okay.  We will arrange that this

7     afternoon.

8          THE COURT:  Okay.

9          MR. GOLDMAN:  Thank you very much.

10          MS. GILBRIDE:  Your Honor, will we get the

11     dismissal order this afternoon as well?

12          THE COURT:  I don't know.  Are you going to submit

13     it to me?

14          MR. WALSH:  We'll try, Your Honor.

15          THE COURT:  Okay.  If not it will be tomorrow.  It

16     will get out very promptly.

17          MS. GILBRIDE:  Okay.  Thank you.

18          MR. EISEN:  Your Honor, one very quick -- it's not

19     on that motion.  Not at all.

20          THE COURT:  A different point?  Okay.  Good.

21          MR. EISEN:  We had a stay motion before the Court.

22      I believe the need for the stay motion has been obviated by

23     the overlap.

24          THE COURT:  It's moot.  It's moot.

25          You're right I should have addressed that but I

111

1    believe it's moot.

2                    MR. EISEN:    Thank you, Your Honor.

3                    THE COURT:    And in fact you could insert that in

4    the dismissal motion if you want or submit your separate order

5    on that if you wish.    You could talk to Mr. Walsh about that.

6                              *  *  *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

112

\* \* \* \* \*

    I certify that the foregoing is a court transcript from
an electronic sound recording of the proceedings in the above-
entitled matter.

                                        Ruth Ann Hager

Dated:  August 31, 2007

EXHIBIT B

Transcript 10 05 07 (Koeltl).txt

                                                                    1
      7a5QaxiC
1     UNITED STATES DISTRICT COURT
1     SOUTHERN DISTRICT OF NEW YORK
2     ------------------------------x
2
3     AXIS REINSURANCE COMPANY,
3
4                     Plaintiff,
4
5            v.                          M-47 (JGK)
5
6     PHILLIP R. BENNETT, LEO R.
6     BREITMAN, NATHAN GANTCHER,
7     TONE GRANT, DAVID V. HARKINS,
7     SCOTT L. JAECKEL, DENNIS A.
8     KLEJNA, THAMAS H. LEE, SANTO
8     C. MAGGIO, JOSEPH MURPHY,
9     RONALD L. O'KELLEY, SCOTT A.
9     SCHOEN, WILLIAM M. SEXTON,
10    GERARD SHERER, PHILIP
10    SILVERMAN, ROBERT C. TROSTEN,
11    AND DOES 1 TO 10,
11
12                    Defendants.
12
13    ------------------------------x
13                                      New York, N.Y.
14                                      October 5, 2007
14                                      10:25 a.m.
15
15    Before:
16
16                    HON. JOHN G. KOELTL,
17
18                                      District Judge
19
20
21
22
23
24
25
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300
                                                                    2
      7a5QaxiC
1                     APPEARANCES
1
2     KAUFMAN, BORGEEST & RYAN, LLP
2          Attorneys for Plaintiff
3     JOAN M. GILBRIDE
3     ROBERT A. BENJAMIN
4
5     BAKER & HOSTETLER
6          Attorneys for Appellee Klejna
6     HELEN B. KIM
7
7     FRIEDMAN & WITTENSTEIN, PC
8          Attorneys for Appellees Sexton and Sherer
8     IVAN O. KLINE
9
9     HELLER EHRMAN, LLP
                     Page 1

```
                      Transcript 10 05 07 (Koeltl).txt
10          Attorneys for Appellee Silverman
10   RICHARD CASHMAN
11
12   MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, PC
12          Attorneys for Robert Trosten
13   BARBARA MOSES
13
14
14   GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE, LLP
15          Attorneys for Phillip Bennett
15   JEFFREY T. GOLENBOCK
16
16   WEIL, GOTSHAL & MANGES, LLP
17          Attorneys for Director Defendants
17   MICHAEL F. WALSH
18
18
19   SAUL EWING, LLP
19          Attorneys for Joseph Murphy
20   JOHN J. JEROME
21
22   ZUCKERMAN, SPAEDER, LLP
22          Attorneys for Tone Grant
23   LAURA E. NEISH
24
25
                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                    3
     7a5QaxiC
1           (In open court)
2           THE DEPUTY CLERK:  With regard to the matter of Axis
3    Reinsurance, all parties please state who they are for the
4    record.
5           MS. GILBRIDE:  Good morning, your Honor.  Joan
6    Gilbride, Kaufman, Borgeest & Ryan for Axis Reinsurance
7    Company.  With me is Robert Benjamin of the same firm.
8           THE COURT:  Good morning.
9           MS. MOSES:  Good morning, your Honor.  Barbara Moses,
10   Morillo, Abramowitz for Robert Trosten, who is one of the
11   plaintiffs in the Grant adversary.
12          MR. WALSH:  Good morning, your Honor.  Michael Walsh
13   from Weil, Gotshal & Manges.  We represent Leo Breitman, Nathan
14   Gantcher, David Harkins, Scott Jaeckel, Thomas Lee, Ronald
15   O'Kelley, Scott Schoen, often referred to as the Director
16   Defendants.
17          MR. KLINE:  Good morning, your Honor.  Ivan Kline from
18   Friedman & Wittenstein for William Sexton and Gerard Sherer who
19   are two of the what's been labeled as the counterclaimants
20   among the officers.
21          MS. KIM:  Good morning, your Honor.  Helen Kim, Baker
22   & Hostetler, counsel for Dennis Klejna, who is a counterclaim
23   plaintiff in the Axis Adversary proceeding.
24          MR. GOLENBOCK:  Good morning, your Honor.  Jeffrey
25   Golenbock of Golenbock, Eiseman for Phillip Bennett in the
                      SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                    4
     7a5QaxiC
1    Grant against Axis proceeding.
2           MR. CASHMAN:  Good morning, your Honor.  Richard
3    Cahman of Heller, Ehrman for Philip Silverman.  He's one of the
4    counterclaim plaintiffs.
                                Page 2
```

Transcript 10 05 07 (Koeltl).txt
```
 5              MR. JEROME:  Good morning, your Honor.  John Jerome
 6    for Joseph P. Murphy.
 7              MS. NEISH:  Good morning, your Honor.  Laura Neish,
 8    Zuckerman, Spaeder for Tone Grant.
 9              THE COURT:  Good morning, all.  I know lawyers at
10    various of your firms, but nothing about that affects anything
11    that I do in the case, and I don't believe that I know any of
12    you individually, but in any event, nothing about that affects
13    anything I do in the case.
14              This is a motion to withdraw the reference.  I've read
15    the papers.  I'm prepared to listen to argument.
16              MS. GILBRIDE:  Good morning, your Honor.  Joan
17    Gilbride for Axis Reinsurance Company.  Your Honor, we're here
18    this morning on a motion to withdraw the reference to
19    bankruptcy court, and our motion is based upon the interest of
20    judicial economy, fairness, and efficiency.  At an August 30
21    hearing in the bankruptcy court, the bankruptcy court judge
22    strongly suggested that one of the parties to the adversary
23    proceeding at the time make this motion to withdraw the
24    reference.  In fact, he indicated that on the record at least
25    twice.  I believe that the bankruptcy --
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```
                                                                  5
```
      7a5QaxiC
 1              THE COURT:  Let me give you a perspective, having read
 2    the papers, and then you can at least speak to that
 3    perspective.  It appears to me that the bankruptcy court is
 4    making a distinction between the underlying coverage dispute
 5    and the issue of the advancement of fees.  He made that
 6    distinction by dismissing your complaint and granting a
 7    preliminary injunction for the advancement of fees, and he
 8    viewed the advancement of fees as a legal question to be
 9    decided as a matter of law.  He's teed up the issue, so to
10    speak, for the motions for summary judgment to be heard before
11    him on October 12.  There's a new adversary proceeding, but
12    based on everything that the bankruptcy court has said, one
13    would expect that at some time the bankruptcy court will not
14    take jurisdiction over that aspect of the adversary proceeding,
15    which is the coverage issue, and proceed to decide the
16    advancement issue; and if he didn't do that, it's that coverage
17    issue that he considered to be so intertwined with what was at
18    issue before Judge Lynch that he thought he shouldn't decide,
19    one would expect that he would do that with a new adversary
20    proceeding also.  If he didn't do that, there could always be a
21    motion to withdraw the reference with respect to that.  But the
22    motion to withdraw the reference now comes to me about a week
23    before the bankruptcy judge is going to hear the issue of
24    summary judgment on the advancement of fees.
25              So, I don't read what the bankruptcy court has said
               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```
                                                                  6
```
      7a5QaxiC
 1    inviting the withdrawal of the reference to be an invitation to
 2    withdraw the reference from him on the issue of the advancement
 3    fees which he's plainly divided from the issue of coverage.
 4              MS. GILBRIDE:  Your Honor --
 5              THE COURT:  That's why I interjected myself when you
 6    got to the point that the bankruptcy court has invited the
 7    motion to withdraw the reference.  The bankruptcy court in fact
 8    has said, I am compelled to decide the issue of the motion for
 9    summary judgment on the advancement of fees unless the motion
                           Page 3
```

Transcript 10 05 07 (Koeltl).txt
10  is withdrawn, and the bankruptcy judge knows that there's a
11  motion to withdraw the reference.
12        MS. GILBRIDE:  I understand.  That's the procedural
13  history of the matter your Honor.  Frankly, you know, we
14  disagree with the bankruptcy court's bifurcation of the issues,
15  if you will.  That's an issue that is going to come before this
16  court, clearly.
17        THE COURT:  Right.  And that's an issue with respect
18  to the varying interpretations of the contract as to when it
19  says covered costs, what does that mean?
20        MS. GILBRIDE:  Right.  Our position is that the
21  question of coverage is the threshold issue that a court has to
22  look at before it gets to this advancement issue, and that's
23  the position we've advocated --
24        THE COURT:  But that's not what the bankruptcy court
25  is doing.  And if that's wrong, the bankruptcy court will make
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              7
     7a5QaxiC
1   that same error when it decides the motion for summary
2   judgment.  That error will then be reviewed by this court.  If
3   error, it will be reversed.
4         MS. GILBRIDE:  Your Honor, I believe it's in the
5   interest of judicial economy that rather than let that error
6   occur, that a withdrawal be granted now so that the issue and
7   all of the issues that -- you know, the issues that are pending
8   before Judge Lynch, the issues that overlap or are duplicated
9   all be decided in one forum; otherwise, there's the possibility
10  of conflicting results --
11        THE COURT:  What conflicting results?  The only issue
12  that the bankruptcy court has indicated that it's going to be
13  deciding is the issue of contract interpretation, which you all
14  told me last time doesn't require any development of the facts.
15  It does not require any parol evidence.  Both sides agree it's
16  a question of pure contract interpretation.
17        MS. GILBRIDE:  Your Honor, just so the record is
18  clear, our position is that it is a question of pure contract
19  interpretation, but the insureds are arguing that there's an
20  ambiguity.  Our position on that is if there is an ambiguity,
21  the court must look at extrinsic evidence.  There's been no
22  opportunity for any discovery in the bankruptcy proceeding.
23  That's the position we've taken in response to the summary
24  judgment motion.
25        THE COURT:  OK.  You can correct me if I'm wrong, but
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              8
     7a5QaxiC
1   I thought that the parties when they appeared before me last
2   time said that the issue -- but I could be mistaken.  I thought
3   that your position was that the issues with respect to the
4   interpretation for advancement of costs was an issue strictly
5   of contract interpretation that could and should be determined
6   solely on the basis of the contract.
7         MS. GILBRIDE:  Your Honor, I mean, certainly our
8   position of the contract is clear.  That's our position.  We
9   are not pushing for summary judgment.  That's not our motion,
10  but all I'm saying is that if the court, the bankruptcy court,
11  was to perceive an ambiguity, which it appears that's the way
12  he's going, then that would be the basis for the ruling, that
13  our position in opposition to the motion is that you need to
14  look at extrinsic evidence.  There's been no extrinsic evidence
                        Page 4

Transcript 10 05 07 (Koeltl).txt
15  introduced, and there's been no time for discovery, and that's
16  going to become an issue.  I have no idea whether or not that's
17  argument that would be persuasive, but that's certainly our
18  position, and I don't believe we've taken a inconsistent
19  position in that regard.
20          THE COURT:  Is there only one motion for summary
21  judgment pending before the magistrate judge -- before the
22  bankruptcy court?
23          MS. GILBRIDE:  There's actually, I think, technically
24  four motions.  There are four groups of defendants, and I don't
25  want to misspeak.  I'm sure lawyers will tell you if I'm wrong,
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                9
7a5QaxiC
1   but I believe they're essentially the same arguments.  There's
2   some slight differences, but they're more or less the same
3   arguments, but there are four pending motions for summary
4   judgment.
5           THE COURT:  All by the insureds?
6           MS. GILBRIDE:  Yes.  Yes.  We've also made a
7   cross-motion for summary judgment on a very limited issue with
8   respect to repayment.  Our argument there is that if the court
9   is to order advancement of defense costs, that based on the
10  contract if there's a later determination that there is no
11  coverage, that we should be entitled to repayment.
12          THE COURT:  I thought there were cross-motions, that's
13  why I -- OK.
14          MS. GILBRIDE:  We filed cross-motion.  That's the only
15  other cross-motion that there is.
16          In any event, your Honor, we believe that this matter
17  is properly before the district court.  I believe that the
18  bankruptcy court made that clear.  Perhaps we misread what he
19  was saying.  He certainly said that he could bifurcate these
20  issues, and that he felt that he was constrained to rule upon
21  this advancement issue if he kept it because it didn't overlap.
22  Our position is that it overlaps.  There's no way that you can
23  read that policy and not conclude that there's an overlap
24  between the word coverage and the advancement of defense costs.
25  So I don't --
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                               10
7a5QaxiC
1           THE COURT:  You can explain to me -- I'm sure you've
2   explained this to the bankruptcy judge also -- why the ultimate
3   questions of whether there are exclusions in the policy or
4   whether the warranty letter meant that it will eventually be
5   determined that these defense costs are not payable costs under
6   the policy is necessarily the same as the issue of whether the
7   policy gives the insurance company the right at the outset in
8   deciding whether these are covered defense costs to make that
9   determination and refuse to pay.
10          The bankruptcy judge doesn't seem to be under any
11  desire to rule at this point whether any of the exclusions or
12  the warranty letter mean that ultimately the insurance company
13  does not have to pay, but the bankruptcy judge says, I will
14  decide as an initial matter as a question of contract
15  interpretation whether the insurance company must at least
16  advance the costs and cannot simply rely upon alleged
17  exclusions under the policy, which may eventually be found to
18  be a defense for the insurance company to ultimate payment, and
19  may require the insureds to repay defense costs.  I will
                            Page 5

Transcript 10 05 07 (Koeltl).txt
20  interpret the policy to determine whether under the policy the
21  insurance company has the obligation to advance the defense
22  costs in the same way that the prior insurers all advanced
23  defense costs.  And I'm not going to get into the ultimate
24  merits of the exclusions, but I will simply make the initial
25  question of advancement, and you say, well, your interpretation
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

7a5QaxiC
1  of the policy is wrong.
2          I understand that.  And if you prevail on that
3  question of contract interpretation, then you'll not be
4  required to advance the costs, but the bankruptcy court will
5  never reach, as I read what he's doing, the ultimate question
6  of whether you are ultimately right on the issue that there are
7  exclusions here that will ultimately be a defense that you'll
8  never have to pay, and to the extent that you've advanced
9  costs, they will have to be repaid.
10          But both sides are arguing out to the bankruptcy judge
11  solely the issue of advancement and whether the interpretation
12  of the policy gives the insurance company the right at the
13  outset to define the covered defense costs to include -- to
14  gives the insurance company the right to say, well, because we
15  believe there is an exclusion, we don't have to advance.
16          MS. GILBRIDE:  Your Honor, that's precisely the reason
17  why we think the reference should be withdrawn.
18          THE COURT:  Why?
19          MS. GILBRIDE:  Because the two issues are interwoven.
20  You can't decide -- I think it's clear under New York law that
21  you can't decide whether there's coverage unless you look at
22  the insuring agreement and the exclusions.  So, the bankruptcy
23  court needs to do that, and the bankruptcy court has made it
24  clear that he doesn't think that he can do that because of the
25  overlap with the matters before the district court.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

7a5QaxiC
1          So, I'm not quite sure how we get to this ruling on
2  advancement without acknowledging the fact that there's overlap
3  with the matter that's pending in the district court.  Covered
4  defense costs -- to get to interpret the phrase covered defense
5  costs, it's clear under New York law that you have to look at
6  what's covered and what's excluded.  And if you start looking
7  at what's excluded, you have to start looking at the facts that
8  the bankruptcy court has already determined are overlapping
9  with what's in the district court.
10          THE COURT:  But it's plain, isn't it, that the
11  bankruptcy court is not going to do that.  The bankruptcy court
12  is not going to -- and you can correct me if I'm wrong -- I'm
13  just reading the record and seeing what the bankruptcy court is
14  saying at this point.  He hasn't yet decided the motions for
15  summary judgment.  The bankruptcy court isn't going to rule on
16  the merits on any of the exclusions, in which case he will say
17  that's error, and that will be a matter of law that will then
18  be up on appeal, but he's not going to touch the merits of the
19  exclusions.
20          MS. GILBRIDE:  I think you're absolutely right that
21  based on the record that exists, the extent of briefing and the
22  record that exists, that appears to be where the bankruptcy
23  court is going.
24          THE COURT:  And then there will be this nice issue of
Page 6

Transcript 10 05 07 (Koeltl).txt
25    law of contract interpretation on the issue of advancement
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

7a5QaxiC
1    which will come up on appeal to the district court, and then to
2    the extent that there is anything left in the bankruptcy court,
3    the bankruptcy court has indicated, though not yet ruled, I
4    believe -- you can correct me if I'm wrong -- that whatever
5    remains of the other adversary proceeding, the bankruptcy has
6    no reason to believe that the bankruptcy court would hear that
7    any more than he heard the rest of your case, and then the
8    issue of the exclusions and coverage will all be before
9    eventually Judge Lynch.
10            MS. GILBRIDE:  Your Honor, it's our position that the
11   bankruptcy court believes -- it's our position that the
12   bankruptcy court expressed a clear preference to -- what we
13   heard -- that he rather not do that, that he doesn't think
14   that's efficient.
15            THE COURT:   Which?
16            MS. GILBRIDE:  To have this bifurcation of issue.  He
17   obviously said he could do it and he must do it because he had
18   jurisdiction, but the indication throughout the record was that
19   the reference should be withdrawn and that the issues of
20   coverage overlapped clearly with what was before the district
21   court.  I think the bankruptcy court felt constrained to keep
22   these counterclaims and perhaps didn't realize they were as
23   broad as they actually are.  I think the bankruptcy court
24   thought they were limited just to advancement.  They're not.
25   When you look at them, they are as broad as our claims were.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

7a5QaxiC
1    They seek a declaration of coverage.
2            I think you're absolutely right that there is no
3    question that he will only rule upon this advancement issue.
4    He has not dismissed the remainder of the counterclaims or
5    anything extraneous to the advancement issue yet in the
6    bankruptcy court, but I'm sure that he will.
7            THE COURT:   And if he doesn't, there would be nothing
8    to prevent a subsequent motion to withdraw the reference if the
9    bankruptcy judge should be going beyond the issue of
10   advancement, right?  And under the statute, cases can be
11   withdrawn in whole or in part, so it would be possible to
12   fashion this either by what the bankruptcy court does or a
13   subsequent motion to withdraw the reference to assure that
14   there's no overlap between the action that you've filed now in
15   the district court and what remains in the bankruptcy court.
16            MS. GILBRIDE:  Your Honor, obviously, we've been told
17   or the argument is that this motion to withdraw the reference
18   is not timely.  I'm sure if there was a subsequent motion,
19   there would be issues about timeliness raised as well.
20            THE COURT:   I think I can make it clear that if I
21   thought the present motion was untimely because it comes at a
22   point that suggests that it may have tactical reasons in view
23   of where it comes in the bankruptcy court proceeding, that
24   those considerations will not affect the subsequent decision
25   with respect to a withdrawal of the reference with respect to
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

7a5QaxiC

Page 7

Transcript 10 05 07 (Koeltl).txt
1   whatever remains in the bankruptcy court.
2           MS. GILBRIDE:  Your Honor, there are remaining issues
3   in the district court, obviously.  There's our complaint that
4   we filed.  There is -- inevitably this case, the question of
5   coverage is going to be before a court, and we believe strongly
6   and think the bankruptcy court steers in this direction that it
7   should all be decided by one court, and I think the bankruptcy
8   court thought the appropriate court for that was Judge Lynch
9   since he had the underlying litigation; that there were
10  connections in terms of discovery, settlement, all sorts of
11  issues for practical purposes that he thought this coverage
12  dispute should be before the district court.  I think the
13  timely time to do that would be now before there's further
14  rulings by the bankruptcy court that will just involve appeals
15  and countless more motions and judicial resources being
16  utilized when it could all be decided in one place.
17          THE COURT:  Are the motions fully briefed before the
18  bankruptcy judge?
19          MS. GILBRIDE:  The reply briefs have not been filed
20  yet.  The motion was filed.  The oppositions were filed, and
21  we're still waiting forth reply briefs.
22          THE COURT:  When is the reply brief to be filed?
23          MS. GILBRIDE:  The 10th.  The hearing is on for the
24  12th.  So, your Honor, it's our position that in the interest
25  of judicial efficiency, the motion to withdraw the reference
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

7a5QaxiC
1   should be granted at this time, and for all the reasons set
2   forth in our papers.  Do you have any questions, your Honor?
3           THE COURT:  No.  Thank you, you've helped me in terms
4   of understanding the case.  Thank you.
5           Ms. Moses.
6           MR. WALSH:  Thank you, your Honor.  I represent
7   Mr. Trosten.  I'm also going to speak extremely briefly this
8   morning on behalf of the other Grant plaintiffs, Mr. Grant and
9   Mr. Bennett, and on behalf of the counterclaimants in the Axis
10  adversary who are Messrs. Klejna, Murphy, Sexton, Sherer and
11  Silverman.  And if I've forgotten anyone, I'm sure my
12  co-counsels will let me know.  Mr. Walsh to my right, I believe
13  wishes to also speak on behalf of the Breitman plaintiffs.  I
14  will be very brief, your Honor.
15          I really just want to touch on two points.  The first
16  is the bankruptcy court's intent, and the second is the
17  possibility of inconsistent results absent a withdrawal of the
18  reference.
19          With respect to the bankruptcy court's intent, I think
20  your Honor correctly read what Judge Drain had in mind, and I
21  think the most relevant page of the transcript below is page 82
22  of the August 30 transcript where Axis' counsel actually said
23  to Judge Drain, referring to the advancement claims:  "You're
24  asking us to go to another courthouse to litigate this."  And
25  the court said no.  Judge Drain said, "No, I'm asking you to
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

7a5QaxiC
1   tell me whether in fact your client is going to pay or not,"
2   and then the court said that it would be happy to determine
3   those issues, the advancement issues in the bankruptcy court.
4   So I think your Honor got it exactly right.
5           With respect to the possibility of inconsistent
Page 8

Transcript 10 05 07 (Koeltl).txt
6  results, I think, given where this case is and how the issues
7  have been teed up in the bankruptcy court, there's zero
8  possibility of inconsistent results. And I say that for two
9  reasons. First, as your Honor just pointed out, Judge Drain
10  has made it very clear that the issue he intends to decide a
11  week from today on summary judgment is the narrow contract
12  interpretation issue of whether under the language of the Axis
13  policy and the underlying policy Axis has an interim funding
14  obligation which continues in the face of an unresolved dispute
15  over ultimate issues of coverage and liability.
16         If Judge Drain were to grant summary judgment for the
17  insureds on that issue, obviously that could not possibly
18  conflict or overlap with anything Judge Lynch is doing with
19  regard to the securities fraud class action.
20         Now, Axis, of course, argues the opposite of that
21  question. And if Axis should prevail next Friday on the 12th
22  and if Judge Drain at that point should change his tentative
23  view and should agree that he has to look at the underlying
24  fraud issues, the broader coverage issues, in order to
25  determine the advancement question, he's made it clear that
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

7a5QaxiC
1  he's not going to do that. He actually said on page 58 of the
2  September 11 transcript, that if he were to come out that way,
3  then there would be an overlap, and at that point this
4  adversary proceeding, referring to the Grant proceeding, and
5  the adversary proceeding brought by the counterclaim parties
6  would be either stayed or dismissed without prejudice pending
7  the development of those facts in the multisecurities district
8  litigation.
9         So either way he goes, your Honor, there's zero danger
10  that Judge Drain is going to make rulings on those coverage
11  issues, those fraud-related issues, which would pose a danger
12  with being inconsistent with anything Judge Lynch or Judge
13  Buchwald has done or is going to do in the district court with
14  respect to those overlapping fraud issues.
15         So I would submit, your Honor, that looking at the
16  ultimate questions which are efficiency and uniformity, that
17  this case actually comes to you in a posture very similar to
18  two prior withdrawal cases that your Honor decided and that are
19  cited to you in the papers In Re Ames and In Re Formica, and
20  that the most efficient thing to do is clearly to let Judge
21  Drain decide the summary judgment motions that he's got teed up
22  and ready to go a week from today. Thank you.
23         THE COURT: OK.
24         MR. WALSH: Your Honor, Michael Walsh on behalf of the
25  Director Defendants. I think just about everything has been
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

7a5QaxiC
1  covered. I just want to make two very quick points. Axis'
2  counsel stated that if there is an issue of ambiguity on the
3  contract, the court would have to look at evidence that's
4  outside the contract. I think obviously that will be argued
5  better in front of the bankruptcy court but argued would be
6  that ambiguity as a matter of law would be held against the
7  insurer and in favor of the insureds, so even if there is
8  ambiguity, I don't think we would go beyond the contract.
9         Second, Axis, I think, may have implied that all of
10  the directors and officers have these counterclaims that the
Page 9

Transcript 10 05 07 (Koeltl).txt
11  court has not disposed of.  Certainly, the Director Defendants
12  are seeking advancement only and are not seeking a
13  determination in the bankruptcy court of the larger issue of
14  liability of Axis under the policy.
15          THE COURT:  What's your position with respect to the
16  proceedings before the bankruptcy court and whether they're
17  core or non-core?
18          MR. KLINE:  I think that a strict interpretation of
19  the contract is not a core proceeding, and I don't think we
20  were as clear in our papers on that issue as I wish we were,
21  but I think the point we were making is that in looking at the
22  core/non-core issue as a factor in withdrawal, the reason to
23  look at that is for two reasons:  One is the issue of the scope
24  of review, and the other is the issue of the expertise of the
25  bankruptcy court.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

7a5QaxiC
1           On the scope of review, clearly we're saying that this
2  is a question of law.  So that's review de novo and that does
3  not help our argument.  But in terms of the expertise of the
4  bankruptcy court and the understanding of what this dispute
5  means to the rest of the bankruptcy court does fall within the
6  bankruptcy court's expertise and is a factor -- although we
7  don't think determinative -- it is a factor that this court
8  could take into account in making the decision.
9           THE COURT:  Thank you for your frankness.  The papers
10  that various insureds submitted were not consistent that the
11  proceedings as to which withdrawal is sought are in fact
12  non-core proceedings.  In fact, they tried to say that the
13  bankruptcy judge has found that they are core proceedings, and
14  it's not clear to me that the bankruptcy court has made such a
15  finding.
16          MR. KLINE:  That may have been our papers, your Honor.
17  I think all we are trying to say is that the bankruptcy court
18  referred to provisions of the plan or relief from the stay as
19  being core, and that those issues were implicated by his
20  decision, but the contract interpretation itself we did not
21  mean to imply was core at all.
22          THE COURT:  OK.  Anyone else?  No.  I'm prepared to
23  decide.
24          The defendant, Axis Reinsurance Company ("Axis") has
25  filed a motion to withdraw the reference from the United States

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

7a5QaxiC
1  Bankruptcy Court for the Southern District of New York ("the
2  Bankruptcy Court") in the consolidated adversary proceedings.
3  Axis argues that the adversary proceedings are non-core
4  proceedings, and therefore the reference should be withdrawn in
5  the interest of judicial economy, particularly in light of the
6  fact that certain of the insureds have demanded a jury trial.
7           In relevant part, 28 U.S.C. Section 157(d) provides:
8  "The district court may withdraw, in whole or in part, any case
9  or proceeding referred under this section, on its own motion or
10  on timely motion of any party, for cause shown."  While the
11  statute does not define the phrase "for cause," courts have
12  focused on whether the proceeding is core or non-core as well
13  as considerations of judicial economy and uniformity in the
14  administration of bankruptcy law.  See, for example, Orion
15  Pictures Corporation v. Showtime Networks, Inc.  (In re Orion

Page 10

Transcript 10 05 07 (Koeltl).txt
16  Pictures Corp.), 4 F.3d, 1101, (2d Cir. 1993); Hunnicutt Co. v.
17  TJX Cos.  (In re Ames Department Stores, Inc.), 190 B.R. 157,
18  162, (S.D.N.Y. 1995).
19          "There is no specific time limit for applications
20  under 28 U.S.C. Section 157 to withdraw a reference to the
21  bankruptcy court..."  Lone Star Industries, Inc. v. Rankin
22  County Economic Development District.  (In re New York Trap
23  Rock Corp.), 158 B.R. 574, 577, (S.D.N.Y. 1993).  In situations
24  where timeliness is not governed by a specific timetable, the
25  court must assess timeliness in the context of the parties'
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              22
    7a5QaxiC
1   interactions throughout the course of the litigation in the
2   bankruptcy court.  Id.  Therefore, "courts in this Circuit have
3   defined 'timely' to mean 'as soon as possible after the moving
4   party has notice of the grounds for withdrawing the
5   reference.'"  Official Committee of Unsecured Creditors of FMI
6   Forwarding Co., Inc. v. Union Transport Corp.  (In re FMI
7   Forwarding Co., Inc.), No. 04 Civ. 630, 2005 WL 147298, at *6
8   (S.D.N.Y. Jan. 24, 2005 (quoting Kentile Floors, Inc. v.
9   Congoleum Corp.  (In re Kentile Floors, Inc.) No. 95 Civ.,
10  2470, 1995 WL 479512, at *2.  (S.D.N.Y Aug. 10, 1995)).
11          Based on the particular circumstances at issue, a
12  delay that is acceptable in one case may not be acceptable in
13  another case.  Id.; compare Connolly v. Bidermann Industries
14  U.S.A., Inc., No. 95 Civ. 1791, 1996 WL 325575, at *3 (S.D.N.Y
15  June 13, 1996  (finding timely a motion to withdraw reference
16  filed after a delay of eight months), with  In re Kentile
17  Floors, Inc., at *2 (finding timely a motion to withdraw
18  reference filed after a delay of nine months, where the parties
19  had been in mediation for several months and the motion was
20  filed promptly after mediation was abandoned).  It is clear,
21  however, that "[d]elay for tactical reason, such as forum
22  shopping, or which prejudices the opposing party or the
23  administration of justice, can be grounds for denying" a motion
24  for withdrawal.  In re FMI Forwarding Co., at *6; see also In
25  re New York Trap Rock Corp. 158 B.R. at 577.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              23
    7a5QaxiC
1           In this case, the motion is not timely.  Axis had
2   notice of the grounds for withdrawal at the time it filed its
3   declaratory action in bankruptcy court in May but instead chose
4   to invoke the bankruptcy court's jurisdiction pursuant to 28
5   U.S.C. Section 157(c).  The motion to withdraw the reference
6   was filed more than three months after Axis filed its complaint
7   in the bankruptcy court.  In the interim, the parties expended
8   resources litigating in that forum, and the bankruptcy court
9   dismissed Axis's complaint, entered preliminary injunctions,
10  and scheduled a hearing on October 12, 2007 to decide
11  cross-motions for summary judgment.
12          Axis argues that the motion is timely because it filed
13  its motion only one week after the bankruptcy court dismissed
14  its complaint.  However, this argument ignores the fact that
15  Axis waited for more than three months to file its motion and
16  only sought removal to this court after the adverse decision in
17  the bankruptcy court on the motion for a preliminary injunction
18  and on the motion to dismiss.  Up to that point, Axis was
19  willing to allow the bankruptcy court to adjudicate all the
20  issues in its complaint, including the advancement issue, and
                          Page 11

Transcript 10 05 07 (Koeltl).txt
```
21   the bankruptcy court expended considerable time and energy in
22   becoming familiar with the facts and legal issues involved,
23   particularly on the advancement issue.  The motion for
24   withdrawal of the reference is made shortly before the
25   bankruptcy court is scheduled to hear oral argument on the
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    24
7a5QaxiC
```
1    cross-motions for summary judgment on the advancement issue and
2    appears to be a tactical effort to avoid the bankruptcy court's
3    decision on that issue, which will be fully reviewable on an
4    appeal to this court.  On the basis of timeliness alone, the
5    motion for withdrawal of the reference should be denied.
6           Even if the motion was timely, Axis has failed to show
7    sufficient cause to warrant withdrawal at this time.  Under the
8    framework established by the Court of Appeals for the Second
9    Circuit, the threshold question with respect to "cause shown"
10   is whether the case involves a core or non-core proceeding,
11   "since it is on this issue that questions of efficiency and
12   uniformity will turn."  In re Orion Pictures Corp. 4 F.3d at
13   1101.   After the district court "makes the core/non-core
14   determination, it should weigh questions of efficient use of
15   judicial resources, delay and cost to the parties, uniformity
16   of bankruptcy administration, the prevention of forum shopping
17   and other related factors," such as the presence of a jury
18   demand.  Id.; see also Kenai Corp. v. National Union Fire
19   Insurance Co. (In re Kenai Corp.), 136 B.R. 59, 61, (S.D.N.Y.
20   1992).
21          To be a core proceeding, the proceeding must "arise
22   under" Title 11 or "arise in" a bankruptcy case under Title 11.
23   See Mt. McKinley Insurance Co. v. Corning Inc., 399 F.3d 436,
24   447-48 (2d Cir. 2005).  With respect to claims arising from
25   contracts, the important factors are whether the contract is
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    25
7a5QaxiC
```
1    antecedent to the reorganization petition and the degree to
2    which the proceeding is independent of the reorganization.
3    United States Lines, Inc. v. American Steamship Owners Mutual
4    Protection and indemnity Association, Inc., 197, F.3d, 631, 637
5    (2d Cir. 1999).
6           The insureds now concede that the adversary
7    proceedings here are non-core proceedings.  The causes of
8    action do not arise under the Bankruptcy Code and would exist
9    in the absence of a bankruptcy case.  The proceedings involve
10   the interpretation of a pre-petition and insurance contract as
11   it relates to non-debtors and therefore are sufficiently
12   removed from the reorganization to be considered non-core.
13          In general, the fact that the proceeding is a non-core
14   proceeding, weighs in favor of withdrawal because in non-core
15   proceedings decisions by the bankruptcy court are subject to
16   de novo review in the district court.  In re Orion Pictures
17   Corp., 4 F.3d at 1101.  The fact that a proceeding is non-core,
18   however, is not determinative because "[i]n the final analysis,
19   the critical question is efficiency and uniformity."  In re FMI
20   Forwarding Co. at *5.
21          Therefore, the argument for withdrawal based on the
22   non-core nature of the proceedings is significantly lessened in
23   situations where the bankruptcy court has already expended
24   significant resources on the case and where other factors weigh
25   strongly against withdrawal.  It would be an inefficient use of
```
                                Page 12

Transcript 10 05 07 (Koeltl).txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

7a5QaxiC
1   judicial resources to withdraw this proceeding from the
2   bankruptcy court at this time and lose the advantage of the
3   bankruptcy court's views on the dispute relating to the
4   advancement of fees.
5           Axis only sought to remove the reference after the
6   bankruptcy court dismissed its complaint and granted
7   preliminary injunctions requiring it to advance defense costs.
8   Facing a potential permanent junction requiring the advancement
9   of fees by the bankruptcy court, Axis now moves to withdraw the
10  reference.  In situations where the timing and circumstances of
11  a motion to withdraw the reference raise a strong inference of
12  forum shopping, the motion should be denied.  See, for example,
13  In re New York Trap Rock Corp. 158 B.R. at 577 (noting that
14  withdrawing the reference 11 days after adverse findings by the
15  bankruptcy court "would reward forum shopping"); In re Kenai
16  Corp. 136 B.R. at 61.
17          Axis' argument that its motion is made at the
18  suggestion of the bankruptcy court and is therefore timely and
19  not motivated by forum shopping is unpersuasive.  First, the
20  bankruptcy court appears to have been referring to the ultimate
21  issue of coverage, rather than the discrete issue of
22  advancement of expenses, when it suggested that it saw the
23  potential for overlapping issues between Axis' complaint and
24  the securities class action currently before Judge Lynch.
25  (Transcript 57-59, dated August 30, 2007, attached as Exhibit 5
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

27

7a5QaxiC
1   to the declaration of Greg A. Danilow.)  In any event, Axis'
2   proffered explanation does not change the fact that it could
3   have filed a motion to withdraw the reference at a much earlier
4   date and only chose to file its motion after the bankruptcy
5   court had dismissed its complaint and entered the preliminary
6   injunctions.
7           Additionally, judicial economy is not served by
8   withdrawing the reference at this point.  The bankruptcy court
9   has spent considerable time and energy to become familiar with
10  the parties' arguments with respect to the discrete issue of
11  Axis' obligation to advance costs under the policy.  Moreover,
12  the bankruptcy court has scheduled a hearing in one week to
13  consider the motions for summary judgment on the advancement
14  issue.  Even in light of the fact that the decision of the
15  bankruptcy court will be subject to de novo review on appeal,
16  it would be an inefficient use of judicial resources for the
17  Court to withdraw the reference after the bankruptcy court has
18  become familiar with the case and before it issues its ruling
19  on the dispute relating to advancement.  See, for example, In
20  re Ames Department Stores, Inc. 190 B.R. at 163-64.
21          Axis argues that the Court should withdraw the
22  reference because some of the insureds have requested a jury
23  trial.  However, the bankruptcy court has decided at this point
24  that the ultimate issue of coverage under the policy is
25  separate and distinct from the issue remaining before the
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

28

7a5QaxiC
1   bankruptcy court; namely, whether the terms of the policy
Page 13

Transcript 10 05 07 (Koeltl).txt
2  require Axis to advance defense costs.  If the bankruptcy court
3  continues to follow its previous views, that would be an
4  additional issue to be decided on appeal.  Therefore, the fact
5  that a jury demand has been made by certain of the insureds on
6  the ultimate issue of coverage does not weigh strongly in favor
7  of withdrawal of the reference where the issue in front of the
8  bankruptcy court, as the bankruptcy court has previously said,
9  is a discrete issue of law which will be decided on
10  cross-motions for summary judgment.  Of course, all of the
11  issues involved in that Bankruptcy Court decision on the
12  motions for summary judgment will be fully reviewable de novo
13  on appeal.  Furthermore, a jury demand is only one factor in
14  the analysis, and, in any event, the possibility of a jury
15  trial at some later date does not require the court to withdraw
16  the reference in situations where judicial economy would be
17  better served by current proceedings remaining in the
18  bankruptcy court.  See, for example, In re Orion Pictures Corp.
19  4 F.3d at 1101-02; In re Ames Department Stores, Inc. 190 B.R.
20  at 162-63; In re Kenai Corp. 136 B.R. at 61.
21        Indeed, as the Court pointed out in oral argument,
22  under the statute, the Court has the authority to withdraw "in
23  whole or in part" any case or proceeding referred to the
24  bankruptcy court.  The bankruptcy court by its dismissal of
25  Axis' complaint has made it clear thus far it believes the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              29
      7a5QaxiC
1  underlying coverage dispute should be litigated in the district
2  court.  If any part of the coverage dispute were to remain in
3  the bankruptcy court, that may well be the subject of a motion
4  to withdraw the reference for that part of the proceeding at
5  some point in the future.
6        Therefore, Axis' motion to withdraw the reference is
7  denied without prejudice to refile after the bankruptcy court
8  has entered a judgment on the pending motions for summary
9  judgment.  So ordered.
10        Let me raise another issue with you very quickly:
11  This case is filed under M-47, and filings under miscellaneous
12  numbers in the clerk's office always produces some issues with
13  respect to filing, etc.  Are there any outstanding motions or
14  orders before me that require a decision that remain unopened
15  not correctly filed in the file?  Anything else for this court
16  to decide?  Anything open?
17        MS. GILBRIDE:  Your Honor, there's just the appeal
18  that was stayed.  I filed an appeal that we requested be
19  stayed, but other than that, there's nothing else that I'm
20  aware of.
21        THE COURT:  Because I know that there were motions to
22  consolidate the cases before me, and I just want to make sure
23  that you've gotten all of the orders that you need and they're
24  all properly filed.  From time to time there are pro hac vice
25  motions that are filed but don't get filed in the correct file
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                              30
      7a5QaxiC
1  but nothing's open except the appeal that's been stayed.  OK.
2  Great.  Anything else?
3        MS. GILBRIDE:  We don't have anything else.  Thank
4  you, your Honor.
5        THE COURT:  Good morning all.  Good to see you all.
6        (Adjourned)
                        Page 14

Transcript 10 05 07 (Koeltl).txt
```
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300